ALMADANI LAW
Yasin M. Almadani, State Bar No. 242798
14742 Beach Blvd., Suite 410
La Mirada, CA 90638
Ph: 213-335-3935
Fax: 213-296-6278
yma@lawalm.com

AI LAW, PLC
Ahmed Ibrahim, State Bar No. 238739
4343 Von Karman Ave, Suite 250
Newport Beach, CA 92660
Ph.:  949-260-1240
Fax:  949-260-1280
aibrahim@ailawfirm.com

Attorneys for Plaintiff Farid Khan, Individually
and On Behalf of All Others Similarly Situated

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| FARID KHAN, an individual, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BOOHOO.COM USA, INC., a Delaware corporation, BOOHOO.COM UK LIMITED, a United Kingdom private limited company, BOOHOO GROUP PLC, a Jersey public limited company, and DOES 1-10, inclusive,<br><br>Defendants. | **CASE NO.: 2:20-cv-03332 SB(JEMx)**<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' OMNIBUS MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>HON. STANLEY BLUMENFELD, JR.<br>United States District Judge<br><br>Action Filed:   April 9, 2020<br><br>Trial Date:   TBD<br><br>Hearing Date:   November 2, 2020<br><br>Hearing Time:   8:30 a.m.<br><br>Courtroom:   6C |

Plaintiffs Farid Khan ("Khan"), Haya Hilton ("Hilton"), and Olivia Lee ("Lee") (collectively, "Plaintiffs"),[1] by and through their counsel of record, Yasin M. Almadani and Ahmed Ibrahim, hereby file the above-styled omnibus opposition to Defendants' omnibus motion to dismiss under Rules 12(b)(2), 12(b)(6), and 12(f) of the Federal Rules of Civil Procedure.

Plaintiff Khan (Boohoo website purchaser) brought a class action complaint against Defendants Boohoo Group PLC ("Boohoo PLC"), Boohoo.com USA, Inc. ("Boohoo USA"), and Boohoo.com UK Limited ("Boohoo UK"); Plaintiff Hilton (PrettyLittleThing website purchaser) brought a class action complaint against Defendants Boohoo PLC, Prettylittlething.com USA Inc. ("PLT USA"), and Prettylittlething.com Limited ("PLT UK"); and Plaintiff Lee (Nasty Gal website purchaser) brought a class action complaint against Defendants Boohoo PLC, Nastygal.com USA Inc. ("NG USA"), and Nasty Gal Limited ("NG UK"). All Defendants are collectively referred to hereafter as "Defendants."

Plaintiffs allege that Defendants sell clothing, shoes, and accessories to U.S. consumers through their U.S. websites using deceptive marketing schemes in violation of the law. Defendants do this by utilizing misleading marketing campaigns consisting of fake reference prices accompanied by phantom markdowns to deceive customers into falsely believing that the "sale" prices they are paying are deeply discounted bargain prices. In reality, the "sale" is not really a sale at all because the products are rarely, if ever, sold at the advertised reference price. Plaintiffs and class members are injured by being lured into the fake sale; they maintain that they would have either not purchased the products or paid less had they known that the "discounts" were fake. Courts have found such false marketing and pricing schemes to violate the law.

Plaintiffs also detail how Boohoo PLC itself boasts that it sells its brands in the U.S. using its Los Angeles headquarters, and how it runs its group of brands, including Boohoo, PrettyLittleThing, and Nasty Gal, as one big company, exercising substantial control over

---

[1] The abbreviated names here will be carried over to the memorandum of points and authorities.

1   its subsidiaries and using them as conduits to market products to U.S. customers.

2       Because Plaintiffs (i) allege the false marketing and pricing schemes with

3   particularity, and (ii) allege activities directed at California by all Defendants relating to

4   the false marketing and pricing schemes as well as Boohoo PLC's substantial control over

5   its subsidiaries; and because Defendants' motion to strike a nationwide class is premature

6   and insufficient as matter of law, Defendants' omnibus motion must be denied.

7       Plaintiffs' opposition is detailed below in the attached memorandum of points and

8   authorities, and is based on the accompanying Declaration of Yasin Almadani ("Almadani

9   Decl."), including exhibits, the files and records in this case, and such further evidence

10  and argument as the Court may permit.

11

12   Dated: October 2, 2020                    Respectfully submitted,

13                                             ALMADANI LAW

14                                             */s/ Yasin M. Almadani*
15                                             Yasin M. Almadani, Esq.

16                                             AI LAW, PLC

17

18                                             */s/ Ahmed Ibrahim*
                                               Ahmed Ibrahim, Esq.
19

20                                             *Attorneys for Plaintiff Individually and*
                                               *On Behalf of All Others Similarly Situated*

21

22

23

24

25

26

27

28

*Plaintiff's Opposition to Defendants' Omnibus Motion to Dismiss Complaint*          *Case No. 20-cv-04658 GW(JEMx)*

## **TABLE OF CONTENTS**

I.    SUMMARY OF ARGUMENTS AND PERTINENT FACTS ................................. 1

II.   THE COURT HAS PERSONAL JURISDICTION OVER BOOHOO PLC ....................................... 2

III.  DEFENDANTS' RULE 12(b)(6) ARGUMENTS MUST BE DENIED.................................... 9

   A.  PLAINTIFFS PROPERLY PLEAD CLAIMS AGAINST THE U.S. ENTITIES ............................ 10

   B.  PLAINTIFFS HAVE STANDING ............................................................ 12

   C.  PLAINTIFFS' CLAIMS HAVE BEEN PLED WITH SUFFICIENT SPECIFICITY ........................ 14

   D.  PLAINTIFFS HAVE STATED A VALID CLAIM FOR FRAUDULENT CONCEALMENT.......................... 15

   E.  PLAINTIFFS HAVE SUFFICIENTLY STATED A CLAIM FOR UNJUST ENRICHMENT. ......................... 16

IV.  DEFENDANTS' RULE 12(f) ARGUMENTS MUST BE DENIED.................................... 17

   A.  PLAINTIFFS' CLRA NOTICES ARE COMPLIANT WITH CIVIL CODE SECTION 1782 ....................... 17

   B.  THE MOTION TO STRIKE THE NON-CALIFORNIA CLASS CLAIMS MUST BE DENIED........................ 18

V.   CONCLUSION ........................................................................ 25

---

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF AUTHORITIES**

## **Cases**

*Allen v. Hyland's Inc.*,

    300 F.R.D. 643, 658 (C.D. Cal. 2014) ........................................................ 22

*Arabian v. Organic Candy Factory*, No. 2:17-cv-05410-ODW-PLA,

    2018 WL 1406608, at *6 (C.D. Cal. Mar. 19, 2018) ................................ 22

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,

    874 F.3d 1064 (9th Cir. 2017) ................................................................... 3,9

*Azimpour v. Sears, Roebuck & Co.*, No. 15-CV-2798 JLS (WVG),

    2017 WL 1496255 (S.D. Cal. Apr. 26, 2017) ........................................... 14,17

*Banh v. Am. Honda Motor Co., Inc.*, No. 2:19-CV-05984-RGK-AS,

    2019 WL 8683361, at *3–4 (C.D. Cal. Dec. 17, 2019) ........................... 19,22

*Banks v. Nissan N. Am., Inc.*, No. C 11-2022 PJH,

    2012 WL 8969415 (N.D. Cal. Mar. 20, 2012) ......................................... 22

*Bell Atl. Corp. v. Twombly*,

    550 U.S. 544 (2007) ................................................................................. 10

*Branca v. Nordstrom, Inc.*, No. 14CV2062-MMA (JMA)

    2015 WL 10436858, at *5 (S.D. Cal. Oct. 9, 2015) ................................ 14,15

*Brazil v. Dole Food Co., Inc.*, No. 12-CV-01831-LHK,

    2013 WL 5312418 (N.D. Cal. Sept. 23, 2013) ........................................ 22,23

*Bristol-Myers Squibb Co. v. Superior Court of Cal.*,

    137 S. Ct. 1773 (2017) ............................................................................. 23,24,25

*Brophy v. Almanzar*,

    359 F. Supp. 3d 917, 925 (C.D. Cal. 2018) ............................................. 9

*Bruno v. Quten Research Institute, LLC*,

    280 F.R.D. 524, 547 (C.D. Cal. 2011) ..................................................... 22

*Burger King Corp. v. Rudzewicz*,

    471 U.S. 462 (1985) ................................................................................. 3

*Cabrera v. Bayer Healthcare, LLC.*, No. LACV1708525JAKJPRX,

    2019 WL 1146828, at *8 (C.D. Cal. Mar. 6, 2019) ................................. 24

*Calderon v. Kate Spade & Co.*, LLC, No. 319CV00674AJBJLB,

    2020 WL 1062930, at *4 (S.D. Cal. Mar. 5, 2020) ................................... 15

*Carpenter v. PetSmart, Inc.*,

    441 F. Supp. 3d 1028 (S.D. Cal. 2020) ..................................................... 25

*Chase v. Hobby Lobby Stores, Inc.*, No. 17-cv-00881-GPC-BLM,

    2017 WL 4358146, at *7 (S.D. Cal. Oct. 2, 2017) ................................... 14

*Chavez v. Blue Sky Natural Beverage Co.*,

    268 F.R.D. 365, 379 (N.D. Cal. 2010) ..................................................... 19

*Chester v. TJX Cos., Inc.*, No. 5:15-cv-01437-ODW (DTB),

    2016 WL 4414768, at *7 (C.D. Cal. Aug. 18, 2016) ............................... 14

*Clothsrigger, Inc. v. GTE Corp.*,

    191 Cal. App. 3d 605, 613 (1987) ........................................................... 19

*Collazo v. Wen by Chaz Dean, Inc.*, No. 215CV01974ODWAGR,

    2015 WL 4398559, at *3–5 (C.D. Cal. July 17, 2015) ............................. 19

*Collins v. eMachines, Inc.*,

    202 Cal. App. 4th 249, 256-57 (2011) ..................................................... 16

*Concha v. London*,

    62 F.3d 1493 (9th Cir. 1995) ................................................................... 14

*Covell v. Nine W. Holdings, Inc.*, No. 3:17-CV-01371-H-JLB,

    2018 WL 558976, at *4 (S.D. Cal. Jan. 25, 2018) ................................... 15

*Cover v. Windsor Surry Co.*, No. 14-CV-05262-WHO,

    2016 WL 520991 (N.D. Cal. Feb. 10, 2016) ........................................... 23

*Daimler AG v. Bauman*,

    571 U.S. 117 (2014) ............................................................................... 2,3

*Davison v. Kia Motors Am., Inc.*, No. SACV 15-00239-CJC (RNBx),

    2015 WL 3970502 (C.D. Cal. June 29, 2015) ......................................... 23

*Dean v. Colgate-Palmolive Co.*, No. EDCV 15-0107 JGB,

    2015 WL 3999313, at *11 (C.D. Cal. June 17, 2015) .............................. 22

*Doe 1 v. AOL LLC*,

    719 F. Supp. 2d 1102 (N.D. Cal. 2010) ................................................... 18

*Doe v. Unocal Corp.*,

    248 F.3d 915 (9th Cir. 2001)  ..................................................... *passim*

*Donohue v. Apple, Inc.*,

    871 F. Supp. 2d 913 (N.D. Cal. May 10, 2012) ............................... 21

*Ehret v. Uber Techs., Inc.*,

    68 F. Supp. 3d 1121, 1131-32 (N.D. Cal. 2014) ......................... 19

*Evans v. DSW, Inc.*, No. CV 16–3791–JGB (SPx),

    2017 WL 7058233 (C.D. Cal. Feb. 2, 2017)  ............................... 16

*Fabricant v. Fast Advance Funding, LLC*, No. 217CV05753ABJCX,

    2018 WL 6920667, at *5 (C.D. Cal. Apr. 26, 2018) ............................... 24

*Feller v. Transamerica Life Ins. Co.*, No. 2:16-CV-01378-CAS-AJW,

    2017 WL 6496803, at *17 (C.D. Cal. Dec. 11, 2017) ............................... 24

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, No. 17-cv-00564-NC,

    2017 WL 4224723, at *4 (N.D. Cal. Sept. 22, 2017) ............................... 24

*Forcellati v. Hyland's, Inc.*,

    876 F. Supp. 2d 1155, 1159 (C.D. Cal. 2012)  ............................... 22

*Gadomski v. Equifax Info. Servs., LLC*, No. 2:17-CV-00670-TLN-AC,

    2020 WL 3841041 (E.D. Cal. July 8, 2020) ............................... 25

*Gasser v. Kiss My Face, LLC*, No. 17-cv-01675-JSC,

    2018 WL 4538729, at *2 (N.D. Cal. Sept. 21, 2018)  ............................... 24

*Gerstle v. Am. Honda Motor Co., Inc.*, No. 16-CV-04384-JST,

    2017 WL 2797810 (N.D. Cal. June 28, 2017) ......................... 18,19

*Gianino v. Alacer Corp.*,

    846 F. Supp. 2d 1096, 1100–01 (C.D. Cal. 2012) ...................................... 22

*Grivas v. Metagenics, Inc.*, No. SACV 15-01838-CJC (DFMx),

    2018 WL 6185978, at *8 (C.D. Cal. Mar. 19, 2018) ............................... 22

*Hinojos v. Kohl's Corp.*,

    718 F.3d 1098 (9th Cir. 2013)  ............................... 13

*In re Clorox Consumer Litig.*,

    894 F. Supp. 2d 1224–38 (N.D. Cal. 2012) ............................... 18,19,21,22

*In re Hyundai & Kia Fuel Econ. Litig.*,

    926 F.3d 539 (9th Cir. 2019) ......................................................... 22

*In re iPhone 4S Consumer Litigation*, No. C12–1127 CW,

    2013 WL 3829653, at *7 (N.D. Cal. July 23, 2013) ....................... 19

*In re Morning Song Bird Food Litig.*, No. 12cv01592 JAH-AGS,

    2018 WL 1382746, at *5 (S.D. Cal. Mar. 19, 2018) ...................... 24

*In re Mattel, Inc.*,

    588 F. Supp. 2d 1111 (C.D. Cal. 2008) ....................................... 19

*In re Tobacco II Cases*,

    46 Cal. 4th 298 (2009) ................................................................. 18

*John v. AM Retail Grp., Inc.*, No. 17CV727-JAH (BGS),

    2018 WL 1400718 (S.D. Cal. Mar. 20, 2018) ........................... 14,15

*Joseph v. J.M. Smucker Co.*, No. CV 17-8735 FMO (KSX),

    2019 WL 1219708, at *4 (C.D. Cal. Mar. 13, 2019) ...................... 22

*Junod v. NWP Servs. Corp.*, No. SACV141734JLSJCGX,

    2015 WL 12712309, at *2 (C.D. Cal. Apr. 2, 2015) ...................... 19

*Keegan v. Am. Honda Motor Co.*,

    284 F.R.D. 504, 531 (C.D. Cal. 2012) ......................................... 16

*Klaehn v. Cali Bamboo*, LLC, No. 19CV1498-LAB (KSC),

    2020 WL 3971518, at *3 (S.D. Cal. July 13, 2020) ...................... 19

*King v. Bumble Trading, Inc.*, No. 18-cv-06868-NC,

    2020 WL 663741, at *4–5 (N.D. Cal. Feb. 11, 2020) .................. 24

*Knapp v. Art.com, Inc.*, No. 16-CV-00768-WHO,

    2016 WL 3268995, at *5 (N.D. Cal. June 15, 2016) ..................... 15

*Kwikset v. Superior Court*,

    51 Cal. 4th 310 (2011) ................................................................. 13

*Littlehale v. Hain Celestial Grp., Inc.*, No. C 11-6342 PJH,

    2012 WL 5458400 (N.D. Cal. July 2, 2012) ................................ 22

*Madeja v. Olympic Packers, LLC*,

    310 F.3d 628 (9th Cir. 2002) ........................................................ 11

*Massachusetts Mut. Life Ins. Co. v. Superior Court,*
    97 Cal. App. 4th 1282, 1295 (2002) .......................................... 16

*Mattel, Inc. v. MCA Records, Inc.,*
    296 F.3d 894 (9th Cir. 2002) ................................................... 8

*Mazza v. American Honda Motor Co.,*
    666 F.3d 581 (9th Cir. 2012) ................................................... 21

*Meyers v. ASICS Corp.,*
    711 F. Supp. 1001 (C.D. Cal. 1989) ......................................... 4

*Molock v. Whole Foods Mkt. Grp., Inc.,*
    952 F.3d 293 (D.C. Cir. 2020) ................................................. 25

*Moore v. Kayport Package Exp., Inc.,*
    885 F.2d 531 (9th Cir. 1989) ................................................... 14

*Morgan v. AT&T Wireless Services, Inc.,*
    177 Cal. App. 4th 1235 (2009) ................................................ 18

*Mussat v. IQVIA, Inc.,*
    953 F.3d 441 (7th Cir. 2020) ................................................... 24,25

*Norwest Mortgage, Inc. v. Superior Court,*
    72 Cal. App. 4th 214 (1999) ................................................... 18

*Nunez v. Saks Inc.,*
    771 F. App'x. 401 (9th Cir. 2019) ........................................... 15

*Ochoa v. Church & Dwight Co.,* No. 517CV02019ODWSP,
    2018 WL 4998293, at *9 (C.D. Cal. Jan. 30, 2018) .................. 23

*Pareto v. F.D.I.C.,*
    139 F.3d 696 (9th Cir. 1998) ................................................... 10

*Pilgrim v. Gen. Motors Co.,*
    408 F. Supp. 3d 1160 (C.D. Cal. 2019) ................................... 25

*Precht v. Kia Motors Am., Inc.,* No. SACV141148DOCMANX
    2014 WL 10988343, at *4–5 (C.D. Cal. Dec. 29, 2014) ........... 19,22

*Prescott v. Bayer HealthCare LLC,* No. 5:20-CV-00102 NC,
    2020 WL 3505717, at *3 (N.D. Cal. June 29, 2020) .................. 23

vi

*Pulaski & Middleman, LLC v. Google, Inc.*,
    802 F.3d 979 (9th Cir. 2015) ................................................... 17

*Rubenstein v. Neiman Marcus Grp. LLC*,
    687 Fed. App'x. 564 (9th Cir. 2017) ....................................... 14

*Rutledge v. Hewlett-Packard Co.*,
    238 Cal. App. 4th 1164, 1174-76 (2015) .................................. 16

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
    806 F.2d 1393 (9th Cir. 1986) ................................................. 25

*Shahar v. Hotwire, Inc.*, No. C 12-06027 JSW,
    2013 WL 12176843 (N.D. Cal. Apr. 15, 2013) ........................ 11

*Sloan v. Gen. Motors LLC*,
    287 F. Supp. 3d 840, 874 (N.D. Cal. 2018) .............................. 16

*Smith v. Levine Leichtman Capital Partners, Inc.*,
    723 F. Supp. 2d 1205 (N.D. Cal. 2010) .................................... 17

*Sotomayor v. Bank of Am., N.A.*,
    377 F. Supp. 3d 1034, 1038 (C.D. Cal. 2019) .......................... 24

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ..................................................... 9

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011) ................................................. 10

*Staton v. BAC Home Loans Servicing, L.P.*, No. 10-01306,
    2011 WL 2213800 (D. Ore. June 3, 2011) ............................... 11

*Tait v. BSH Home Appliances Corp.*,
    289 F.R.D. 466, 482 (C.D. Cal. 2012) ...................................... 16

*Thompson v. Transamerica Life Ins. Co.*, No. 218CV05422CASGJSX,
    2018 WL 6790561, at *6 (C.D. Cal. Dec. 26, 2018) ................. 24

*Tietsworth v. Sears*,
    720 F. Supp. 2d 1123, 1147 (N.D. Cal. 2010) ........................... 16

*TRC & Assocs. v. NuScience Corp.*, No. 2:13–cv–6903–ODW (CWx),
    2013 WL 6073004, at *5 (C.D. Cal. Nov. 18, 2013) .................. 19

vii

*United States v. City of Redwood City*,

    640 F.2d 963 (9th Cir. 1981) ........................................................ 9

*United States v. Toyota Motor Corp.*,

    561 F. Supp. 354 (C.D. Cal. 1983) ............................................. 4

*Valencia v. Volkswagen Grp. of Am. Inc.*, No. 15–cv–00887–HSG,

    2015 WL 4760707, at *1 (N.D. Cal. Aug. 11, 2015) ............................. 22

*Vess v. Ciba-Geigy Corp. USA*,

    317 F.3d 1097 (9th Cir. 2003) ................................................. 14

*Wang v. OCZ Tech. Group, Inc.*,

    276 F.R.D. 618, 630 (N.D. Cal. 2011) ...................................... 19

*Warner Constr. Corp. v. L.A.*,

    2 Cal. 3d 285 (1970) ............................................................. 16

*Wells Fargo & Co. v. Wells Fargo Express Co.*,

    556 F.2d 406 (9th Cir. 1977) .................................................. 9

*Weshba v. Apple Computer, Inc.*,

    556 F.2d 406 (9th Cir. 1977) .................................................. 19

*Williams v. Yamaha Motor Co.*,

    91 Cal. App. 4th 224, 242 (2001) ............................................. 3,4

**Federal Rules**

Fed. R. Civ. P. 9 .................................................................... 14,15,17

Fed. R. Civ. P. 12(b)(1) ......................................................... 13

Fed. R. Civ. P. 12(b)(2) ......................................................... 3

Fed. R. Civ. P. 12(b)(6) ......................................................... 2,9,10

Fed. R. Civ. P. 12(f) ............................................................. 17

Fed. R. Civ. P. 15(a) ............................................................. 21

Fed. R. Evid. 801(d)(2) ......................................................... 5

**California State Statutes**

Cal. Bus. & Prof. Code § 17200 .............................................. 1

Cal. Bus. & Prof. Code § 17500 .............................................. 1

Cal. Civ. Code §§ 1750, *et seq*. ........................................................ 1

Cal. Civ. Code § 1782 ................................................................ 17,18

**<u>Other</u>**

Judicial Council of California Civil Jury Instructions, No. 1901 (2017 ed.) ... 16

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      SUMMARY OF ARGUMENTS AND PERTINENT FACTS**

Before the Court are motions to dismiss and strike filed in three separate deceptive marketing class actions brought by Farid Khan, Haya Hilton, and Olivia Lee.[2] Defendants sell their own branded fashion apparel online in the U.S. on us.boohoo.com, prettylittlething.us, and nastygal.com. (Khan Second Am. Compl. ("BH SAC") ¶1; Hilton First Am. Compl. ("PLT FAC") ¶1; Lee First Am. Compl. ("NG FAC") ¶1.)

As alleged in detail in the complaints, Plaintiffs contend Defendants perpetually advertise their products with fake reference prices—prices at which their items have never actually sold (or rarely sold)—accompanied by substantial percentage markdowns, in order to falsely inflate the value of their merchandise and dupe customers into buying items on their sites under a false belief that they are receiving a bargain. (BH SAC ¶¶1, 12-32; PLT FAC ¶¶1, 12-32; NG FAC ¶¶1, 12-31.) Plaintiffs are individual residents of California who fell victim to Defendants' deceptive marketing practices and each made purchases on Defendants' U.S. sites. (*Id*.) Plaintiffs filed these cases as class actions seeking to represent a nationwide class, or in the alternative, a class of California residents, who made purchases on Defendants' U.S. sites during the class periods set forth in the complaints. (BH SAC ¶¶33-44; PLT FAC ¶¶33-44; NG FAC ¶¶32-43.) They each assert claims for violation of the Unfair Competition Law (Cal. Bus. & Prof. Code § 17200), False Advertising Law (Cal. Bus. & Prof. Code § 17500), Consumer Legal Remedies Act (Cal. Civ. Code §§ 1750, *et seq.*), fraud, fraudulent concealment, and unjust enrichment.

In summary, Defendants' motions should be denied for the following reasons. To begin with, Defendants do not dispute that Boohoo USA, PLT USA, and NG USA (collectively, the "U.S. Entities") all have their principal place of business in California and are responsible for marketing. (Catto Decl., ¶¶19-21, 26.) They also do not dispute

---

[2] Plaintiffs' opposition brief in all three cases is, in substance, the same. However, due to page limits imposed by the Local Rules and the sheer volume of arguments asserted by Defendants, Plaintiffs were unable to elaborate on all of the points they wished to raise. Therefore, Plaintiffs wish to make the Court aware of the fact that they intend to include a more detailed discussion of their arguments stated in section IV, *infra*, in the oppositions to the motions to dismiss filed by the UK Limited Entities that are due October 12.

that Boohoo UK, PLT UK, and NG UK (collectively, the "UK Limited Entities") "operated" the websites in question and, therefore, concede personal jurisdiction over these UK entities. Boohoo PLC, however, moves to dismiss for lack of personal jurisdiction, brushing aside the litany of facts alleged in the complaints (along with the evidence attached to the declaration accompanying this filing)—which consists mostly of admissions from Boohoo PLC's own public filings and statements—establishing its clear operational and marketing presence in the U.S. from its L.A. headquarters and substantial control of its subsidiaries' activities. (BH SAC ¶¶45-74; PLT FAC ¶¶45-71; NG FAC ¶¶44-84; Almadani Decl. ¶¶2-18; Exs. A-P.) Therefore, whether directly, or under agency and alter ego theories, the Court has personal jurisdiction over Boohoo PLC.

Defendants' remaining arguments are also without merit. Despite a clear and lengthy track record of courts routinely denying Rule 12(b)(6) motions to dismiss in similar fake sale and false reference price class actions and approving substantial class settlements, Defendants nevertheless pursue a series of meritless arguments. They also ask the Court to prematurely weigh in on whether this case may be pursued on a nationwide basis by again ignoring that the marketing on their websites is unmistakably linked to activities in California, omitting important recent circuit court decisions, and utterly failing to satisfy their legal burden under California choice-of-law rules.

For the reasons presented herein, Defendants' omnibus motion must be denied.

## II.    THE COURT HAS PERSONAL JURISDICTION OVER BOOHOO PLC

***Legal Standard.*** General jurisdiction exists where a company is incorporated or has its principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). A court may also assert general jurisdiction over a foreign corporation when its affiliations with the state are so "continuous and systematic as to render them essentially at home in the forum state." *Id.* at 127. General jurisdiction may alternatively be established over a parent company under an alter ego theory based on general jurisdiction over a subsidiary. *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001). "For example, where a parent corporation uses its subsidiary 'as a marketing conduit' and attempts to shield itself from

*Plaintiff's Opposition to Defendants' Omnibus Motion to Dismiss Complaint*     *Case No. 20-cv-03332 SB(JEMx)*

liability based on its subsidiaries' activities, piercing the corporate veil is appropriate and the alter-ego test is satisfied." *Id*. (emphasis added).

<u>Specific jurisdiction</u> applies only to claims arising out of or resulting from the defendant's forum-related activities and exists where the defendant's "contacts with the forum give rise to the cause of action before the court." *Unocal*, 248 F.3d at 923. Due process permits personal jurisdiction over a defendant who "purposefully directs" his activities at residents of a forum, even in the "absence of physical contacts" with the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774-75 (1984)); *accord Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 899 (9th Cir. 2002) (jurisdiction found over European entity).

**Personal Jurisdiction Not in Dispute.**  As a threshold matter, Defendants' personal jurisdiction argument under Rule 12(b)(2) concerns only one Defendant: Boohoo PLC. Defendants admit that Boohoo USA, PLT USA, and NG USA (the "U.S. Entities") are all headquartered and have their principal place of business in Los Angeles, California, which means the Court has general jurisdiction over these entities. (Catto Decl. ¶¶19-21.) Defendants also admit that Boohoo UK, PLT UK, and NG UK (the "UK Limited Entities") "operate" the websites used to carry out the false marketing and sales schemes alleged by Plaintiffs, which gives the Court specific jurisdiction over these entities. (Catto Decl. ¶18.)

**Personal Jurisdiction Over Boohoo PLC.**  Unlike the plaintiffs in *Daimler*, *Axiom*, and *Yamaha* (Defendants' preeminent authority), Plaintiffs here allege that Boohoo PLC *itself* places *its* brands and products in the U.S. stream of commerce.[3] (BH SAC ¶53; PLT

---

[3] The factual posture in each of *Daimler*, *Axiom*, and *Yamaha* was different from this case. In *Daimler*, the Court rejected "the authority of a court in the United States to entertain a claim brought by *foreign* plaintiffs against a *foreign* defendant based on events occurring entirely *outside* the United States," simply because the foreign defendant had a U.S. subsidiary. 571 U.S. at 120 (emphasis added). In *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, the Ninth Circuit declined to exercise specific jurisdiction because the foreign defendant's contacts with California (the forum state) were viewed as "random, fortuitous, or attenuated," which is not the scenario here. 874 F.3d 1064, 1068 (9th Cir. 2017). Finally, *Williams v. Yamaha Motor Co.* is equally distinguishable because the plaintiffs in that case "[did] not allege any actions that [the foreign parent] 'purposefully directed' at California," to establish specific jurisdiction (as Plaintiffs allege here), and also made no factual allegations to support a finding of alter ego or agency relationship (as Plaintiffs do here). 851 F.3d 1015, 1022-23 (9th Cir. 2017).

FAC ¶53; NG FAC ¶49.) Boohoo PLC admittedly shares executives, lower-level employees, and U.S. headquarters (based in Los Angeles, CA) with its subsidiaries and uses those subsidiaries as conduits for the marketing and sale of its brands and products. *See infra*. This Court may thus exercise specific jurisdiction over Boohoo PLC both directly (from Boohoo PLC's own activities directed at the U.S. from L.A.) and under an agency theory (from Boohoo PLC's substantial control of its subsidiaries' activities).

This District's decision in the factually similar case of *United States v. Toyota Motor Corp.*, 561 F. Supp. 354 (C.D. Cal. 1983) (Hall, J.) —a decision the Ninth Circuit later cited with approval on this very issue in *Unocal*, 248 F.3d at 926—is instructive.[4] In *Toyota*, Toyota Japan had a local California subsidiary to which Toyota Japan shipped cars for sale in the U.S. The advertising and marketing were handled by the U.S. subsidiary, which was the exclusive agent for the Japanese company, and there was overlap between the senior management and board of directors of the parent and subsidiary. *Toyota*, 561 F. Supp. at 356. Toyota Japan derived a substantial benefit from the subsidiary's U.S. sales. *Id*. On the basis of these facts, the court ruled:

> The fact that Toyota Japan's products reach the United States market through a wholly owned subsidiary, rather than directly from the parent corporation is inconsequential for due process purposes. . . . Though mere ownership of a domestic subsidiary may not automatically confer jurisdiction over the parent . . ., there is no obstacle to jurisdiction over the foreign parent if it uses its subsidiary as a marketing conduit.

*Id.* at 359. Similarly, in *Meyers v. ASICS Corp.*, 711 F. Supp. 1001, 1004 (C.D. Cal. 1989) (Hupp, H.), the court exercised jurisdiction over a parent finding that "the wholly owned subsidiary was a mere part of an overall marketing plan, which purposely availed itself of the privilege of doing business in California." *Id*. Based on this caselaw, Boohoo PLC is not automatically entitled to hide behind its subsidiaries. The way it does business matters.

Under the Ninth Circuit's three-part test for specific jurisdiction, Defendants do not dispute that (i) their "Boohoo," "PrettyLittleThing," and "Nasty Gal" products were and are purposely marketed and sold to U.S. consumers, or that (ii) Plaintiffs' false marketing

---

[4] In making their argument, Defendants indiscriminately string cite inapposite cases without sufficient treatment of the specific factual scenario in the instant case. This touch-and-go approach is not appropriate for a personal jurisdictional analysis.

claims arise from that activity, which (iii) renders the exercise of personal jurisdiction in California as reasonable. *Unocal*, 248 F.3d at 924. Rather, Defendants argue that these brands and products are somehow not Boohoo PLC's brands and products and that Boohoo PLC escapes personal jurisdiction because the products were sold by its subsidiaries. Defendants' positions are both factually and legally flawed.

Defendants support their motion with the Catto declaration, which contains false statements when compared to Boohoo PLC's numerous public admissions (under Fed. R. Evid. 801(d)(2)) upon which Plaintiffs base their allegations. For example, Boohoo PLC's LinkedIn page states that *Boohoo PLC* has offices around the world including "Los Angeles," with Boohoo, PLT, and NG listed as "*our* brands." (BH SAC ¶57; PLT FAC ¶57; NG FAC ¶55; Ex. A.) *Boohoo PLC* specifically boasts: "*We* are boohoo, the brand behind the clothes helping you to #DOYOURTHING. *Our* brands, **boohoo**, boohooMAN, **PrettyLittleThing**, [and] **Nasty Gal** … design, source, market and sell clothing, shoes, accessories and beauty products. *We've* been doing our thing since 2006 and *we've gone global* with offices in Manchester, Burnley, London, Leicester, Paris, **Los Angeles**, and Sydney." (BH SAC ¶54; PLT FAC ¶54; NG FAC ¶52, Ex. A (emphases added).)

Boohoo PLC describes itself as "one of the fastest growing *international retailers*," boasting about its U.S. sales through the various brands it controls, including Boohoo, PrettyLittleThing, and NastyGal. (*Id.*) For example, in one communication to investors, *Boohoo PLC* states: "Our vision is to lead the fashion e-commerce market *globally*, in a way that delivers for *our* customers, people, suppliers and stakeholders. *Our brands* operate along the same principles today as when boohoo was founded in 2006: through *a test and repeat model* that brings the latest trends and fashion inspiration in a matter of weeks to *our customers across the world*." (BH SAC ¶55; PLT FAC ¶55; NG FAC ¶53, Ex. B (emphases added).) Similarly, Boohoo Group tells investors: "*Our brands* design, source, market and sell clothing, shoes, accessories and beauty products targeted at 16-40-year-old consumers in the UK *and internationally*." (BH SAC ¶55; PLT FAC ¶55; NG FAC ¶53, Ex. B (emphases added).) In another communication, *Boohoo PLC* states: "we

want to thank *our customers*, *our amazing teams* and *our wonderful suppliers* for their continued support." (BH SAC ¶56; PLT FAC ¶56; NG FAC ¶54; Ex. C (emphases added).) Mr. Catto claims Boohoo PLC has no employees in California (Catto Decl. ¶9), but Boohoo PLC boasts of having "*5000+ colleagues working across the world*," referring to *its employees across its various brands and subsidiaries*, including California (*see* Exs. C, P), as one big collective company would. (*Id*.) Although Mr. Catto also claims Boohoo PLC does not manufacture, design, distribute, or sell products to California (Catto Decl. ¶12), Boohoo PLC itself issued the following public statement: "The boohoo group [i.e., Boohoo PLC] is a leading online fashion *retail group*. *Our brands* include **boohoo**, boohooMAN, **PrettyLittleThing**, **Nasty Gal** and MissPap. *Our brands design*, source, *market and sell* clothing, shoes, accessories and beauty products *to customers in almost every country in the world. These products are distributed globally from two warehouses in the UK*." (BH SAC ¶61; PLT FAC ¶61; NG FAC ¶60; Ex. D (emphases added).) Boohoo PLC thus repeatedly admits that it is a worldwide retailer that directly controls its brands, including Boohoo, PrettyLittleThing, and Nasty Gal, and considers the customers and teams of its various brands its own direct customers and teams.

Boohoo PLC's public filings and statements also make it very clear that it operates in the U.S.—and in particular, from Los Angeles. In 2018, Boohoo PLC stated in its Annual Report: "*We* opened new offices in *Los Angeles* for *our U.S. marketing <u>team</u>* [referring to the U.S. Entities] and in Manchester for expanding the design, product and buying <u>*teams*</u> [referring to the UK Limited Entities]." (NG FAC ¶55; Ex. E.) In a timeline displayed on us.boohoo.com, the website Plaintiff Khan purchased from, Boohoo states: "Boohoo was born (2006)," "We floated on the stock market **and became a *PLC*** (2014)," "We hit 1,000 employees (2016)," "***We* moved to LA (2017)**." (Ex. F (emphases added).)

Based on how Boohoo PLC itself admits that it runs its business, there is no disputing that Boohoo PLC not only has 100% controlling interest and ownership of the US and UK Entities, it actually controls these entities. (*See* BH SAC ¶52; PLT FAC ¶52; NG FAC ¶51; Ex. G; Catto Decl. ¶¶ 17-21.) In their 2019 Annual Reports, each of the UK

Entities admits that its "*controlling party* is boohoo group plc." (BH SAC ¶59; PLT FAC ¶59; NG FAC ¶57; Ex. H.) Meanwhile, Boohoo PLC's 2020 Annual Report confirms that its financial statements consolidate those of its subsidiaries and that "*All intercompany transactions between group companies are eliminated*." (BH SAC ¶59; PLT FAC ¶59; NG FAC ¶58; Ex. G.) Boohoo PLC also boasts that: "*Subsidiaries are entities controlled by the group* [referring to Boohoo PLC]. The group *controls* an entity when the group *is exposed to, or has rights to, variable returns from its involvement with the entity* <u>*and has the ability to affect those returns through its power over the entity*</u>." (*Id*.) The same report lists U.S. and UK Entities as "subsidiaries," meaning that Boohoo Group PLC itself states that it has the power to "control" these entities and "affect [their] returns through its power," with all intercompany transactions between them eliminated, which is the textbook definition of the running the subsidiaries as one big company. (*See id*.)

Indeed, in or about 2017-18, Boohoo PLC directed Boohoo, PLT, and NG to leverage the overarching benefits and shared service functions of the collective Boohoo PLC companies. (BH SAC ¶60; PLT FAC ¶60; NG FAC ¶59.) This included Boohoo PLC directing the U.S. Entities to open the company's U.S. headquarters and marketing hubs in Los Angeles (BH SAC ¶57; PLT FAC ¶57; NG FAC ¶55; Ex. J), directing the U.S. Entities to engage in intercompany property transfers in California without consideration (BH SAC ¶60; PLT FAC ¶60; NG FAC ¶59; Ex. K), (BH FAC ¶64; PLT FAC ¶ 66; Ex. L), and directing the UK Limited Entities to register trademarks for Boohoo PLC's benefit. (BH SAC ¶63; PLT FAC ¶63; NG FAC ¶61; Ex. M.) As aptly summarized by Umar Kamani, PLT USA's CEO, "There's no brick-and-mortar in the plan. *It's more profitable for me, and more beneficial for me, to open a country rather than a store*." (Ex. L.) Meanwhile in the UK, Boohoo PLC and the UK Entities also share the same Manchester office. (BH SAC ¶57-64; PLT FAC ¶57-66; NG FAC ¶52-75; Ex. G.) In sum, all of this objective evidence shows that Boohoo PLC exercises substantial control over its brands and sees them as part of one big company; it treats its subsidiaries as marketing and sales conduits even more significantly than was found to be sufficient in *Toyota*.

But there is more. Boohoo PLC, the U.S. Entities, and the UK Entities, are run and controlled by a common, overlapping group of individuals who hold the same or similar position(s) at each company. (BH SAC ¶62; PLT FAC ¶62; NG FAC ¶¶61, 78; Ex. N.) The commingling of all of the Defendant entities' management and control is reflected by the multiple positions across the entities held by **Mahmud Kamani** ("M. Kamani") (Executive Director and the Co-founder & Group Executive Chairman of Boohoo PLC), **Neil Catto** (Executive Director and CFO of Boohoo PLC and the U.S. and UK Entities), **Carol Kane** (a controlling Director at most of the entities), **Umar Kamani** (M. Kamani's son and CEO of PLT USA, who obtained of a five-year work visa to work out of the Los Angeles headquarters to grow the PLT brand worldwide), and **Keri Devine** ("Secretary" for Boohoo PLC, the U.S. and UK Entities). (BH SAC ¶62; PLT FAC ¶62; NG FAC ¶¶61-64; Exs. L, N.) In fact, Boohoo PLC acknowledged the additional control its management would need to exert over the PLT and Nasty Gal businesses by increasing its executive directors' (M. Kamani, Kane, and Catto) base salaries for the increased workload to "reflect the substantial increase in the scale and complexity of the company" following the acquisitions of PLT and NG, because they control these brands through Boohoo PLC. (PLT FAC ¶62; NG FAC ¶78; Ex. O.) Moreover, Boohoo PLC employs numerous lower level managers and executives in Los Angeles to run U.S. marketing campaigns. (Ex. P.)

Boohoo PLC's admissions thus show that the statements in Catto's declaration: that Boohoo PLC does not "engage in any trading activities" (¶6), or that it does not have "employees" (¶7), or that it "has no offices in California" (¶8), or that it "does not . . . sell products in California" (¶¶12, 13), are misleading and cannot be relied on.

In addition, in contrast to Catto's declaration, it appears that Boohoo PLC has full control to siphon the profits and manipulate the assets of the U.S. and UK Entities, creating a capitalization hazard. For example, Nasty Gal UK admits it is not self-funded: "[t]he company [Nasty Gal] is financed by its parent company [Boohoo PLC] which has indic[a]ted its willingness to continue to funds [*sic*] the company's operations." (NG FAC ¶76; Ex. H.) Similarly, in describing its "Assessment of prospects and viability," NG UK

1  admits that it "is funded by its parent company [Boohoo PLC], which has substantial cash
2  resources and is fully supportive of the company." (NG FAC ¶77; Ex. H.) The Directors
3  of NG UK are not paid by NG UK, but rather, by Boohoo PLC. (NG FAC ¶79; Ex. H.)

4      The numerous admissions and examples above provide ample evidence to refute the
5  misleading statements Mr. Catto's declaration and conclude that Boohoo PLC indeed runs
6  its brands as one big company exercising substantial control over its subsidiaries, using
7  those subsidiaries as conduits for the marketing and sale of its products in the U.S. from
8  its L.A. headquarters. Boohoo PLC's activities in California create specific jurisdiction
9  both directly and by agency relationship. *Unocal*, 248 F.3d at 926 (citing *Toyota*, 561 F.
10  Supp. at 359); *Axiom*, 874 F.3d at 1071, n.5 (agency relationship establishes specific
11  jurisdiction where parent exercises "the right to substantially control its subsidiaries'
12  activities"). Finally, "where a parent corporation uses its subsidiary 'as a marketing
13  conduit' and attempts to shield itself from liability based on its subsidiaries' activities,
14  piercing the corporate veil is appropriate and the alter-ego test is satisfied" for finding not
15  only specific jurisdiction but also general jurisdiction. *Unocal*, 248 F.3d at 926. Hence,
16  the Court may exercise both specific and general jurisdiction over Boohoo PLC.

17      Boohoo PLC's admissions and filings provide sufficient basis to deny Defendant's
18  motion, but if the Court will entertain the argument further, due process compels that
19  jurisdictional discovery be permitted, as Catto's declaration has been amply controverted.[5]

20  ## III.   DEFENDANTS' RULE 12(b)(6) ARGUMENTS MUST BE DENIED

21      ***Legal Standard.***  Dismissal is proper under Rule 12(b)(6) "only under extraordinary
22  circumstances." *United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).
23  The Complaint must be read in the light most favorable to the nonmoving party. *Sprewell
24  v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A court must accept as true
25  all material allegations in the complaint, as well as all reasonable inferences to be drawn
26  from them. *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). The motion should be

27
28  ---
[5] *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977) (jurisdictional discovery "should be granted where pertinent facts bearing on the question of jurisdiction are controverted . . . or where a more satisfactory showing of the facts is necessary."); *Brophy v. Almanzar*, 359 F. Supp. 3d 917, 925 (C.D. Cal. 2018).

9

denied where the plaintiff pleads "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "if there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

### A. Plaintiffs Properly Plead Claims Against the U.S. Entities

Defendants argue under Rule 12(b)(6) that the U.S. Entities should be dismissed from the case because they purportedly have no involvement in the marketing and sale of Boohoo/PLT/NG products within the U.S. Defendants ask the Court to make this *factual finding* as a matter of law on basis of their own counter-factual contention (not found anywhere in the complaints) that any defendant that does not technically "operate" an offending website is not a proper defendant. The argument is both legally and factually meritless, as Plaintiffs' claims encompass conduct much broader than the technical operation of the websites and include conspiratorial and aiding and abetting liability. (*See, e.g.*, BH SAC ¶¶ 1, 8-9; PLT FAC ¶¶ 1, 8-9; NG FAC ¶¶ 1, 8-9).

Plaintiffs' claims implicate Defendants' entire false pricing scheme, which includes the misleading content on the websites, designed to effectuate the false pricing schemes by making reference prices appear to be believable. From the outset, Plaintiffs allege that the U.S. Entities, along with Boohoo PLC and the UK Limited Entities, were *all* collectively and materially involved in the marketing and sale of products to U.S. consumers on their U.S. websites. (*See, e.g.*, BH SAC ¶1, PLT FAC ¶1; NG FAC ¶1.) Plaintiffs further allege that the L.A.-based U.S. Entities exist as U.S. "marketing hubs," and thus exist for no purpose other than to open the U.S. market for the sale of Defendants' products through the offending U.S. websites. (BH SAC ¶ 58; PLT FAC ¶58; NG FAC ¶56.) Even Neil Catto, in his carefully crafted declaration (which cannot be considered for purposes of Rule 12(b)(6) *dismissal*), admits that the U.S. Entities engage in "marketing," obviously for the U.S. market.[6] (Catto Decl. ¶26.) The question then is not *whether* the

---

[6] While Catto's declaration attempts to downplay the role of the US Entities, this is a factual issue that cannot be determined in Defendants' favor at the pleading stage.

10

U.S. Entities were involved in the false marketing schemes, but *to what extent* they were involved. The reasonable inference from Plaintiffs' "marketing hub" allegations is that the U.S. Entities served as the hub from where U.S. marketing strategies for the false pricing scheme were devised and implemented. The law simply does not permit these well pleaded allegations and reasonable inferences to be rejected at this stage.

Furthermore, Defendants ask this Court to take judicial notice of the Terms and Conditions ("T&Cs") (Exs. 1-3 and 8-10), which outside counsel downloaded and attempted to authenticate, in order to argue that the T&Cs disavow the involvement of the U.S. Entities. As a threshold matter, there are three reasons to reject taking judicial notice of the T&Cs. First, Plaintiffs' claims are *not* contract-based. The complaints do not reference or depend on the T&Cs, which means the T&Cs are not an integral part of the claims and thus should not be judicially noticed. *Staton v. BAC Home Loans Servicing, L.P.*, No. 10-01306, 2011 WL 2213800, at *8 (D. Ore. June 3, 2011) (request for judicial notice denied where terms and conditions were not integral to a plaintiff's claims). Second, it is common knowledge that e-commerce companies continually update their T&Cs and Defendants have failed to establish that any of the Plaintiffs saw the particular versions of the T&Cs outside counsel downloaded from the "Wayback Machine" website and attached to their motion. *Shahar v. Hotwire, Inc.*, No. C 12-06027 JSW, 2013 WL 12176843, at *2 (N.D. Cal. Apr. 15, 2013) (request for judicial notice properly denied where the defendants failed to establish that plaintiff would have seen those particular T&Cs at time of purchase). Third, the T&Cs are not properly authenticated because Defendants' outside counsel are not the appropriate custodian of records. *See, e.g., Madeja v. Olympic Packers, LLC*, 310 F.3d 628, 639 (9th Cir. 2002). Judicial notice must be rejected.

Defendants' argument is also factually and legally flawed. A review of the T&Cs shows that Defendants' assertion is factually untrue. Nothing in the T&Cs states that the U.S. Entities do not have involvement in operating the U.S. sites or creating the content used to execute the false marketing scheme. To the contrary, Khan's order summary states that the U.S. site was "*Operated by* boohoo.com USA Inc." (Ex. I (emphasis added).) This

11

belies what Defendants are telling this Court—that the U.S. Entities had nothing to do with the "operation" of the U.S. sites, and they were all operated exclusively by the UK Limited Entities. Regardless of who technically "operated" the sites, there is no denying that the U.S. Entities did participate in the marketing of the products, which implicates them in the lawsuit. Indeed, Defendants' admission that the UK Limited Entities operate the websites combined with Boohoo's admission in the order summary that Boohoo USA operates the U.S. website supports Plaintiffs' contention: that the various Boohoo Defendants work collectively to falsely market and sell products in the U.S.

Defendants' improper evidence is also problematic because it does not match up to the allegations. Four of the six attached T&Cs do not even pertain to the URL alleged in the complaints. The URL in the BH SAC is "us.boohoo.com" (*see, e.g*, ¶1), while the URL in the relevant T&Cs (Def. Ex. 1 and 8) is "www.boohoo.com." Similarly, the URL in the PLT FAC is "www.prettylittlething.us" (*see, e.g*, ¶1), while the URL in the relevant T&Cs (Def. Ex. 2 and 9) is "www.prettylittlething.com."

Finally, even if the T&Cs stated that the U.S. Entities do not "operate" the offending websites (which they do not), it would be improper under the rules of evidence to consider this factual statement (especially at the pleading stage), as the statement would be neither a term nor a condition. It is classic hearsay—an out-of-court statement of fact bearing upon the role of the U.S. Entities in the false marketing scheme Plaintiffs allege. This hearsay is inadmissible at any stage of the proceedings, let alone at this stage where Plaintiffs' allegations must be presumed to be true. At a later stage, the proper evidence that either side would offer on this factual issue would be documents and witnesses reflecting the role and activities of the U.S. Entities bearing upon the claims. To that end, Plaintiffs now have an admission from Mr. Catto that the U.S. Entities indeed played a role in marketing products in the U.S. (Catto Decl. ¶26.) As a matter of law, however, Plaintiffs' allegations control at this stage and the factual dispute cannot be resolved by these proceedings.

## B.    Plaintiffs Have Standing

Defendants' contention that Plaintiffs' claims should be dismissed for lack of

standing[7] is in direct conflict with *Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013). Like this case, *Hinojos* was also a false reference price case against a retailer. The plaintiff alleged he bought items from the defendant that were "advertised as being substantially reduced from their 'original' or 'regular' prices, but that were, in reality, routinely sold by [the defendant] at the advertised 'sale' prices rather than the purported 'original' or 'regular' prices." *Id.* at 1102. He further alleged these prices "did not reflect prevailing retail market prices during the three months immediately preceding the publication of the advertisements in question." *Id.* He thus would not have purchased the items in the absence of the defendant's misrepresentations. *Id.* The Ninth Circuit reversed the district court's dismissal for lack of standing. *Id.* at 1107. Applying *Kwikset v. Superior Court*, 51 Cal. 4th 310 (2011), the Court held that "when a consumer purchases merchandise on the basis of false price information, and when the consumer alleges that he would not have made the purchase but for the misrepresentation, <u>he has standing to sue under the UCL and FAL because he has suffered an economic injury</u>." *Id.* at 1107 (emphasis added).

This case is no different. Each Plaintiff was exposed to reference prices understood to be an original, regular, or former price, accompanied by a sale price reflecting a substantial markdown. The complaints allege the reference prices were fake, in that the items advertised had never been sold at the reference price in at least the previous three months from the purchase. Further, Plaintiffs each allege they and the classes they represent would not have bought the merchandise, or at the least would not have paid as much as they did, had they not been misled by Defendants' deceptive pricing. The holding of *Hinojos*, therefore, ends the analysis. Plaintiffs have standing.

Defendants' next argument—that Plaintiffs do not have standing to pursue claims on behalf of class members who bought different items from them—also fails. Defendants urge the Court to completely miss the point of these lawsuits. The quality of Defendants' clothing is substandard, to be sure. But that is not what these cases are about. Rather, Plaintiffs seek damages for being misled by Defendants' deceptive scheme of false

---

[7] Defendants do not move for dismissal under Rule 12(b)(1) and thus there is no basis to conclude the Court does not have subject-matter jurisdiction. (*See* D.E. 22 at 5-6.)

1    reference prices and phantom markdowns. This deceptive scheme was employed *across*

2    *all of the items* Defendants sell on their websites, not merely those items Plaintiffs bought.

3    Moreover, Plaintiffs were exposed to the same type of false advertising as all other

4    putative class members. That is why district courts in false reference price cases routinely

5    reject the same argument advanced here by Defendants and find standing. *See*, *e.g.*, *John*

6    *v. AM Retail Grp., Inc.*, No. 17CV727-JAH (BGS), 2018 WL 1400718, at *5 (S.D. Cal.

7    Mar. 20, 2018) (plaintiff "has standing to sue on behalf of purchasers of other Wilsons

8    Leather products with in store signage reflecting both a 'Ticket' and 'Sale' price").[8]

9    **C.    Plaintiffs' Claims Have Been Pled with Sufficient Specificity**

10    "Averments of fraud must be accompanied by 'the who, what, when, where, and

11    how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106

12    (9th Cir. 2003). But the Rule only "requires that plaintiffs specifically plead those facts

13    surrounding alleged acts of fraud to which they can reasonably be expected to have

14    access." *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995). As such, "the rule may

15    be relaxed as to matters within the opposing party's knowledge." *Moore v. Kayport*

16    *Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

17    Applying the principles in *Moore* and *Concha*, the Ninth Circuit reversed the district

18    court's dismissal of a false reference pricing case in *Rubenstein v. Neiman Marcus Grp.*

19    *LLC*, 687 Fed. App'x. 564 (9th Cir. 2017). The Court held the plaintiff satisfied Rule 9(b)

20    by alleging that "she purchased products with Compared To price tags in a Last Call store

21    in Camarillo, California (the 'Where'), on July 21, 2014 (the 'When')," and that "Neiman

22    Marcus (the 'Who'), through its use of those Compared To price tags (the 'What'), misled

---

[8] *See also Chase v. Hobby Lobby Stores, Inc.*, No. 17-cv-00881-GPC-BLM, 2017 WL 4358146, at *7 (S.D. Cal. Oct. 2, 2017) ("Plaintiff has standing on behalf of others who purchased Hobby Lobby products who were similarly misled by Hobby Lobby's in-store advertisements."); *Azimpour v. Sears, Roebuck & Co.*, No. 15-CV-2798 JLS (WVG), 2017 WL 1496255, at *5 (S.D. Cal. Apr. 26, 2017) (plaintiff had standing for other products because "[t]his case is not about a pillow–it's about a price tag"; he "is challenging the pricing scheme, not the product"); *Chester v. TJX Cos.*, Inc., No. 5:15-cv-01437-ODW (DTB), 2016 WL 4414768, at *7 (C.D. Cal. Aug. 18, 2016) (suggesting plaintiff had standing on behalf of only other buyers of the handbag "is to make a mockery of the false advertising class action"); discussed below); *Branca v. Nordstrom, Inc.*, No. 14CV2062-MMA (JMA), 2015 WL 10436858, at *5 (S.D. Cal. Oct. 9, 2015) (standing found where challenge was to the "same basic mislabeling practice" regardless of product).

consumers into believing that the Compared To prices were charged by either Neiman Marcus or other merchants in the vicinity for comparable products (the 'How')." *Id.* at 567; *Nunez v. Saks Inc.*, 771 F. App'x. 401, 403 (9th Cir. 2019) (reversing dismissal under Rule 9(b) in false pricing case). Similarly, district courts in numerous false marketing and pricing cases have found the level of detail alleged here to be sufficient under Rule 9(b).[9]

Here, like the cases cited above, Plaintiffs have comfortably satisfied their pleading obligations. They identified the "who" as the entities who engaged in false advertising on http://us.boohoo.com, http://prettylittlething.us, and http://nastygal.com. (BH SAC ¶¶1, 33; PLT FAC ¶¶1, 33; NG FAC ¶¶1, 32.) They described the "what"—namely, Defendants' deceptive scheme of false reference pricing on these sites, including what Plaintiffs were exposed to and relied upon when making the identified purchases. (BH SAC ¶¶15-26; PLT FAC ¶¶15-26; NG FAC ¶¶14-25.) They alleged the "when" by specifying the dates of purchase and the class periods. (BH SAC ¶¶20, 33; PLT FAC ¶¶21, 33; NG FAC ¶¶19, 32.) They also sufficiently describe the "where" by specifying that all purchases were made online at Defendants' U.S. websites. (BH SAC ¶¶1, 20, 33; PLT FAC ¶¶1, 21, 33; NG FAC ¶¶1, 19, 32.). Finally, Plaintiffs sufficiently described the "how" of Defendants' deceptive scheme by describing how Defendants misled customers using fake sales marketing schemes, displaying fake savings and creating a false sense of urgency in the order process. (BH SAC ¶¶15-25; PLT FAC ¶¶15-25; NG FAC ¶¶14-24.)

### D.   Plaintiffs Have Stated a Valid Claim for Fraudulent Concealment

Defendants misstate the law on fraudulent concealment. Plaintiffs need not establish the existence of a fiduciary or other special relationship. Rather, a duty to disclose may arise where: (1) the defendant makes representations but does not disclose facts that materially qualify the facts disclosed, or that render his disclosure likely to mislead; (2) the facts are known or accessible only to defendant, and defendant knows they are not

---

[9] *See, e.g.*, *Calderon v. Kate Spade & Co., LLC*, No. 319CV00674AJBJLB, 2020 WL 1062930, at *4 (S.D. Cal. Mar. 5, 2020); *John*, 2018 WL 1400718, at *7; *Covell v. Nine W. Holdings, Inc.*, No. 3:17-CV-01371-H-JLB, 2018 WL 558976, at *4 (S.D. Cal. Jan. 25, 2018); *Chester*, 2016 WL 4414768, at *12-13; *Knapp v. Art.com, Inc.*, No. 16-CV-00768-WHO, 2016 WL 3268995, at *5 (N.D. Cal. June 15, 2016); *Branca v. Nordstrom, Inc.*, No. 14CV2062-MMA (JMA), 2015 WL 10436858, at *8 (S.D. Cal. Oct. 9, 2015).

1   known to or reasonably discoverable by the plaintiff; or (3) the defendant actively conceals

2   discovery from the plaintiff. *Warner Constr. Corp. v. L.A.*, 2 Cal. 3d 285, 294 (1970); *see*

3   *also* Judicial Council of California Civil Jury Instructions, No. 1901 (2017 ed.). As such,

4   numerous courts in California, have found class claims actionable on behalf of consumer

5   purchasers where one or more of the three instances set forth above can be shown.[10]

6       Here, Plaintiffs have alleged a duty to disclose by pleading facts demonstrating

7   Defendants made representations to Plaintiffs and the class, but did not disclose other

8   facts—the falsity of the reference prices—rendering their disclosure deceptive. (BH SAC

9   ¶¶118-119; PLT FAC ¶¶115-116; NG FAC ¶¶128-129.) They also plead facts showing

10  Defendants intentionally concealed material information—facts which were known only

11  to Defendants that Plaintiff and the class could not have discovered. (BH SAC ¶¶120; PLT

12  FAC ¶117; NG FAC ¶130.) Plaintiffs state a valid claim for fraudulent concealment.

13      **E.    Plaintiffs Have Sufficiently Stated a Claim for Unjust Enrichment.**

14      All three of Defendants' arguments for dismissal of Plaintiffs' unjust enrichment

15  claim are without merit. The first argument, hinging on the sufficiency of other claims,

16  falls flat because Plaintiffs *have* sufficiently alleged fraud (*supra* §§ III.C & D), the CLRA

17  notices *were* proper (*infra* §IV.A), and the UCL and FAL claims are unchallenged.

18      Second, by alleging that Defendants' deceptive marketing scheme caused Plaintiffs

19  to purchase items that they otherwise would not have, or pay more than they otherwise

20  would have, Plaintiffs have easily alleged a valid basis for restitution. (BH SAC ¶¶1, 26;

21  PLT FAC ¶¶1, 26; NG FAC ¶¶1, 25.) The district court in *Evans v. DSW, Inc.*, rejected a

22  similar argument against an unjust enrichment claim in a case involving false "Compare

23  At" price tags. No. CV 16–3791–JGB (SPx), 2017 WL 7058233, at *2, 11 (C.D. Cal. Feb.

24  2, 2017). The court found the defendant's argument was "premature on a motion to dismiss

25  as its resolution turns on a factual dispute going to the merits of the case" and, relying on

---

26  [10] *See, e.g., Rutledge v. Hewlett-Packard Co.*, 238 Cal. App. 4th 1164, 1174-76 (2015);

27  *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 256-57 (2011); *Massachusetts Mut. Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1295 (2002); *Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 874 (N.D. Cal. 2018); *Tait v. BSH Home Appliances Corp.*,

28  289 F.R.D. 466, 482 (C.D. Cal. 2012); *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 531 (C.D. Cal. 2012); *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1147 (N.D. Cal. 2010).

16

*Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 988 (9th Cir. 2015), the plaintiff's allegations were "sufficient to award restitution." *Id.* at *11. Defendants' third argument also fails because Plaintiffs have satisfied Rule 9(b). *Supra* § III.C.

## IV.   DEFENDANTS' RULE 12(f) ARGUMENTS MUST BE DENIED

*Legal Standard.*   "[M]otions to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Smith v. Levine Leichtman* Capital *Partners, Inc.*, 723 F. Supp. 2d 1205, 1212 (N.D. Cal. 2010) (quotation omitted).

### A.   Plaintiffs' CLRA Notices Are Compliant With Civil Code Section 1782

Defendants argue that the Court should "dismiss" the CLRA claims on the basis of allegedly improper CLRA notices. Defendants miss both the substance and procedure of section 1782. Comparing subsections (a) and (d) of section 1782, it is clear that the statute does not require any notice for injunctive relief, but requires 30-day notice only for pleading damages. This is why Plaintiffs initially filed suit for injunctive relief only, and amended their complaints to add prayers for damages *after* complying with the statutory notice requirement. Therefore, Defendants' motion, at best, is a motion to strike the CLRA prayers for damages, not to dismiss the CLRA claims themselves. To this end, the motion is without merit because Plaintiffs' pre-suit notices satisfy section 1782. As noted, this case is not about defective products. It is about Defendants' fake sales and pricing scheme—a deceptive practice that applies across nearly all items sold on the U.S. websites during the class period. This scheme was detailed in the CLRA notices and Defendants were put on notice of the specific wrongdoing alleged in this lawsuit. (*See* Shelton Decl., Exs. 4-6.) The law does not require Plaintiffs to specifically identify all of the transactions at issue in the case or the specific items they bought, as Defendants suggest.

The district court's decision in *Azimpour v. Sears, Roebuck & Co.*, No. 15-CV-2798 JLS (WVG), 2017 WL 1496255 (S.D. Cal. Apr. 26, 2017), squarely rejected Defendants' argument. There, the plaintiff's "CLRA letter assert[ed] specific violations under three subsections of the CLRA, describe[d] Defendant's allegedly unlawful 'sale' pricing

1   scheme that deceive[d] consumers into purchasing items based on the false belief they are
2   receiving a bargain, and demand[ed] that Defendant remedy its unlawful behavior." *Id.* at
3   *11. The court found that "[t]his is sufficient notice under the CLRA." *Id.*

4        If for some reason the Court finds the CLRA notices inadequate, Plaintiffs request
5   leave to cure any perceived deficiencies and to re-serve corrected notices. *See Morgan v.*
6   *AT&T Wireless Services, Inc.*, 177 Cal. App. 4th 1235, 1261 (2009); *Doe 1 v. AOL LLC*,
7   719 F. Supp. 2d 1102, 1110 (N.D. Cal. 2010) (under *Morgan,* "failure to comply with
8   section 1782(a) does not justify dismissing a CLRA claim [for damages] with prejudice.").

9   **B.     The Motion to Strike the Non-California Class Claims Must Be Denied**

10       ***Extraterritorial Application of California Law.*** "[California] statutory remedies
11  may be invoked by out-of-state parties when they are harmed by wrongful conduct
12  occurring in California." *Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214,
13  224–25 (1999). "In determining whether California's consumer protection statutes apply
14  to non-California residents, courts consider where the defendant does business, whether
15  the defendant's principal offices are located in California, where class members are
16  located, and the location from which advertising and other promotional literature decisions
17  were made." *In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1237–38 (N.D. Cal.
18  2012) (quotation omitted). "The Court looks to the nexus between California and the
19  alleged wrongful conduct to determine whether sufficient wrongful conduct occurred in
20  California." *Gerstle v. Am. Honda Motor Co., Inc.*, No. 16-CV-04384-JST, 2017 WL
21  2797810, at *3 (N.D. Cal. June 28, 2017). This is consistent with the UCL's focus "on the
22  defendant's conduct, rather than the plaintiff's damages." *In re Tobacco II Cases*, 46 Cal.
23  4th 298, 312 (2009).

24       The court in *In re Clorox* rejected the same extraterritoriality argument advanced
25  here by Defendants. 894 F. Supp. 2d at 1237-38. Defendant's motion to strike nationwide
26  class claims was denied because plaintiff's allegations—that "Clorox conducts substantial
27  business in California and has its principal place of business and corporate headquarters
28  in the state, decisions regarding the challenged representations were made in California,

Clorox's marketing activities were coordinated at its California headquarters, and a significant number of class members reside in California"—were sufficient to show "that Clorox's conduct originated in or had strong connections to California." *Id.* at 1238.

Numerous other courts have denied similar motions to dismiss or strike non-California class claims on the ground that the defendant's conduct in California justifies the application of California consumer protection statutes to transactions occurring outside of California.[11] Nearly all of these cases rely on the fact that a substantial part of the allegedly false marketing or advertising was connected to California, as is pled here.[12]

Plaintiffs here easily satisfy the *In re Clorox* test. They have sufficiently alleged that Defendants do business in California, have their principal offices in California, class members are located in California, and a substantial part of marketing for Defendants' U.S. websites occurs in California. *In re Clorox*, 894 F. Supp. 2d at 1237–38. The U.S. Entities all have their principal place of business in California. (Catto Decl. ¶¶19-21.) These offices are the U.S. headquarters of not only the U.S. Entities, but also of Boohoo PLC and the UK Limited Entities. (BH SAC ¶¶63, 66; PLT FAC ¶64; NG FAC ¶¶66, 68, 72-75.) Boohoo PLC considers these Los Angeles offices its own. (BH SAC ¶¶13, 54, 57,

---

[11] *See, e.g., Clothsrigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d 605, 613 (1987) (concluding that non-California residents could assert claims under California law when the defendant's principal officers were in California and the alleged fraudulent misrepresentations were prepared in California); *Banh v. Am. Honda Motor Co., Inc.*, No. 2:19-CV-05984-RGK-AS, 2019 WL 8683361, at *3–4 (C.D. Cal. Dec. 17, 2019); *Gerstle*, 2017 WL 2797810, at *4; *Collazo v. Wen by Chaz Dean, Inc.*, No. 215CV01974ODWAGR, 2015 WL 4398559, at *3–5 (C.D. Cal. July 17, 2015); *Junod v. NWP Servs. Corp.*, No. SACV141734JLSJCGX, 2015 WL 12712309, at *2 (C.D. Cal. Apr. 2, 2015); *Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1131-32 (N.D. Cal. 2014) (applying UCL and CLRA to ride-share transaction occurring in Chicago); *Precht v. Kia Motors Am., Inc.*, No. SACV141148DOCMANX, 2014 WL 10988343, at *4–5 (C.D. Cal. Dec. 29, 2014); *TRC & Assocs. v. NuScience Corp.*, No. 2:13–cv–6903–ODW (CWx), 2013 WL 6073004, at *5 (C.D. Cal. Nov. 18, 2013); *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 379 (N.D. Cal. 2010).

[12] *See, e.g., Weshba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 242 (2001) (rejecting argument that UCL "cannot support nationwide class certification" where the defendant was a California corporation and brochures containing alleged misrepresentations "were prepared in and distributed from California."); *Klaehn v. Cali Bamboo, LLC*, No. 19CV1498-LAB (KSC), 2020 WL 3971518, at *3 (S.D. Cal. July 13, 2020); *Banh*, 2019 WL 8683361, at *3–4; *Gerstle*, 2017 WL 2797810, at *4; *Collazo*, 2015 WL 4398559, at *5; *In re iPhone 4S Consumer Litigation*, No. C12–1127 CW, 2013 WL 3829653, at *7 (N.D. Cal. July 23, 2013); *Wang v. OCZ Tech. Group, Inc.*, 276 F.R.D. 618, 630 (N.D. Cal. 2011); *In re Mattel, Inc.*, 588 F. Supp. 2d 1111, 1119 (C.D. Cal. 2008).

19

64; PLT FAC ¶¶54, 57, 64; NG FAC ¶¶52, 55. 66.)

For example, on us.boohoo.com, the company tells its customers that "[w]e moved to LA"—clearly communicating to class members that the company's U.S. headquarters are in Los Angeles. (BH SAC ¶13.) Similarly, on its LinkedIn page, Nasty Gal tells the public: "While we're rooted in California, we live globally online. Our headquarters are based in Downtown LA and Manchester, UK." (NG FAC ¶73); *see also id.* (Nasty Gal "rooted in Los Angeles" with a "head office" in "Downtown LA" and repeating that it has its "Headquarters" in Los Angeles as also shown on interactive map). PLT's CEO, U. Kamani, is expanding PLT's global presence from West Hollywood. (PLT FAC ¶62.)

Indeed, the "principal activity" of the Los Angeles offices of the U.S. Entities, as described by Boohoo PLC and the UK Limited Entities, is "marketing." (BH SAC ¶66; PLT FAC ¶66; NG FAC ¶¶55, 68.) The U.S. Entities therefore act as the marketing hubs of Boohoo PLC and the UK Limited Entities for the sale of products on the U.S. websites in the U.S. (BH SAC ¶¶58, 66; PLT FAC ¶¶58, 64; NG FAC ¶¶55, 68.) They also act as the agents of Boohoo PLC and the UK Limited Entities, including with regards to marketing and sale of products to U.S. consumers. (BH SAC ¶¶45-46; PLT FAC ¶¶45-46; NG FAC ¶¶44-45, 55.) They are closely involved with, and responsible in substantial part for, marketing on the U.S. versions of Boohoo, PLT, and Nasty Gal's websites. (BH SAC ¶65; PLT FAC ¶65; NG FAC ¶¶55, 67.) Indeed, Mr. Catto admits that the U.S. Entities all have employees in California for "marketing." (Catto Decl. ¶26.) Because Defendants have no physical stores in the U.S., these marketing activities in Los Angeles are plainly related to online sales. (BH SAC ¶¶67-68; PLT FAC ¶¶67-68; NG FAC ¶¶69-70.) This is the same marketing Plaintiffs contend is false advertising. *Ibid.*

Nothing in Mr. Catto's self-serving declaration establishes otherwise. It does, however, appear that Mr. Catto and Defendants have not been forthcoming with the Court about their ties to California relating to company operations and marketing. Notably, other

than to claim that Boohoo PLC "does not prepare"[13] the online advertising at issue here, noticeably absent is any statement concerning where marketing decisions are made for the fake-sales marketing campaigns posted daily on the websites for years.

Accordingly, Plaintiffs have alleged more than enough facts to demonstrate that applying California law to the claims of non-California class members is proper.

***Defendants' Choice of Law Arguments Are Premature.*** Defendants next contend the nationwide class allegations should be stricken under *Mazza v. American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012). As an initial matter, Defendants' argument is premature. "Class allegations typically are tested on a motion for class certification, not at the pleading stage." *In re Clorox*, 894 F. Supp. 2d 1224, 1237 (N.D. Cal. 2012). As numerous courts explain, "*Mazza* was decided on a motion for class certification, not a motion to strike." *Id.*; *see also Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 922 (N.D. Cal. May 10, 2012) (whether nationwide class is appropriate "is premature" at the pleading stage).

In addition, the *Mazza* Court limited its holding to "the facts and circumstances of [that] case," which the parties developed through an exhaustive choice of law analysis. *Mazza*, 666 F.3d at 591. Indeed, once the class action demonstrates significant contact or aggregation of contacts with California—which Plaintiffs have done (*supra* §§ II and III.A)—the burden shifts to defendant to establish "that foreign law, rather than California law, should apply to class claims." *Mazza*, 666 F.3d at 590 (quoting *Washington Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 921 (2001)). The defendant arguing that foreign law applies "must satisfy the three-step governmental interest test" under which it is *Defendants'* burden to prove that (1) the law of the foreign state "materially differs from the law of California," meaning that the law differs "with regard to the particular issue in question"; (2) a "true conflict exists," meaning that each state has an interest in the application of its own law to "the circumstances of the particular case"; and (3) the foreign

---

[13] (Catto Decl., ¶15.) This statement is artfully drafted to, in effect, say nothing about decisions concerning marketing. No one is alleging that any of the directors or executives of Boohoo PLC actually "prepared" any advertising by literally creating the content on the company's websites. The statement evades the relevant question of where marketing decisions for the websites are made and approved and hides the fact that Boohoo PLC appears to have marketing managers and/or executives in Los Angeles. (*Supra* p. 8)

state's interest would be "more impaired" than California's interest if California law were applied. *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 561-62 (9th Cir. 2019).

But here, Defendants have made *no attempt* to perform any choice-of-law analysis. Instead, they ask the Court to wipe out a substantial portion of this case at the pleading stage without any facts, evidence, or discovery, and by ignoring the realities of Defendants' contacts with California.

Indeed, this Court should not break ranks with the litany of district courts that have rejected the same arguments posed here by Defendants and should instead decide the present motion consistently with these courts.[14] A decision on whether Plaintiffs should be permitted to pursue a nationwide class is thus premature. Further, Defendants have failed to meet their burden of explaining why California law should not apply to the entire class, or establishing material differences in the various states' laws at issue in this litigation.

Defendants rely on scant, outlier, authority to support their position. Their lead case, *Banks v. Nissan N. Am., Inc.*, consists of a three-sentence analysis which contains virtually no explanation for the court's reasoning or why its order skipped the analysis outlined above. No. C 11-2022 PJH, 2012 WL 8969415, at *1 (N.D. Cal. Mar. 20, 2012). *Littlehale v. Hain Celestial Grp., Inc.*, decided by the same court, suggests that a robust choice-of-law analysis, missing here from Defendants' motion, *had* been presented to the court. No. C 11-6342 PJH, 2012 WL 5458400, at *1 (N.D. Cal. July 2, 2012). The court's decision to resolve this question at the pleading stage was an outlier. The court in *Brazil v. Dole Food Co., Inc.*, acknowledged as much with regards to both cases, finding "that striking the nationwide class allegations at this stage of this case would be premature." No. 12-

---

[14] *See, e.g.*, *In re Clorox*, 894 F. Supp. 2d at 1237; *Klaehn*, 2020 WL 3971518, at *4; *Banh*, 2019 WL 8683361, at *4; *Joseph v. J.M. Smucker Co.*, No. CV 17-8735 FMO (KSX), 2019 WL 1219708, at *4 (C.D. Cal. Mar. 13, 2019); *Arabian v. Organic Candy Factory*, No. 2:17-cv-05410-ODW-PLA, 2018 WL 1406608, at *6 (C.D. Cal. Mar. 19, 2018); *Grivas v. Metagenics, Inc.*, No. SACV 15-01838-CJC (DFMx), 2018 WL 6185978, at *8 (C.D. Cal. Mar. 19, 2018); *Valencia v. Volkswagen Grp. of Am. Inc.*, No. 15–cv–00887–HSG, 2015 WL 4760707, at *1 (N.D. Cal. Aug. 11, 2015); *Dean v. Colgate-Palmolive Co.*, No. EDCV 15-0107 JGB, 2015 WL 3999313, at *11 (C.D. Cal. June 17, 2015); *Precht*, 2014 WL 10988343, at *5–6; *Allen v. Hyland's Inc.*, 300 F.R.D. 643, 658 (C.D. Cal. 2014); *Gianino v. Alacer Corp.*, 846 F. Supp. 2d 1096, 1100–01 (C.D. Cal. 2012); *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1159 (C.D. Cal. 2012); *Bruno v. Quten Research Institute, LLC*, 280 F.R.D. 524, 547 (C.D. Cal. 2011).

CV-01831-LHK, 2013 WL 5312418, at *11 (N.D. Cal. Sept. 23, 2013).

*Davison v. Kia Motors Am., Inc.*, is also distinguishable from this case because the court there conducted a detailed choice of law analysis. No. SACV 15-00239-CJC (RNBx), 2015 WL 3970502, at *2-3 (C.D. Cal. June 29, 2015). In addition, *Cover v. Windsor Surry Co.*, is distinguishable because the court found "this is not a case in which further development of the factual record is reasonably likely to materially impact the choice of law determination." No. 14-CV-05262-WHO, 2016 WL 520991, at *5 (N.D. Cal. Feb. 10, 2016). The court thus conducted a choice-of-law analysis based on the facts available at the pleading stage. Here, on the other hand, as shown above, even without the benefit of discovery, the facts already demonstrate a nexus between Defendants' U.S. websites and their U.S. marketing strategies deployed from L.A. Further discovery would flesh out that clear connection. Any choice-of-law analysis, therefore, would be premature.

**Bristol-Meyers Does Not Preclude Personal Jurisdiction.** The Court should also reject the argument that the non-California class allegations against Boohoo PLC must be stricken under *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773 (2017).

As a preliminary matter, this argument is factually dubious. Although Boohoo PLC is a Jersey company and is headquartered in the UK, its *U.S.* headquarters are in California. (*See, e.g.*, Exs. A, E, F.) At a minimum, Boohoo PLC's admissions raise a triable issue regarding its activities in the U.S. and its alter ego and/or agency relationship with the U.S. Entities. *Supra* § II. Hence, for purposes of the U.S. websites, Plaintiffs have sufficiently pled and will demonstrate that Boohoo PLC is "at home" in California.

Moreover, Defendants' interpretation of *Bristol-Myers*, particularly as it would be applied to the facts of this case, is incorrect. In *Bristol-Myers*, the Supreme Court held that, in a mass tort action, a California court could not exercise specific jurisdiction over a non-California corporation with respect to claims by non-residents based on conduct and injuries that occurred outside of California. 137 S. Ct. at 1781-82. But the Court left open the question of how the decision would apply to federal courts or class actions. *See id.* at 1784; *id.* at 1789 n.4 (noting decision does not address whether it "would also apply to a

1  class action in which a plaintiff injured in the forum State seeks to represent a nationwide

2  class of plaintiffs, not all of whom were injured there.") (Sotomayor, J., dissenting).

3  This case is factually distinguishable. In a mass tort action such as the one in *Bristol-*

4  *Myers*, each plaintiff is individually named in the complaint and is thus a real party in

5  interest to the claims asserted therein. However, in class actions like those presently before

6  the Court, only the plaintiffs selected to represent the class are named in the complaint.

7  For this reason, *Bristol-Myers* does not apply to this case.

8  Defendants' interpretation of *Bristol-Myers* is also flawed because it would in effect

9  limit personal jurisdiction in many nationwide class actions to a defendant's home state

10  and could lead to duplicative nationwide class actions if the defendants hailed from

11  different states. Worse yet, where, as here, the Court is presented with foreign companies

12  *outside* the U.S., applying Defendants' interpretation of *Bristol-Myers* would mean those

13  defendants would not be subject to a nationwide class in *any* state. This absurd, unjust,

14  and inefficient result cannot be what the Supreme Court intended.

15  For these reasons, district courts in California, applying reasoning similar to that

16  articulated above, have found that *Bristol-Myers* should *not* be applied to class actions.[15]

17  More importantly, even aside from these district court opinions, Defendants'

18  argument should also be rejected because the only circuit courts that have decided whether

19  *Bristol-Myers* applies to class actions have held that it does *not* apply—and certainly not

20  at the pleading stage. *See Mussat v. IQVIA, Inc.*, 953 F.3d 441, 447-48 (7th Cir. 2020)

21
22  [15] *See, e.g., Sotomayor v. Bank of Am., N.A.*, 377 F. Supp. 3d 1034, 1038 (C.D. Cal. 2019);
*Prescott v. Bayer HealthCare LLC*, No. 5:20-CV-00102 NC, 2020 WL 3505717, at *3
23  (N.D. Cal. June 29, 2020); *King v. Bumble Trading, Inc.*, No. 18-cv-06868-NC, 2020 WL
663741, at *4–5 (N.D. Cal. Feb. 11, 2020); *Cabrera v. Bayer Healthcare, LLC*, No.
24  LACV1708525JAKJPRX, 2019 WL 1146828, at *8 (C.D. Cal. Mar. 6, 2019) ("The
decisions concluding that *Bristol-Myers* does not apply in the class action context are more
25  persuasive."); *Thompson v. Transamerica Life Ins. Co.*, No. 218CV05422CASGJSX,
2018 WL 6790561, at *6 (C.D. Cal. Dec. 26, 2018); *Gasser v. Kiss My Face, LLC*, No.
26  17-cv-01675-JSC, 2018 WL 4538729, at *2 (N.D. Cal. Sept. 21, 2018); *Fabricant v. Fast
Advance Funding, LLC*, No. 217CV05753ABJCX, 2018 WL 6920667, at *5 (C.D. Cal.
27  Apr. 26, 2018); *In re Morning Song Bird Food Litig.*, No. 12cv01592 JAH-AGS, 2018
WL 1382746, at *5 (S.D. Cal. Mar. 19, 2018); *Ochoa v. Church & Dwight Co.*, No.
28  517CV02019ODWSP, 2018 WL 4998293, at *9 (C.D. Cal. Jan. 30, 2018); *Feller v.
Transamerica Life Ins. Co.*, No. 2:16-CV-01378-CAS-AJW, 2017 WL 6496803, at *17
(C.D. Cal. Dec. 11, 2017); *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, No. 17-cv-
00564-NC, 2017 WL 4224723, at *4 (N.D. Cal. Sept. 22, 2017).

24

(declining to apply *Bristol-Myers* to dismiss nationwide class action); *Molock v. Whole Foods Mkt. Grp., Inc.*, 952 F.3d 293, 298 (D.C. Cir. 2020) (declining to apply *Bristol-Myers* to dismiss nonresident class members from nationwide class action and concluding motion to dismiss nonresident putative class members "is premature"). District courts in California have already begun to take heed of *Mussat* and *Molock*. *See Gadomski v. Equifax Info. Servs., LLC*, No. 2:17-CV-00670-TLN-AC, 2020 WL 3841041, at *7 (E.D. Cal. July 8, 2020) (declining to strike nationwide class allegations relating to unnamed non-California class members "at this early stage" in light of *Mussat* and *Molock*).

The district court decisions Defendants cite are of limited persuasive value because they predate *Mussat* and *Molock* and the courts therefore did not have the benefit of *Mussat* and *Molock* when rendering their decisions. *See Carpenter v. PetSmart, Inc.*, 441 F. Supp. 3d 1028, 1034 (S.D. Cal. 2020) (reasoning that at time of decision, "no circuit court has decided the issue."); *Pilgrim v. Gen. Motors Co.*, 408 F. Supp. 3d 1160, 1168 (C.D. Cal. 2019) (predating *Mussat* and *Molock*). In addition, neither *Carpenter* nor *Pilgrim* involved a case like this one—where (i) three of the defendants indisputably have their principal place of business in California and (ii) where the facts demonstrate they are the agents and/or alter egos of the remaining defendants, (iii) each of whom are foreign companies who do not claim any other state in the U.S. as their "home," and (iv) where the parent openly brags to the public that it has its U.S. base in L.A.

## V.    CONCLUSION

Plaintiffs respectfully request that Defendants' motion be denied. If, however, the Court is inclined to grant the motion in any respect, Plaintiffs request an opportunity to amend to add facts to cure any perceived defect. (Almadani Decl. ¶19.); Fed. R. Civ. P. 15(a); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) (leave to amend should be freely granted).

1

Dated: October 2, 2020                     Respectfully submitted,

2                                          ALMADANI LAW

3                                          */s/ Yasin M. Almadani*
4                                          Yasin M. Almadani, Esq.

5

6                                          AI LAW, PLC

7                                          */s/ Ahmed Ibrahim*
                                           Ahmed Ibrahim, Esq.

8                                          *Attorneys for Plaintiff Individually and*
9                                          *On Behalf of All Others Similarly Situated*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28