## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 20-3332-GW-JEMx | Date | November 16, 2020 |
|---|---|---|---|
| Title | *Farih Khan v. Boohoo.com USA, Inc., et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | Terri A. Hourigan | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Yasin M. Almadani | Amy Albanese |
| Ahmed I. Ibrahim | Ian S. Shelton |
| | Ronald W. Zdorjeski |

**PROCEEDINGS:** TELEPHONIC HEARING ON MOTION TO DISMISS AND STRIKE ALLEGATIONS IN THE SECOND AMENDED COMPLAINT BY DEFENDANTS BOOHOO.COM USA INC. AND BOOHOO GROUP PLC [22; 24]

The Court's Tentative Ruling is circulated and attached hereto. Court hears oral argument. Based on the Tentative, and for reasons discussed on the record, the Motion is DENIED. However, the parties are permitted to conduct further discovery on the issue of personal jurisdiction.

The Court sets a status conference for November 30, 2020 at 8:30 a.m. The parties are to file a joint status report by noon on November 25, 2020.

|  | : | 07 |
|---|---|---|
| | Initials of Preparer | JG |

<u>Khan v. Boohoo.com USA Inc., et al.</u>, Case No. 2:20-cv-03332-GW- (JEMx)
<u>Hilton v. Prettylittlething.com USA Inc., et al.</u>, Case No. 2:20-cv-04658-GW-(JEMx)
<u>Lee v. Nastygal.com USA Inc., et al.</u>, Case No. 2:20-cv-04659-GW (JEMx)
Tentative Rulings on Motion to Dismiss and Strike Allegations in the First/Second Amended Complaint

**I.     Background**

Duplicative motion, opposition, and reply papers have been filed in the three above-captioned lawsuits (referenced herein as "*Khan*," "*Hilton*" and "*Lee*"), which involve overlapping defendants and the same alleged situation: websites "advertising fake and inflated comparison reference prices to deceive customers into a false belief that the sale price is a deeply discounted bargain price."[1]  *See, e.g.*, Khan SAC, ¶ 1.  By way of their motions, the Defendants[2] seek to dismiss and/or strike various aspects of the pleadings, and/or to dismiss particular defendants, either on jurisdictional grounds or on the merits.

**II.    Analysis**

  **A. Legal Standards**

    1. Federal Rule of Civil Procedure 12(b)(2)

In filing a complaint, a plaintiff bears the burden of establishing the court's personal jurisdiction over a defendant.  *See Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001), *overruled on other grounds*, *Daimler AG v. Bauman*, 571 U.S. 117, 135-36 (2014).  Defendants may move to dismiss a case for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).  When a district court acts on such a motion without holding an evidentiary hearing, the plaintiff "need make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss."  *See id.* (citing *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995)); *see*

---

[1] The operative pleading in *Khan* is the Second Amended Class Action Complaint ("SAC").  *See Khan*, Docket No. 14.  The operative pleadings in *Hilton* and *Lee* are the First Amended Class Action Complaints ("FACs").  *See Hilton*, Docket No. 15; *Lee*, Docket No. 15.  Because the parties have presented the situation to the Court as if the issues are the same in all three actions, the Court will refer only to allegations in the *Khan* SAC (unless there is a specific necessity in the analysis to refer to the allegations in the actions separately).  Each operative pleading contains six claims for relief:  1) violation of California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*) ("UCL"); 2) violation of California's False Advertising Law (Cal. Bus. & Prof. Code § 17500, *et seq.*) ("FAL"); 3) violation of California's Consumer Legal Remedies Act (Cal. Civ. Code § 1750, *et seq.*) ("CLRA"); 4) fraud (intentional misrepresentations); 5) fraudulent concealment; and 6) restitution for unjust enrichment.

[2] The defendants in *Khan* are Boohoo.com USA Inc., Boohoo.com UK Limited, and Boohoo Group PLC ("Boohoo Parent").  The defendants in *Hilton* are Prettylittlethings.com USA Inc., Prettlylittlething.com Limited, and Boohoo Parent.  The defendants in *Lee* are Nastygal.com USA Inc., Nasty Gal Limited, and Boohoo Parent.  All defendants in the three actions are collectively referred to herein as "the Defendants."

*also Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1130 (9th Cir. 2002). Where not directly controverted, the plaintiff's allegations are taken as true, and any conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor. *See Doe*, 248 F.3d at 922. Thus, the court "may not assume the truth of allegations in a pleading which are contradicted by affidavit, but [it] resolve[s] factual disputes in the plaintiff's favor." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).

Where there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits. *See id.* California permits "[a] court of [the] state [to] exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." Cal. Civ. Proc. Code § 410.10. Under California's approach to this issue,

> [d]ue process permits the exercise of personal jurisdiction over a nonresident defendant in the following four situations: (1) where the defendant is domiciled in the forum state when the lawsuit is commenced; (2) where the defendant is personally served with process while physically present in the forum state; (3) where the defendant consents to jurisdiction; or (4) where the defendant has sufficient 'minimum contacts' with the forum state, such that the exercise of jurisdiction would not 'offend traditional notions of fair play and substantial justice.

*Fitzgerald v. Wilson*, 39 Cal.App.4th 1419, 1425-26 (1995) (citing Supreme Court cases). "With respect to the fourth situation, courts may exercise either: (1) general jurisdiction, which arises out of a defendant's 'continuous and systematic' contacts with the forum; or (2) specific jurisdiction, which arises where a defendant's specific contacts with the forum have given rise to the claim at issue." *Dole Food Co., Inc. v. Gutierrez*, No. CV039416 NM (PJWX), 2004 WL 3737123, *3 (C.D. Cal July 13, 2004) (citing *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984)).

Where general jurisdiction does not exist, the Ninth Circuit has established a three-factor test to determine whether the exercise of specific jurisdiction is appropriate:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (quoting *Lake v.*

*Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)); *see also Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008). The plaintiff bears the burden on the first two prongs of the specific jurisdiction test, *see Sher v. Johnson,* 911 F.2d 1357, 1361 (9th Cir. 1990), but the burden then shifts to the defendant to make a "compelling case" that the exercise of jurisdiction would not be reasonable. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476-78 (1985).

To be clear, "[i]n order for a state court to exercise specific jurisdiction, 'the *suit*' must 'aris[e] out of or relat[e] to the defendant's contacts with the *forum*.'" *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cty.*, 137 S.Ct. 1773, 1780 (2017) (quoting *Daimler*, 571 U.S. at 127). "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "For this reason, 'specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Id.* (quoting *Goodyear*, 564 U.S. at 919). "The exact form of [a court's] jurisdictional inquiry depends on the nature of the claim at issue." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015).

    2. <u>Federal Rule of Civil Procedure 12(b)(6)</u>

Under Rule 12(b)(6), a court must (1) construe a complaint in the light most favorable to the plaintiffs, and (2) accept all well-pleaded factual allegations as true, as well as all reasonable inferences to be drawn from them. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001); *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). The Court need not accept as true "legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

Dismissal pursuant to Rule 12(b)(6) is proper only where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561-63 (2007) (dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief). However, a plaintiff must also "plead 'enough facts to state a claim to relief that is plausible on its face.'" *Johnson*, 534 F.3d at 1122 (quoting

3

*Twombly*, 550 U.S. at 570); *see also William O. Gilley Enters., Inc. v. Atlantic Richfield Co.*, 588 F.3d 659, 667 (9th Cir. 2009) (confirming that *Twombly* pleading requirements "apply in all civil cases"). A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In its consideration of the motion, the Court is generally limited to the allegations on the face of the complaint (including documents attached thereto), matters which are properly judicially noticeable and "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001); *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994), *overruling on other grounds recognized in Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). However, "[a] court may [also] consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

### 3. Federal Rule of Civil Procedure 12(f)

A motion to strike is typically governed by Rule 12(f) of the Federal Rules of Civil Procedure. "A court can only strike a statement in a pleading under Rule 12(f) if the statement is '(1) an insufficient defense; (2) redundant; (3) immaterial; (4) impertinent; or (5) scandalous.'" *In re Mortgages Ltd.*, 771 F.3d 623, 630 (9th Cir. 2014) (quoting *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973-74 (9th Cir. 2010)). In *Whittlestone*, the Ninth Circuit read the terms "immaterial" matter as "that which has no essential or important relationship to the claim for relief or the defenses being plead" and "impertinent" matter as "consist[ing] of statements that do not pertain, and are not necessary, to the issues in question." 618 F.3d at 974 (quoting *Fantasy, Inc.*, 984 F.2d at 1527). Under *Whittlestone*, where material "relates directly to the plaintiff's underlying claim for relief" it cannot be considered "immaterial." *Id.* Because of its similar application, the Court believes that the same general rule should apply to a determination of whether matter is "impertinent." Where there is "any doubt as to whether the allegations might be an issue in the action, courts will deny" a Rule 12(f) motion. *In re 2TheMart.com, Inc. Secs. Litig.*, 114 F.Supp.2d 955, 965 (C.D. Cal. 2000).

### B. The Arguments

1. <u>Nationwide Classes Under California Law</u>

The Defendants argue that the Plaintiffs[3] should not be able to proceed with nationwide classes in this case, either under multiple states' laws or under California law. As they note, the named plaintiffs in the three cases are all residents of California. *See Khan* SAC ¶¶ 2, 20, 23; *Hilton* FAC ¶¶ 2, 21, 23; *Lee* FAC ¶ 2.

To be clear, the Plaintiffs have made no effort to argue that any law other than California law governs their claims. The Court is therefore not confronted – or at least not yet – with a situation presenting any choice/conflict-of-law comparison under *Mazza v. American Honda Motor Co., Inc.*, 666 F.3d 981 (9th Cir. 2012). The only question presently before the Court is whether the Court should strike any nationwide class allegations or whether California law could conceivably be applied to nationwide classes in these cases.

The Defendants do not dispute that one defendant in each of the three cases – Boohoo.com USA Inc., Prettylittlething.com USA Inc., and Nastygal.com USA Inc. (the "US Defendants") – has its principal place of business in Los Angeles. *See, e.g.*, *Khan*, Docket No. 30, at 6:10-12. Because at least certain of the alleged wrongful conduct for each of the transactions occurred in California (or at least the Defendants have not yet satisfactorily demonstrated to the contrary, as discussed further *infra*), *see, e.g.*, *Khan* SAC ¶¶ 13, 45-47, 50, 53, 58, 63-68, the Plaintiffs believe that application of California law in connection with a nationwide class is appropriate. They rely largely on *In re Clorox Consumer Litigation*, 894 F.Supp.2d 1224 (N.D. Cal. 2012), and, for the proposition that "[California] statutory remedies may be invoked by out-of-state parties when they are harmed by wrongful conduct occurring in California," upon *Norwest Mortgage, Inc. v. Superior Court*, 72 Cal.App.4th 214, 224-25 (1999).

Apart from unnecessary – because, again, at this point in time no one asserts any law other than California's applies in these cases – citations to, or discussions regarding, *Mazza*, and arguments that the Plaintiffs cannot have standing to assert claims on behalf of non-California residents under states' laws other than California's, the Defendants largely respond to the Plaintiffs' reliance on *In re Clorox* by pointing to this Court's decisions in *Route v. Mead Johnson Nutrition Co.*, No. CV 12-7350-GW (JEMx), 2013 WL 658251, at *7 (C.D. Cal. Feb. 21, 2013), and *Schepler v. American Honda Motor Co.*, No. CV 18-6043-GW (AFMx), 2019 WL 398000, at

---

[3] The term is used to collectively refer herein to Farid Khan, Haya Hilton and Olivia Lee.

5

\*7-8 (C.D. Cal. Jan. 29, 2019).

The only question the Court confronted in *Schepler* was whether a particular plaintiff – an Illinois resident who purchased the car in question in Illinois[4] – could, under applicable choice-of-law principles, bring claims under California consumer statutes. *See Schepler*, 2019 WL 398000, at \*5 ("Here, Defendant has confined the above choice of law argument/challenge to the specific named Plaintiff's ability to bring California consumer protection claims against Honda. Though Plaintiff also attempts to bring those California claims on behalf of a nationwide class, Defendant does not at this point move to strike any potential plaintiff from ever bringing such claims on behalf of a nationwide class."). In *Route*, this Court noted that the defendant had "persuasively argue[d] that 'the State of California has no connection to this case at all, other than its interest in product sales to California residents.'" 2013 WL 658251, at \*9. As a result, the issue addressed in *In re Clorox* does not appear to have been before this Court in either *Schepler* or *Route*. Here, we have California residents attempting to bring claims under California law on behalf of nationwide classes.

At this point in time, the issue/argument is not that other states' laws should apply, but whether or not the Plaintiffs even have a basis for asserting claims, under California law, on behalf of nationwide classes. Under the approach adopted in *In re Clorox*, the Plaintiffs have alleged sufficient California connections to each consumer's claim to allow for the potential application of California law to nationwide classes. *See* 894 F.Supp.2d at 1238 ("Here, Plaintiffs have alleged that Clorox conducts substantial business in California and has its principal place of business and corporate headquarters in the state, decisions regarding the challenged representations were made in California, Clorox's marketing activities were coordinated at its California headquarters, and a significant number of class members reside in California."). Once the certification/*Mazza* issue is before the Court – because someone has argued that another state's (or states') laws should apply, not that a California law-based nationwide class simply cannot be brought – the Plaintiffs may very well have a very difficult time proceeding on a nationwide basis. But that is a question for another day/stage.

The Court declines to strike the nationwide class allegations at this time.

---

[4] For what it is worth at this point, *Mazza* likewise involved out-of-state-purchaser putative class representative plaintiffs (Florida and Maryland, in that case) attempting to bring a nationwide class action based on California law. *See Mazza*, 666 F.3d at 587.

6

2. "The Wrong Parties"

The Defendants also argue that all claims against Boohoo Parent and the US Defendants must be dismissed because they assert that the Terms & Conditions ("the T&Cs") for the implicated websites reveal that it is Boohoo.com UK Limited, Prettylittlething.com Limited and Nasty Gal Limited that "operate" the websites, and that Boohoo Parent and the US Defendants are not parties to the sales contracts that result from purchases via the websites. The Court cannot credit this argument at this stage.

First, the Court cannot consider the T&Cs in the context of a Rule 12(b)(6) motion. References, within the operative pleadings, to the websites and to certain statements thereon does not bring into proper consideration, on such a motion, anything that appears (or appeared) anywhere on those websites. At the very least, the Defendants do not appear to have directed the Court to any authority supporting such a conclusion.

Second, even if the Court were permitted to consider the T&Cs and reached the same conclusions about them that the Defendants do, the Defendants have not demonstrated that only the "operators" of the websites in question can be subject to liability here, under the claims asserted. They have presented no case law and, in particular, no case law tied to any particular claim or its elements, indicating that only "operators" are liable.

3. Personal Jurisdiction Over Boohoo Parent

The Defendants argue that the Plaintiffs cannot establish personal jurisdiction over Boohoo Parent. Summed-up, the Plaintiffs' attempts to demonstrate otherwise rely upon the "marketing conduit" theory reflected by the Ninth Circuit's decision in *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001), and/or upon an "agency" theory due to Boohoo Parent's asserted "substantial control" over its subsidiaries' activities.

In attempting to create a factual dispute that the Court must resolve in their favor, the Plaintiffs rely upon consumer-facing statements – which the Plaintiffs characterize as "public admissions" – about integrated operations for the Defendants that contrast with various assertions made on behalf of the Defendants in a declaration signed under penalty of perjury by Neil Catto, one of Boohoo Parent's directors. *See, e.g.*, *Khan*, Docket No. 27, at 5:6-9:8; *see also* Khan, Docket No. 22-1. Attempting to unpack those conflicts at this point is unnecessary, because at the very least it would appear the Plaintiffs have produced enough reason for the Court to conclude that they are entitled to an opportunity to take jurisdictional discovery to solidify a basis for a

7

proper assertion of personal jurisdiction over Boohoo Parent.  *See Boschetto*, 539 F.3d at 1020 ("Discovery may be appropriately granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.") (omitting internal quotation marks) (quoting *Data Disc*, 557 F.2d at 1285 n.1); *see also Laub v. United States Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) ("Although a refusal to grant discovery to establish jurisdiction is not an abuse of discretion when 'it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction,' discovery should be granted when, as here, the jurisdictional facts are contested or more facts are needed.") (quoting *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n. 24 (9th Cir.1977)). The only way the Defendants could avoid this Court reaching that conclusion here would be a persuasive argument that the "marketing conduit" and "agency" theories for personal jurisdiction are no longer viable.

The Defendants attempt to do just that by way of citation to the Supreme Court's 2014 decision in *Daimler*, and the subsequent Ninth Circuit decisions in *Ranza v. Nike, Inc.*, 793 F.3d 1059 (9th Cir. 2015) and *Williams v. Yamaha Motor Co.*, 851 F.3d 1015 (9th Cir. 2017).  In this Court's view, they read too much into those decisions.  Indeed, in *Williams* the Ninth Circuit commented that the Supreme Court, in *Daimler*, had assumed that the California subsidiary's "in-state contacts *could* be attributed to" the foreign corporate parent.  *Williams*, 851 F.3d at 1021 (emphasis added).  If an agency theory no longer was a viable path to establishing personal jurisdiction, a court would not make such an assumption.

However, *Williams* also noted that, in *Ranza*, the Ninth Circuit had concluded that *Daimler* had "invalidated" the Ninth Circuit's previous "agency" test, as it had been formulated.  *Id.*; *see also Ranza*, 793 F.3d at 1071 (indicating that *Daimler* had invalidated agency test that asked whether "the subsidiary 'perform[ed] services that [were] sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services'").  Yet, *Williams* acknowledged that *some* standard of agency continues to be relevant, post-*Daimler*, at least with respect to specific jurisdiction.  *See* 851 F.3d at 1024-25.  At a minimum, this requires the corporate parent's "right to substantially control its subsidiary's activities."  *Id.*  The Plaintiffs have presented a basis for being given the opportunity to conduct discovery in support of this theory.  As a result, the Court will not yet grant or deny the Defendants request to dismiss Boohoo Parent along jurisdictional

8

lines, but will allow for some measure of jurisdictional discovery to take place before revisiting the issue at a future date to be determined in discussion with the parties.

### 4. Nationwide Class Claims Against Boohoo Parent

Even if the Court does not agree that the nationwide class claims should be precluded in these cases, full-stop, the Defendants also argue, under *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S.Ct. 1773 (2017), that no non-California customers should be allowed to proceed against Boohoo Parent in this forum. As the Plaintiffs note, however, *Bristol-Myers* was not a class action. *See id.* at 1783-84; *id.* at 1789 n.4 (Sotomayor, J., dissenting). In addition, because Boohoo Parent is a *foreign* corporation with – if the Defendants are to be believed – no principal place of business within the United States, if the Defendants are ultimately correct that the Court does not have sufficient personal jurisdiction over it by way of its agent(s)' or alter ego(s)' contacts with California, it would – very likely, at least – not be subject to general personal jurisdiction in any forum in this country, meaning that *Bristol-Myers* would protect it from having to defend against any class action concerning its alleged nationwide misconduct. *Id.* at 1789 ("What about a nationwide mass action brought against a defendant not headquartered or incorporated in the United States? Such a defendant is not 'at home' in any State.") (Sotomayor, J., dissenting).

Given these two observations/concerns, this Court is not inclined to apply *Bristol-Myers* to the instant situation absent controlling precedent requiring as much.

### 5. Stating a Claim

The Defendants also argue that, for various reasons, the Plaintiffs have failed to state viable claims.

#### a) Lack of Standing

The Defendants first assert that the Plaintiffs have no standing to pursue claims for products they did not purchase and for advertising they did not see. Even as to the products the Plaintiffs did purchase, the Defendants assert that a standing deficiency exists there as well because the Plaintiffs did not plausibly allege that they suffered any damages (did not pay more than the value received) and, under the UCL and FAL in particular, did not lose money or property.

In response to that second point first, the Plaintiffs rely upon *Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013), and that decision's acknowledgment that standing is satisfied where the consumer alleges that he or she would not have made the purchase but for the misrepresentation. In that case, the Ninth Circuit ruled that a plaintiff had standing where he bought merchandise

9

from a department store "that he would not have purchased had he not been misled by advertisements stating that the merchandise was marked down from a fictitious 'original' or 'regular' price" because the California Supreme Court had already ruled that "a consumer has 'lost money or property' so long as false advertisements induced him to buy a product he would not have purchased or to spend more than he otherwise would have spent." *Id.* at 1101-02; *see also id.* at 1104-05 ("He alleges that the advertised discounts conveyed false information about the goods he purchased, i.e., that the goods he purchased sold at a substantially higher price at Kohl's in the recent past and/or in the prevailing market.  He also alleges that he would not have purchased the goods in question absent this misrepresentation.  This is sufficient . . . ."); *id.* at 1108 ("[A]ny plaintiff who has standing under the UCL's and FAL's 'lost money or property' requirement will, *a fortiori*, have suffered 'any damage' for purposes of establishing CLRA standing."). In their Reply briefs, the Defendants offer no response to the Plaintiffs' reliance on *Hinojos*. The Plaintiffs have plainly pled enough to establish standing under *Hinojos*. *See* Khan SAC ¶¶ 20-26, 32.

As to products that the individual plaintiffs did not themselves purchase, the Plaintiffs assert that the same deceptive scheme was employed across all of the items sold on the websites, and that they were exposed to the same type of false advertising as all other members of the putative classes. Citing *John v. AM Retail Group, Inc.*, No. 17CV727-JAH (BGS), 2018 WL 1400718, at *5 (S.D. Cal. Mar. 20, 2018), as an example, the Plaintiffs contend that district courts routinely reject the type of argument the Defendants raise here in such circumstances. Indeed, the Ninth Circuit only recently rejected this argument as a basis for a standing-based dismissal. *See Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1021 n.13 (9th Cir. 2020) (rejecting argument that plaintiffs lacked standing because they had "not purchased every single type of prescription pet food available from Hill's or Mars" "because Plaintiffs' challenge to prescription pet foods is to the common scheme of the prescription requirement and prescription-based advertising"). The same common scheme-across-products type of allegation is in play here.  As such, even if the Court were impressed by the Defendants' ability to string-cite district court decisions reaching a conclusion contrary to *John*, it must conclude that it does not amount to a basis for dismissing these cases (or limiting their scope) because of a standing problem.

      b) <u>CLRA</u>

The Defendants argue that the Plaintiffs' CLRA notices were defective because the requirements for such notices are to be applied literally, and the notices described alleged

violations in only abstract terms, without any description of specific transactions.

The Plaintiffs first respond that only the request for damages in connection with their CLRA claim is at issue, because the statute does not require notice for injunctive relief. They also reject the idea that the statute requires identification of all transactions, or specific items, at least where the case is about a fake sales-and-pricing scheme covering *all* products, not simply a contention about particular defective products. The Plaintiffs point specifically to *Azimpour v. Sears, Roebuck & Co.*, No. 15-CV-2798 JLS (WVG), 2017 WL 1496255 (S.D. Cal. Apr. 26, 2017), for support. In addition, they request leave to cure any deficiencies and re-serve corrected notices if the Court agrees with the Defendants' position.

Section 1782(b) of California's Civil Code states that no "action for damages" may be maintained under Civil Code § 1780 "if an appropriate correction, repair, replacement, or other remedy is given, or agreed to be given within a reasonable time, to the consumer within 30 days after receipt" of notice required under Section 1782(a). The Section 1782(a) notice requires the person sending the notice to "[n]otify the person alleged to have employed or committed methods, acts, or practices declared unlawful by Section 1770 of *the particular alleged violations of Section 1770*" and to "[d]emand that the person correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation of Section 1770." Cal. Civ. Code § 1782(a)(1)-(2).

First, the Plaintiffs are correct that any defect that might exist in the CLRA notices does not impact their request for injunctive relief under the CLRA. *See Gonzales v. CarMax Auto Superstores, LLC*, 845 F.3d 916, 918 (9th Cir. 2017). Beyond that, the Defendants fault the Plaintiffs for not specifying *particular transactions* or giving any description of what *particular items* were purchased. But the Defendants do not appear to have identified any authority demanding that detail in a Section 1782(a) notice, and certainly no authority requiring it in the context of a common practice impacting all, or a wide range of, products. Therefore, even if "literal" compliance with Section 1782(a) is required, as this Court has previously opined, *see Sotelo v. Rawlings Sporting Goods Company, Inc.*, No. CV 18-9166-GW (MAAx), 2019 WL 4392528, *6 (C.D. Cal. May 8, 2019), without a "literal" requirement that specific transactions or goods be identified (at least where a common multi-product scheme is allegedly involved), it is not clear to this Court that the Plaintiffs' notices are deficient. Here, the notices – even assuming that the Court may consider them in the context of this motion – did identify the "particular alleged violations" – a "deceptive pricing scheme" involving "fake sales" covering "[a]ll or nearly all" of

11

the branded products on the websites, and using "falsely inflated price[s]" because the items are "rarely, if ever," sold at the listed "Reference Price," running afoul of Civil Code Section 1770(a)(9) and 1770(a)(13). *See* Khan, Docket Nos. 22-8, 22-9. That is what Section 1782(a) "literally" requires. No binding precedent appears to require more.[5] As such, the Plaintiffs' CLRA claims are not subject to dismissal on this basis.

    c)  9(b)

The Defendants also argue that all of the Plaintiffs' claims sound in fraud and are therefore subject to Rule 9(b) of the Federal Rules of Civil Procedure. They follow from that premise to assert that other cases involving alleged "fraudulent" reference pricing have fallen short under Rule 9(b), citing *Rael v. N.Y. & Co.*, No. 16-cv-369-BAS (JMA), 2016 WL 7655247 (S.D. Cal. Dec. 28, 2016) and *Schertzer v. Samsonite Co. Stores, LLC*, No. 19-CV-639 JLS (MSB), 2020 WL 4281990 (S.D. Cal. Feb. 25, 2020). It appears that the Defendants argue here only that the Plaintiffs' allegations fall short of Rule 9(b) with respect to "why" or "how" the pricing was false or misleading. *See Khan*, Docket No. 22, at 22:12-17, 22:24-23:1.

The deficiency the district court perceived in that regard – along with other deficiencies not related to the "why" or "how" – in *Rael* was that the plaintiff had only conclusorily alleged that the retail or market price listed for the shoes in question had never been $49.94. *See Rael*, 2016 WL 7655247, at *6. The district court did not explain why it concluded that such an allegation was conclusory, as opposed to factual (though not backed up with *evidence* at that stage). *Schertzer* simply followed *Rael* because it concluded that the same theory and allegations were advanced by the plaintiff in the case at-bar. *See* 2020 WL 4281990, at *4.

With respect to the "how," the Plaintiffs first respond that they alleged that the Defendants "misled customers using fake sales marketing schemes, displaying fake savings and creating a false sense of urgency in the order process." *Khan*, Docket No. 27, at 15:16-19. They later provide further detail explaining how they believe they satisfied the requirement:

> Specifically, [the Defendants] misled consumers into believing that the displayed reference prices were original, former, or regular prices at which the products had

---

[5] In *Sotelo*, this Court acknowledged the district court's statement in *Frenzel v. AliphCom*, 76 F.Supp.3d 999, 1016 (N.D. Cal. 2014), that "courts in this circuit have . . . held that a plaintiff must provide notice regarding each particular product on which his CLRA damages claims are based, even where the products qualify as substantially similar." *Sotelo*, 2019 WL 4392528, at *6 n.4. But in *Frenzel* the CLRA notice referenced the defects of a particular product. *See Frenzel*, 76 F.Supp.3d at 1016. Even if "courts in this circuit" – not courts setting binding precedent – impose a "particular product" rule in that setting, it is not at all clear that it should apply in cases involving alleged schemes applicable to all or a substantial portion of a defendant's wares.

> previously sold on their websites. They did so by displaying to consumers a crossed-out reference price, a substantial percentage discount (e.g., "60% OFF"), and the substantially marked down price. During the order and checkout process, Defendants also displayed to consumers the amount of money Plaintiffs purportedly saved in the transaction, again deceiving them into believing that they, along with the putative class members, were receiving a bargain. Moreover, Defendants created a false sense of urgency with visitors to their site by displaying messages like "Hurry Up" and "Offer Ends Soon," and countdown clocks suggesting the sales were ending at midnight.

*Khan*, Docket No. 28, at 9:8-19. The Court's review of the pleadings supports the conclusion that the Plaintiffs have sufficiently alleged the "why" or "how" regarding falsity along the lines that they have summarized in their Opposition briefs. *See, e.g.*, *Khan* SAC ¶¶ 1, 14-19, 24. To the extent the *Rael* and/or *Schertzer* courts would consider the Plaintiffs' allegations insufficiently factual to survive a Rule 12(b)(6) challenge, this Court would disagree.

        d) <u>Fraudulent Concealment</u>

As to Plaintiffs' fraudulent concealment claim, the Defendants argue that the Plaintiffs cannot establish the existence of a duty to disclose in what was an arm's-length business transaction setting.

The Plaintiffs respond that they have pled facts giving rise to a duty of disclosure because of allegations that the Defendants pled *some* facts but did not disclose *other* facts that rendered deceptive the facts that *were* disclosed, and because they pled facts showing the Defendants intentionally concealed information that was known only to the Defendants which the Plaintiffs and other purchasers could not have discovered. The Plaintiffs direct the Court to *Warner Construction Corp. v. City of Los Angeles*, 2 Cal.3d 285 (1970), as authority supporting a duty of disclosure in these circumstances. *Warner Construction* does indeed support that proposition:

> In transactions which do not involve fiduciary or confidential relations, a cause of action for non-disclosure of material facts may arise in at least three instances: (1) the defendant makes representations but does not disclose facts which materially qualify the facts disclosed, or which render his disclosure likely to mislead; (2) the facts are known or accessible only to defendant, and defendant knows they are not known to or reasonably discoverable by the plaintiff; (3) the defendant actively conceals discovery from the plaintiff.

*Id.* at 294.

In their Reply, the Defendants do not respond to the Plaintiffs' citation to *Warner Construction*, or the principle identified therein recognizing the existence of a duty of disclosure in such circumstances. Instead, the Defendants simply rely on an unpublished, and therefore non-

precedential, Ninth Circuit decision. Unless and until the Defendants can explain why *Warner Construction* is no longer good law, the Plaintiffs' fraudulent concealment claim can proceed.

        e) <u>Unjust Enrichment</u>

Finally, as to the Plaintiffs' unjust enrichment claims, the Defendants properly raise[6] three arguments. First, they contend that the only remedy for such a claim is restitution, but that it requires a showing of fraud/wrongdoing, which the Defendants have elsewhere argued is lacking here. The Plaintiffs respond by insisting that they have sufficiently alleged fraud, and that certain of their claims are "unchallenged." Even if the Plaintiffs had not sufficiently alleged fraud or wrongdoing, a challenge to the remedy for a claim is not an argument that a required *element* of a claim is lacking. It is therefore not clear that it would provide a basis for a Rule 12(b)(6) dismissal in any event.

Second, the Defendants argue that the Plaintiffs have not alleged that the Defendants unjustly received or retained any benefit because the Plaintiffs have not plausibly alleged that they paid more than the fair market value of the items purchased. The Plaintiffs respond to this point by arguing that allegations that they purchased items they otherwise would not have (or paid more than they otherwise would have) is a clear basis for restitution. *Evans v. DSW, Inc.*, No. CV 16-3791-JGB (SPx), 2017 WL 7058233 (C.D. Cal. Feb. 2, 2017), which the Plaintiffs cite as support, concluded – at least for purposes of sufficiency of the pleadings – that allegations that the defendant was "reaping more profits by deceiving consumers through its 'Compare At' pricing scheme would be sufficient to award restitution," *see id.* at *11, in other words that the defendant had unjustly received or retained a benefit. Other cases have allowed unjust enrichment claims to survive the pleadings under seemingly similar "would not have purchased" circumstances. *See, e.g.*, *Hall v. Marriott Int'l, Inc.*, No. 19-CV-1715 JLS (AHG), 2020 WL 4727069, at *13 (S.D. Cal. Aug. 14, 2020); *Padilla v. Whitewave Foods Co.*, No. LACV1809327JAKJCX, 2019 WL 4640399, at *15 (C.D. Cal. July 26, 2019); *Quiroz v. Sabatino Truffles N.Y., LLC*, No. SACV170783DOCKES, 2017 WL 8223648, at *13 (C.D. Cal. Sept. 18, 2017). The Court concludes likewise – the Plaintiffs' unjust enrichment claims are sufficient for purposes of surviving pleadings-based challenges.

---

[6] In their Reply brief, the Defendants argue that the Plaintiffs' unjust enrichment claim is improper because it is not a "standalone claim for relief" under California law. Parties may not wait until Reply briefs to raise arguments for the first time. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).

14

Third, the Defendants simply reiterate the view that the unjust enrichment claim is subject to Rule 9(b), and that the Plaintiffs' allegations have fallen short of the requirements under that rule.  The Plaintiffs simply argue to the contrary.  As noted above, the Court disagrees with the Defendants' position with respect to this issue.

The Defendants' arguments directed at the Plaintiffs' unjust enrichment claims are not sufficient to cause the Court to dismiss those claims at the pleadings stage.

### III. Conclusion

The Court will refrain from ruling on that part of the Defendants' motions that seek to dismiss Boohoo Parent for lack of personal jurisdiction, and will discuss with the parties the parameters and timing of jurisdictional discovery concerning that entity.  Otherwise, the Court denies the motions for the reasons addressed above.