ALMADANI LAW
Yasin M. Almadani, SBN 242798
4695 MacArthur Court, Suite 1100
Newport Beach, CA 92660
Ph: 213-335-3935
Fax: 213-296-6278
yma@lawalm.com

AI LAW, PLC
Ahmed Ibrahim, SBN 238739
4695 MacArthur Court, Suite 1100
Newport Beach, CA 92660
Ph.:   949-266-1240
Fax:  949-266-1280
aibrahim@ailawfirm.com

Attorneys for Plaintiffs, Individually,
and On Behalf of All Others Similarly
Situated

EVERSHEDS SUTHERLAND (US) LLP
Ian S. Shelton (SBN 264863)
ianshelton@eversheds-sutherland.com
500 Capitol Mall, Suite 1750
Sacramento, CA 95814
Telephone: (916) 844-2965
Facsimile: (916) 241-0501

EVERSHEDS SUTHERLAND (US) LLP
Ronald W. Zdrojeski (admitted *PHV*)
ronzdrojeski@eversheds-sutherland.com
1114 6th Avenue, 40th Floor
New York, NY 10036
Telephone: (212) 389-5000
Facsimile: (212) 389-5099

Attorneys for Defendants

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

FARID KHAN, an individual, on behalf
of himself and all others similarly
situated,

Plaintiff,

v.

BOOHOO.COM USA, INC., a
Delaware corporation, BOOHOO.COM
UK LIMITED, a United Kingdom
private limited company, BOOHOO
GROUP PLC, a Jersey public limited
company, and DOES 1-10, inclusive,

Defendants.

**NO.: 2:20-cv-03332-GW-JEM**

Consolidated for Pretrial Purposes with:
No. 2:20-cv-04658 GW-JEM
No. 2:20-cv-04659 GW-JEM

**NOTICE OF MOTION AND LOCAL RULE 37-1 JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO COMPEL FURTHER DISCOVERY RESPONSES AND DOCUMENT PRODUCTION FROM DEFENDANTS.**

HON. JOHN E. MCDERMOTT
United States Magistrate Judge

Action Filed:        April 9, 2020

Hearing Date:     April 13, 2021

Class Cert. Disc. Cutoff:July 1, 2021

Trial Date:          TBD

1

*Notice of Motion and Local Rule 37-1 Joint Stipulation Regarding*            *Case No. 2:20-cv-03332-GW-JEM*
*Plaintiffs' Motion to Compel Further Discovery Responses from Defendants*

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on Tuesday, April 13, 2021 at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 640 of the United States Courthouse located at 255 E. Temple Street, 6th Floor, Los Angeles, California 90012, before the Honorable John E. McDermott, United States Magistrate Judge, Plaintiffs Farid Khan, Haya Hilton, and Olivia Lee ("Plaintiffs") will and hereby do move the Court for an order compelling further responses to Plaintiffs' Requests for Production of Documents, Requests for Admission, and Interrogatories, and the production of documents and electronically stored information, from Defendants Boohoo Group PLC, Boohoo.com USA, Inc., Boohoo.com UK Limited, PrettyLittleThing.com USA, Inc., PrettyLittleThing.com USA, Inc., PrettyLittleThing.com Limited, NastyGal.com USA, Inc., and Nasty Gal Limited (collectively, "Defendants").

This Motion is based on this Notice, the accompanying Joint Stipulation Regarding Plaintiffs' Motion to Compel Further Discovery Responses and Document Production from Defendants, the Declaration of Yasin M. Almadani and Exhibits attached thereto, the pleadings, records, and files herein, and on such other oral or documentary evidence as may be presented at the hearing of this Motion.

This motion is made following the conference of counsel regarding the issues covered by this Motion, which took place between February 4, 2021 and March 13, 2021 in telephonic conferences and written correspondence.

1    Dated: March 23, 2021                    Respectfully submitted,

2                                             ALMADANI LAW

3                                             */s/ Yasin M. Almadani*
                                              Yasin M. Almadani, Esq.
4

5

6                                             AI LAW, PLC

7                                             */s/ Ahmed Ibrahim*
                                              Ahmed Ibrahim, Esq.
8
                                              *Attorneys for Plaintiff Individually and*
9                                             *On Behalf of All Others Similarly Situated*

10

11                                            EVERSHEDS SUTHERLAND (US) LLP

12                                            */s/ Ron Zdrojeski*
                                              Ron Zdrojeski, Esq.
13

14                                            */s/ Ian S. Shelton*
                                              Ian S. Shelton, Esq.
15
                                              *Attorneys for Defendants*
16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

PAGE

I.   INTRODUCTORY STATEMENTS ........................................................................1

   A.   Plaintiffs' Introductory Statement ................................................1

   B.   Defendants' Introductory Statement.............................................4

II.  ISSUES IN DISPUTE

   A.   Defendants Have Not Produced Complete Daily Pricing Data, Their Production of Sales Data Is Also Incomplete and Unreliable, and They Will Not Confirm or Deny Whether They Have Produced Reference Price Information at All (*see* RFPs 1-5)...................................4

      1.   Discovery in Dispute.............................................................4

      2.   Plaintiffs' Contentions, Points, and Authorities Regarding Request for Production Nos. 1-5 ...................................23

         i.   RFP 1: Defendants Have Not Produced Daily Pricing Data ..................................................................23

         ii.   RFPs 2-5: Defendants' Production of Sales Data is Unreliable and They Will Not Confirm or Deny Whether They Have Produced Reference Price Information ..........26

      3.   Defendants' Contentions, Points, and Authorities Regarding Request for Production Nos. 1-5 ...................................31

         i.   Defendants Produced United States Sales Data and Pricing Information ............................................................31

         ii.   The Data was Produced the Way it is Maintained in the Ordinary Course of Business ............................................32

i

*Notice of Motion and Local Rule 37-1 Joint Stipulation Regarding*       *Case No. 2:20-cv-03332-GW-JEM*
*Plaintiffs' Motion to Compel Further Discovery Responses from Defendants*

**B.**   **Defendants Refuse to Produce Their Policies and Procedures Concerning Reference Pricing Practices and Markdown/Discounts, and Will Not Produce Memos, Marketing Research and Survey Analyses, Training Materials, or Other Documents (*see* RFPs 6-9, 10-13, 21-22, and 33-34)**...................................................................................**35**

   1.   **Discovery in Dispute**.......................................................**35**

   2.   **Plaintiffs' Contentions, Points, and Authorities Regarding Request for Production Nos. 6-9, 10-13, 21-22, and 33-34**........**48**

   3.   **Defendants' Contentions, Points, and Authorities Regarding Request for Production Nos. 6-9, 10-13, 21-22, 33-34**...............**54**

**C.**   **Defendants' Approach to Search For and Produce E-Mails and Other Communications Relating to Their Advertisement of Reference Prices, and of Discounts, Markdowns, and Sales, Is Flawed Because It Is Designed to Omit Relevant Information (*see* RFPs 23-29)**....................**55**

   1.   **Discovery in Dispute**.......................................................**55**

   2.   **Plaintiffs' Contentions, Points, and Authorities Regarding Request for Production Nos. 23-29**.............................................**63**

      i.   **Defendants' Approach to Producing Communications Omits Any Attempt to Locate, Collect, and Produce Documents Relating to Their Reference Pricing Practices**................................................................................**63**

      ii.   **The RFPs Are Narrowly Tailored to Seek Relevant Information**...........................................................................**67**

|  | iii. | Plaintiffs Worked Very Hard to Meet and Confer With Defendants on a Workable Proposal and Timeline to Search For and Produce Relevant Communications, But To No Avail | 68 |
|  | iv. | Defendants' Arguments as to Why They Believe They Have Met Their Discovery Obligations Are Without Merit | 70 |
|  | v. | Defendants' Proposal and Approach to Producing Communications Is Flawed and Inadequate | 74 |
| 3. | | Defendants' Contentions, Points, and Authorities Regarding Request for Production Nos. 23-29 | 75 |
|  | i. | Discovery was Limited to Class Certification Issues | 75 |
|  | ii. | Defendants' Production to Date has been Consistent with Judge Wu's Order and the Case Law | 77 |
|  | iii. | Defendants Engaged Plaintiffs Regarding Search Terms | 78 |
|  | iv. | Defendants Timely Objected to Plaintiff's Overbroad Requests | 78 |
|  | v. | Plaintiffs Failed to Provide Appropriate or Reasonable Search Terms | 79 |
|  | vi. | Defendants Produced over 20,000 Relevant Emails and Attachments | 80 |
| D. | | Defendants Refuse to Produce Documents In Their Possession Relating to the Class Representatives' Purchases and Communications With the Class Representatives' (*see* RFPs 14-18) | 84 |
| 1. | | Discovery in Dispute | 85 |

2. **Plaintiffs' Contentions, Points, and Authorities Regarding Request for Production Nos. 14-18** .............................................89

3. **Defendants' Contentions, Points, and Authorities Regarding Request for Production Nos. 14-18** .............................................90

E. **Defendants Refuse to Answer Requests for Admission Concerning Whether They Advertised Reference Prices and That They Rarely If Ever Sold Merchandise at the Advertised Reference Prices (*see* RFAs 1-5, 8, 11-15, 18-21; Interrogatory 16)** .......................................90

1. **Discovery in Dispute** ..........................................................91

2. **Plaintiffs' Contentions, Points, and Authorities Regarding Requests for Admission Nos. 1-5, 8, 11-15, 18-21, and Interrogatory No. 16** ...................................................131

3. **Defendants' Contentions, Points, and Authorities Regarding Requests for Admission Nos. 1-5, 8, 11-15, 18-21; Interrogatory No. 16** ...............................................135

F. **Defendants Refuse to Answer Interrogatory No. 15, Which Is Relevant to Defendants' Opposition to Nationwide Class Certification** ...........137

1. **Discovery in Dispute** ........................................................137

2. **Plaintiffs' Contentions, Points, and Authorities Regarding Interrogatory No. 15** ...........................................138

3. **Defendants' Contentions, Points, and Authorities Regarding Interrogatory No. 15** ...........................................138

III. **CONCLUSION** ............................................................................139

**A.      Plaintiffs' Concluding Statement** ..................................................................**139**

**B.      Defendants' Concluding Statement** ..............................................................**139**

1    I.      **INTRODUCTORY STATEMENTS**

2          A.      **Plaintiffs' Introductory Statement**

3          Before the Court are three separate deceptive marketing class actions, consolidated

4    for pretrial purposes: (1) *Khan v. Boohoo.com USA, Inc., et al.*, No. 2:20-cv-03332,

5    (2) *Hilton v. PrettyLittleThing.com USA, Inc., et al.*, No. 2:20-cv-04658, and (3) *Lee v.*

6    *NastyGal.com USA, Inc., et al.*, No. 2:20-cv-04659.[1]

7          Plaintiffs contend that Defendants perpetually advertise their products on their

8    websites with fake reference prices, accompanied by large, fake markdowns. In reality,

9    however, Defendants rarely (if ever) sell their products at the advertised reference prices.

10   Plaintiffs allege Defendants engage in this deceptive scheme in order to dupe customers

11   into thinking they are buying merchandise at a deep discount—a deceptive sales tactic

12   shown to falsely inflate the value of products and adversely affect consumer behavior. *See*

13   *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1106 (9th Cir. 2013). Plaintiffs are California

14   residents who fell victim to Defendants' deceptive marketing practices and made

15   purchases on Defendants' U.S. websites.  Plaintiffs each assert claims for violation of the

16   Unfair Competition Law (Cal. Bus. & Prof. Code § 17200), False Advertising Law (Cal.

17   Bus. & Prof. Code § 17500), Consumer Legal Remedies Act (Cal. Civ. Code §§ 1750, *et*

18   *seq.*), fraud, fraudulent concealment, and unjust enrichment.

19         On December 28, 2020, the Court ordered discovery to be conducted in phases,

20   imposing a deadline for the completion of class discovery and the filing of Plaintiffs'

21   motion for class certification by July 1, 2021. (D.E. 52.) On January 5, 2021, Plaintiffs

22   propounded discovery related to class certification on Defendants in each of the three

23   cases. (Almadani Decl., Exs. 1-9.) With the exception of the definitions that conform to

---

24   [1] Defendants in the *Khan* matter operate and sell merchandise on http://us.boohoo.com.

25   Defendants in the *Hilton* matter operate and sell merchandise on http://prettylittlething.us.
     Defendants in the *Lee* matter operate and sell merchandise on http://nastygal.com. All

26   three brands are owned by Boohoo Group PLC, the common defendant across all three
     cases. For purposes of efficiency and convenience, Plaintiffs Farid Khan, Haya Hilton,

27   and Olivia Lee shall together be referred to hereafter as "Plaintiffs," while Defendants
     Boohoo  Group  PLC,  Boohoo.com  USA,  Inc.,  Boohoo.com  UK  Limited,

28   PrettyLittleThing.com USA, Inc., PrettyLittleThing.com Limited, NastyGal.com USA,
     Inc., and Nasty Gal Limited shall collectively be referred to hereafter as "Defendants."

the particular parties and websites involved in each of the three cases, the discovery propounded on Defendants in each case is identical. (*See* Almadani Decl., Exs. 1-9.)

On February 4, 2021, Defendants served responses. (Almadani Decl., Exs. 10-18.). With some limited exceptions, Defendants' responses to Plaintiffs' discovery in all three cases are nearly identical. Therefore, Plaintiffs have included only the requests and responses from the *Khan v. Boohoo* matter, except in those instances where the responses are substantively different between the three cases.

In efforts to meet and confer, the parties exchanged approximately 11 letters and participated in at least three telephonic conferences. (Almadani Decl., ¶20.) Despite these efforts, Defendants' responses and document production remain deficient and thereby unduly prejudice Plaintiffs' ability to meet their class certification burden. To summarize, Defendants have failed to meet their discovery obligations in the following respects:

1.      Defendants must be compelled to produce: (a) daily price sheets in U.S. dollars (that include daily reference prices and actual offer prices for their products for each day during the class period), and (b) reliable sales data in U.S. dollars, including the reference price displayed to the customer at the time of the sale along with the price that was actually paid by the customer exclusive of tax and shipping. Defendants should also clearly inform Plaintiffs what column in the pricing and sales data pertains to the reference price and what column pertains to the actual sales price such that Plaintiffs and the Court are able to ascertain whether responsive discovery has been produced. Defendants' written responses to the RFPs are unclear and inconsistent with the arguments of their attorneys concerning what data they have and supposedly do not have. **(*See* RFPs 1-5)**

2.      Plaintiffs requested documents in Defendants' possession regarding their reference pricing practices and their advertisement of markdowns and discounts, such as policies and practices, marketing and consumer surveys, studies, and analyses, marketing research, training materials, memos, and presentations, to determine classwide practices. According to the case law, these documents are highly relevant to class certification issues. Defendants have not produced all responsive documents, as reflected by their written

2

responses stating they are withholding documents pursuant to their broad and frivolous objections. Instead, Defendants have elected to flood the document production with irrelevant documents relating to comparison of their merchandise to their competitors, which are neither responsive nor at issue here. **(*See* RFPs 6-13, 21-22, and 33-34)**

3.    Defendants refuse to fully produce e-mails and other communications relating to their advertisement of reference prices and markdowns/discounts during the class period—the issues at the heart of this litigation. Defendants instead have unilaterally chosen to produce documents that omit relevant search terms, do not encompass the entirety of the class periods, and do not include searches of the inboxes of all relevant witnesses.  **(*See* RFPs 23-29).**

4.    Defendants refuse to produce documents concerning the purchases of the class representatives (i.e., Khan, Hilton, and Lee) and communications with the class representatives, along with documents concerning all instances in which the merchandise the class representatives purchased had been previously sold at the reference price advertised to them. Unless Defendants concede there are no defects with the claims of the class representatives, including standing, Defendants' continued objection to these requests can only be described as obstructive. **(*See* RFPs 14-18)**

5.    Defendants refuse to provide responses to Plaintiffs' Requests for Admission calling upon Defendants to admit they advertised reference prices during the class period, and that they rarely, if ever, sold or offered their merchandise at the reference prices. Defendants have stonewalled Plaintiffs and refused to provide any substantive answer. Defendants should be compelled to answer these Requests, which cut right to the heart of the issues at the center of this case, and would efficiently resolve a potential issue of dispute on class certification.  **(*See* RFAs 1-6, 8, 11-15, 18-21, and Interrogatory 16)**

6.    Because Defendants oppose the certification of a nationwide class, Plaintiffs propounded Interrogatory 15 to understand Defendants' operations in the U.S. and their clear ties to the Los Angeles area. Because Defendants oppose certification of a nationwide class, they should be compelled to answer Interrogatory 15.

3

*Notice of Motion and Local Rule 37-1 Joint Stipulation Regarding*            *Case No. 2:20-cv-03332-GW-JEM*
*Plaintiffs' Motion to Compel Further Discovery Responses from Defendants*

### B.   Defendants' Introductory Statement

Defendants complied with their discovery obligations—they conducted a reasonable search for documents and information, produced responsive documents, answered other discovery requests and filed timely objections. The issues Plaintiffs bring before the Court arise from a combination of: their overbroad requests, far beyond the limited purpose of discovery for class certification purposes (the "they are burying us with data" complaint, when Defendants are simply providing the responsive information they requested); their failure to examine material that they already received (the "information is incomplete" complaints when Defendants assured them their production is, indeed, complete); their disappointment that the material that they have received does not comport with their pre-conceived notions (the material is "inaccurate or gibberish" complaints, when Defendants produced the material as it exists in its native format); and their further failure, despite repeated requests, to comply with Local Rule 37-1. Specifically, despite repeated requests to do so, Plaintiffs failed to meaningfully engage in a dialogue by which to discuss the discovery so as to either eliminate confusion concerning what they now possess or narrow the differences concerning what they would still like to receive.  In short, Plaintiffs' request for an order to compel should be denied.  Instead, Plaintiffs should be ordered to review the material they have received and then meaningfully engage with Defendants in a dialogue, as necessary, to fulfill the requirements of the local rules.

As an aid, Defendants attach **Exhibit A** to this motion, which summarizes the issues and Defendants' response to each.  (*See* Exhibit A, MTC Summary Chart).

## II.   ISSUES IN DISPUTE

### A.   Defendants Have Not Produced Complete Daily Pricing Data, Their Production of Sales Data Is Also Incomplete and Unreliable, and They Will Not Confirm or Deny Whether They Have Produced Reference Price Information at All (*see* RFPs 1-5).

1.Discovery in Dispute:

### _Khan v. Boohoo.com USA, Inc., et al._:

4

**REQUEST FOR PRODUCTION NO. 1:**

Any and all reports, spreadsheets, or other DOCUMENTS listing each PRODUCT by PRODUCT CODE and product description offered for sale in the United States on YOUR WEBSITE during the CLASS PERIOD in a form that includes the following information for each PRODUCT: (a) the time period during which the PRODUCT was, or has been, offered for sale, (b) the date the PRODUCT was first offered for sale, (c) the date the PRODUCT was last offered for sale, (d) all categories in which the PRODUCT was offered for sale (e.g., New In, Clothing, Shoes & Accessories, Dresses, Sale, Mens, etc.), (e) for each PRODUCT displayed on the WEBSITE, all REFERENCE PRICES, corresponding to date, (f) for each PRODUCT displayed on the WEBSITE, all prices at which the PRODUCT was offered for sale, corresponding to date, (g) for each PRODUCT displayed on the WEBSITE, all prices at which the PRODUCT actually sold, corresponding to date, and (h) if available, the demographic information (*e.g.*, location (city and state), gender, age, income, race, ethnicity, shopping preferences either identified by the customer or noted by YOU or any artificial intelligence system YOU use, etc.) of each customer who bought the PRODUCT.

**DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

Defendants incorporate by reference the General Objections set forth herein. Defendants object to this Request on the grounds that it is overly broad, vague, and unduly burdensome, including without limitation as to "any and all" and as to "each product." Defendants object to this Request as improperly compound and containing multiple subparts. Defendants object to this Request to the extent it calls for the disclosure of information subject to the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege. Defendants object to this Request insofar as it seeks competitive and sensitive business and financial information. Defendants object to this Request to the extent it calls for the disclosure of product information that is not saved and/or tracked in Defendants' computer systems and/or databases. Defendants object to this Request as not relevant to any party's claims or defenses, and not reasonably

5

calculated to lead to the discovery of admissible evidence, because it seeks information regarding pricing on dates when the products were not sold. Defendants further object to part (h) of the Request as it relates to highly personal information of Defendants' customers, which is wholly irrelevant to the certification of Plaintiff's putative class. To the extent this Request seeks information contained in email correspondence, Defendants object to this request as overly broad and unduly burdensome.

Defendants will withhold documents on the basis of their objections to this Request. Subject to and without waiving the foregoing objections, Defendants will produce the United States sales data for Boohoo related brands with pricing information from March 28, 2016 to present containing the following data fields in a native format: website, order date, state, zip code, product code, product description, product category, units, currency, website price, actual sold price, sales tax, estimated cost, and boohoo internal system ID. Such data will identify the customer by an identification number and include the geographic location of the customer (by state and zip code) to the extent that information is available. Defendants object to production of email correspondence on the grounds of overbreadth, oppression and undue burden, and lack of relevance to the limited class certification discovery authorized by the Court at this time. Due to the sheer volume of information requested, Defendants agree to meet and confer with Plaintiff in good faith to discuss whether production of additional documents beyond those specifically agreed upon in this response is feasible, will avoid undue burden and hardship on Defendants, and will be proportional to the needs of the case and the limited class certification discovery authorized by the Court at this time. To the extent Defendants agree to production of certain documents in this response, or agree to production of additional documents in the future, any such documents will be produced on a rolling basis and subject to these objections and any modifications agreed upon by the parties.

**REQUEST FOR PRODUCTION NO. 2:**

Any and all reports, spreadsheets, or other DOCUMENTS constituting or reflecting data regarding YOUR sales of PRODUCTS in the United States on YOUR WEBSITE for

6

each day during the CLASS PERIOD, in a form that includes the following information: (a) date, (b) PRODUCT CODE, (c) product description, (d) the total amount of the daily sales (i.e., the amount actually paid by customers), (e) the REFERENCE PRICE ADVERTISED for the PRODUCT on the day of the sale, (f) the ADVERTISED price of the PRODUCT on the day of the sale, (g) the discount or markdown offered on the PRODUCT on the day of the sale, (h) the total actual discounts or markdowns (including promo and coupon codes) applied, (i) the total number of units sold of the PRODUCT, (j) the total cost of goods sold applicable to the sales, on that date, of that PRODUCT, and (k) if available, the demographic information (*e.g.*, location (city and state), gender, age, income, race, ethnicity, shopping preferences either identified by the customer or noted by YOU or any artificial intelligence system YOU use, etc.) of each customer who bought the PRODUCT.

**DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

Defendants incorporate by reference the General Objections set forth herein. Defendants object to this Request on the grounds that it is overly broad, vague, and unduly burdensome, including without limitation as to "any and all" and "each day." Defendant object to this Request as improperly compound and containing multiple subparts. Defendants object to this Request to the extent it calls for the disclosure of information subject to the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege. Defendants object to this Request insofar as it seeks competitive and sensitive business and financial information. Defendants object to this Request to the extent it calls for the disclosure of product information that is not saved and/or tracked in Defendants' computer systems and/or databases. Defendants further object to part (k) of the Request as it relates to highly personal information of Defendants' customers, which is wholly irrelevant to the certification of Plaintiff's putative class.

Defendants will withhold documents on the basis of their objections to this Request. Subject to and without waiving the foregoing objections, Defendants will produce the United States sales data for Boohoo related brands with pricing information from March

7

28, 2016 to present containing the following data fields in a native format: website, order date, state, zip code, product code, product description, product category, units, currency, website price, actual sold price, sales tax, estimated cost, and boohoo internal system ID. Such data will identify the customer by an identification number and include the geographic location of the customer (by state and zip code) to the extent that information is available. Defendants object to production of email correspondence on the grounds of overbreadth, oppression and undue burden, and lack of relevance to the limited class certification discovery authorized by the Court at this time. Due to the sheer volume of information requested, Defendants agree to meet and confer with Plaintiff in good faith to discuss whether production of additional documents beyond those specifically agreed upon in this response is feasible, will avoid undue burden and hardship on Defendants, and will be proportional to the needs of the case and the limited class certification discovery authorized by the Court at this time. To the extent Defendants agree to production of certain documents in this response, or agree to production of additional documents in the future, any such documents will be produced on a rolling basis and subject to these objections and any modifications agreed upon by the parties.

**REQUEST FOR PRODUCTION NO. 3:**

Please produce the data referenced in Request for Production of Documents No. 2 broken down by the state from which purchasers purchased the PRODUCTS.

**DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

Defendants incorporate by reference the General Objections set forth herein. Defendants object to this Request as duplicative of Request No. 2. Defendants object to this Request on the grounds that it is overly broad, vague, and unduly burdensome, including without limitation as to "each day." Defendants object to this Request as improperly compound and containing multiple subparts. Defendants object to this Request to the extent it calls for the disclosure of information subject to the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege. Defendants object to this Request insofar as it seeks competitive sensitive business and

8

financial information. Defendants object to this Request to the extent it calls for the disclosure of product information that is not saved and/or tracked in Defendants' computer systems and/or databases. Defendants further object to part (k) of the Request as it relates to highly personal information of Defendants' customers, which is wholly irrelevant to the certification of Plaintiff's putative class.

Defendants will withhold documents on the basis of their objections to this Request. Subject to and without waiving their objections, Defendants refer Plaintiff to their response to Request No. 2.

## REQUEST FOR PRODUCTION NO. 4:

Any and all reports, spreadsheets, or other DOCUMENTS constituting or reflecting data regarding YOUR sales of PRODUCTS in the United States on YOUR WEBSITE for each day during the CLASS PERIOD where YOU sold PRODUCTS at the REFERENCE PRICE. Please produce this information in a form that includes the following information: (a) date, (b) PRODUCT CODE, (c) product description, (d) the total amount of the daily sales (i.e., the amount actually paid by customers), (e) the REFERENCE PRICE ADVERTISED for the PRODUCT on the day of the sale, (f) the total actual discounts or markdowns (including promo and coupon codes) applied, (g) the total number of units sold of the PRODUCT, (h) the total cost of goods sold applicable to the sales on that date, of that PRODUCT, and (i) if available, the demographic information (*e.g.*, location (city and state), gender, age, income, race, ethnicity, shopping preferences either identified by the customer or noted by YOU or any artificial intelligence system YOU use, etc.) of each customer who bought the PRODUCT.

## DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION NO. 4:

Defendants incorporate by reference the General Objections set forth herein. Defendants object to this Request as duplicative of Request No. 1. Defendants object to this Request on the grounds that it is overly broad, vague, and unduly burdensome, including without limitation as to "each day." Defendants object to this Request as improperly compound and containing multiple subparts. Defendants object to this Request

9

to the extent it calls for the disclosure of information subject to the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege. Defendants object to this Request insofar as it seeks competitive sensitive business and financial information. Defendants object to this Request to the extent it calls for the disclosure of product information that is not saved and/or tracked in Defendants' computer systems and/or databases. Defendants further object to part (i) of the Request as it relates to highly personal information of Defendants' customers, which is wholly irrelevant to the certification of Plaintiff's putative class.

Defendants will withhold documents on the basis of their objections to this Request. Subject to and without waiving their objections, Defendants refer Plaintiff to their response to Request No. 1.

**REQUEST FOR PRODUCTION NO. 5:**

Please produce the data referenced in Request for Production of Documents No. 4 broken down by the state from which purchasers purchased the PRODUCTS.

**DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Defendants incorporate by reference the General Objections set forth herein. Defendants object to this Request as duplicative of Request No. 1 and Request No. 4. Defendants object to this Request on the grounds that it is overly broad, vague, and unduly burdensome, including without limitation as to "each day." Defendants object to this Request as improperly compound and containing multiple subparts. Defendants object to this Request to the extent it calls for the disclosure of information subject to the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege. Defendants object to this Request insofar as it seeks competitive sensitive business and financial information. Defendants object to this Request to the extent it calls for the disclosure of product information that is not saved and/or tracked in Defendants' computer systems and/or databases. Defendants further object to part (i) of the Request as it relates to highly personal information of Defendants' customers, which is wholly irrelevant to the certification of Plaintiff's putative class.

10

Defendants will withhold documents on the basis of their objections to this Request. Subject to and without waiving their objections, Defendants refer Plaintiff to their response to Request No. 1 and Request No. 4.

***Hilton v. PrettyLittleThing.com USA, Inc., et al.*:**

**REQUEST FOR PRODUCTION NO. 1:**

Any and all reports, spreadsheets, or other DOCUMENTS listing each PRODUCT by PRODUCT CODE and product description offered for sale in the United States on YOUR WEBSITE during the CLASS PERIOD in a form that includes the following information for each PRODUCT: (a) the time period during which the PRODUCT was, or has been, offered for sale, (b) the date the PRODUCT was first offered for sale, (c) the date the PRODUCT was last offered for sale, (d) all categories in which the PRODUCT was offered for sale (*e.g.*, New In, Clothing, Dresses, Tops, Shoes, Accessories, Sale, etc.), (e) for each PRODUCT displayed on the WEBSITE, all REFERENCE PRICES, corresponding to date, (f) for each PRODUCT displayed on the WEBSITE, all prices at which the PRODUCT was offered for sale, corresponding to date, (g) for each PRODUCT displayed on the WEBSITE, all prices at which the PRODUCT actually sold, corresponding to date, and (h) if available, the demographic information (*e.g.*, location (city and state), gender, age, income, race, ethnicity, shopping preferences either identified by the customer or noted by YOU or any artificial intelligence system YOU use, etc.) of each customer who bought the PRODUCT.

**DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

Defendants incorporate by reference the General Objections set forth herein. Defendants object to this Request on the grounds that it is overly broad, vague, and unduly burdensome, including without limitation as to "any and all" and as to "each product." Defendants object to this Request as improperly compound and containing multiple subparts. Defendants object to this Request to the extent it calls for the disclosure of information subject to the attorney-client privilege, the attorney work product doctrine, or

11

any other applicable privilege. Defendants object to this Request insofar as it seeks competitive and sensitive business and financial information. Defendants object to this Request to the extent it calls for the disclosure of product information that is not saved and/or tracked in Defendants' computer systems and/or databases. Defendants object to this Request as not relevant to any party's claims or defenses, and not reasonably calculated to lead to the discovery of admissible evidence, because it seeks information regarding pricing on dates when the products were not sold. Defendants further object to part (h) of the Request as it relates to highly personal information of Defendants' customers, which is wholly irrelevant to the certification of Plaintiff's putative class. To the extent this Request seeks information contained in email correspondence, Defendants object to this Request as overly broad and unduly burdensome.

Defendants will withhold documents on the basis of their objections to this Request. Subject to and without waiving the foregoing objections, Defendants will produce the United States sales data for the PrettyLittleThing brand with pricing information from February 29, 2016 to present containing the following data fields in a native format: email/customer ID; order number; order date; SKU code; product description; product category; gross original price; gross markdown; gross post markdown; gross promotion discount; gross product sales; net product sales; gross original price LC; gross markdown LC; gross post markdown LC; gross promotion discount LC; gross product sales LC; net product sales LC; units; markdown; product cost; region. Such data will identify the customer by a customer identification number and include the geographic location of the customer (by state) to the extent that information is available. Defendants object to production of email correspondence on the grounds of overbreadth, oppression and undue burden, and lack of relevance to the limited class certification discovery authorized by the Court at this time. Due to the sheer volume of information requested, Defendants agree to meet and confer with Plaintiff in good faith to discuss whether production of additional documents beyond those specifically agreed upon in this response is feasible, will avoid undue burden and hardship on Defendants, and will be proportional to the needs of the

12

case and the limited class certification discovery authorized by the Court at this time. To the extent Defendants agree to production of certain documents in this response, or agree to production of additional documents in the future, any such documents will be produced on a rolling basis and subject to these objections and any modifications agreed upon by the parties.

**REQUEST FOR PRODUCTION NO. 2:**

Any and all reports, spreadsheets, or other DOCUMENTS constituting or reflecting data regarding YOUR sales of PRODUCTS in the United States on YOUR WEBSITE for each day during the CLASS PERIOD, in a form that includes the following information: (a) date, (b) PRODUCT CODE, (c) product description, (d) the total amount of the daily sales (i.e., the amount actually paid by customers), (e) the REFERENCE PRICE ADVERTISED for the PRODUCT on the day of the sale, (f) the ADVERTISED price of the PRODUCT on the day of the sale, (g) the discount or markdown offered on the PRODUCT on the day of the sale, (h) the total actual discounts or markdowns (including promo and coupon codes) applied, (i) the total number of units sold of the PRODUCT, (j) the total cost of goods sold applicable to the sales, on that date, of that PRODUCT, and (k) if available, the demographic information (*e.g.*, location (city and state), gender, age, income, race, ethnicity, shopping preferences either identified by the customer or noted by YOU or any artificial intelligence system YOU use, etc.) of each customer who bought the PRODUCT.

**DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

Defendants incorporate by reference the General Objections set forth herein. Defendants object to this Request on the grounds that it is overly broad, vague, and unduly burdensome, including without limitation as to "any and all" and "each day." Defendants object to this Request as improperly compound and containing multiple subparts. Defendants object to this Request to the extent it calls for the disclosure of information subject to the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege. Defendants object to this Request insofar as it seeks competitive and

sensitive business and financial information. Defendants object to this Request to the extent it calls for the disclosure of product information that is not saved and/or tracked in Defendants' computer systems and/or databases. Defendants further object to part (k) of the Request as it relates to highly personal information of Defendants' customers, which is wholly irrelevant to the certification of Plaintiff's putative class.

Defendants will withhold documents on the basis of their objections to this Request. Subject to and without waiving the foregoing objections, Defendants will produce the United States sales data for the PrettyLittleThing brand with pricing information from February 29, 2016 to present containing the following data fields in a native format: email/customer ID; order number; order date; SKU code; product description; product category; gross original price; gross markdown; gross post markdown; gross promotion discount; gross product sales; net product sales; gross original price LC; gross markdown LC; gross post markdown LC; gross promotion discount LC; gross product sales LC; net product sales LC; units; markdown; product cost; region. Such data will identify the customer by a customer identification number and include the geographic location of the customer (by state) to the extent that information is available. Defendants object to production of email correspondence on the grounds of overbreadth, oppression and undue burden, and lack of relevance to the limited class certification discovery authorized by the Court at this time. Due to the sheer volume of information requested, Defendants agree to meet and confer with Plaintiff in good faith to discuss whether production of additional documents beyond those specifically agreed upon in this response is feasible, will avoid undue burden and hardship on Defendants, and will be proportional to the needs of the case and the limited class certification discovery authorized by the Court at this time. To the extent Defendants agree to production of certain documents in this response, or agree to production of additional documents in the future, any such documents will be produced on a rolling basis and subject to these objections and any modifications agreed upon by the parties.

**REQUEST FOR PRODUCTION NO. 3:**

14

1    Please produce the data referenced in Request for Production of Documents No. 2

2    broken down by the state from which purchasers purchased the PRODUCTS.

3    **DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

4    Defendants incorporate by reference the General Objections set forth herein.

5    Defendants object to this request as duplicative of Request No. 2. Defendants object

6    to this Request on the grounds that it is overly broad, vague, and unduly burdensome,

7    including without limitation as to "each day." Defendants object to this Request as

8    improperly compound and containing multiple subparts. Defendants object to this Request

9    to the extent it calls for the disclosure of information subject to the attorney-client

10   privilege, the attorney work product doctrine, or any other applicable privilege.

11   Defendants object to this request insofar as it seeks competitive sensitive business and

12   financial information. Defendants object to this Request to the extent it calls for the

13   disclosure of product information that is not saved and/or tracked in Defendants' computer

14   systems and/or databases. Defendants further object to part (k) of the Request as it relates

15   to highly personal information of Defendants' customers, which is wholly irrelevant to the

16   certification of Plaintiff's putative class.

17   Defendants will withhold documents on the basis of their objections to this Request.

18   Subject to and without waiving their objections, Defendants refer Plaintiff to their

19   response to Request No. 2.

20   **REQUEST FOR PRODUCTION NO. 4:**

21   Any and all reports, spreadsheets, or other DOCUMENTS constituting or reflecting

22   data regarding YOUR sales of PRODUCTS in the United States on YOUR WEBSITE for

23   each day during the CLASS PERIOD where YOU sold PRODUCTS at the REFERENCE

24   PRICE. Please produce this information in a form that includes the following information:

25   (a) date, (b) PRODUCT CODE, (c) product description, (d) the total amount of the daily

26   sales (i.e., the amount actually paid by customers), (e) the REFERENCE PRICE

27   ADVERTISED for the PRODUCT on the day of the sale, (f) the total actual discounts or

28   markdowns (including promo and coupon codes) applied, (g) the total number of units

15

sold of the PRODUCT, (h) the total cost of goods sold applicable to the sales on that date, of that PRODUCT, and (i) if available, the demographic information (*e.g.*, location (city and state), gender, age, income, race, ethnicity, shopping preferences either identified by the customer or noted by YOU or any artificial intelligence system YOU use, etc.) of each customer who bought the PRODUCT.

**DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Defendants incorporate by reference the General Objections set forth herein. Defendants object to this Request as duplicative of Request No. 1. Defendants object to this Request on the grounds that it is overly broad, vague, and unduly burdensome, including without limitation as to "each day." Defendants object to this Request as improperly compound and containing multiple subparts. Defendants object to this Request to the extent it calls for the disclosure of information subject to the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege. Defendants object to this Request insofar as it seeks competitive sensitive business and financial information. Defendants object to this Request to the extent it calls for the disclosure of product information that is not saved and/or tracked in Defendants' computer systems and/or databases. Defendants further object to part (i) of the Request as it relates to highly personal information of Defendants' customers, which is wholly irrelevant to the certification of Plaintiff's putative class.

Defendants will withhold documents on the basis of their objections to this Request. Subject to and without waiving their objections, Defendants refer Plaintiff to their response to Request No. 1.

**REQUEST FOR PRODUCTION NO. 5:**

Please produce the data referenced in Request for Production of Documents No. 4 broken down by the state from which purchasers purchased the PRODUCTS.

**DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Defendants incorporate by reference the General Objections set forth herein. Defendants object to this Request as duplicative of Request No. 1 and Request No. 4.

16

Defendants object to this Request on the grounds that it is overly broad, vague, and unduly burdensome, including without limitation as to "each day." Defendants object to this Request as improperly compound and containing multiple subparts. Defendants object to this Request to the extent it calls for the disclosure of information subject to the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege. Defendants object to this Request insofar as it seeks competitive sensitive business and financial information. Defendants object to this Request to the extent it calls for the disclosure of product information that is not saved and/or tracked in Defendants' computer systems and/or databases. Defendants further object to part (i) of the Request as it relates to highly personal information of Defendants' customers, which is wholly irrelevant to the certification of Plaintiff's putative class.

Defendants will withhold documents on the basis of their objections to this Request. Subject to and without waiving their objections, Defendants refer Plaintiff to their response to Request No. 1 and Request No. 4.

*Lee v. NastyGal.com USA, Inc., et al.*:
**REQUEST FOR PRODUCTION NO. 1:**

Any and all reports, spreadsheets, or other DOCUMENTS listing each PRODUCT by PRODUCT CODE and product description offered for sale in the United States on YOUR WEBSITE during the CLASS PERIOD in a form that includes the following information for each PRODUCT: (a) the time period during which the PRODUCT was, or has been, offered for sale, (b) the date the PRODUCT was first offered for sale, (c) the date the PRODUCT was last offered for sale, (d) all categories in which the PRODUCT was offered for sale (*e.g.*, New, Clothes, Dresses, Tops, Shoes + Boots, Plus Size, Accessories, Sale, etc.), (e) for each PRODUCT displayed on the WEBSITE, all REFERENCE PRICES, corresponding to date, (f) for each PRODUCT displayed on the WEBSITE, all prices at which the PRODUCT was offered for sale, corresponding to date, (g) for each PRODUCT displayed on the WEBSITE, all prices at which the PRODUCT

17

1  actually sold, corresponding to date, and (h) if available, the demographic information

2  (*e.g.*, location (city and state), gender, age, income, race, ethnicity, shopping preferences

3  either identified by the customer or noted by YOU or any artificial intelligence system

4  YOU use, etc.) of each customer who bought the PRODUCT.

5  **DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

6  Defendants incorporate by reference the General Objections set forth herein.

7  Defendants object to this Request on the grounds that it is overly broad, vague, and unduly

8  burdensome, including without limitation as to "any and all" and as to "each product."

9  Defendants object to this Request as improperly compound and containing multiple

10 subparts. Defendants object to this Request to the extent it calls for the disclosure of

11 information subject to the attorney-client privilege, the attorney work product doctrine, or

12 any other applicable privilege. Defendants object to this Request insofar as it seeks

13 competitive and sensitive business and financial information. Defendants object to this

14 Request to the extent it calls for the disclosure of product information that is not saved

15 and/or tracked in Defendants' computer systems and/or databases. Defendants object to

16 this Request as not relevant to any party's claims or defenses, and not reasonably

17 calculated to lead to the discovery of admissible evidence, because it seeks information

18 regarding pricing on dates when the products were not sold. Defendants further object to

19 part (h) of the Request as it relates to highly personal information of Defendants'

20 customers, which is wholly irrelevant to the certification of Plaintiff's putative class. To

21 the extent this Request seeks information contained in email correspondence, Defendants

22 object to this Request as overly broad and unduly burdensome.

23 Defendants will withhold documents on the basis of their objections to this Request.

24 Subject to and without waiving the foregoing objections, Defendants will produce the

25 United States sales data for the Nasty Gal brand with pricing information from February

26 28, 2017 to present containing the following data fields in a native format: website, order

27 date, state, zip code, product code, product description, product category, units, currency,

28 website price, actual sold price, sales tax, estimated cost, and boohoo internal system ID.

18

Such data will identify the customer by an identification number and include the geographic location of the customer (by state and zip code) to the extent that information is available. Defendants object to production of email correspondence on the grounds of overbreadth, oppression and undue burden, and lack of relevance to the limited class certification discovery authorized by the Court at this time. Due to the sheer volume of information requested, Defendants agree to meet and confer with Plaintiff in good faith to discuss whether production of additional documents beyond those specifically agreed upon in this response is feasible, will avoid undue burden and hardship on Defendants, and will be proportional to the needs of the case and the limited class certification discovery authorized by the Court at this time. To the extent Defendants agree to production of certain documents in this response, or agree to production of additional documents in the future, any such documents will be produced on a rolling basis and subject to these objections and any modifications agreed upon by the parties.

**REQUEST FOR PRODUCTION NO. 2:**

Any and all reports, spreadsheets, or other DOCUMENTS constituting or reflecting data regarding YOUR sales of PRODUCTS in the United States on YOUR WEBSITE for each day during the CLASS PERIOD, in a form that includes the following information: (a) date, (b) PRODUCT CODE, (c) product description, (d) the total amount of the daily sales (i.e., the amount actually paid by customers), (e) the REFERENCE PRICE ADVERTISED for the PRODUCT on the day of the sale, (f) the ADVERTISED price of the PRODUCT on the day of the sale, (g) the discount or markdown offered on the PRODUCT on the day of the sale, (h) the total actual discounts or markdowns (including promo and coupon codes) applied, (i) the total number of units sold of the PRODUCT, (j) the total cost of goods sold applicable to the sales, on that date, of that PRODUCT, and (k) if available, the demographic information (*e.g.*, location (city and state), gender, age, income, race, ethnicity, shopping preferences either identified by the customer or noted by YOU or any artificial intelligence system YOU use, etc.) of each customer who bought the PRODUCT.

**DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

Defendants incorporate by reference the General Objections set forth herein. Defendants object to this Request on the grounds that it is overly broad, vague, and unduly burdensome, including without limitation as to "any and all" and "each day." Defendants object to this Request as improperly compound and containing multiple subparts. Defendants object to this Request to the extent it calls for the disclosure of information subject to the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege. Defendants object to this Request insofar as it seeks competitive and sensitive business and financial information. Defendants object to this Request to the extent it calls for the disclosure of product information that is not saved and/or tracked in Defendants' computer systems and/or databases. Defendants further object to part (k) of the Request as it relates to highly personal information of Defendants' customers, which is wholly irrelevant to the certification of Plaintiff's putative class.

Defendants will withhold documents on the basis of their objections to this Request. Subject to and without waiving the foregoing objections, Defendants will produce the United States sales data for the Nasty Gal brand with pricing information from February 28, 2017 to present containing the following data fields in a native format: website, order date, state, zip code, product code, product description, product category, units, currency, website price, actual sold price, sales tax, estimated cost, and boohoo internal system ID. Such data will identify the customer by an identification number and include the geographic location of the customer (by state and zip code) to the extent that information is available. Defendants object to production of email correspondence on the grounds of overbreadth, oppression and undue burden, and lack of relevance to the limited class certification discovery authorized by the Court at this time. Due to the sheer volume of information requested, Defendants agree to meet and confer with Plaintiff in good faith to discuss whether production of additional documents beyond those specifically agreed upon in this response is feasible, will avoid undue burden and hardship on Defendants, and will be proportional to the needs of the case and the limited class certification

20

discovery authorized by the Court at this time. To the extent Defendants agree to production of certain documents in this response, or agree to production of additional documents in the future, any such documents will be produced on a rolling basis and subject to these objections and any modifications agreed upon by the parties.

**REQUEST FOR PRODUCTION NO. 3:**

Please produce the data referenced in Request for Production of Documents No. 2 broken down by the state from which purchasers purchased the PRODUCTS.

**DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

Defendants incorporate by reference the General Objections set forth herein. Defendants object to this Request as duplicative of Request No. 2. Defendants object to this Request on the grounds that it is overly broad, vague, and unduly burdensome, including without limitation as to "each day." Defendants object to this Request as improperly compound and containing multiple subparts. Defendants object to this Request to the extent it calls for the disclosure of information subject to the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege. Defendants object to this request insofar as it seeks competitive sensitive business and financial information. Defendants object to this Request to the extent it calls for the disclosure of product information that is not saved and/or tracked in Defendants' computer systems and/or databases. Defendants further object to part (k) of the Request as it relates to highly personal information of Defendants' customers, which is wholly irrelevant to the certification of Plaintiff's putative class.

Defendants will withhold documents on the basis of their objections to this Request. Subject to and without waiving their objections, Defendants refer Plaintiff to their response to Request No. 2.

**REQUEST FOR PRODUCTION NO. 4:**

Any and all reports, spreadsheets, or other DOCUMENTS constituting or reflecting data regarding YOUR sales of PRODUCTS in the United States on YOUR WEBSITE for each day during the CLASS PERIOD where YOU sold PRODUCTS at the REFERENCE

21

PRICE. Please produce this information in a form that includes the following information: (a) date, (b) PRODUCT CODE, (c) product description, (d) the total amount of the daily sales (i.e., the amount actually paid by customers), (e) the REFERENCE PRICE ADVERTISED for the PRODUCT on the day of the sale, (f) the total actual discounts or markdowns (including promo and coupon codes) applied, (g) the total number of units sold of the PRODUCT, and (i) if available, the demographic information (e.g., location (city and state), gender, age, income, race, ethnicity, shopping preferences either identified by the customer or noted by YOU or any artificial intelligence system YOU use, etc.) of each customer who bought the PRODUCT.

**DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Defendants incorporate by reference the General Objections set forth herein. Defendants object to this Request as duplicative of Request No. 1. Defendants object to this Request on the grounds that it is overly broad, vague, and unduly burdensome, including without limitation as to "each day." Defendants object to this Request as improperly compound and containing multiple subparts. Defendants object to this Request to the extent it calls for the disclosure of information subject to the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege. Defendants object to this Request insofar as it seeks competitive sensitive business and financial information. Defendants object to this Request to the extent it calls for the disclosure of product information that is not saved and/or tracked in Defendants' computer systems and/or databases. Defendants further object to part (i) of the Request as it relates to highly personal information of Defendants' customers, which is wholly irrelevant to the certification of Plaintiff's putative class.

Defendants will withhold documents on the basis of their objections to this Request. Subject to and without waiving their objections, Defendants refer Plaintiff to their response to Request No. 1.

**REQUEST FOR PRODUCTION NO. 5:**

Please produce the data referenced in Request for Production of Documents No. 4

22

broken down by the state from which purchasers purchased the PRODUCTS.

**DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Defendants incorporate by reference the General Objections set forth herein. Defendants object to this Request as duplicative of Request No. 1 and Request No. 4. Defendants object to this Request on the grounds that it is overly broad, vague, and unduly burdensome, including without limitation as to "each day." Defendants object to this Request as improperly compound and containing multiple subparts. Defendants object to this Request to the extent it calls for the disclosure of information subject to the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege. Defendants object to this Request insofar as it seeks competitive sensitive business and financial information. Defendants object to this Request to the extent it calls for the disclosure of product information that is not saved and/or tracked in Defendants' computer systems and/or databases. Defendants further object to part (i) of the Request as it relates to highly personal information of Defendants' customers, which is wholly irrelevant to the certification of Plaintiff's putative class.

Defendants will withhold documents on the basis of their objections to this Request. Subject to and without waiving their objections, Defendants refer Plaintiff to their response to Request No. 1 and Request No. 4.

    **2.    Plaintiffs' Contentions, Points, and Authorities Regarding Request for Production Nos. 1-5.**

       **(i)    RFP 1:  Defendants Have Not Produced Daily Pricing Data**

RFP 1 asks Defendants to produce their daily pricing data for all products advertised for sale in the United States during the class period on the three subject websites. Defendants refuse even though the law entitles Plaintiffs to this basic discovery. Relevant to Plaintiffs' claims is California Business & Professions Code section 17501, which states:

> No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the

23

date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

RFP 1 thus requests, among other items, the daily reference prices (i.e., the alleged original price, as defined in the RFPs and displayed by Defendants on each day), and the daily sale prices (i.e., the price at which each product was actually offered for sale on each day) for all products offered for sale in the United States during the class period. This information is highly relevant to class certification, where Plaintiffs will seek to demonstrate through common proof in Defendants' own possession the infrequency with which the alleged reference price was the price at which any particular item was advertised for sale. *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1102 (9th Cir. 2013) (violation may be established where reference prices "did not reflect prevailing retail market prices during the three months immediately preceding the publication of the advertisements in question."). Thus, to respond to any argument that there was no classwide practice of advertising false reference prices, Plaintiffs need the *daily* pricing data (i.e., daily price lists), which would show whether and how frequently any reference price was the price at which a subject product was actually offered for sale. The daily price lists, Plaintiffs believe, would show that the reference prices were never actually the "prevailing market price[s]" under Business & Professions Code section 17501. Defendants, who are major international retailers, certainly track this data (i.e., daily prices and price changes), as do all major retailers, and should be compelled to produce the data in order to give Plaintiffs a fair opportunity to meet their burden.

Defendants, through their attorneys in meet and confer correspondence, contend they do not save or track daily price data in their systems or databases. However, Defendants purposefully make this unclear in their written responses. They do so first by loading up their response with at least nine separately stated broad objections. Only one of those objections discusses the availability of the data: "Defendants object to this Request to the extent it calls for the disclosure of product information that is not saved and/or tracked in Defendants' computer systems and/or databases." Yet, Defendants are

24

vague about which data—or *whether* any specific data—is unavailable. After stating these objections, Defendants then state "Defendants will *withhold* documents on the basis of their objections to this Request." At bottom, this statement reflects that responsive data *is* available, but that Defendant will *not* be producing some unknown portion of it. Egregiously, Defendants do not identify what is and is not available and what will and will not be produced. This is highly obstructive. For example, Plaintiffs' understanding is that all large retailers like Defendants track all *changes* in their pricing. Therefore, daily pricing data (for reference and offering prices) can easily be produced by producing a log of the price changes over the Class Period, unless, of course, Defendants are clearly representing that they do not track price changes as other retailers do. Plaintiffs and the Court cannot know this, however, because the discovery responses are so vague and ambiguous that very little can be discerned from them, and Defendants' counsel refuse to discuss the issue with sufficient particularity despite over a month of efforts by Plaintiffs.

To prevent litigants from playing a shell game concerning what documents they have and do not have, Rule 34 requires clear communication in the written responses to document demands. "For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B). "An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest." Fed. R. Civ. P. 34(b)(2)(C). Stated differently:

> In responding to discovery requests, a reasonable inquiry must be made, and if no responsive documents or tangible things exist, Fed. R. Civ. P. 26(g)(1), the responding party should so state with sufficient specificity to allow the Court to determine whether the party made a reasonable inquiry and exercised due diligence, *Uribe v. McKesson*, No. 08cv1285 DMS (NLS), 2010 WL 892093, at *2-3 (E.D. Cal. Mar. 9, 2010). If responsive documents do exist but the responsive party claims lack of possession, control, or custody, the party must so state with sufficient specificity to allow the Court (1) to conclude that the

25

1
2
3

responses were made after a case-specific evaluation and (2) to evaluate the merit of that response. *Ochotorena v. Adams*, No. 1:05-cv-01525-LJO-DLB (PC), 2010 WL 1035774, at *3-4 (E.D. Cal. Mar. 19, 2010).

4
5

*Williams v. Alcala*, No. 117CV00916DADSABPC, 2018 WL 4203692, at *2 (E.D. Cal. Aug. 31, 2018).

6
7
8
9
10
11

Here, however, Defendants' written responses leave it vague as to whether they have the data requested, or whether instead they have it and are withholding it on the basis of an objection. It is implausible that Defendants would not maintain historical data on prices and price changes constantly displayed on their websites. Indeed, almost all retailers do maintain this data, and if Defendant claim they do not, they need to clearly state this in their *discovery responses*, and identify what responsive data is and is not maintained.

12
13
14

(ii)     **RFPs 2-5:  Defendants' Production of Sales Data is Unreliable and They Will Not Confirm or Deny Whether They Have Produced Reference Price Information.**

15
16
17
18

RFPs 2 to 5 request Defendants to produce their sales data during the class period for all three websites at issue in this case. This is obviously important for Plaintiffs to demonstrate the ability to compute damages on a classwide basis under the standard set forth in *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013).

19
20
21
22
23
24
25
26

Defendants profess that they have produced a number of spreadsheets containing data concerning their sales transactions for each individual purchase from putative class members. Defendants have represented to Plaintiffs that these spreadsheets are comprehensive in that they cover nationwide sales from all three sites for the entirety of the three class periods. Defendants, however, have been deceptive in this regard, because the spreadsheets contain significant portions of unreliable gibberish. To provide the Court a glimpse of the issues in the sales data, below are a few examples of how misleading and abusive Defendants' production has been.

27
28

For example, there is no dispute that this case has been brought in the *United States* concerning *United States* customers, and so it is obvious that sales and pricing data should

26

1  be produced in *U.S. dollars*. Yet the data seems to be jumbled up in many different world

2  currencies even though the sales appear to be within the United States, as demonstrated

3  by the screenshots below:

4



5–8 (spreadsheet screenshot)

9



10–12 (spreadsheet screenshot)

13  It is unreasonable for Defendants to produce data with pricing mixed up in numerous world

14  denominations and require Plaintiffs to conduct daily conversions across multiple

15  currencies and tens of thousands of products for a four-year period. Defendants must have

16  *U.S.* sales and pricing data in *U.S.* dollars and should consistently produce that data.

17      In another example, Defendants' data appears to show that for some of the products,

18  the "Actual Sold Price" is significantly higher than the "Website Price," which makes no

19  sense in the context of the data, as reflected in the screenshot below:

20



21–22 (spreadsheet screenshot)

23

24  Indeed, it is nonsensical that customers paid significantly more than the price displayed

25  on the websites, rendering the data unreliable in this regard.

26      But these are not the only markers of unreliability of the data. The example below

27  shows additional areas of significant unreliability. In the example below, the reference

28  price for the Rust Satin Dress appears on the website as $58. Looking at the "Gross

27

Original Price LC" column in the data (which Plaintiffs can only guess reflects the reference price because Defendants refuse to confirm or deny whether they have produced reference price data), it appears that on "1/11/2021," the reference price would be "$63.52, $62.05, $58, $62.06, $61.06, $62.8, $62.06, $62.07, $62.35, $61.48, and $58." This guess is based on $58 appearing in the data set and corresponding to the reference price reflected on the website (see screenshot below). But this begs the question: if "Gross Original Price LC" is the reference price in this example, how is it possible that the data reflects *multiple* reference prices advertised *on the same day?* This example undermines Plaintiffs' educated guess that "Original Price LC" denotes reference price and also casts significant doubt on the reliability of the data produced.



Rust Satin Twist Front Open Sleeve Wrap Dress
$58.00
$38.00 (34% OFF)



Plaintiffs have attempted at numerous meet-and-confer sessions to begin demystifying the nonsensical production, but Defendants have refused to engage in any level of meaningful discussion, refusing to even inform Plaintiffs whether or where REFERENCE PRICE data—the main issue in the case—is included within the

28

spreadsheets. Plaintiffs' counsel have asked Defendants' counsel on multiple occasions both on the phone and in letters to identify for Plaintiffs which column on the sales data spreadsheets denotes the reference price. (Almadani Decl., Exs. 19-22.) This is a simple question concerning whether responsive discovery has been produced.[2] And, while Defendants could have easily answered by either (a) directing Plaintiffs to the column in the spreadsheets denoting the reference prices, or (b) advising Plaintiffs that they did not produce this information, Defendants' counsel chose instead to evade Plaintiffs' question, culminating in Defendants' February 19, 2021 letter where Defendants unfortunately continue to "beat around the bush." (*See, e.g.,* Almadani Decl., Ex. 22.)

Defendants' RFP responses also are vague as to whether one of the data points enumerated denote the reference price.  For example, in Defendants' Response to Plaintiff Hilton's RFP No. 2, they state in relevant part:

> Defendants will withhold documents on the basis of their objections to this Request.  Subject to and without waiving the foregoing objections, Defendants will produce the United States data for the PrettyLittleThing brand with pricing information from February 29, 2016 to present containing the following data fields in a native format: email/customer ID; order number; order date; SKU code; product description; product category; gross original price; gross markdown; gross post markdown; gross promotion discount; gross product sales; net product sales; gross original price LC; gross markdown LC; gross post markdown LC; gross promotion discount LC; gross product sales LC; net product sales LC; units; markdown; product cost; region.

Defendants, however, refuse to confirm or deny whether any of these data fields containing highly technical labels denotes the reference price, as defined in the RFPs. Similarly, with regards to their responses to Khan and Lee's RFP No. 2, Defendants state that they have produced sales data containing the data fields "website, order date, state, zip code, product code, product description, product category, units, currency, website

---

[2] In an abundance of caution and to avoid running out of time given the short timeline for the class certification motion that the Court has set, Plaintiffs have been forced to propound interrogatories on the basic issue of whether Defendants have produced discovery responsive to Plaintiffs' particular requests. Plaintiffs note, however, that it is unfair for Defendants to force Plaintiffs to use up interrogatories to determine whether responsive discovery has been produced; it also unnecessarily delays the case.

29

price, actual sold price, sales tax, estimated cost, and boohoo internal system ID." This also does not make clear whether reference price is included in the data, and Defendants persistently refuse to give Plaintiffs a clear answer in the meet and confer process. Given the unreliable state of the data, as demonstrated above, very little can be deduced from the data itself.

Defense counsel state, "[o]ur U.K.-based client does not use the term 'reference price' in its business," (Almadani Decl., Ex. 27) while understanding very well that it is not the exact term reference price, but the concept of reference price, that is at issue—a concept that is clearly defined in Plaintiffs' discovery requests and used by Defendants on a daily basis on their websites. In fact, Plaintiffs went as far as to include screenshots from Defendants' own websites to make it abundantly clear to them what Plaintiffs mean by the concept of reference price. And, unless Defendants have suddenly changed their predominant marketing strategy, the Court may simply visit the websites in question and immediately observe the false-reference-price scheme at work to this day. *See* http://us.boohoo.com; http://prettylittlething.us; http://nastygal.com. Yet when it comes to discovery, Defendants feign ignorance and refuse to engage on this key issue in the manner the law requires, creating unnecessary litigation. Defendants know they will fail on the merits. Their strategy is thus to produce incomplete, unreliable data in order to turn around and say that Plaintiffs have not met their burden for class certification because they relied on incomplete and unreliable data. This is not a close call and Defendants are clearly being unfaithful to the discovery process.

In sum, Defendants must be compelled to produce: (i) daily price sheets in U.S. dollars (that include daily reference prices and actual offer prices for their products for each day during the class period) as requested in RFP 1, and (ii) reliable sales data in U.S. dollars, including the reference price displayed to the customer at the time of the sale along with the price that was actually paid by the customer exclusive of tax and shipping, as requested in RFPs 2-5. Defendants should also clearly inform Plaintiffs what column in the pricing and sales data pertains to the reference price and what column pertains to the

30

sales price such that Plaintiffs and the Court are able to ascertain whether responsive discovery has been produced.

Plaintiffs further note that they have been delayed and put through significant expense and burden in bringing this motion, and thus seek monetary sanctions against Defendants for abuse of the discovery process. Defendants should be reminded that the District Court has required a short timeline for class certification, and if Defendants continue to engage in obstructive behavior to deprive Plaintiffs of standard class discovery, Plaintiffs would seek class certification as a form of discovery sanction. *See Addison v. Monarch & Assocs.*, No. 5:14-cv-00358-GW(JEMx), 2017 U.S. Dist. LEXIS 222679, at *5 (C.D. Cal. May 8, 2017) ("[T]he Court has both inherent authority and authority under Rule 37(b)(2) to order class certification as a form of discovery sanction"). Plaintiffs have acted in good faith and request the same of Defendants.

### 3. Defendants' Contentions, Points, and Authorities regarding Request for Production Nos. 1-5.

#### i. Defendants Produced United States Sales Data and Pricing Information.

Defendants maintain and produced sales data for the products it sold during the entire class period – literally, millions of transactions. By its nature, sales data necessarily includes pricing data, meaning the original and sale price for every product sold during the class period was provided to Plaintiffs:

- Prettylittlething.com sales transactions from February 29, 2016 to January 28, 2021 (D00000871-D00000999);
- Boohoo and BoohooMAN sales transactions from March 28, 2016 to January 24, 2021 (D00001000-D00001125); and
- Nasty Gal sales transactions from February 28, 2017 to January 24, 2021 (D00001000-D00001125).

(Shelton Decl., Ex. 1).

Plaintiffs complain because this material does not comport with their definition of "pricing information." Plaintiffs would like "daily price lists" or "daily pricing data," regardless of whether any sales were made at any given historical price. Given the millions

31

of items sold, this is extraordinarily burdensome and Plaintiffs failed to explain the relevance of historical pricing information for all products offered for sale on the U.S. websites, over a four year period, untethered from actual sales.

### ii. The Data was Produced the Way it is Maintained in the Ordinary Course of Business.

Although Plaintiffs complain that no "pricing information" has been provided, Defendants produced all the sales data in their possession – millions of sales data entries for specific products and the pricing information for each sale, consistent with Federal Rule of Civil Procedure 34. The sales data and pricing information was produced in native format in the manner in which it is maintained in the ordinary course of business. (Shelton Decl., ¶ 4).

Plaintiffs complain they do not understand the data produced. First, Plaintiffs crafted the discovery requests. Defendants responded accordingly. To the extent Plaintiffs find the information not useful or overwhelming, it is incumbent upon Plaintiffs to narrow or reframe the requests. They have refused to do so. Second, Plaintiffs requested an enormous amount of information, and it is their obligation to assess and evaluate what has been provided before attempting to conscript Defendants into assessing the production and connecting the dots between documents produced and Plaintiffs' own legal theories. If, upon that assessment, Plaintiffs have questions, Defendants stand ready to assist and, indeed, have answered specific inquiries.[3] For example, Defendants described the columns or headers within the produced sales spreadsheets in their discovery responses (*See, e.g.,* Almadani Decl., Ex. 10, Request for Production No. 1) and, as a courtesy, provided definitions of pertinent columns when Plaintiffs asked (*Id.* Ex. 27). But, Defendants are under no obligation to further explain the data provided. *See Little Hocking Water Assn., Inc. v. E.I. DuPont De Nemours & Co.*, 2013 WL 608154, *54 (S.D.Ohio

---

[3] When Plaintiffs questioned whether any of the sales data spreadsheet columns actually equate to the legal term, "reference price," Defendants responded, as a courtesy, by letter dated February 19, 2021 pursuant to the ongoing meet and confer, with definitions for the pertinent columns. (*Id.,* Ex. 27).

32

Feb.19, 2013) ("Once the documents are produced as they are kept in the ordinary course of business Rule 34 imposes no further duty to organize and label the documents to correlate to the particular request to which they are responsive."); *MGP Ingredients, Inc. v. Mars, Inc*., 2007 WL 3010343, at *4 (D. Kan. Oct. 15, 2007) (denying motion to compel defendants "to identify by Bates Numbers the documents and ESI that [were] responsive to each particular request for production," explaining that "Plaintiff was the party who formulated the requests in the manner it did and Plaintiff must take responsibility for undertaking the task of determining which documents relate to each set of its twenty-some requests.").

To the extent Plaintiffs seek further clarification on the meaning behind certain columns in the spreadsheet or have encountered inconsistencies within the data,[4] they have every right to utilize the discovery tools available to them for further inquiry.  The sales and pricing data was produced in the way it is maintained (*see* Shelton Decl., ¶ 4), and if further clarification is needed,[5] Plaintiffs can and should utilize the tools of discovery – noticing a deposition or serving an interrogatory to obtain the information they need to support their own legal conclusion.[6]

"If the producing party produces documents in the order in which they were kept in the usual course of business, the Rule imposes no duty to organize and label the documents." *Murphy v. Am. Gen. Life Ins. Co.*, No. EDCV14486JAKSPX, 2014 WL 12564111, at *2 (C.D. Cal. Sept. 12, 2014) (citing *In re G–I Holdings, Inc.*, 218 F.R.D. 428, 439 (D.N.J. 2003)); *see also, Caliper Techs. Corp. v. Molecular Devices Corp.*, 213

---

[4] Plaintiffs cite to a few examples within the sales data spreadsheets where there appears to have been data entry errors or incorrect currencies listed.  Without attempting to review, assess, or use other discovery tools to inquire, Plaintiffs label all sales data "unreliable" and conclude Defendants have been "deceptive," "unfaithful," "misleading," and "abusive" in producing its sales data. The data was produced in the way it was maintained. A motion to compel is not the proper tool to address Plaintiffs' concern.

[5] Even assuming the information is, in fact, "unreliable," as Plaintiffs speculate, this is how the information is stored. It has not been altered or manipulated. If Plaintiffs have a concern, they should take a deposition to validate that concern.

[6] Plaintiffs have, in fact, served a second set of interrogatories regarding the columns in Defendants' sales spreadsheets and the term "reference price." Defendants are in the process of assessing these discovery requests and will timely respond and object accordingly, if necessary.

33

F.R.D. 555 (N.D. Cal. 2003) (denying Plaintiff's request for a narrative response concerning produced business records, claiming that the documents provide no guidance, and holding that "[Defendant] is obliged only to give the information to [plaintiff], not to explain it"). Further, Defendants are not required to create new documents solely for the purpose of this litigation. "Rule 34 only requires a party to produce documents that are already in existence. . . . A party is not required to prepare, or cause to be prepared, new documents solely for their production." *Alexander v. F.B.I.*, 194 F.R.D. 305, 310 (D.D.C. 2000) (citations and quotations omitted).

If Plaintiffs raised these issues during the meet and confer process, perhaps they could have been discussed and avoided.  Unfortunately, despite repeated attempts by Defendants (*see infra*, section 2(C)(3)), Plaintiffs refused to discuss these matters and we are left with another area of confusion rather than actual disagreement for the Court to hear and decide.[7]

In conclusion, Defendants met their discovery obligations regarding the sales data and pricing information because they conducted a reasonable search for responsive documents and produced those documents to Plaintiffs.[8]  Plaintiffs' confusion about the meaning of documents or speculation that certain documents do not exist is not a valid basis for a motion to compel.  *Unilin Beheer B. V. v. NSL Trading Corp*, No. cv 14-2210 BRO(SSx), 2015 WL 12698284 at *6 (C. D. Cal. Sept 17, 2015) (citing *Alexander v. Federal Bureau of Investigation*, 194 F.R.D. 305, 310 (D.D.C. 2000)) ("a party's mere

---

[7] Had Plaintiffs continued the meet and confer process, Defendants could have explained specifically what information was being withheld pursuant to their objections and responses to the extent it was not clear to Plaintiffs.  Regarding the sales data, for example, Defendants have withheld information specific to customer identity and specific contact information, such as name, email address and physical address.  The sales data produced is limited to provide the geographic region only (state) because this information may be relevant to class certification issues.  Beyond this, Defendants do not see how customer contact information is relevant at this stage in the litigation.

[8] Additionally, as explained further below in Section C(3), Defendants have conducted a reasonable search for emails concerning pertinent issues in the case, like pricing, and have produced over 20,000 responsive emails and attachments, some of which relate to pricing information on certain products.

34

1  suspicion that its opponent must have documents that it claims not to have does not warrant

2  granting a motion to compel").

3  **B.    Defendants Refuse to Produce Their Policies and Procedures**

4      **Concerning Reference Pricing Practices and Markdowns/Discounts, and**

5      **Will Not Produce Memos, Marketing Research and Survey Analyses,**

6      **Training Materials, or Other Documents (*see* RFPs 6-9, 10-13, 21-22, and**

7      **33-34).**

8          **1.    Discovery in Dispute:**

9  **REQUEST FOR PRODUCTION NO. 6:**

10          Any and all DOCUMENTS relating to any memoranda, studies, analyses, surveys,

11 focus groups, reports, or other assessments of any kind whatsoever performed (whether

12 internally or by a third-party) during the time period January 1, 2016, to the present

13 concerning the use, importance, lack of importance, or effectiveness of REFERENCE

14 PRICES in connection with ADVERTISING merchandise to consumers.

15 **DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

16          Defendants incorporate by reference the General Objections set forth herein.

17 Defendants object to this Request on the grounds that it is overly broad, vague, and unduly

18 burdensome, including without limitation as to "any and all" and the terms and phrases,

19 "use, importance, lack of importance or effectiveness." Defendants object to this Request

20 to the extent that it seeks information related to Defendants' business activities outside the

21 United States. Defendants object to this Request to the extent it calls for the disclosure of

22 information subject to the attorney-client privilege, the attorney work product doctrine, or

23 any other applicable privilege. Defendants object to this Request insofar as it seeks

24 competitive sensitive business and financial information. To the extent this Request seeks

25 information contained in email correspondence, Defendants object to this Request as

26 overly broad and unduly burdensome. Defendants will withhold documents on the basis

27 of their objections to this Request. Subject to and without waiving the foregoing

28 objections, to the extent such documents exist, Defendants will agree to produce

35

responsive, non-privileged documents in its possession, custody or control constituting internal and third-party reports, analyses, and presentations concerning internal or competitor data on styles, internal or competitor data on pricing, or reference prices and advertising for Boohoo related brands. Defendants object to production of email correspondence on the grounds of overbreadth, oppression and undue burden, and lack of relevance to the limited class certification discovery authorized by the Court at this time. Due to the sheer volume of information requested, Defendants agree to meet and confer with Plaintiff in good faith to discuss whether production of additional documents beyond those specifically agreed upon in this response is feasible, will avoid undue burden and hardship on Defendants, and will be proportional to the needs of the case and the limited class certification discovery authorized by the Court at this time. To the extent Defendants agree to production of certain documents in this response, or agree to production of additional documents in the future, any such documents will be produced on a rolling basis and subject to these objections and any modifications agreed upon by the parties.

**REQUEST FOR PRODUCTION NO. 7:**

Any and all DOCUMENTS relating to any memoranda, studies, analyses, surveys, focus groups, reports, or other assessments of any kind whatsoever performed (whether internally or by a third-party) during the time period January 1, 2016, to the present concerning the use, importance, lack of importance, or effectiveness of offering sales, discounts, markdowns, or promotions in connection with ADVERTISING merchandise to consumers.

**DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

Defendants incorporate by reference the General Objections set forth herein. Defendants object to this Request on the grounds that it is overly broad, vague, and unduly burdensome, including without limitation as to "any and all" and "use, importance, lack of importance, or effectiveness of offering sales, discounts, markdowns, or promotions." Defendants object to this Request to the extent that it seeks information related to Defendants' business activities outside the United States. Defendants object to this

36

Request to the extent it calls for the disclosure of information subject to the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege. Defendants object to this Request insofar as it seeks competitive sensitive business and financial information. To the extent this Request seeks information contained in email correspondence, Defendants object to this Request as overly broad and unduly burdensome. Defendants will withhold documents on the basis of their objections to this Request. Subject to and without waiving the foregoing objections, to the extent such documents exist, Defendants will agree to produce responsive, non-privileged documents in its possession, custody or control constituting internal and third-party reports, analyses, and presentations concerning internal or competitor data on styles, internal or competitor data on pricing, or sales, discounts, markdowns, or promotions and advertising for Boohoo related brands. Defendants object to production of email correspondence on the grounds of overbreadth, oppression and undue burden, and lack of relevance to the limited class certification discovery authorized by the Court at this time. Due to the sheer volume of information requested, Defendants agree to meet and confer with Plaintiff in good faith to discuss whether production of additional documents beyond those specifically agreed upon in this response is feasible, will avoid undue burden and hardship on Defendants, and will be proportional to the needs of the case and the limited class certification discovery authorized by the Court at this time. To the extent Defendants agree to production of certain documents in this response, or agree to production of additional documents in the future, any such documents will be produced on a rolling basis and subject to these objections and any modifications agreed upon by the parties.

**REQUEST FOR PRODUCTION NO. 8:**

Any and all DOCUMENTS relating to any memoranda, studies, analyses, surveys, focus groups, reports, or other assessments of any kind whatsoever performed (whether internally or by a third-party) during the time period January 1, 2016, to the present concerning the demographics of YOUR customers in the United States, including, without limitation, their age, gender, income, race, ethnicity, location, education, and shopping

37

1  preferences either identified by the customer or noted by YOU or any artificial intelligence
2  system YOU use.

3  **DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

4       Defendants incorporate by reference the General Objections set forth herein.
5  Defendants object to this Request on the grounds that it is overly broad, vague, and unduly
6  burdensome including without limitation as to "any and all" and "artificial intelligence
7  system." Defendants object to this Request to the extent it calls for the disclosure of
8  information subject to the attorney-client privilege, the attorney work product doctrine, or
9  any other applicable privilege. Defendants object to this Request insofar as it seeks
10 competitive sensitive business and financial information. Defendants further object to this
11 Request for highly personal information of Defendants' customers relating to "their age,
12 gender, income, race, ethnicity" and "education, and shopping preferences." Such
13 information is wholly irrelevant to the certification of Plaintiff's putative class. Defendants
14 will withhold documents on the basis of their objections to this request. Other than the
15 state of the customer's residence, information regarding customer demographics is
16 irrelevant to this action and not likely to lead to the discovery of admissible evidence.
17 Defendants also object on the grounds of overbreadth, oppression and undue burden, and
18 lack of relevance to the limited class certification discovery authorized by the Court at this
19 time.

20 **REQUEST FOR PRODUCTION NO. 9:**

21      Any and all DOCUMENTS relating to any memoranda, studies, analyses, surveys,
22 focus groups, reports, or other assessments of any kind whatsoever performed (whether
23 internally or by a third-party) during the time period January 1, 2016, to the present
24 concerning the demographics of the customers YOU seek to target in the United States,
25 including, without limitation, their age, gender, income, race, ethnicity, location,
26 education, and shopping preferences either identified by the customer or noted by YOU
27 or any artificial intelligence system YOU use.

28 **DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

38

Defendants incorporate by reference the General Objections set forth herein. Defendants object to this Request on the grounds that it is overly broad, vague, and unduly burdensome including without limitation as to "any and all" and "artificial intelligence system." Defendants object to this Request to the extent it calls for the disclosure of information subject to the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege. Defendants object to this Request insofar as it seeks competitive sensitive business and financial information. Defendants further object to this Request for highly personal information of Defendants' customers relating to "their age, gender, income, race, ethnicity" and "education, and shopping preferences." Such information is wholly irrelevant to the certification of Plaintiff's putative class. Defendants will withhold documents on the basis of their objections to this Request. Other than the state of the customer's residence, information regarding customer demographics is irrelevant to this action and not likely to lead to the discovery of admissible evidence. Defendants also object on the grounds of overbreadth, oppression and undue burden, and lack of relevance to the limited class certification discovery authorized by the Court at this time.

**REQUEST FOR PRODUCTION NO. 10:**

Any and all PowerPoint presentations, memoranda, reports, or other DOCUMENTS provided or presented to YOUR officers, directors, or executives concerning the use of sales, discounts, markdowns, or promotions in connection with ADVERTISING YOUR PRODUCTS on YOUR WEBSITE.

**DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

Defendants incorporate by reference the General Objections set forth herein. Defendants object to this Request on the grounds that it is overly broad, vague, and unduly burdensome including without limitation as to "any and all." Defendants object to this Request to the extent that it seeks information related to Defendants' business activities outside the United States. Defendants object to this Request to the extent it calls for the disclosure of information subject to the attorney-client privilege, the attorney work

39

product doctrine, or any other applicable privilege. Defendants object to this Request insofar as it seeks competitive sensitive business and financial information. To the extent this Request seeks information contained in email correspondence, Defendants object to this Request as overly broad and unduly burdensome.

Defendants will withhold documents on the basis of their objections to this request. Subject to and without waiving the foregoing objections, to the extent such documents exist, Defendants will conduct a reasonable search and produce responsive, non-privileged documents in its possession, custody or control in response to this Request that specifically discuss reference prices in connection with advertising on the U.S. website. Defendants object to production of email correspondence on the grounds of overbreadth, oppression and undue burden, and lack of relevance to the limited class certification discovery authorized by the Court at this time. Due to the sheer volume of information requested, Defendants agree to meet and confer with Plaintiff in good faith to discuss whether production of additional documents beyond those specifically agreed upon in this response is feasible, will avoid undue burden and hardship on Defendants, and will be proportional to the needs of the case and the limited class certification discovery authorized by the Court at this time. To the extent Defendants agree to production of certain documents in this response, or agree to production of additional documents in the future, any such documents will be produced on a rolling basis and subject to these objections and any modifications agreed upon by the parties.

**REQUEST FOR PRODUCTION NO. 11:**

Any and all PowerPoint presentations, memoranda, reports, or other DOCUMENTS provided or presented to YOUR officers, directors, or executives concerning the use of REFERENCE PRICES in connection with ADVERTISING YOUR PRODUCTS on YOUR WEBSITE.

**DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

Defendants incorporate by reference the General Objections set forth herein. Defendants object to this Request on the grounds that it is overly broad, vague, and unduly

40

burdensome including without limitation as to "any and all." Defendants object to this Request to the extent that it seeks information related to Defendants' business activities outside the United States. Defendants object to this Request to the extent it calls for the disclosure of information subject to the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege. Defendants object to this Request insofar as it seeks competitive sensitive business and financial information. To the extent this Request seeks information contained in email correspondence, Defendants object to this Request as overly broad and unduly burdensome.

Defendants will withhold documents on the basis of their objections to this request. Subject to and without waiving the foregoing objections, to the extent such documents exist, Defendants will conduct a reasonable search and produce responsive, non-privileged documents in its possession, custody or control in response to this Request that specifically discuss reference prices in connection with advertising on the U.S. website. Defendants object to production of email correspondence on the grounds of overbreadth, oppression and undue burden, and lack of relevance to the limited class certification discovery authorized by the Court at this time. Due to the sheer volume of information requested, Defendants agree to meet and confer with Plaintiff in good faith to discuss whether production of additional documents beyond those specifically agreed upon in this response is feasible, will avoid undue burden and hardship on Defendants, and will be proportional to the needs of the case and the limited class certification discovery authorized by the Court at this time. To the extent Defendants agree to production of certain documents in this response, or agree to production of additional documents in the future, any such documents will be produced on a rolling basis and subject to these objections and any modifications agreed upon by the parties.

**REQUEST FOR PRODUCTION NO. 12:**

Any and all PowerPoint presentations, memoranda, reports, or other DOCUMENTS provided or presented to employees or contractors within YOUR organization concerning the use of sales, discounts, markdowns, promotions, or REFERENCE PRICES in

41

connection with ADVERTISING YOUR PRODUCTS on YOUR WEBSITE.

**DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

Defendants incorporate by reference the General Objections set forth herein. Defendants object to this Request on the grounds that it is overly broad, vague, and unduly burdensome including without limitation as to "any and all." Defendants object to this Request to the extent that it seeks information related to Defendants' business activities outside the United States. Defendants object to this Request to the extent it calls for the disclosure of information subject to the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege. Defendants object to this Request insofar as it seeks competitive sensitive business and financial information. To the extent this Request seeks information contained in email correspondence, Defendants object to this Request as overly broad and unduly burdensome.

Defendants will withhold documents on the basis of their objections to this request. Subject to and without waiving the foregoing objections, to the extent such documents exist, Defendants will agree to produce responsive, non-privileged documents in its possession, custody or control constituting internal and third-party reports, analyses, and presentations concerning internal or competitor data on styles, internal or competitor data on pricing, or sales, discounts, markdowns, or promotions and advertising for Boohoo related brands. Defendants object to production of email correspondence on the grounds of overbreadth, oppression and undue burden, and lack of relevance to the limited class certification discovery authorized by the Court at this time. Due to the sheer volume of information requested, Defendants agree to meet and confer with Plaintiff in good faith to discuss whether production of additional documents beyond those specifically agreed upon in this response is feasible, will avoid undue burden and hardship on Defendants, and will be proportional to the needs of the case and the limited class certification discovery authorized by the Court at this time. To the extent Defendants agree to production of certain documents in this response, or agree to production of additional documents in the future, any such documents will be produced on a rolling basis and

42

1    subject to these objections and any modifications agreed upon by the parties.

2    **REQUEST FOR PRODUCTION NO. 13:**

3         Any and all PowerPoint presentations, memoranda, reports, or other DOCUMENTS

4    provided or presented to investors, potential investors, or other third parties concerning

5    the use of sales, discounts, markdowns, promotions, or REFERENCE PRICES in

6    connection with ADVERTISING YOUR PRODUCTS on YOUR WEBSITE.

7    **DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

8         Defendants incorporate by reference the General Objections set forth herein.

9    Defendants object to this Request on the grounds that it is overly broad, vague, and unduly

10   burdensome including without limitation as to "any and all." Defendants object to this

11   Request to the extent that it seeks information related to Defendants' business activities

12   outside the United States. Defendants object to this Request to the extent it calls for the

13   disclosure of information subject to the attorney-client privilege, the attorney work

14   product doctrine, or any other applicable privilege. Defendants object to this Request

15   insofar as it seeks competitive sensitive business and financial information.

16        Defendants will withhold documents on the basis of their objections to this request.

17   Subject to and without waiving the foregoing objections, to the extent such documents

18   exist, Defendants will conduct a reasonable search and produce responsive, non-privileged

19   documents in its possession, custody or control in response to this Request that are directed

20   to investors and/or third parties and specifically discuss reference prices in connection

21   with advertising on the U.S. website. Defendants object to production of email

22   correspondence on the grounds of overbreadth, oppression and undue burden, and lack of

23   relevance to the limited class certification discovery authorized by the Court at this time.

24   Due to the sheer volume of information requested, Defendants agree to meet and confer

25   with Plaintiff in good faith to discuss whether production of additional documents beyond

26   those specifically agreed upon in this response is feasible, will avoid undue burden and

27   hardship on Defendants, and will be proportional to the needs of the case and the limited

28   class certification discovery authorized by the Court at this time. To the extent Defendants

43

agree to production of certain documents in this response, or agree to production of additional documents in the future, any such documents will be produced on a rolling basis and subject to these objections and any modifications agreed upon by the parties.

**REQUEST FOR PRODUCTION NO. 21:**

Any and all memoranda, reports, presentations, analyses, training materials, e-mails, correspondence, or other DOCUMENTS constituting, reflecting, or relating to YOUR policies and procedures concerning REFERENCE PRICES ADVERTISED for YOUR PRODUCTS on YOUR WEBSITE during the CLASS PERIOD.

**DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

Defendants incorporate by reference the General Objections set forth herein. Defendants object to this Request on the grounds that it is overly broad, vague, and unduly burdensome including without limitation as to "any and all." Defendants object to this Request to the extent that it seeks information related to Defendants' business activities outside the United States. Defendants object to this Request to the extent it calls for the disclosure of information subject to the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege. Defendants object to this Request insofar as it seeks competitive sensitive business and financial information. To the extent this Request seeks information contained in email correspondence, Defendants object to this Request as overly broad and unduly burdensome.

Defendants will withhold documents on the basis of their objections to this request. Subject to and without waiving the foregoing objections, to the extent such documents exist, Defendants will agree to produce responsive, non-privileged documents in its possession, custody or control constituting internal and third-party reports, analyses, and presentations concerning internal or competitor data on styles, internal or competitor data on pricing, or reference prices and advertising for Boohoo related brands. Defendants object to production of email correspondence on the grounds of overbreadth, oppression and undue burden, and lack of relevance to the limited class certification discovery authorized by the Court at this time. Due to the sheer volume of information requested,

44

Defendants agree to meet and confer with Plaintiff in good faith to discuss whether production of additional documents beyond those specifically agreed upon in this response is feasible, will avoid undue burden and hardship on Defendants, and will be proportional to the needs of the case and the limited class certification discovery authorized by the Court at this time. To the extent Defendants agree to production of certain documents in this response, or agree to production of additional documents in the future, any such documents will be produced on a rolling basis and subject to these objections and any modifications agreed upon by the parties.

**REQUEST FOR PRODUCTION NO. 22:**

Any and all memoranda, reports, presentations, analyses, training materials, e-mails, correspondence, or other DOCUMENTS constituting, reflecting, or relating to YOUR policies and procedures concerning the offering of sales, markdowns, discounts, or promotions for YOUR PRODUCTS on YOUR WEBSITE during the CLASS PERIOD.

**DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

Defendants incorporate by reference the General Objections set forth herein. Defendants object to this Request on the grounds that it is overly broad, vague, and unduly burdensome including without limitation as to "any and all." Defendants object to this Request to the extent that it seeks information related to Defendants' business activities outside the United States. Defendants object to this Request to the extent it calls for the disclosure of information subject to the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege. Defendants object to this Request insofar as it seeks competitive sensitive business and financial information. To the extent this Request seeks information contained in email correspondence, Defendants object to this Request as overly broad and unduly burdensome.

Defendants will withhold documents on the basis of their objections to this request. Subject to and without waiving the foregoing objections, to the extent such documents exist, Defendants will agree to produce responsive, non-privileged documents in its possession, custody or control constituting internal and third-party reports, analyses, and

45

presentations concerning internal or competitor data on styles, internal or competitor data on pricing, or reference prices and advertising for Boohoo related brands. Defendants object to production of email correspondence on the grounds of overbreadth, oppression and undue burden, and lack of relevance to the limited class certification discovery authorized by the Court at this time. Due to the sheer volume of information requested, Defendants agree to meet and confer with Plaintiff in good faith to discuss whether production of additional documents beyond those specifically agreed upon in this response is feasible, will avoid undue burden and hardship on Defendants, and will be proportional to the needs of the case and the limited class certification discovery authorized by the Court at this time. To the extent Defendants agree to production of certain documents in this response, or agree to production of additional documents in the future, any such documents will be produced on a rolling basis and subject to these objections and any modifications agreed upon by the parties.

**REQUEST FOR PRODUCTION NO. 33:**

Any and all memoranda, guides, manuals, tutorials, handbooks, or other DOCUMENTS YOU use to train or educate YOUR employees regarding the use of REFERENCE PRICES on YOUR WEBSITE during the CLASS PERIOD.

**DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**

Defendants incorporate by reference the General Objections set forth herein. Defendants object to this Request on the grounds that it is overly broad, vague, and unduly burdensome, including without limitation as to "any and all." Defendants object to this Request to the extent that it seeks information related to Defendants' business activities outside the United States. Defendants object to this Request to the extent it calls for the disclosure of information subject to the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege. Defendants object to this Request insofar as it seeks competitive sensitive business and financial information. To the extent this Request seeks information contained in email correspondence, Defendants object to this Request as overly broad and unduly burdensome.

1    Defendants will withhold documents on the basis of their objections to this request.

2    Subject to and without waiving the foregoing objections, to the extent such documents

3    exist, Defendants will agree to produce responsive, non-privileged documents in its

4    possession, custody or control constituting internal and third-party reports, analyses, and

5    presentations concerning internal or competitor data on styles, internal or competitor data

6    on pricing, or reference prices and advertising for Boohoo related brands. Defendants

7    object to production of email correspondence on the grounds of overbreadth, oppression

8    and undue burden, and lack of relevance to the limited class certification discovery

9    authorized by the Court at this time. Due to the sheer volume of information requested,

10   Defendants agree to meet and confer with Plaintiff in good faith to discuss whether

11   production of additional documents beyond those specifically agreed upon in this response

12   is feasible, will avoid undue burden and hardship on Defendants, and will be proportional

13   to the needs of the case and the limited class certification discovery authorized by the

14   Court at this time. To the extent Defendants agree to production of certain documents in

15   this response, or agree to production of additional documents in the future, any such

16   documents will be produced on a rolling basis and subject to these objections and any

17   modifications agreed upon by the parties.

18   **REQUEST FOR PRODUCTION NO. 34:**

19       Any and all memoranda, guides, manuals, tutorials, handbooks, or other

20   DOCUMENTS YOU use to train or educate YOUR employees regarding the offering of

21   sales, markdowns, discounts, or promotions on YOUR WEBSITE during the CLASS

22   PERIOD.

23   **DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

24       Defendants incorporate by reference the General Objections set forth herein.

25   Defendants object to this Request on the grounds that it is overly broad, vague, and unduly

26   burdensome, including without limitation as to "any and all." Defendants object to this

27   Request to the extent that it seeks information related to Defendants' business activities

28   outside the United States. Defendants object to this Request to the extent it calls for the

47

disclosure of information subject to the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege. Defendants object to this Request insofar as it seeks competitive sensitive business and financial information. To the extent this Request seeks information. contained in email correspondence, Defendants object to this Request as overly broad and unduly burdensome.

Defendants will withhold documents on the basis of their objections to this request. Subject to and without waiving the foregoing objections, to the extent such documents exist, Defendants will agree to produce responsive, non-privileged documents in its possession, custody or control constituting internal and third-party reports, analyses, and presentations concerning internal or competitor data on styles, internal or competitor data on pricing, or reference prices and advertising for Boohoo related brands. Defendants object to production of email correspondence on the grounds of overbreadth, oppression and undue burden, and lack of relevance to the limited class certification discovery authorized by the Court at this time. Due to the sheer volume of information requested, Defendants agree to meet and confer with Plaintiff in good faith to discuss whether production of additional documents beyond those specifically agreed upon in this response is feasible, will avoid undue burden and hardship on Defendants, and will be proportional to the needs of the case and the limited class certification discovery authorized by the Court at this time. To the extent Defendants agree to production of certain documents in this response, or agree to production of additional documents in the future, any such documents will be produced on a rolling basis and subject to these objections and any modifications agreed upon by the parties.

## 2. Plaintiffs' Contentions, Points, and Authorities Regarding Request for Production Nos. 6-9, 10-13, 21-22, and 33-34.

As shown above, Defendants, relying on meritless boilerplate objections they repeatedly copied and pasted throughout their responses, refuse to produce documents and electronically stored information ("ESI") responsive to the following RFPs:

48

- **RFPs 6-9** (surveys and analyses re: reference prices, offering of sales, discounts, markdowns, etc., and Defendants' customer demographics)

- **RFP 10-13** (internal and investor PowerPoints, memos, and reports re: reference prices, and offering of sales, discounts, markdowns, etc.)

- **RFP 21-22** (policies and procedures re: reference prices, offering of sales, discounts, markdowns, etc., and all communications, presentations, memos, and training materials regarding same)

- **RFP 33-34** (memos, guides, manuals, handbooks re: training of employees regarding reference prices, and offering of sales, discounts, markdowns, etc.)

Case precedent from district courts and magistrates in California firmly establishes that the internal documents sought in the RFPs above are highly relevant to class certification. For example, in a class action, "marketing research and data that the defendants may possess which bears on whether consumer choice of product to purchase is affected by the product claim in question is relevant and discoverable." *Martinelli v. Johnson & Johnson*, No. 215CV1733MCEEFBTEMP, 2016 WL 4055040, at *4 (E.D. Cal. July 28, 2016); *Woodard v. Labrada,* No. EDCV16189JGBSPX, 2018 WL 6930767, at *6 (C.D. Cal. Jan. 11, 2018) ("To the extent such information is available and outstanding, plaintiff is entitled to such discovery relating to Naturex's consumer research, as this would relate to how the company's products are perceived by reasonable consumers in this false advertising dispute.")

Similarly, class discovery requests concerning "how Defendants perceived their own representations, how they intended consumers to perceive those representations, and how they understood customers to perceive those representations . . . are relevant because Plaintiffs could use such evidence as common proof that Defendants chose to advertise in a certain way to impact its consumers' choice." *In re: Coca-Cola Prod. Mktg. & Sales Practices Litig.* (No. II), No. 14MD02555JSWMEJ, 2016 WL 6245899, at *5 (N.D. Cal. Oct. 26, 2016). In other words, "[i]f Defendants believed their representations would cause consumers to react in a certain way, and developed the representations to achieve that

49

result, that evidence could be probative common proof of whether Defendants expected a reasonable person to rely upon the representations in deciding to purchase the product." *Id.*; *see also Ang v. Bimbo Bakeries USA, Inc.*, No. 13–cv–01196 WHO (NC), 2014 WL 1940178, at *2 (N.D. Cal. May 14, 2014) (finding as relevant discovery seeking "information about defendant's marketing and labeling decisions" including its "intent, motive, and knowledge").

In *Martin v. Monsanto Co.*, for example, the court found that "Plaintiff is entitled to discovery relating to consumer research as requested in RFP number 10. Other courts have held that discovery of a defendant's marketing and labeling decisions are relevant in a consumer class action dispute." No. EDCV162168JFWSPX, 2017 WL 5172205, at *4 (C.D. Cal. Apr. 10, 2017). The Court also found that "a plaintiff may seek discovery into how a defendant perceived its own representations, including how it intended consumers to perceive them because it relates to impact on consumer choice and purchasing." *Id.* By way of further example, in *Martinelli v. Johnson & Johnson*, the court rejected the defendant's argument that "internal documents and communications regarding what they may have intended to communicate to consumers on the product labels is simply not probative of what a reasonable consumer actually understood." No. 2:15-cv-1733-MCE-EFB (TEMP), 2016 WL 4055040, at *3 (E.D. Cal. July 28, 2016). The court found that "internal marketing materials" were relevant to class certification because "[w]hatever information, marketing data, research and analysis defendants possess that shows whether consumers favorably respond to sales strategies centered on [the defendant's claims on product labels] is relevant to whether that reasonable person standard is satisfied." *Id.*

The above-requested internal documents, which encompass documents reflecting Defendants' own impressions of how consumers would perceive their representations in the form of reference prices and markdowns, are also relevant to establishing materiality on a classwide basis. *See*, *e.g.*, *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 326 F.R.D. 592, 614 (N.D. Cal. 2018) ("Plaintiffs are aided in demonstrating materiality by defendant's internal documents, which demonstrate that 'Made From Real Ginger' proved

50

to be valuable in selling Canada Dry."); *Kumar v. Salov N. Am. Corp.*, No. 14-CV-2411-YGR, 2016 WL 3844334, at *8 (N.D. Cal. Jul. 15, 2016) ("Materiality can be shown by a third party's, or defendant's own, market research showing the importance of such representations to purchasers."); *Mullins v. Premier Nutrition Corp.*, No. 13-cv-01271 RS, 2016 WL 1535057, at *3 (N.D. Cal. Apr. 15, 2016) (defendant's own "[m]arketing research suggests the overwhelming majority of Joint Juice users purchased the product to obtain these benefits, and thus there is a reason to believe the represented health benefits were material.")

Here, Defendants should be compelled to produce documents and ESI in their possession, custody, or control that are responsive to RFPs 6-13, 21-22, and 33-34.  As the case law cited above demonstrates, the information sought by Plaintiffs' RFPs is highly relevant to class certification. With these documents, Plaintiffs intend to prove that Defendants had a companywide policy and practice during the class period to advertise false reference prices and use fake sales on their U.S. websites to deceive and prey upon class members who purchased Defendants' products exclusively from the subject websites. These documents are also probative of Defendants' decision-making concerning use of the reference-pricing scheme and markdown/discount practices, how Defendants perceived these practices to be useful, how they believed their customers' purchasing behavior would be impacted as a result of these practices, and what their own surveys, market research, and consumer data revealed about the effectiveness of these practices. Documents (both internal and external) such as memos, presentations, guides, and training materials are also relevant, as they all contain Defendants' admissions concerning their use of reference-pricing and markdown practices across the class.

Therefore, Plaintiffs anticipate the requested documents will supply common proof relevant to a number of class certification issues concerning commonality and predominance, including, without limitation, the existence and prevalence of conduct that is unlawful, the materiality of the false reference prices and fake promotions, classwide reliance, Defendants' intent, motive, and knowledge, and the ability to compute damages

51

on a classwide basis under the standard set forth in *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013). Indeed, Defendants do not concede any Rule 23 requirement. Plaintiffs thus must be permitted to obtain the requested discovery to be in a position to respond to all of Defendants' potential arguments. Defendants should therefore be ordered to produce all documents responsive to RFPs 6-9, 10-13, 21-22, and 33-34.

Defendants' argument that they should be relieved of their obligation to produce documents relevant to class certification because of the volume of data measured in Gigabytes that they have produced is unavailing. The volume of data is irrelevant. That Defendants produced documents they perceived to be helpful to *their* defenses does not satisfy their discovery obligations pertaining to the clearly discoverable information Plaintiffs have requested. If in every case the parties could simply ignore their opponents' requests and escape their discovery obligations by producing large volumes of data that is exclusively helpful to their own cause, the rules of discovery would lose all meaning. Defendants' production must include internal documents, such as memos, surveys, reports, and presentations, concerning Defendants' own reference pricing and discount/markdown strategies and their impact on the behavior of their customers. It is not sufficient for Defendants to cherry-pick only documents comparing their products and prices to competitors, which is not relevant to the issues in this case and is not what Plaintiffs requested.

Defendants contend that they have already produced all documents responsive to RFPs 6-9, 10-13, 21-22, and 33-34. However, their written responses tell a completely different story. Defendants assert a number of broad objections, including objections on the grounds of undue burden, breadth, ambiguity of the request, the competitive sensitivity of the information, that the requests may seek information concerning business activities outside the United States, and that they object to producing e-mails. Defendants then follow up these objections with a statement that "Defendants will withhold documents on the basis of their objections to this request." Defendants' carefully crafted statements on the limited items they will produce and their cherry-picking of examples of responsive

documents do not cure the fundamental problem, namely, that Plaintiffs are left in the dark on what Defendants are withholding from the production.

Rule 34 does not allow such shell games. It requires clear communication in written responses to document demands. "For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons."  Fed. R. Civ. P. 34(b)(2)(B).   "An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest."  Fed. R. Civ. P. 34(b)(2)(C).  Stated differently:

> In responding to discovery requests, a reasonable inquiry must be made, and if no responsive documents or tangible things exist, Fed. R. Civ. P. 26(g)(1), the responding party should so state with sufficient specificity to allow the Court to determine whether the party made a reasonable inquiry and exercised due diligence, *Uribe v. McKesson*, No. 08cv1285 DMS (NLS), 2010 WL 892093, at *2-3 (E.D. Cal. Mar. 9, 2010). If responsive documents do exist but the responsive party claims lack of possession, control, or custody, the party must so state with sufficient specificity to allow the Court (1) to conclude that the responses were made after a case-specific evaluation and (2) to evaluate the merit of that response. *Ochotorena v. Adams*, No. 1:05-cv-01525-LJO-DLB (PC), 2010 WL 1035774, at *3-4 (E.D. Cal. Mar. 19, 2010).

*Williams v. Alcala*, No. 117CV00916DADSABPC, 2018 WL 4203692, at *2 (E.D. Cal. Aug. 31, 2018).

Here, Defendants' written responses clearly communicate that they have only made a partial production and that additional responsive documents are being withheld on the basis of extremely broad and opaque objections. This cannot be squared with the bald representations of Defendants' attorneys that they have produced all responsive documents. Therefore, the Court should enter an order compelling Defendants to produce all documents responsive to RFPs 6-9, 10-3, 21-22, and 33-34 in their possession, custody, or control, without objections. And, if Defendants are withholding any responsive

53

1   documents or categories of documents, as their discovery responses (not counsel's letter)

2   state, then they must identify each of those documents or category of documents *in their*

3   *discovery responses*, and provide their basis for not producing the responsive discovery.

4           **3.   Defendants' Contentions, Points, and Authorities regarding**

5           **Request for Production Nos. 6-9, 10-13, 21-22, 33-34.**

6         After a reasonable search, Defendants produced all responsive documents that they

7   could identify, reflecting internal and external presentations, reports, and studies that

8   concern and influence decisions on pricing and advertising, along with consumer research

9   and brand awareness materials, within the productions of non-email documents made on

10  February 4, February 10 and March 8 at: D00000016-D00000125, D00000127-

11  D00000869, D00001126-D00001130, D00001132-D00016200, D00081500-D00082504

12  and D00223258-D00224108.[9] (Shelton Decl., Exs. 1, 2, and 5).  As communicated through

13  the meet and confer process, to the extent these materials exist, they have been produced.

14  (Almadani Decl., Ex. 28).  These materials include, for example: various reports and

15  analyses such as, Boohoo Price & Range Survey on USA Women's Clothing; an Edited

16  Report on Jumpsuits, Playsuits and Shorts containing price point analysis for Boohoo

17  dated November 2018; customer research data and brand awareness reports, such as a

18  Nasty Gal USA & UK Customer Research report dated March 2018, a Boohoo Brand

19  Metrics and Brand Awareness Report for USA dated August 2020, and a PLT Brand

20  Metrics and Brand Awareness Report for USA dated November 2020. (*Id.*).

21        As with the sales data, Plaintiffs similarly claim there are inconsistencies between

22  Defendants' discovery responses and the positions of Defendants' counsel during the meet

23  and confer process and from this assume that Defendants made only a partial production

24  and not complied with their discovery obligations.  Defendants maintain there is no

25  inconsistency.  However, to the extent Plaintiffs are confused, this is precisely why the

26  meet and confer process is a requirement under the local rules.  Defendants urged Plaintiffs

27

28  _____
[9] Additionally, responsive information to these requests may also be captured in the email productions made on February 19, February 26, March 8 and March 9.

to continue to meet and confer to further narrow the issues for the Court, but Plaintiffs elected not to engage further.[10]

Last, Plaintiffs complain that Defendants are selectively choosing to produce documents responsive to these requests which are "helpful" to Defendants' case and otherwise withholding others.  Defendants affirm they produced all responsive and non-privileged documents identified and in their possession, custody or control.  Plaintiffs' speculation that certain documents do not exist is not a valid basis for a motion to compel. *Unilin Beheer B. V. v. NSL Trading Corp*, No. cv 14-2210 BRO(SSx), 2015 WL 12698284 at *6 (C. D. Cal. Sept 17, 2015) (citing *Alexander v. Federal Bureau of Investigation*, 194 F.R.D. 305, 310 (D.D.C. 2000)) ("a party's mere suspicion that its opponent must have documents that it claims not to have does not warrant granting a motion to compel").

C.    <u>**Defendants' Approach to Search For and Produce E-mails and Other Communications Relating to Their Advertisement of Reference Prices, and of Discounts, Markdowns, and Sales, Is Flawed Because It Is Designed to Omit Relevant Information (*see* RFPs 23-29).**</u>

1.    **Discovery in Dispute:**

**<u>REQUEST FOR PRODUCTION NO. 23:</u>**

Any and all internal memoranda, correspondence, e-mails, social media messages, or other DOCUMENTS exchanged between or amongst YOUR officers, directors, employees, contractors, or agents relating to (a) REFERENCE PRICES ADVERTISED on YOUR WEBSITE during the CLASS PERIOD, or (b) the use of sales, discounts, markdowns, or promotions in connection with ADVERTISING YOUR PRODUCTS on YOUR WEBSITE during the CLASS PERIOD.

**<u>DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION NO. 23:</u>**

---

[10] Had Plaintiffs continued the meet and confer process, Defendants could have explained that they have conducted a reasonable search for responsive material to these requests and produced all non-privileged, responsive documents within their possession, custody, or control.  Defendants conveyed this in their last correspondence, to which Plaintiffs elected not to engage further on the meet and confer process and filed this motion instead. (Almadani Decl., Exs. 28-29).

Defendants incorporate by reference the General Objections set forth herein. Defendants object to this Request on the grounds that it is overly broad, vague, and unduly burdensome, including without limitation as to "any and all." Defendants object to this Request to the extent that it seeks information related to Defendants' business activities outside the United States. Defendants object to this Request to the extent it calls for the disclosure of information subject to the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege. Defendants object to this Request insofar as it seeks competitive sensitive business and financial information. To the extent this Request seeks information contained in email correspondence, Defendants object to this Request as overly broad and unduly burdensome.

Defendants will withhold documents on the basis of their objections to this request. Defendants object to production of email correspondence on the grounds of overbreadth, oppression and undue burden, and lack of relevance to the limited class certification discovery authorized by the Court at this time. Due to the sheer volume of information requested, Defendants agree to meet and confer with Plaintiff in good faith to discuss whether production of documents responsive to this Request is feasible, will avoid undue burden and hardship on Defendants, and will be proportional to the needs of the case and the limited class certification discovery authorized by the Court at this time. To the extent Defendants agree to production of additional documents in the future, any such documents will be produced on a rolling basis and subject to these objections and any modifications agreed upon by the parties.

**REQUEST FOR PRODUCTION NO. 24:**

Any and all internal memoranda, correspondence, e-mails, social media messages, or other DOCUMENTS exchanged between or amongst YOUR officers, directors, employees, contractors, or agents relating to (a) REFERENCE PRICES ADVERTISED on YOUR WEBSITE during the CLASS PERIOD, or (b) the use of sales, discounts, markdowns, or promotions in connection with ADVERTISING YOUR PRODUCTS on YOUR WEBSITE during the CLASS PERIOD.

56

**DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

Defendants incorporate by reference the General Objections set forth herein. Defendants object to this Request on the grounds that it is overly broad, vague, and unduly burdensome including without limitation as to "any and all." Defendants object to this Request to the extent that it seeks information related to Defendants' business activities outside the United States. Defendants object to this Request to the extent it calls for the disclosure of information subject to the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege. Defendants object to this Request insofar as it seeks competitive sensitive business and financial information. To the extent this Request seeks information contained in email correspondence, Defendants object to this Request as overly broad and unduly burdensome.

Defendants will withhold documents on the basis of their objections to this request. Defendants object to production of email correspondence on the grounds of overbreadth, oppression and undue burden, and lack of relevance to the limited class certification discovery authorized by the Court at this time. Due to the sheer volume of information requested, Defendants agree to meet and confer with Plaintiff in good faith to discuss whether production of documents responsive to this Request is feasible, will avoid undue burden and hardship on Defendants, and will be proportional to the needs of the case and the limited class certification discovery authorized by the Court at this time. To the extent Defendants agree to production of additional documents in the future, any such documents will be produced on a rolling basis and subject to these objections and any modifications agreed upon by the parties.

**REQUEST FOR PRODUCTION NO. 25:**

Any and all memoranda, correspondence, e-mails, social media messages, or other DOCUMENTS exchanged between Mahmud Kamani, on the one hand, and any other person on the other hand, relating to (a) REFERENCE PRICES ADVERTISED on YOUR WEBSITE during the CLASS PERIOD, or (b) the use of sales, discounts, markdowns, or promotions in connection with ADVERTISING YOUR PRODUCTS on YOUR

57

1   WEBSITE during the CLASS PERIOD.

2   **DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

3           Defendants incorporate by reference the General Objections set forth herein.

4   Defendants object to this Request on the grounds that it is overly broad, vague, and unduly

5   burdensome, including without limitation as to "any and all." Defendants object to this

6   Request to the extent that it seeks information related to Defendants' business activities

7   outside the United States. Defendants object to this Request to the extent it calls for the

8   disclosure of information subject to the attorney-client privilege, the attorney work

9   product doctrine, or any other applicable privilege. Defendants object to this Request

10  insofar as it seeks competitive sensitive business and financial information. To the extent

11  this Request seeks information contained in email correspondence, Defendants object to

12  this Request as overly broad and unduly burdensome.

13          Defendants will withhold documents on the basis of their objections to this request.

14  Defendants object to production of email correspondence on the grounds of overbreadth,

15  oppression and undue burden, and lack of relevance to the limited class certification

16  discovery authorized by the Court at this time. Due to the sheer volume of information

17  requested, Defendants agree to meet and confer with Plaintiff in good faith to discuss

18  whether production of documents responsive to this Request is feasible, will avoid undue

19  burden and hardship on Defendants, and will be proportional to the needs of the case and

20  the limited class certification discovery authorized by the Court at this time. To the extent

21  Defendants agree to production of additional documents in the future, any such documents

22  will be produced on a rolling basis and subject to these objections and any modifications

23  agreed upon by the parties.

24  **REQUEST FOR PRODUCTION NO. 26:**

25          Any and all memoranda, correspondence, e-mails, social media messages, or other

26  DOCUMENTS exchanged between Carol Kane, on the one hand, and any other person on

27  the other hand, relating to (a) REFERENCE PRICES ADVERTISED on YOUR

28  WEBSITE during the CLASS PERIOD, or (b) the use of sales, discounts, markdowns, or

58

1   promotions in connection with ADVERTISING YOUR PRODUCTS on YOUR
2   WEBSITE during the CLASS PERIOD.

3   **DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

4         Any and all memoranda, correspondence, e-mails, social media messages, or other
5   DOCUMENTS exchanged between Carol Kane, on the one hand, and any other person on
6   the other hand, relating to (a) REFERENCE PRICES ADVERTISED on YOUR
7   WEBSITE during the CLASS PERIOD, or (b) the use of sales, discounts, markdowns, or
8   promotions in connection with ADVERTISING YOUR PRODUCTS on YOUR
9   WEBSITE during the CLASS PERIOD.

10        Defendants incorporate by reference the General Objections set forth herein.
11  Defendants object to this Request on the grounds that it is overly broad, vague, and unduly
12  burdensome as including without limitation to "any and all." Defendants object to this
13  Request to the extent that it seeks information related to Defendants' business activities
14  outside the United States. Defendants object to this Request to the extent it calls for the
15  disclosure of information subject to the attorney-client privilege, the attorney work
16  product doctrine, or any other applicable privilege. Defendants object to this Request
17  insofar as it seeks competitive sensitive business and financial information. To the extent
18  this Request seeks information contained in email correspondence, Defendants object to
19  this Request as overly broad and unduly burdensome.

20  **REQUEST FOR PRODUCTION NO. 27:**

21        Any and all memoranda, correspondence, e-mails, social media messages, or other
22  DOCUMENTS exchanged between Umar Kamani, on the one hand, and any other person
23  on the other hand, relating to (a) REFERENCE PRICES ADVERTISED on YOUR
24  WEBSITE during the CLASS PERIOD, or (b) the use of sales, discounts, markdowns, or
25  promotions in connection with ADVERTISING YOUR PRODUCTS on YOUR
26  WEBSITE during the CLASS PERIOD.

27  **DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

28        Any and all memoranda, correspondence, e-mails, social media messages, or other

DOCUMENTS exchanged between Umar Kamani, on the one hand, and any other person on the other hand, relating to (a) REFERENCE PRICES ADVERTISED on YOUR WEBSITE during the CLASS PERIOD, or (b) the use of sales, discounts, markdowns, or promotions in connection with ADVERTISING YOUR PRODUCTS on YOUR WEBSITE during the CLASS PERIOD.

Defendants incorporate by reference the General Objections set forth herein. Defendants object to this Request on the grounds that it is overly broad, vague, and unduly burdensome, including without limitation as to "any and all." Defendants object to this Request to the extent that it seeks information related to Defendants' business activities outside the United States. Defendants object to this Request to the extent it calls for the disclosure of information subject to the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege. Defendants object to this Request insofar as it seeks competitive sensitive business and financial information. To the extent this Request seeks information contained in email correspondence, Defendants object to this Request as overly broad and unduly burdensome.

Defendants will withhold documents on the basis of their objections to this request. Defendants object to production of email correspondence on the grounds of overbreadth, oppression and undue burden, and lack of relevance to the limited class certification discovery authorized by the Court at this time. Due to the sheer volume of information requested, Defendants agree to meet and confer with Plaintiff in good faith to discuss whether production of documents responsive to this Request is feasible, will avoid undue burden and hardship on Defendants, and will be proportional to the needs of the case and the limited class certification discovery authorized by the Court at this time. To the extent Defendants agree to production of additional documents in the future, any such documents will be produced on a rolling basis and subject to these objections and any modifications agreed upon by the parties.

**REQUEST FOR PRODUCTION NO. 28:**

Any and all memoranda, correspondence, e-mails, social media messages, or other

60

DOCUMENTS exchanged between John Lyttle, on the one hand, and any other person on the other hand, relating to (a) REFERENCE PRICES ADVERTISED on YOUR WEBSITE during the CLASS PERIOD, or (b) the use of sales, discounts, markdowns, or promotions in connection with ADVERTISING YOUR PRODUCTS on YOUR WEBSITE during the CLASS PERIOD.

**DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

Any and all memoranda, correspondence, e-mails, social media messages, or other DOCUMENTS exchanged between John Lyttle, on the one hand, and any other person on the other hand, relating to (a) REFERENCE PRICES ADVERTISED on YOUR WEBSITE during the CLASS PERIOD, or (b) the use of sales, discounts, markdowns, or promotions in connection with ADVERTISING YOUR PRODUCTS on YOUR WEBSITE during the CLASS PERIOD.

Defendants incorporate by reference the General Objections set forth herein. Defendants object to this Request on the grounds that it is overly broad, vague, and unduly burdensome, including without limitation as to "any and all." Defendants object to this Request to the extent that it seeks information related to Defendants' business activities outside the United States. Defendants object to this Request as improperly compound and containing multiple subparts. Defendants object to this Request to the extent it calls for the disclosure of information subject to the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege. Defendants object to this Request insofar as it seeks competitive sensitive business and financial information. To the extent this Request seeks information contained in email correspondence, Defendants object to this Request as overly broad and unduly burdensome.

Defendants will withhold documents on the basis of their objections to this request. Defendants object to production of email correspondence on the grounds of overbreadth, oppression and undue burden, and lack of relevance to the limited class certification discovery authorized by the Court at this time. Due to the sheer volume of information requested, Defendants agree to meet and confer with Plaintiff in good faith to discuss

whether production of documents responsive to this Request is feasible, will avoid undue burden and hardship on Defendants, and will be proportional to the needs of the case and the limited class certification discovery authorized by the Court at this time. To the extent Defendants agree to production of additional documents in the future, any such documents will be produced on a rolling basis and subject to these objections and any modifications agreed upon by the parties.

**REQUEST FOR PRODUCTION NO. 29:**

Any and all memoranda, correspondence, e-mails, social media messages, or other DOCUMENTS exchanged between Neil Catto, on the one hand, and any other person on the other hand, relating to (a) REFERENCE PRICES ADVERTISED on YOUR WEBSITE during the CLASS PERIOD, or (b) the use of sales, discounts, markdowns, or promotions in connection with ADVERTISING YOUR PRODUCTS on YOUR WEBSITE during the CLASS PERIOD.

**DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

Any and all memoranda, correspondence, e-mails, social media messages, or other DOCUMENTS exchanged between Neil Catto, on the one hand, and any other person on the other hand, relating to (a) REFERENCE PRICES ADVERTISED on YOUR WEBSITE during the CLASS PERIOD, or (b) the use of sales, discounts, markdowns, or promotions in connection with ADVERTISING YOUR PRODUCTS on YOUR WEBSITE during the CLASS PERIOD.

Defendants incorporate by reference the General Objections set forth herein. Defendants object to this Request on the grounds that it is overly broad, vague, and unduly burdensome, including without limitation as to "any and all." Defendants object to this Request to the extent that it seeks information related to Defendants' business activities outside the United States. Defendants object to this Request as improperly compound and containing multiple subparts. Defendants object to this Request to the extent it calls for the disclosure of information subject to the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege. Defendants object to this Request

62

insofar as it seeks competitive sensitive business and financial information. To the extent this Request seeks information contained in email correspondence, Defendants object to this Request as overly broad and unduly burdensome.

Defendants will withhold documents on the basis of their objections to this request. Defendants object to production of email correspondence on the grounds of overbreadth, oppression and undue burden, and lack of relevance to the limited class certification discovery authorized by the Court at this time. Due to the sheer volume of information requested, Defendants agree to meet and confer with Plaintiff in good faith to discuss whether production of documents responsive to this Request is feasible, will avoid undue burden and hardship on Defendants, and will be proportional to the needs of the case and the limited class certification discovery authorized by the Court at this time. To the extent Defendants agree to production of additional documents in the future, any such documents will be produced on a rolling basis and subject to these objections and any modifications agreed upon by the parties.

## 2. Plaintiffs' Contentions, Points, and Authorities Regarding Request for Production Nos. 23-29.

### (i) Defendants' Approach to Producing Communications Omits Any Attempt to Locate, Collect, and Produce Documents Relating to Their Reference Pricing Practices.

As described in the Introductory Statement, this case centers on Defendants' perpetual advertisement of false reference prices for the products on the websites http://us.boohoo.com, http://prettylittlething.us, and http://nastygal.com, which constitutes common law fraud and violates consumer protection laws against fake sales, discounts, and markdowns. In the example below (taken directly from the http://us.boohoo.com website), the fake reference price is $80.00, while the advertised sale, markdown, or discount is 50% OFF.



The first part of RFPs 23 through 29 simply ask Defendants to produce e-mails during the class period relating to the central topic of reference pricing. Defendants, however, refuse to conduct searches in their systems to locate e-mails and other communications that deal with the concept of reference pricing. In taking this position, Defendants contend that they do not know what the term "REFERENCE PRICE" means. According to defense counsel, their clients do not use the exact term "reference price," and thus no responsive discovery can be produced. Nonsense. Plaintiffs painstakingly defined the term and concept of reference price and included the screenshot above (along with relevant screenshots for the other two websites at issue). Plaintiffs thus made it easy for Defendants to understand Plaintiffs' discovery requests and provide responsive discovery relative to the specifically defined *concept* of reference price, regardless of what term or terms Defendants use to denote that concept.[11] Clearly, Defendants understand the

---

[11] Accompanying the screenshot above, Plaintiffs defined "REFERENCE PRICE" in the *Khan v. Boohoo* discovery requests as follows: "The term 'REFERENCE PRICE' refers to the higher price listed with regards to all, or nearly all, PRODUCTS on YOUR WEBSITE that is represented to consumers as being substantially marked down, and which typically, but not necessarily, may be displayed with a strikethrough. On days YOU are running a promotion on YOUR WEBSITE where YOU provide customers with a sitewide promo or coupon code (e.g., GIMME50), the term 'REFERENCE PRICE' refers to the price displayed for PRODUCTS on YOUR WEBSITE without a strikethrough, but before the sitewide promo or coupon code is applied to obtain the purported discount or markdown. In the following example [referring to the screenshot], $80.00 is the REFERENCE PRICE and the PRODUCT CODE is MZZ34843."

concept of reference price, as defined, and have perpetually used it to sell nearly all of the items on their websites throughout the class period.

Defendants' purposeful sidestepping of these highly relevant communications—no matter how many Gigabytes of e-mails they produce—creates a gaping hole in Defendants' production. This is apparent from a cursory examination of the theory of the case—the same theory blessed by the Ninth Circuit in *Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013) (discussed below). Plaintiffs allege that the reference prices and discounts/markdowns advertised by Defendants were false because, in reality, Defendants' merchandise rarely, if ever, sold at the advertised reference price or with the advertised discounts/markdowns, which made Defendants' fake-reference-price marketing scheme unlawful. Defendants thus misled the putative class members who believed they were receiving a discounted price when, in reality, the putative class members were simply paying the regular price or a price that was nowhere near the advertised discount or markdown. Had putative class members known the truth, they would not have bought merchandise from Defendants or, at the very least, would not have paid as much as they did.

*Hinojos* explains why Defendants have been incentivized to apparently obstruct reference price discovery and why their actions violate the discovery rules. In *Hinojos*, the Court considered a strikingly similar case against a retailer accused of advertising false reference prices. Specifically, the plaintiff alleged he bought items from the defendant that were "advertised as being substantially reduced from their 'original' or 'regular' prices, but that were, in reality, routinely sold by [the defendant] at the advertised 'sale' prices rather than the purported 'original' or 'regular' prices." *Id.* at 1102. He further alleged these prices "did not reflect prevailing retail market prices during the three months immediately preceding the publication of the advertisements in question." *Id.* He thus would not have purchased the items in the absence of the defendant's misrepresentations. *Id.*

1    The Ninth Circuit held that "when a consumer purchases merchandise on the basis
2    of false price information, and when the consumer alleges that he would not have made
3    the purchase but for the misrepresentation, he has standing to sue under the UCL and FAL
4    because he has suffered an economic injury." *Id.* at 1107. According to the Court,
5    "[m]isinformation about a product's 'normal' price is . . . significant to many consumers
6    in the same way as a false product label would be" because "it provides important
7    information about the product's worth and the prestige that ownership of that product
8    conveys." *Id.* at 1106. "That, of course, is why retailers like [the defendant] have an
9    incentive to advertise false 'sales.' It is also why the California legislature has prohibited
10   them from doing so." *Id.* According to a scholarly article cited by the Court, "[b]y creating
11   an impression of savings, the presence of a higher reference price enhances subjects'
12   perceived value and willingness to buy the product." *Id.* (citation omitted).

13   With this background, it is clear that Plaintiffs' RFPs 23 through 29—narrowly
14   written to capture the concept of fake reference prices, markdowns, discounts, and sales
15   that appear to be displayed perpetually on Defendants' websites—go to the heart of the
16   class certification issues of predominance and commonality. In RFP 23, for example,
17   Plaintiffs simply ask Defendants to produce their communications (e.g., e-mails, social
18   media messages, instant messages) exchanged within the company that relate to reference
19   prices (as the concept is defined) advertised on their websites during the class period.
20   (Almadani Decl., Exs. 2, 5, 8.) They similarly ask for communications relating to
21   Defendants' use of sales, discounts, markdowns, or promotions on their websites during
22   the class period. (*Id.*) RFPs 24 to 29 ask for the same communications, but focus on
23   communications exchanged outside the company and by specific employees. (*Id.*)
24   Nevertheless, Defendants have persistently refused to search for, and produce,
25   communications that capture the company's discussions about reference prices.
26   Defendants' use of the keywords "reference" and "price" is not enough because, as they
27   admit, Defendants do not internally describe their strikethrough reference price practice
28   as a "reference price." Plaintiffs' counsel, from the very first meet and confer telephone

conference with Defendants' counsel, have repeatedly inquired of Defendants' counsel what is the appropriate terminology that should be used so that appropriate searches can be performed. Defendants' counsel, however, refuse to identify what term or terms Defendants use to identify the concept of Reference Price even though it is specifically defined in Plaintiffs' discovery requests, and used by Defendants on a daily basis. This is clearly an obstructive attempt to stonewall the discovery of relevant e-mail and other communications.

Therefore, although Defendants have begun producing e-mails to Plaintiffs, the Court should not be misled to believe that Defendants are actually trying to find the most relevant e-mails Plaintiffs are seeking to discover. By omitting e-mails relating to reference prices and for the other reasons discussed below, Defendants' approach to identifying communications to produce is fundamentally flawed and wholly inadequate.

(ii)    The RFPs Are Narrowly Tailored to Seek Relevant Information.

Defendants complain that the RFPs are not narrowly tailored. Defendants are incorrect for several reasons.

*First*, the RFPs are narrowly tailored by subject matter because they narrowly request only those communications relating to (a) Defendants' practice of using reference prices (or whatever internal moniker(s) the company assigns to the practice) and to (b) Defendants' practice of representing to their customers that the products they are buying are discounted, marked down, or on sale.[12] That is what this case is specifically about— fake sales, promotions, and markdowns using fake reference prices deployed across the class for the class period. Requesting anything less would jeopardize Plaintiffs' ability to obtain discoverable communications regarding the classwide practices alleged to be misleading in this lawsuit. *See McKeen-Chaplin v. Provident Sav. Bank*, FSB, No. 2:12-

---

[12] Defendants have complained that the term "sales" renders the RFPs overly broad. Although "sales" can refer to the result of selling merchandise, Plaintiffs use of the term "sales" refers to a promotion in the sense of Defendants running a "50% off sale" on their websites. Because Plaintiffs allege as part of their lawsuit that these "sales" were fake because they were offered every day, Plaintiffs are entitled to discovery from Defendants on this topic.

67

CV-03035 GEB AC, 2015 WL 502697, at *6–7 (E.D. Cal. Feb. 5, 2015) (in employee class action alleging mortgage underwriters were not exempt managerial employees due to the nature of the work they had to perform, overruling the defendant's overbreadth and burden objections to producing e-mail communications related to the defendant's mortgage underwriter guidelines).

Such communications are highly relevant to Plaintiffs' arguments demonstrating that common issues predominate over individualized issues—for example, to demonstrate that Defendants engaged in these misleading advertising and marketing practices throughout the class period, that Defendants knew that their reference prices were not real prices at which the products were offered or sold for any sufficient period of time, that Defendants knew that misrepresenting reference prices and advertising fake sales in this manner would be material to consumers' purchasing decisions, etc. Indeed, where, as here, Defendants do not concede any of these points, Plaintiffs plainly need to obtain the requested communications containing admissions from their own employees to rebut any contention from Defendants that the reference pricing and markdown practices at issue were not prevalent, were not fraudulent or misleading, occurred only occasionally, had nothing to do with consumers' purchasing behavior, and so on.

*Second*, the RFPs are narrowly tailored to cover only the relevant time periods. Plaintiffs limited their requests to cover only the "CLASS PERIOD" applicable to each of the three individual cases which, depending on the case at issue, covers approximately 4 to 5 years of communications. There can be no credible argument that Plaintiffs should be required to further limit the scope of their requests. To do so would be to deprive Plaintiffs of their legal right to obtain discovery pertaining to class certification.

(iii)   <u>Plaintiffs Worked Very Hard to Meet and Confer With Defendants on a Workable Proposal and Timeline to Search For and Produce Relevant Communications, But To No Avail.</u>

Notwithstanding the fact that RFPs 23 through 29, on their face, are narrowly tailored to seek communications relating to the advertisement of false reference prices,

68

and the use of fake discounts, markdowns, and sales, Plaintiffs have made their best efforts to work with Defendants to figure out keyword search terms and the names of custodians that may yield a more manageable volume of communications for production. These efforts, unfortunately, have been unavailing due in substantial part to Defendants' unwillingness to provide basic information to Plaintiffs that would help the parties identify appropriate keywords to use in the searches.

For example, Plaintiffs expressed a willingness to prioritize the production of only those communications relating to "REFERENCE PRICES" during the class period. The idea was to limit search results to documents mentioning the phrase or phrases Defendants used internally to describe the concept of a "reference price"—to wit, the $80.00 strikethrough price from the example above. Plaintiffs asked Defendants to provide this information in multiple phone calls and letters. (*See* Almadani Decl., Exs. 19-23.)  Each time, Defendants refused to answer with this information, thus evading the question and defeating any ability for the parties to work together to identify appropriate search terms. (*See* Almadani Decl., Exs. 24-27.)

By way of further example, at Defendants' invitation, Plaintiffs also identified specific search terms for Defendants to use and individual employee names (i.e., custodians) whose inboxes should be searched, to aid Defendants in searching for responsive communications.  (Almadani Decl., Ex. 19.). Based on the number of search results, Plaintiffs proposed what they believed to be a manageable schedule for Defendants to follow by specifying which communications that turned up from particular search terms should be produced and by what date.  (Almadani Decl., Ex. 20.)  For example, on February 10, 2021, Plaintiffs proposed the following:

> As a first step towards coming into compliance with Defendants' obligations to comply with the above-referenced Requests for Production of Documents, Plaintiffs demand Defendants produce:
>
> 1. all communications you identified in your letter as having less than 7,750 "unique hits," which you found by running the search terms **markdown\*, discount\*, advertis\*, psych\*, behavior\*, fake, FALSE, fraud\*, violat\*, compete\*, decep\*, and**

69

**consumer\*** by Friday, February 19, 2021. We expect that this production will include the communications of all custodians we identified in our February 5 letter.

2. all communications you identified in your letter as having less than 50,000 "unique hits," which you found by running the search terms **pric\*, promo\*, original\*, and reference** by Friday, February 26, 2021. We expect that this production will include the communications of all custodians we identified in our February 5 letter.

3. on a rolling basis over the month of March all remaining communications you identified in your letter, which consist of communications found by running the search terms **sale\*** and **market\***. We expect that this production will include the communications of all custodians we identified in our February 5 letter.

(*Id.*)

When this proposal was not satisfactory to Defendants, Plaintiffs implored Defendants to at least begin producing documents with a relatively low number of document hits:

We went through the chart of search terms and number of hits in your letter dated February 8 and you agreed to prioritize the production of documents with less than 20,000 document hits, as identified in your February 8 letter. As discussed, this covers documents returned from the following search terms: **psych\*** (10,188 hits with only 784 unique hits), **behavior\*** (5,080 hits with only 618 unique hits), **fake** (8,403 hits with only 680 unique hits), **False** (18,675 hits with only 5,533 unique hits), **fraud\*** (16,658 hits with only 4,195 unique hits), **violat\*** (5,661 hits with only 873 unique hits), and **decep\*** (358 hits with only 8 unique hits). Given the low volume, we believe these emails can and should be produced within the next week. As discussed, this is only an initial step to try to prioritize the production of communications covered by RFPs 21-29 and should not be construed as a waiver of our right to receive additional communication documents covered by our requests.

(Almadani Decl., Ex. 21.) The request went ignored.

(iv)  <u>Defendants' Arguments as to Why They Believe They Have Met Their Discovery Obligations Are Without Merit.</u>

Ultimately, the parties reached an impasse in their meet and confer efforts concerning Defendants' production of communications due to the following arguments made by Defendants: (1) Plaintiffs have not provided Defendants with an appropriate set

70

of search terms, (2) Defendants have already produced over 150 Gigabytes of data, (3) the volume of information they would have to produce would be too costly, and (4) the requested communications are not relevant to class discovery. (*See* Almadani Decl., Exs. 25-26.)  Defendants' contentions are all without merit.

With regards to the first argument, as shown above, despite Defendants' obstructiveness, Plaintiffs have tried their best to supply Defendants with appropriate search terms to narrow the scope of the communications to be produced and create a more manageable timeline for Defendants.  Unfortunately, as noted above, Defendants insist on "hiding the ball" by refusing to even disclose to Plaintiffs what word or phrase Defendants use to describe the concept of a "REFERENCE PRICE"—even though there is clear proof provided through screenshots of Defendants' website demonstrating Defendants unmistakably engage in the practice of using reference prices to advertise their merchandise. Plaintiffs met their responsibility of propounding narrowly tailored requests. It is thus now up to Defendants to provide responsive documents within their possession, custody, or control. Fed. R. Civ. P. 34(a)(1). What is not appropriate, however, and what Defendants appear to be doing is interpreting Plaintiffs' requests unfairly broadly with respect to the term "sales" to capture hundreds of thousands of unresponsive documents on the one hand, and unfairly narrowly on the most relevant key terms (running restrictive Boolean-legal-research style searches on those key terms to omit responsive documents) on the other hand, and then making a "rolling production" *not* on the basis of the most relevant key terms, but simply to be able to say that they produced "X" amount of data to seem reasonable when in reality they have largely produced irrelevant haystacks and self-serving data.[13]

---

[13] In an abundance of caution and to avoid running out of time given the short timeline for the class certification motion that the Court has set, Plaintiffs have been forced to propound additional requests for production particularly identifying important search terms encompassed within the requests referenced in this motion. This is because Defendants have refused to prioritize the production of this key discovery, which does nothing more than to unfairly delay the case.

71

1        Accordingly, Defendants' repeated reference to how many Gigabytes of data they

2 have produced is misleading. To begin with, a sizable portion of the information produced

3 is Defendants' sales data, which has been provided in giant data dump spreadsheets.

4 Albeit, as discussed above in the section covering RFPs 1-5, it appears that there are many

5 problems with Defendants' production. Furthermore, the volume of that data—which

6 Plaintiffs believe was likely obtained with relatively minimal effort by simply running

7 filters in an enterprise software program to generate reports—does not cover the issue at

8 hand, to wit, communications relating to Defendants' fake sales practices.

9        Focusing simply on the volume of data produced to date is also misleading because

10 the production is replete with documents and information Plaintiffs never asked for, but

11 which instead support Defendants' misguided defenses (e.g., their defense that effectively

12 argues that companies may lie to customers about pricing so long as they claim their

13 pricing is based on some unreliable, self-serving analysis of purported competitors who

14 do not actually sell the same products as Defendants). Quantity is clearly far less important

15 than quality and quantity can actually be used inappropriately to bury or withhold

16 responsive discovery, as it appears to have been done here. Plaintiffs simply want

17 Defendants to produce the documents and ESI *Plaintiffs* asked for, not materials which

18 Defendants wish to volunteer to Plaintiffs to run up the Gigabyte volume on their

19 production.

20        Third, Defendants' contention that they should not have to provide relevant

21 information because it would supposedly cost them too much to do so is also without

22 merit. As an initial matter, the fact that the volume of responsive communications is high

23 is not uncommon for litigation of this size covering three separate lawsuits, three websites,

24 a class period of more than four years, tens of millions of dollars in damages, and large

25 wealthy, multinational defendants. *See* Fed. R. Civ. P. 26(b)(1) (in determining scope of

26 permissible discovery, a court may look to, among other things, "the amount in

27 controversy, the parties' relative access to relevant information, [and] the parties'

28 resources").

72

Further, although Plaintiffs' counsel (who have also been on the other side of this process when they worked at large firms) appreciate that there is work associated with producing a large volume of e-mails, Plaintiffs' counsel's past experience also informs them that Defendants' claims of undue burden are exaggerated.  Although Plaintiffs would prefer to receive only those e-mails that have been whittled down by Defendants and do not contain e-mails unrelated to the subject matter of this litigation, Plaintiffs have expressed a willingness to simply receive production of all e-mails returned from keyword searches after Defendants have conducted a privilege review. This significantly reduces defense counsel's workload. Defense counsel, after running the keyword searches, need only run additional searches for attorney and law firm names and e-mail addresses. After segregating e-mails involving their attorneys from the search hits returned from the keywords, Defendants would only have to compile the production and produce all of the e-mails to Plaintiffs. Even if e-mails extraneous to the litigation manage do end up in the production, the protective order in place protects Defendants' confidentiality concerns. The notion, therefore, that Defendants need to spend millions of dollars to provide documents and communications related to the concept of reference prices, discounts, sales, and markdowns is simply not credible.

Finally, Defendants' contention that RFPs 23-29 do not seek information relevant to class certification is without merit. Defendants have a fundamental misunderstanding of what qualifies as relevant class discovery. The Supreme Court in 2011 explained that certain facts that are relevant to the class determination frequently will overlap with those relevant to the merits of the case.  *See Wal–Mart Stores Inc. v. Dukes*, 564 U.S. 338, 351 (2011) (often the "rigorous analysis" under Rule 23(a) "will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped."). But even before 2011, it has long been understood that "[d]iscovery relating to class certification is closely enmeshed with merits discovery, and in fact cannot be meaningfully developed without inquiry into basic issues of the litigation." *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 41 (N.D. Cal. 1990); *Yingling v. eBay, Inc.*, No. C 09-01733 JW (PVT), 2010 WL 373868,

73

at *4 (N.D. Cal. Jan. 29, 2010) ("[D]iscovery can certainly be relevant both to class certification issues and to the merits.") (quoting *Ho v. Ernst & Young, LLP*, No. C05-04867, 2007 WL 1394007, at *1 (N.D. Cal. 2007)).

As such, "[c]ourts have repeatedly acknowledged that there is no clear-cut division between discovery that relates to class certification and discovery that relates to the merits." *Munoz v. PHH Corp.*, No. 1:08-CV-0759-DAD-BAM, 2016 WL 10077139, at *4 (E.D. Cal. Feb. 11, 2016) (collecting cases). "This is because discovery going to the merits of a plaintiff's claim also often has significant bearing on issues such as predominance and commonality under Rule 23." *In re: Coca-Cola Prod. Mktg. & Sales Practices Litig. (No. II)*, No. 14MD02555JSWMEJ, 2016 WL 6245899, at *2 (N.D. Cal. Oct. 26, 2016) (quotation omitted).

Here, Plaintiffs narrowly tailored their discovery requests to pertain almost exclusively to Defendants' practice of advertising false reference prices, markdowns, discounts, and sales on their websites throughout the class period. Plaintiffs do not anticipate Defendants will concede any element of the Rule 23 class certification analysis. Plaintiffs must be permitted to obtain discovery of Defendants' own communications discussing the allegedly offensive marketing and pricing practices at issue in this lawsuit to establish commonality and that common issues concerning these deceptive pricing practices predominate over any individual issues. Therefore, the discovery sought by Plaintiffs is narrowly targeted towards obtaining information relevant to class certification.

(v)   <u>Defendants' Proposal and Approach to Producing Communications Is Flawed and Inadequate.</u>

Defendants tout the proposal they made for the production of e-mails.[14] However, Defendants' proposal is inadequate for many reasons.

---

[14] RFPs 23-29 are not limited to e-mails, but instead, also include memoranda, correspondence, social media messages, and other communications that may be included in the definition of "DOCUMENTS" (e.g., WhatsApp messages). Plaintiffs thus contend that any order compelling Defendants to produce further documents in response to RFPs 23-29 also encompass these other forms of communication.

74

*First*, as argued above, Defendants have not established how they are locating and producing communications relevant to the concept of reference prices. This flaw in Defendants' approach to collecting and producing communications is fatal.

*Second*, Defendants contend that only e-mails from July 1, 2019 forward should be produced. But given that the class periods in the three cases go back to 2016 and 2017 and given that Plaintiffs' burden is to prove class certification for the entire class periods at issue, Defendants' proposed time period is also indefensible.

*Third*, Defendants' proposed search terms, along with their proposal to narrow the production to documents containing multiple search terms or multiple terms showing up within 2, 5 or 10 words of each other, threatens to eliminate highly relevant, non-privileged documents. Defendants also propose to use terms (such as "H&M," "Zara," "Ted Baker") that have nothing to do with any of Plaintiffs' requests. It bears repetition that Defendants do not even propose that they be required to look for documents relating to reference prices (or whatever Defendants call reference prices internally) or their promotions and sales, which is what is at issue in this lawsuit.

*Finally*, Defendants omit the inboxes of a number of custodians who are expected to have highly relevant information, such as, for example, Natalie McGrath (Boohoo Group PLC's former VP of Marketing for North America), Kayla Goddard (Marketing and PR, Boohoo Group PLC, Los Angeles), Alisia Jimenez (Marketing at Boohoo Group PLC, Los Angeles), Ashley Thomas (VP Marketing, North America, Nasty Gal), as well as the following individuals identified as relevant witnesses in Defendants' initial disclosures: Danielle Robinson (Head of Ecommerce Trade), Anjeli Patel (Head of Marketing), Claire Asher (Product Director, Buying, Nasty Gal), Asia Riaz (Head of Merchandising, Nasty Gal), and Gemma Dunne (Head of Buying, PLT).

In sum, Defendants should be compelled to produce responsive e-mails, social media messages, and other communications relating to their practice of advertising reference prices and advertising markdowns, discounts, and sales using reference prices.

**3. Defendants' Contentions, Points, and Authorities Regarding**

75

1

**Request for Production Nos. 23-29.**

2

     **i.**      **Discovery was Limited to Class Certification Issues.**

3
     In ordering discovery on class issues, Judge Wu made clear, repeatedly, that this

4
was to be a limited exercise.  For example, in the hearing on November 16, 2020, the Court

5
stated that it will "not allow discovery on merits issues prior to hearing" the motion for

6
class certification.  (Shelton Decl., Ex. 8, Motion to Dismiss Hearing Transcript, Nov. 16,

7
2020, Dkt. 34, at 13:19-20).  The Court further instructed that discovery would be limited

8
to solely the issue of class certification and related issues.  *Id.* at 13:21-23.  The Court

9
specifically noted that "the defense concern about having to engage in substantial liability

10
discovery doesn't really come into play here."  *Id.* at 13:24-25.

11
     Further, on November 30, 2020 during a status conference hearing, the Court once

12
again explained that initial discovery would be limited to the purposes of the motion for

13
class certification, but nothing else. (Shelton Decl., Ex. 9 Status Conference Hearing

14
Transcript, Nov. 30, 2020, Dkt. 38, at 7:22-25).  The Court pointed out that it often deals

15
with parties that want to do more than is necessary for the motion for class certification

16
hearing, but the Court emphasized, "I only want the discovery that is necessary for the

17
motion for class cert to be done."  *Id.* at 16:12-13.  Even for determining the issue of

18
damages, the Court stated it only needs enough information to conclude that there is

19
generally over $5 million at issue.  *Id.* at 17:19-18:12.

20
     Judge Wu's approach is supported by the case law. Courts regularly find that class

21
certification should not devolve into full-blown merits discovery. The appropriate amount

22
of precertification discovery is that which is necessary to "obtain the material" a plaintiff

23
can present to prove that a class action is maintainable.  *Doninger v. Pac. NW. Bell, Inc.*,

24
564 F.2d 1304, 1313 (9th Cir. 1977).  Therefore, the appropriate scope of precertification

25
discovery is that information necessary to prove the class is certifiable, which does not

26
necessarily include broad merits discovery.  *Peterson v. Alaska Commc'ns Sys. Grp., Inc.*,

27
No. 3:12-CV-00090-TMB, 2013 WL 12205973, at *3 (D. Alaska Dec. 5, 2013).  "Rule

28
23 contemplates 'controlled discovery' into the 'merits', limited to those aspects relevant

76

to making the certification decision on an informed basis." *Talley v. ARINC, Inc.*, 222 F.R.D. 260, 265 (D. Md. 2004) (quoting Rule 23 advisory committee notes to the 2003 amendments). Further, in recognizing that limited discovery as to class certification issues is appropriate, courts also consider the proportionality of the requested discovery and "whether the burden or expense of the proposed discovery outweighs its likely benefit." *See Talavera v. Sun Maid Growers of California*, No. 1:15-cv-00842-AWI-SAB, 2017 WL 495635, at *2 (E.D. Cal. Feb. 6, 2017).

Plaintiff's citation to *McKeen-Chaplin v. Provident Sav. Bank,* No. 2:12-CV-03035 GEB AC, 2015 WL 502697, at *6 (E.D. Cal. Feb. 5, 2015) is inapposite. In that case, the court granted plaintiffs' motion to compel where the defendant did not dispute that the guidelines requested were relevant, but merely refused to produce the emails in question, contending that the request was unduly burdensome in light of the fact that the information in the emails was duplicative of the guidelines (which were already accessible). *Mckeen-Chaplin*, 2015 WL 502697, at *6. The court found that production of emails discussing guidelines used by mortgage underwriters was relevant to the plaintiffs' claims, noting that the court had no way of verifying the emails contained duplicative information without production. *Id*. at *7. Here, Defendants do not refuse to produce any emails related to their pricing practices, but rather seek only to limit it to that which is necessary for the limited scope of class discovery.

### ii.   Defendants' Production to Date has been Consistent with Judge Wu's Order and the Case Law.

The assessment of the propriety of Defendants' responses to Plaintiffs' document requests should be conducted with the understanding that class discovery is a limited exercise. While Defendants recognize there is no maximum number of documents or numerical limitation imposed by the Court regarding class discovery, there was a clear instruction that the discovery was to be limited in scope and narrowly tailored. Defendants therefore produced over 36,000 documents containing sales and pricing data, advertisement content files and analytics, historical promotional calendars, investor

77

documents, and reports, analyses, and presentations concerning pricing, advertising, and consumer research. (Shelton Decl., ¶ 3). These non-email productions contained nearly 60 Gigabytes of data in total. (*Id.*). Thus, when Defendants' review of potentially responsive material contained in relevant custodians' emails revealed that there were millions of documents at issue (now, over 4 million), it was clear the requests were simply too broad.

### iii.   Defendants Engaged Plaintiffs Regarding Search Terms.

Consistent with the meet and confer letters (Almadani Decl. Exs. 24, 25, and 27), the sheer volume of potentially responsive information contained in the emails and attachments of relevant custodians was enormous (currently, over 4 million documents and 2 terabytes of data).  In light of the narrow purposes of class discovery, Defendants engaged Plaintiffs to negotiate reasonable search terms in order to narrow the universe of documents to be reviewed down to a more appropriate number.  In order to facilitate the discussion, Defendants proposed taking a sampling of 20,000 to 25,000 documents, which the parties could assess and analyze, thus allowing for more meaningful discussion about the requests.  This offer was made with the express understanding that each side could reserve its position.  That is, Plaintiffs could reserve the right to renew its requests and Defendants could maintain all objections.  Defendants made this proposal via conference call on February 4, and again by letter on February 8. And another letter on February 11. And, yet, another letter on February 19.  (Almadani Decl., Exs. 24, 25, and 27).  At all times, Defendants made clear that Plaintiffs could reserve their right to renew any request after reviewing Defendants' production of the sample set of emails.  (Almadani Decl., Ex. 19.)

### iv.   Defendants Timely Objected to Plaintiffs' Overbroad Requests.

Plaintiffs' discovery requests specific to email communications were especially overbroad and unduly burdensome. For example, Request No. 23 asks for "Any and all internal memoranda, correspondence, e-mails, social media messages, or other documents exchanged between or amongst your officers directors, employees, contractors, or agents

78

relating to (a) reference prices advertised on your website during the class period, (b) or the use of sales, discounts, markdowns, or promotions in connection with advertising your products on your website during the class period." (Almadani Decl., Ex. 2, Request for Production No. 23).   Because discounts and promotions are used extensively by Defendants, ***this request alone asks for virtually every email by and between every employee during the class period***.   Obviously, to export, upload, and review every employee's mailbox is unduly burdensome and would include material irrelevant to class discovery.   Defendants collected the mailboxes of relevant custodians and the emails collected totaled in the millions.[15]  Given the enormity of documents potentially responsive to these requests, and in an effort to confer in good faith, Defendants timely objected to the requests on February 4 and on that same day engaged Plaintiffs to reach a resolution.

## v. Plaintiffs Failed to Provide Appropriate or Reasonable Search Terms.

Although Defendants repeatedly invited Plaintiffs to provide search terms (Almadani Decl. Exs. 24, 25, and 27), Plaintiffs failed to provide a reasonable set of terms consistent with the needs of class discovery and were generally uncooperative.   To the extent Plaintiffs offered terms, Defendants ran the terms and produced the hit counts, but Plaintiffs' suggestions failed to result in an appropriate and manageable set.   Plaintiffs' proposed terms were very general with no limiters, and yielded an unreasonable amount of documents to be reviewed, *i.e.*, over 500,000 document hits for the term "sale*" alone. (*Id.,* Ex. 24).   Defendants were never unwilling to run the terms, and communicated those results.   For example, by letter dated February 8, Defendants conveyed their sentiment that, although these terms are too broad (*i.e.*, "price"), the parties should continue to work together to narrow the terms to a reviewable set.   (*Id.*).   Defendants continued to engage

---

[15]  As explained to Plaintiffs, the document collection process was challenging for Defendants given the multiple obstacles faced as a U.K. client in the pandemic, such as stay-at-home orders in place and slower and less effective transmission of data, as well as the challenge associated with a U.K. client unfamiliar with United States litigation with whom counsel had never worked. (Almadani Decl., Ex. 25.) Defendants acted reasonably throughout this meet and confer process, especially in consideration of these challenges and unique circumstances.

79

1   with Plaintiffs, however, their next suggested list of terms for review yielded in total over

2   1.25 million document hits, and was coupled with a demand to review and produce, at

3   least the majority of those documents, within a few weeks' time.[16]

4       Given the unreasonableness of this request and the millions of dollars in cost

5   associated with meeting these demands,[17] on February 11, and with no refined terms

6   provided by Plaintiffs, Defendants affirmatively offered a proposal of search terms over

7   17 relevant custodians, which, with other limiters, reduced the review size to less than

8   30,000 documents.  (*Id.*).  Again, Defendants made clear that this production would be a

9   sample set for review for purposes of having a more meaningful discussion about relevant

10  search terms, and would allow each party to reserve certain rights – that is, Plaintiffs could

11  renew their requests for production after an analysis of responsive emails, and Defendants

12  could maintain their right to object to any renewed request to the extent it exceeds

13  information already provided.[18]

14              **vi.    Defendants Produced over 20,000 Relevant Emails and**

15                      **Attachments.**

16      Hearing no response, and in an effort to facilitate discussions, Defendants

17  implemented the proposal in its February 11 correspondence and began producing emails

18

19  [16] For example, Plaintiffs' demand was to review over 400,000 documents by the end of
20  the following week, an additional nearly 470,000 documents the week thereafter, and
    another 375,000 documents over the next month.  Each search term was a single word,
21  like "discount*" or "advertis*."  Plaintiffs did not even attempt to limit the broad term like
    "pric*" with any additional connecting terms. (*Id.,* Ex. 25.)
    [17] *See Greater Lakes Ambulatory Surgical Ctr., PLLC v. State Farm Mut. Auto. Ins. Co.*,
22  No. 11-11003, 2011 WL 5245141, at *3 (E.D. Mich. Nov. 3, 2011) (court must examine
    the likely benefit of the requested information and whether that is substantially outweighed
23  by the burden and expense of producing it).
    [18] Plaintiffs' most recent proposal regarding search terms yielded a set of over 110,000
24  documents to be prioritized for review, including families, and Defendants provided those
    results to Plaintiffs (Almadani Decl., Ex. 26).  Important to understand here is that
25  Plaintiffs' proposal was presented as an interim proposal, meaning, a demand that
    Defendants review and produce over 110,000 documents and then assess further their
26  discovery needs.  Defendants explained to Plaintiffs on February 17 that the cost to review
    over 100,000 documents within a week's time would be several hundred thousand dollars
27  and that such an expense is not appropriate, especially when the Court ordered narrow
    discovery to assist with a determination on class treatment.  Moreover, the search term
28  proposals were meant to yield an appropriate sample set of around 20,000 to 25,000
    documents, and the results of this search were simply too large to fulfill this purpose. (*Id.*).

on February 19.  (Shelton Decl., Ex. 3; Almadani Decl., Exs. 25-27).  Indeed, contrary to Plaintiffs' accusations, Defendants expanded the review to over 22 relevant custodians[19] and extended the relevant time period to January 1, 2019 to present to accommodate some of Plaintiffs' requests.  (Almadani Decl., Ex. 28).  Defendants produced over 20,000 emails and attachments from February 19 to March 9, 2021.  (Shelton Decl., Exs 3-6).  At no time since this production have Plaintiffs ever presented a more refined set of requests.  Thus, despite these efforts (and the costs associated therewith), Plaintiffs never changed, altered, or tried to limit their suggested list of search terms in any way; their only proposed solution was to prioritize the review and production of documents containing some overbroad terms over other overbroad terms.  The only substantive response from Plaintiffs since Defendants' productions of emails was a motion to compel received on March 8, alleging that Defendants are purposefully omitting relevant search terms from their review database, among other inaccurate allegations.

As expressed in every meet and confer and correspondence regarding the production of emails, Defendants' intention in producing the initial set of emails was to provide a sample for the parties to review, become more informed, and then have a more meaningful discussion regarding the discovery requests.  (Almadani Decl., Exs. 24-27).  When Plaintiffs' suggested terms were unreasonable due to the sheer amount of documents to review, Defendants proposed their own set of search terms and proceeded forward with this review and sample set production to Plaintiffs, so as to allow the parties a means to discuss further Plaintiffs' production needs.  Defendants never stated that they would not

---

[19] Based on Plaintiffs' requests, Defendants included the following additional five custodians in their review, in addition to the original 17 listed in its February 11 correspondence:  Mahmud Kamani, Carol Kane, Umar Kamani, Christina McGonagle, and Kelly Byrne. (Almadani Decl., Ex. 28.)  Plaintiffs' initial complaint in its March 7th draft motion to compel was that Defendants failed to produce emails from various custodians, such as Mahmud Kamani, Carol Kane, Umar Kamani, and Christina McGonagle.  When Defendants advised Plaintiffs that these mailboxes had been reviewed and emails had, in fact, been produced from these custodians' mailboxes, Plaintiffs generated a new list of custodians, now arguing that *all* relevant witnesses' mailboxes must be reviewed and produced.  Plaintiffs' "moving target" approach is inconsistent with the discovery rules.

81

continue the conversation, run additional searches, or produce additional emails.  Further, Defendants never stated they would not produce emails predating 2019.

The search terms applied to review this sample set of documents were tailored to reduce the amount of documents to be reviewed to a reasonable number and to target relevant issues in the case.  (Almadani Decl., Ex. 25).  Further, the 22 custodians whose mailboxes were reviewed were the individuals expressed to have the most relevant information for class certification, and the majority of these were custodians also requested by Plaintiffs to be included in the review.  (*Id.*).  Thus, to avoid duplication, the 22 custodians selected are thought to be the most relevant to the issues in the case regarding pricing and advertising.

Despite Defendants' production, Plaintiffs have yet to engage in a meaningful discussion about their overbroad requests.  Plaintiffs' first set of suggested search terms in their letter dated February 5 requested a review of all documents with any of the following extremely generic terms like "pric*", "discount*", "promo*", "sale*", or "advertis*", among others (Almadani Decl. Ex. 19).  Defendants ran the searches and produced a hit report containing the number of documents with hits, the number of documents including families, and the number of unique hits,[20] and conveyed the results to Plaintiffs. (*Id.*, Ex. 24).  As expected given the nature of Defendants' business and the generic terms suggested, the results yielded an unreasonable amount of documents, some of which resulted in over 700,000 documents for one search term alone (*i.e.*, market*). (*Id.*).  Further, this data did not include all of the custodians Plaintiffs requested, so it was expected that additional custodians would only enlarge the number of hits. (*Id.*).  As explained to Plaintiffs, Defendants do not believe "the review of hundreds of thousands of

---

[20] Unique hits is defined by Relativity as "the count of documents in the searchable set returned by only that particular term. If more than one term returns a particular document, that document is not counted as a unique hit. Unique hits reflect the total number of documents returned by a particular term and only that particular term." (Almadani Decl., Ex. 27).  Thus, unique hits can be helpful when running a group of search terms to discern which terms are likely to be more responsive terms because terms with a lower number of unique hits are showing up more often together with other terms run in that same search. (*Id.*, Ex. 25).

documents and emails across dozens of custodians can reasonably be described as narrowly tailored" and in line with Judge Wu's order. (*See id.*).  In response to receiving such results, instead of trying to further narrow the search terms with additional limiters or restrictions, on February 10, Plaintiffs outright ***demanded*** that Defendants start producing the material.  Without understanding what a "unique hit" even was, Plaintiffs demanded Defendants produce documents with a lower number of unique hits within the next 9 days, a second tranche the following week, and the remainder over the month of March. (*Id.*, Ex. 20).  Defendants responded the next day, informing Plaintiffs of the enormity of their requests – *i.e.*, that a review of documents hitting on their suggested terms would be for nearly a million documents, and over 1.25 million once families were included, the majority of which Plaintiffs were demanding to be reviewed over the next two weeks.[21] (*Id.*, Ex. 25).  In its February 11 response, Defendants also provided their own proposal of search terms providing for a more reasonable amount of documents, less than 30,000, to be reviewed and produced as an initial sample set.  (*Id.*). With no response until a February 16 meet and confer via telephone and another letter on February 17, Defendants began reviewing and producing documents pursuant to this protocol and notified Plaintiffs (*Id.*, Ex. 26).  Plaintiffs' last communication regarding search terms was yet another demand to produce documents retrieved based on a subset of the search terms already suggested, which, while lower in volume, still yielded over 110,000 documents once families were included (*Id.*, Ex. 21).  Defendants ran these searches, provided the hit report, and as explained (*supra* note 19), this was not an appropriate sample set for purposes of furthering discussions between the parties. (*Id.*, Ex. 26). Defendants therefore continued with the review and production pursuant to its February 11 search term proposal.

When Plaintiffs have engaged, they have made unreasonable demands to which Defendants cannot agree, and the discussion abruptly ends.  This behavior does not meet

---

[21] Defendants further explained the meaning of "unique hits," its helpfulness in discerning responsive search terms, and that it does not necessarily mean that the resulting pull of total documents in the search will not still be very large.  (*Id.*, Ex. 25).

the requirements under the rules.  *See, e.g., RG Abrams Ins. v. L. Off. of C.R. Abram*, No. 20CV01379JSTRMI, 2020 WL 7695374, at *3 (N.D. Cal. Dec. 28, 2020) (emphasis in original) ("[T]he purpose of a meet and confer requirement is for the Parties to engage in a *meaningful* dialogue about their respective positions on disputed issues to see whether they can resolve (or at least refine) the disputes without court intervention, saving time and money for the litigants as well as the court system.").  Any problem Plaintiffs have, therefore, is one of their own making.  They have repeatedly failed to engage in providing a more manageable set of requests, despite receiving the sample set of emails to aid in that discussion and repeated invitations to be involved in that process.   Further, it is clear Plaintiffs fail to appreciate the material provided to date.

Thus, contrary to Plaintiffs' assertion, Defendants complied with their discovery obligations regarding the requests pertaining to email correspondence.  Given the breadth of the requests, Defendants timely objected on February 4, 2021 (thus discharging Defendants' obligation under the discovery rules).  In an effort to facilitate discovery and to meet the Court's schedule regarding class certification, Defendants affirmatively reached out to Plaintiffs to attempt to arrive at a more manageable set of search terms and therefore a more appropriate set of production.  Defendants ultimately produced over 20,000 emails and attachments from the mailboxes of 22 relevant custodians.  This is summarized as follows:

| Date | Defendants' Action |
|---|---|
| 02/04/2021 | Defendants engage Plaintiffs to discuss the breadth of the requests concerning emails and to negotiate a reasonable set of search terms. |
| 02/04/2021 | Defendants timely objected to Plaintiffs' requests, discharging Defendants' discovery obligations. |
| 02/19/2021 | Defendants produced 8,785 emails and attachments pursuant to search terms listed in 02/11/2021 letter over 22 relevant custodians dated January 1, 2019 to present (D00082506-D00159286). |
| 02/26/2021 | Defendants produced 10,296 emails and attachments pursuant to search terms listed in 02/11/2021 letter over 22 relevant custodians dated January 1, 2019 to present (D00159287-D00223257). |
| 03/08/2021 | Defendants produced 255 emails and attachments pursuant to search terms listed in 02/11/2021 letter over 22 relevant custodians dated January 1, 2019 to present (D00224109-D00225000). |

| 03/09/2021 | Defendants produced 1,130 emails and attachments pursuant to search terms listed in 02/11/2021 letter over 22 relevant custodians dated January 1, 2019 to present custodians (D00225001-D00231832). |
|---|---|

**D.** **Defendants Refuse to Produce Documents in Their Possession Relating to the Class Representatives' Purchases and Communications With the Class Representatives (*see* RFPs 14-18).**

  **1.**   **Discovery in Dispute:**

**REQUEST FOR PRODUCTION NO. 14:**

  Any and all DOCUMENTS constituting or reflecting all instances during the CLASS PERIOD on which any of the merchandise Plaintiff Farid Khan purchased from YOU sold for the REFERENCE PRICE ADVERTISED to Mr. Khan.

**DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

  Defendants incorporate by reference the General Objections set forth herein. Defendants object to this Request on the grounds that it is overly broad, vague, and unduly burdensome including without limitation as to "any and all." Defendants also object to this Request to the extent that it seeks information that is in the possession of other parties such that it is at least equally accessible to Plaintiff as it is to Defendants. Defendants object to this Request to the extent it calls for the disclosure of information subject to the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege. Defendants object to this Request insofar as it seeks competitive sensitive business and financial information. Defendants will withhold documents on the basis of their objections to this request. Subject to and without waiving the foregoing objections, Defendants refer Plaintiff to their response to Request Nos. 1-5.

**REQUEST FOR PRODUCTION NO. 15:**

  Any and all DOCUMENTS constituting or reflecting the order confirmations sent to Plaintiff Farid Khan by e-mail for any of the merchandise Mr. Khan purchased from YOU.

**DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

Defendants incorporate by reference the General Objections set forth herein. Defendants object to this Request on the grounds that it is overly broad, vague, and unduly burdensome including without limitation as to "any and all." Defendants also object to this Request to the extent that it seeks information that is already in possession of Plaintiff and is more accessible to Plaintiff than to Defendants. Defendants object to this Request to the extent it calls for the disclosure of information subject to the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege. Defendants object to this Request insofar as it seeks competitive sensitive business and financial information. Defendants will withhold documents on the basis of their objections to this request. Plaintiff is already in possession of emails that Defendants sent to Plaintiff in connection with purchases he made on the U.S. website. Defendants object to production of email correspondence on the grounds of overbreadth, oppression and undue burden, and lack of relevance to the limited class certification discovery authorized by the Court at this time. To the extent Plaintiff does not already possess the documents he requests related to Plaintiff's own orders from the U.S. website, Defendants agree to meet and confer with Plaintiff in good faith to discuss whether production of specific documents related to is feasible, will avoid undue burden and hardship on Defendants, and will be proportional to the needs of the case and the limited class certification discovery authorized by the Court at this time. To the extent Defendants agree to production of additional documents in the future, any such documents will be produced on a rolling basis and subject to these objections and any modifications agreed upon by the parties.

**REQUEST FOR PRODUCTION NO. 16:**

Any and all DOCUMENTS constituting or reflecting the shipping confirmations sent to Plaintiff Farid Khan by e-mail for any of the merchandise Mr. Khan purchased from YOU.

**DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Defendants incorporate by reference the General Objections set forth herein. Defendants object to this Request on the grounds that it is overly broad, vague, and unduly

86

burdensome including without limitation as to "any and all." Defendants also object to this Request to the extent that it seeks information that is in the possession of other parties such that it is at least equally accessible to Plaintiff as it is to Defendants. Defendants object to this Request to the extent it calls for the disclosure of information subject to the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege. Defendants object to this Request insofar as it seeks competitive sensitive business and financial information. Defendants will withhold documents on the basis of their objections to this request. Plaintiff is already in possession of emails that Defendants sent to Plaintiff in connection with purchases he made on the U.S. website. Defendants object to production of email correspondence on the grounds of overbreadth, oppression and undue burden, and lack of relevance to the limited class certification discovery authorized by the Court at this time. To the extent Plaintiff does not already possess the documents he requests related to Plaintiff's own orders from the U.S. website, Defendants agree to meet and confer with Plaintiff in good faith to discuss whether production of specific documents related to is feasible, will avoid undue burden and hardship on Defendants, and will be proportional to the needs of the case and the limited class certification discovery authorized by the Court at this time. To the extent Defendants agree to production of additional documents in the future, any such documents will be produced on a rolling basis and subject to these objections and any modifications agreed upon by the parties.

**REQUEST FOR PRODUCTION NO. 17:**

Any and all correspondence, e-mails, communications, or other DOCUMENTS exchanged between YOU, on the one hand, and Plaintiff Farid Khan, on the other hand.

**DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

Defendants incorporate by reference the General Objections set forth herein. Defendants object to this Request on the grounds that it is overly broad, vague, and unduly burdensome including without limitation as to "any and all." Defendants also object to this Request to the extent that it seeks information that is in the possession of other parties such that it is at least equally accessible to Plaintiff as it is to Defendants. Defendants object to

87

this Request to the extent it calls for the disclosure of information subject to the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege. Defendants object to this Request insofar as it seeks competitive sensitive business and financial information.

Defendants will withhold documents on the basis of their objections to this request. Plaintiff is already in possession of emails that Defendants sent to Plaintiff in connection with purchases he made on the U.S. website. Defendants object to production of email correspondence on the grounds of overbreadth, oppression and undue burden, and lack of relevance to the limited class certification discovery authorized by the Court at this time. To the extent Plaintiff does not already possess the documents he requests related to Plaintiff's own orders from the U.S. website, Defendants agree to meet and confer with Plaintiff in good faith to discuss whether production of specific documents related to is feasible, will avoid undue burden and hardship on Defendants, and will be proportional to the needs of the case and the limited class certification discovery authorized by the Court at this time. To the extent Defendants agree to production of additional documents in the future, any such documents will be produced on a rolling basis and subject to these objections and any modifications agreed upon by the parties.

**REQUEST FOR PRODUCTION NO. 18:**

Any and all information and DOCUMENTS generated and retained by YOU, relating to the sale made to Plaintiff Farid Khan reflected in the operative complaint.

**DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

Defendants incorporate by reference the General Objections set forth herein. Defendants object to this Request on the grounds that it is overly broad, vague, and unduly burdensome including without limitation as to "any and all." Defendants also object to this Request to the extent that it seeks information that is in the possession of other parties such that it is at least equally accessible to Plaintiff as it is to Defendants. Defendants object to this Request to the extent it calls for the disclosure of information subject to the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege.

88

Defendants object to this Request insofar as it seeks competitive sensitive business and financial information.

Defendants will withhold documents on the basis of their objections to this request. Plaintiff is already in possession of emails that Defendants sent to Plaintiff in connection with purchases he made on the U.S. website. Defendants object to production of email correspondence on the grounds of overbreadth, oppression and undue burden, and lack of relevance to the limited class certification discovery authorized by the Court at this time. To the extent Plaintiff does not already possess the documents he requests related to Plaintiff's own orders from the U.S. website, Defendants agree to meet and confer with Plaintiff in good faith to discuss whether production of specific documents related to is feasible, will avoid undue burden and hardship on Defendants, and will be proportional to the needs of the case and the limited class certification discovery authorized by the Court at this time. To the extent Defendants agree to production of additional documents in the future, any such documents will be produced on a rolling basis and subject to these objections and any modifications agreed upon by the parties.

## 2. Plaintiffs' Contentions, Points, and Authorities regarding Request for Production Nos. 14-18.

As reflected above, RFPs 15-18 request Defendants to produce documents concerning the purchases of the class representatives (i.e., Khan, Hilton, and Lee) and communications with the class representatives. RFP 14 similarly requests Defendants to produce documents concerning all instances in which the merchandise the class representatives purchased had been previously sold at the reference price advertised to them.

Defendants' written responses reflect that they refuse to produce any documents responsive to these Requests. Defendants' objections to RFPs 14 to 18 are patently frivolous. The class representatives' purchases for each of the three class actions are plainly relevant to the litigation. Defendants have previously argued that they do not have legal standing to pursue their claims. They presumably will want to depose the class representatives, oppose class certification, and try to cross-examine and attack the basis of

89

class representatives' claims based on their purchases. Indeed, Defendants have propounded voluminous discovery on the class representatives asking for information about their purchases. In short, Defendants should be compelled to produce all non-privileged documents responsive to RFPs 14-18.

Defendants contend the only documents responsive to RFPs 14-18 they have been identified are protected by attorney-client privilege or the attorney work product doctrine. As an initial matter, Defendants should be compelled to provide a privilege log. Moreover, Plaintiffs' requests encompass documents and ESI that have nothing to do with attorneys. For example, the order and purchase confirmations of the class representatives, along with any communications the class representatives may have had with Defendants' employees, are not privileged.

### 3. Defendants' Contentions, Points, and Authorities Regarding Request for Production Nos. 14-18.

As Defendants communicated to Plaintiffs, Defendants' review of this information is ongoing. (Almadani Decl., Ex. 28). Initially, Defendants identified documents responsive to these requests that were appropriately withheld from production based on attorney-client privilege and the work product doctrine. Such documents are still being withheld on this basis, and Defendants will be producing a privilege log. Pursuant to Defendants' continuing review, Defendants identified and produced responsive, non-privileged records.

Defendants would note, however, to the extent some of the information is readily available to Plaintiffs, *i.e.*, communications between Plaintiffs and Defendants or the order and purchase confirmations received by Plaintiffs, Defendants should not be obliged to bear the burden and expense of locating such documents. Parties "may not use discovery to obtain free copies of documents equally available to" them. *Jones v. Lundy*, No. 1:03–CV–05980–AWI–LJO PC, 2007 WL 214580, at *1 (E.D. Cal. Jan. 25, 2007); *see also Garcia v. O'Rafferty*, No. 1:14-cv-00476-BAM (PC), 2017 U.S. Dist. LEXIS 38945 *3 (E.D. Cal. March 17, 2017) ("The Court [ ] will not compel the parties to

90

produce documents that are equally available to both parties.").

Regardless, the review of this information is ongoing (Almadani Decl., Ex. 28), and Defendants will produce responsive records identified.

**E.** **Defendants Refuse to Answer Requests for Admission Concerning Whether They Advertised Reference Prices and That They Rarely If Ever Sold Merchandise at the Advertised Reference Prices (*see* RFAs 1-5, 8, 11-15, 18-21; Interrogatory 16)**

**1.** **Discovery in Dispute:**

**REQUEST FOR ADMISSION NO. 1:**

Admit that less than ten (10) percent of the total dollar amount of YOUR total sales of PRODUCTS on YOUR WEBSITE in the United States during the CLASS PERIOD were of sales of PRODUCTS that sold at the REFERENCE PRICE for the PRODUCT.

**DEFENDANTS' RESPONSE TO ADMISSION NO. 1:**

Defendants incorporate by reference the General Objections set forth herein. Defendants object to this Request to the extent it calls for the disclosure of information subject to the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege.

Defendants object to this Request to the extent it calls for the disclosure of product information that is not saved and/or tracked in Defendants' computer systems and/or databases.

Defendants object to this Request as vague and ambiguous as to the terms "less than ten (10) percent of the total dollar amount."

Defendants object to this Request as oppressive and unduly burdensome, in that the answer to this Request may be determined by examining, auditing, compiling, abstracting, or summarizing Defendants' business records (including electronically stored information), and the burden of deriving or ascertaining the answer will be substantially the same for either party. Subject to and without waiving the foregoing objections, Defendants will produce the United States sales data for Boohoo related brands with

91

1  pricing information from March 28, 2016 to present. Such data will include the geographic
2  location of the customer (by state) to the extent that information is available. Plaintiff
3  and/or his experts should bear the burden and expense of processing and manipulating this
4  voluminous data and performing the complex mathematical calculations identified in this
5  Request.

6  　　　Defendants object to this Request as oppressive and unduly burdensome, in that the
7  information requested is not maintained in the regular course of business and is not readily
8  identifiable.

9  　　　Defendants object to this Request as oppressive and unduly burdensome, in that the
10  Request asks Defendants to perform complex mathematical calculations with respect to
11  millions of individual sales transactions over a four year period. For example,
12  PrettyLittleThing had in excess of 16.8 million sales transactions[1] in the United States in
13  the year 2020 alone, as reflected in the following chart:

---

[1] The tally of sales transactions refers to each individual product sold, even if multiple products are purchased by the same customer at the same time.

92

| Spreadsheet Date | Number of Transactions |
| --- | --- |
| 2020.01.13 | 438,371 |
| 2020.01.27 | 456,684 |
| 2020.02.10 | 511,449 |
| 2020.02.24 | 639,779 |
| 2020.03.09 | 441,575 |
| 2020.03.23 | 399,400 |
| 2020.04.06 | 611,562 |
| 2020.04.20 | 658,545 |
| 2020.05.04 | 707,042 |
| 2020.05.18 | 778,669 |
| 2020.06.01 | 702,927 |
| 2020.06.15 | 851,485 |
| 2020.06.29 | 803,006 |
| 2020.07.13 | 722,407 |
| 2020.07.27 | 709,588 |
| 2020.08.10 | 688,398 |
| 2020.08.24 | 626,181 |
| 2020.09.07 | 762,205 |
| 2020.09.21 | 780,944 |
| 2020.10.05 | 709,965 |
| 2020.10.19 | 584,014 |
| 2020.11.02 | 521,696 |
| 2020.11.16 | 750,449 |
| 2020.11.30 | 843,799 |
| 2020.12.14 | 526,220 |
| 2020.12.28 | 593,360 |
| **TOTAL** | **16,819,720** |

Boohoo and Nasty Gal similarly had millions of sales transactions during the four year period, including in excess of 36 million transactions for Boohoo and 12 million transactions for Nasty Gal. Defendants object to incurring the burden and expense of processing and manipulating this voluminous data and performing the complex mathematical calculations identified in this Request.

Defendants object to this Request as calling for an expert opinion and assistance

93

both as to the appropriate manner of processing and manipulating this voluminous data and performing the complex mathematical calculations identified in this Request.

**REQUEST FOR ADMISSION NO. 2:**

Admit that less than ten (10) percent of the total dollar amount of YOUR total sales of PRODUCTS on YOUR WEBSITE in California during the CLASS PERIOD were of sales of PRODUCTS that sold at the REFERENCE PRICE for the PRODUCT.

**DEFENDANTS' RESPONSE TO ADMISSION NO. 2:**

Defendants incorporate by reference the General Objections set forth herein. Defendants object to this Request to the extent it calls for the disclosure of information subject to the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege.

Defendants object to this Request to the extent it calls for the disclosure of product information that is not saved and/or tracked in Defendants' computer systems and/or databases.

Defendants object to this Request as vague and ambiguous as to the terms "less than ten (10) percent of the total dollar amount."

Defendants object to this Request as oppressive and unduly burdensome, in that the answer to this Request may be determined by examining, auditing, compiling, abstracting, or summarizing Defendants' business records (including electronically stored information), and the burden of deriving or ascertaining the answer will be substantially the same for either party. Subject to and without waiving the foregoing objections, Defendants will produce the United States sales data for Boohoo related brands with pricing information from March 28, 2016 to present. Such data will include the geographic location of the customer (by state) to the extent that information is available. Plaintiff and/or his experts should bear the burden and expense of processing and manipulating this voluminous data and performing the complex mathematical calculations identified in this Request.

Defendants object to this Request as oppressive and unduly burdensome, in that the

94

information requested is not maintained in the regular course of business and is not readily identifiable.

Defendants object to this Request as oppressive and unduly burdensome, in that the Request asks Defendants to perform complex mathematical calculations with respect to millions of individual sales transactions over a four year period. For example, PrettyLittleThing had in excess of 16.8 million sales transactions in the United States in the year 2020 alone, as reflected in the following chart:

| Spreadsheet Date | Number of Transactions |
|---|---|
| 2020.01.13 | 438,371 |
| 2020.01.27 | 456,684 |
| 2020.02.10 | 511,449 |
| 2020.02.24 | 639,779 |
| 2020.03.09 | 441,575 |
| 2020.03.23 | 399,400 |
| 2020.04.06 | 611,562 |
| 2020.04.20 | 658,545 |
| 2020.05.04 | 707,042 |
| 2020.05.18 | 778,669 |
| 2020.06.01 | 702,927 |
| 2020.06.15 | 851,485 |
| 2020.06.29 | 803,006 |
| 2020.07.13 | 722,407 |
| 2020.07.27 | 709,588 |
| 2020.08.10 | 688,398 |
| 2020.08.24 | 626,181 |
| 2020.09.07 | 762,205 |
| 2020.09.21 | 780,944 |
| 2020.10.05 | 709,965 |
| 2020.10.19 | 584,014 |
| 2020.11.02 | 521,696 |
| 2020.11.16 | 750,449 |
| 2020.11.30 | 843,799 |
| 2020.12.14 | 526,220 |
| 2020.12.28 | 593,360 |
| **TOTAL** | **16,819,720** |

95

Boohoo and Nasty Gal similarly had millions of sales transactions during the four year period, including in excess of 36 million transactions for Boohoo and 12 million transactions for Nasty Gal. Defendants object to incurring the burden and expense of processing and manipulating this voluminous data and performing the complex mathematical calculations identified in this Request.

Defendants object to this Request as calling for an expert opinion and assistance both as to the appropriate manner of processing and manipulating this voluminous data and performing the complex mathematical calculations identified in this Request.

**REQUEST FOR ADMISSION NO. 3:**

Admit that less than ten (10) percent of the total units sold of PRODUCTS YOU sold on YOUR WEBSITE in the United States during the CLASS PERIOD were of sales of PRODUCTS that sold at the REFERENCE PRICE for the PRODUCT.

**DEFENDANTS' RESPONSE TO ADMISSION NO. 3:**

Defendants incorporate by reference the General Objections set forth herein. Defendants object to this Request to the extent it calls for the disclosure of information subject to the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege.

Defendants object to this Request to the extent it calls for the disclosure of product information that is not saved and/or tracked in Defendants' computer systems and/or databases.

Defendants object to this Request as vague and ambiguous as to the terms "less than ten (10) percent of the total units sold."

Defendants object to this Request as oppressive and unduly burdensome, in that the answer to this Request may be determined by examining, auditing, compiling, abstracting, or summarizing Defendants' business records (including electronically stored information), and the burden of deriving or ascertaining the answer will be substantially the same for either party. Subject to and without waiving the foregoing objections, Defendants will produce the United States sales data for Boohoo related brands with

96

1    pricing information from March 28, 2016 to present. Such data will include the geographic

2    location of the customer (by state) to the extent that information is available. Plaintiff

3    and/or his experts should bear the burden and expense of processing and manipulating this

4    voluminous data and performing the complex mathematical calculations identified in this

5    Request.

6         Defendants object to this Request as oppressive and unduly burdensome, in that the

7    information requested is not maintained in the regular course of business and is not readily

8    identifiable.

9         Defendants object to this Request as oppressive and unduly burdensome, in that the

10   Request asks Defendants to perform complex mathematical calculations with respect to

11   millions of individual sales transactions over a four year period. For example,

12   PrettyLittleThing had in excess of 16.8 million sales transactions in the United States in

13   the year 2020 alone, as reflected in the following chart:

97

| Spreadsheet Date | Number of Transactions |
|---|---|
| 2020.01.13 | 438,371 |
| 2020.01.27 | 456,684 |
| 2020.02.10 | 511,449 |
| 2020.02.24 | 639,779 |
| 2020.03.09 | 441,575 |
| 2020.03.23 | 399,400 |
| 2020.04.06 | 611,562 |
| 2020.04.20 | 658,545 |
| 2020.05.04 | 707,042 |
| 2020.05.18 | 778,669 |
| 2020.06.01 | 702,927 |
| 2020.06.15 | 851,485 |
| 2020.06.29 | 803,006 |
| 2020.07.13 | 722,407 |
| 2020.07.27 | 709,588 |
| 2020.08.10 | 688,398 |
| 2020.08.24 | 626,181 |
| 2020.09.07 | 762,205 |
| 2020.09.21 | 780,944 |
| 2020.10.05 | 709,965 |
| 2020.10.19 | 584,014 |
| 2020.11.02 | 521,696 |
| 2020.11.16 | 750,449 |
| 2020.11.30 | 843,799 |
| 2020.12.14 | 526,220 |
| 2020.12.28 | 593,360 |
| **TOTAL** | **16,819,720** |

Boohoo and Nasty Gal similarly had millions of sales transactions during the four year period, including in excess of 36 million transactions for Boohoo and 12 million transactions for Nasty Gal. Defendants object to incurring the burden and expense of processing and manipulating this voluminous data and performing the complex mathematical calculations identified in this Request.

Defendants object to this Request as calling for an expert opinion and assistance

98

both as to the appropriate manner of processing and manipulating this voluminous data and performing the complex mathematical calculations identified in this Request.

**REQUEST FOR ADMISSION NO. 4:**

Admit that less than ten (10) percent of the total units sold of PRODUCTS YOU sold on YOUR WEBSITE in California during the CLASS PERIOD were of sales of PRODUCTS that sold at the REFERENCE PRICE for the PRODUCT.

**DEFENDANTS' RESPONSE TO ADMISSION NO. 4:**

Defendants incorporate by reference the General Objections set forth herein. Defendants object to this Request to the extent it calls for the disclosure of information subject to the attorney-client privilege, the attorney work product

doctrine, or any other applicable privilege.

Defendants object to this Request to the extent it calls for the disclosure of product information that is not saved and/or tracked in Defendants' computer systems and/or databases.

Defendants object to this Request as vague and ambiguous as to the terms "less than ten (10) percent of the total units sold."

Defendants object to this Request as oppressive and unduly burdensome, in that the answer to this Request may be determined by examining, auditing, compiling, abstracting, or summarizing Defendants' business records (including electronically stored information), and the burden of deriving or ascertaining the answer will be substantially the same for either party. Subject to and without waiving the foregoing objections, Defendants will produce the United States sales data for Boohoo related brands with pricing information from March 28, 2016 to present. Such data will include the geographic location of the customer (by state) to the extent that information is available. Plaintiff and/or his experts should bear the burden and expense of processing and manipulating this voluminous data and performing the complex mathematical calculations identified in this Request.

Defendants object to this Request as oppressive and unduly burdensome, in that the

99

information requested is not maintained in the regular course of business and is not readily identifiable.

Defendants object to this Request as oppressive and unduly burdensome, in that the Request asks Defendants to perform complex mathematical calculations with respect to millions of individual sales transactions over a four year period. For example, PrettyLittleThing had in excess of 16.8 million sales transactions in the United States in the year 2020 alone, as reflected in the following chart:

| Spreadsheet Date | Number of Transactions |
|---|---|
| 2020.01.13 | 438,371 |
| 2020.01.27 | 456,684 |
| 2020.02.10 | 511,449 |
| 2020.02.24 | 639,779 |
| 2020.03.09 | 441,575 |
| 2020.03.23 | 399,400 |
| 2020.04.06 | 611,562 |
| 2020.04.20 | 658,545 |
| 2020.05.04 | 707,042 |
| 2020.05.18 | 778,669 |
| 2020.06.01 | 702,927 |
| 2020.06.15 | 851,485 |
| 2020.06.29 | 803,006 |
| 2020.07.13 | 722,407 |
| 2020.07.27 | 709,588 |
| 2020.08.10 | 688,398 |
| 2020.08.24 | 626,181 |
| 2020.09.07 | 762,205 |
| 2020.09.21 | 780,944 |
| 2020.10.05 | 709,965 |
| 2020.10.19 | 584,014 |
| 2020.11.02 | 521,696 |
| 2020.11.16 | 750,449 |
| 2020.11.30 | 843,799 |
| 2020.12.14 | 526,220 |
| 2020.12.28 | 593,360 |
| **TOTAL** | **16,819,720** |

Boohoo and Nasty Gal similarly had millions of sales transactions during the four year period, including in excess of 36 million transactions for Boohoo and 12 million transactions for Nasty Gal. Defendants object to incurring the burden and expense of processing and manipulating this voluminous data and performing the complex mathematical calculations identified in this Request.

Defendants object to this Request as calling for an expert opinion and assistance both as to the appropriate manner of processing and manipulating this voluminous data and performing the complex mathematical calculations identified in this Request.

**REQUEST FOR ADMISSION NO. 5:**

Admit that none of the PRODUCTS YOU sold on YOUR WEBSITE in the United States during the CLASS PERIOD were offered for sale by YOU at or above the REFERENCE PRICE for the PRODUCT on at least 10% of the previous 90 days as of the time of each sale (*e.g.*, a PRODUCT with a REFERENCE PRICE of $25 on December 1, 2020, was not offered for sale on YOUR WEBSITE at or above that REFERENCE PRICE ($25 in this example) for 9 or more of the then previous 90 days).

**DEFENDANTS' RESPONSE TO ADMISSION NO. 5:**

Defendants incorporate by reference the General Objections set forth herein. Defendants object to this Request to the extent it calls for the disclosure of information subject to the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege.

Defendants object to this Request to the extent it calls for the disclosure of product information that is not saved and/or tracked in Defendants' computer systems and/or databases.

Defendants object to this Request as vague and ambiguous as to the terms "at or above the REFERENCE PRICE for the PRODUCT on at least 10% of the previous 90 days as of the time of each sale."

Defendants object to this Request as oppressive and unduly burdensome, in that the answer to this Request may be determined by examining, auditing, compiling, abstracting,

101

or summarizing Defendants' business records (including electronically stored information), and the burden of deriving or ascertaining the answer will be substantially the same for either party. Subject to and without waiving the foregoing objections, Defendants will produce the United States sales data for Boohoo related brands with pricing information from March 28, 2016 to present. Such data will include the geographic location of the customer (by state) to the extent that information is available. Plaintiff and/or his experts should bear the burden and expense of processing and manipulating this voluminous data and performing the complex mathematical calculations identified in this Request.

Defendants object to this Request as oppressive and unduly burdensome, in that the information requested is not maintained in the regular course of business and is not readily identifiable.

Defendants object to this Request as oppressive and unduly burdensome, in that the Request asks Defendants to perform complex mathematical calculations with respect to millions of individual sales transactions over a four year period. For example, PrettyLittleThing had in excess of 16.8 million sales transactions in the United States in the year 2020 alone, as reflected in the following chart:

| Spreadsheet Date | Number of Transactions |
|---|---|
| 2020.01.13 | 438,371 |
| 2020.01.27 | 456,684 |
| 2020.02.10 | 511,449 |
| 2020.02.24 | 639,779 |
| 2020.03.09 | 441,575 |
| 2020.03.23 | 399,400 |
| 2020.04.06 | 611,562 |
| 2020.04.20 | 658,545 |
| 2020.05.04 | 707,042 |
| 2020.05.18 | 778,669 |
| 2020.06.01 | 702,927 |
| 2020.06.15 | 851,485 |
| 2020.06.29 | 803,006 |
| 2020.07.13 | 722,407 |
| 2020.07.27 | 709,588 |
| 2020.08.10 | 688,398 |
| 2020.08.24 | 626,181 |
| 2020.09.07 | 762,205 |
| 2020.09.21 | 780,944 |
| 2020.10.05 | 709,965 |
| 2020.10.19 | 584,014 |
| 2020.11.02 | 521,696 |
| 2020.11.16 | 750,449 |
| 2020.11.30 | 843,799 |
| 2020.12.14 | 526,220 |
| 2020.12.28 | 593,360 |
| **TOTAL** | **16,819,720** |

Boohoo and Nasty Gal similarly had millions of sales transactions during the four year period, including in excess of 36 million transactions for Boohoo and 12 million transactions for Nasty Gal. Defendants object to incurring the burden and expense of processing and manipulating this voluminous data and performing the complex mathematical calculations identified in this Request.

Defendants object to this Request as calling for an expert opinion and assistance both as to the appropriate manner of processing and manipulating this voluminous data

and performing the complex mathematical calculations identified in this Request.

**REQUEST FOR ADMISSION NO. 8:**

Admit that YOU ADVERTISED REFERENCE PRICES for YOUR PRODUCTS on YOUR WEBSITE during the CLASS PERIOD.

**DEFENDANTS' RESPONSE TO ADMISSION NO. 8:**

Defendants incorporate by reference the General Objections set forth herein. Defendants object to this Request to the extent it calls for the disclosure of information subject to the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege.

Defendants object to this Request to the extent it calls for the disclosure of product information that is not saved and/or tracked in Defendants' computer systems and/or databases.

Defendants object to the Request as vague and ambiguous as to the term "ADVERTISED REFERENCE PRICES," including the definition of the term "REFERENCE PRICE."

Defendants object to this Request as oppressive and unduly burdensome, in that the answer to this Request may be determined by examining, auditing, compiling, abstracting, or summarizing Defendants' business records (including electronically stored information), and the burden of deriving or ascertaining the answer will be substantially the same for either party. Subject to and without waiving the foregoing objections, Defendants will produce the United States sales data for Boohoo related brands with pricing information from March 28, 2016 to present. Such data will include the geographic location of the customer (by state) to the extent that information is available. Plaintiff and/or his experts should bear the burden and expense of processing and manipulating this voluminous data and performing the complex mathematical calculations identified in this Request.

Defendants object to this Request as oppressive and unduly burdensome, in that the

information requested is not maintained in the regular course of business and is not readily identifiable.

Defendants object to this Request as oppressive and unduly burdensome, in that the Request asks Defendants to perform complex mathematical calculations with respect to millions of individual sales transactions over a four year period. For example, PrettyLittleThing had in excess of 16.8 million sales transactions in the United States in the year 2020 alone, as reflected in the following chart:

| Spreadsheet Date | Number of Transactions |
|---|---|
| 2020.01.13 | 438,371 |
| 2020.01.27 | 456,684 |
| 2020.02.10 | 511,449 |
| 2020.02.24 | 639,779 |
| 2020.03.09 | 441,575 |
| 2020.03.23 | 399,400 |
| 2020.04.06 | 611,562 |
| 2020.04.20 | 658,545 |
| 2020.05.04 | 707,042 |
| 2020.05.18 | 778,669 |
| 2020.06.01 | 702,927 |
| 2020.06.15 | 851,485 |
| 2020.06.29 | 803,006 |
| 2020.07.13 | 722,407 |
| 2020.07.27 | 709,588 |
| 2020.08.10 | 688,398 |
| 2020.08.24 | 626,181 |
| 2020.09.07 | 762,205 |
| 2020.09.21 | 780,944 |
| 2020.10.05 | 709,965 |
| 2020.10.19 | 584,014 |
| 2020.11.02 | 521,696 |
| 2020.11.16 | 750,449 |
| 2020.11.30 | 843,799 |
| 2020.12.14 | 526,220 |
| 2020.12.28 | 593,360 |
| **TOTAL** | **16,819,720** |

105

Boohoo and Nasty Gal similarly had millions of sales transactions during the four year period, including in excess of 36 million transactions for Boohoo and 12 million transactions for Nasty Gal. Defendants object to incurring the burden and expense of processing and manipulating this voluminous data and performing the complex mathematical calculations identified in this Request.

Defendants object to this Request as calling for an expert opinion and assistance both as to the appropriate manner of processing and manipulating this voluminous data and performing the complex mathematical calculations identified in this Request.

**REQUEST FOR ADMISSION NO. 11:**

Admit that the REFERENCE PRICES YOU ADVERTISED on YOUR WEBSITE for YOUR PRODUCTS during the CLASS PERIOD did not represent the price at which the particular PRODUCT associated with the REFERENCE PRICE had sold on YOUR WEBSITE in the previous 90 days.

**DEFENDANTS' RESPONSE TO ADMISSION NO. 11:**

Defendants incorporate by reference the General Objections set forth herein. Defendants object to this Request to the extent it calls for the disclosure of information subject to the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege.

Defendants object to this Request to the extent it calls for the disclosure of product information that is not saved and/or tracked in Defendants' computer systems and/or databases.

Defendants object to this Request as vague and ambiguous as to the term "in the previous 90 days."

Defendants object to this Request as oppressive and unduly burdensome, in that the answer to this Request may be determined by examining, auditing, compiling, abstracting, or summarizing Defendants' business records (including electronically stored information), and the burden of deriving or ascertaining the answer will be substantially the same for either party. Subject to and without waiving the foregoing objections,

106

Defendants will produce the United States sales data for Boohoo related brands with pricing information from March 28, 2016 to present. Such data will include the geographic location of the customer (by state) to the extent that information is available. Plaintiff and/or his experts should bear the burden and expense of processing and manipulating this voluminous data and performing the complex mathematical calculations identified in this Request.

Defendants object to this Request as oppressive and unduly burdensome, in that the information requested is not maintained in the regular course of business and is not readily identifiable.

Defendants object to this Request as oppressive and unduly burdensome, in that the Request asks Defendants to perform complex mathematical calculations with respect to millions of individual sales transactions over a four year period. For example, PrettyLittleThing had in excess of 16.8 million sales transactions in the United States in the year 2020 alone, as reflected in the following chart:

| Spreadsheet Date | Number of Transactions |
|---|---|
| 2020.01.13 | 438,371 |
| 2020.01.27 | 456,684 |
| 2020.02.10 | 511,449 |
| 2020.02.24 | 639,779 |
| 2020.03.09 | 441,575 |
| 2020.03.23 | 399,400 |
| 2020.04.06 | 611,562 |
| 2020.04.20 | 658,545 |
| 2020.05.04 | 707,042 |
| 2020.05.18 | 778,669 |
| 2020.06.01 | 702,927 |
| 2020.06.15 | 851,485 |
| 2020.06.29 | 803,006 |
| 2020.07.13 | 722,407 |
| 2020.07.27 | 709,588 |
| 2020.08.10 | 688,398 |
| 2020.08.24 | 626,181 |
| 2020.09.07 | 762,205 |
| 2020.09.21 | 780,944 |
| 2020.10.05 | 709,965 |
| 2020.10.19 | 584,014 |
| 2020.11.02 | 521,696 |
| 2020.11.16 | 750,449 |
| 2020.11.30 | 843,799 |
| 2020.12.14 | 526,220 |
| 2020.12.28 | 593,360 |
| **TOTAL** | **16,819,720** |

Boohoo and Nasty Gal similarly had millions of sales transactions during the four year period, including in excess of 36 million transactions for Boohoo and 12 million transactions for Nasty Gal. Defendants object to incurring the burden and expense of processing and manipulating this voluminous data and performing the complex mathematical calculations identified in this Request.

Defendants object to this Request as calling for an expert opinion and assistance both as to the appropriate manner of processing and manipulating this voluminous data

1  and performing the complex mathematical calculations identified in this Request.

2  **REQUEST FOR ADMISSION NO. 12:**

3  Admit that the REFERENCE PRICES YOU ADVERTISED on YOUR WEBSITE

4  for YOUR PRODUCTS during the CLASS PERIOD did not represent the price at which

5  the particular PRODUCT associated with the REFERENCE PRICE had been offered for

6  sale on YOUR WEBSITE in the previous 90 days.

7  **DEFENDANTS' RESPONSE TO ADMISSION NO. 12:**

8  Defendants incorporate by reference the General Objections set forth herein.

9  Defendants object to this Request to the extent it calls for the disclosure of information

10  subject to the attorney-client privilege, the attorney work product doctrine, or any other

11  applicable privilege.

12  Defendants object to this Request to the extent it calls for the disclosure of product

13  information that is not saved and/or tracked in Defendants' computer systems and/or

14  databases.

15  Defendants object to this Request as vague and ambiguous as to the term "in the

16  previous 90 days."

17  Defendants object to this Request as oppressive and unduly burdensome, in that the

18  answer to this Request may be determined by examining, auditing, compiling, abstracting,

19  or summarizing Defendants' business records (including electronically stored

20  information), and the burden of deriving or ascertaining the answer will be substantially

21  the same for either party. Subject to and without waiving the foregoing objections,

22  Defendants will produce the United States sales data for Boohoo related brands with

23  pricing information from March 28, 2016 to present. Such data will include the geographic

24  location of the customer (by state) to the extent that information is available. Plaintiff

25  and/or his experts should bear the burden and expense of processing and manipulating this

26  voluminous data and performing the complex mathematical calculations identified in this

27  Request.

28  Defendants object to this Request as oppressive and unduly burdensome, in that the

109

information requested is not maintained in the regular course of business and is not readily identifiable.

Defendants object to this Request as oppressive and unduly burdensome, in that the Request asks Defendants to perform complex mathematical calculations with respect to millions of individual sales transactions over a four year period. For example, PrettyLittleThing had in excess of 16.8 million sales transactions in the United States in the year 2020 alone, as reflected in the following chart:

| Spreadsheet Date | Number of Transactions |
|---|---|
| 2020.01.13 | 438,371 |
| 2020.01.27 | 456,684 |
| 2020.02.10 | 511,449 |
| 2020.02.24 | 639,779 |
| 2020.03.09 | 441,575 |
| 2020.03.23 | 399,400 |
| 2020.04.06 | 611,562 |
| 2020.04.20 | 658,545 |
| 2020.05.04 | 707,042 |
| 2020.05.18 | 778,669 |
| 2020.06.01 | 702,927 |
| 2020.06.15 | 851,485 |
| 2020.06.29 | 803,006 |
| 2020.07.13 | 722,407 |
| 2020.07.27 | 709,588 |
| 2020.08.10 | 688,398 |
| 2020.08.24 | 626,181 |
| 2020.09.07 | 762,205 |
| 2020.09.21 | 780,944 |
| 2020.10.05 | 709,965 |
| 2020.10.19 | 584,014 |
| 2020.11.02 | 521,696 |
| 2020.11.16 | 750,449 |
| 2020.11.30 | 843,799 |
| 2020.12.14 | 526,220 |
| 2020.12.28 | 593,360 |
| **TOTAL** | **16,819,720** |

110

Boohoo and Nasty Gal similarly had millions of sales transactions during the four year period, including in excess of 36 million transactions for Boohoo and 12 million transactions for Nasty Gal. Defendants object to incurring the burden and expense of processing and manipulating this voluminous data and performing the complex mathematical calculations identified in this Request.

Defendants object to this Request as calling for an expert opinion and assistance both as to the appropriate manner of processing and manipulating this voluminous data and performing the complex mathematical calculations identified in this Request.

**REQUEST FOR ADMISSION NO. 13:**

Admit that the REFERENCE PRICES YOU ADVERTISED on YOUR WEBSITE for YOUR PRODUCTS during the CLASS PERIOD did not represent the price at which the particular PRODUCT associated with the REFERENCE PRICE had sold on YOUR WEBSITE for more than 5 of the previous 90 days.

**DEFENDANTS' RESPONSE TO ADMISSION NO. 13:**

Defendants incorporate by reference the General Objections set forth herein. Defendants object to this Request to the extent it calls for the disclosure of information subject to the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege.

Defendants object to this Request to the extent it calls for the disclosure of product information that is not saved and/or tracked in Defendants' computer systems and/or databases.

Defendants object to this Request as vague and ambiguous as to the term "more than 5 of the previous 90 days."

Defendants object to this Request as oppressive and unduly burdensome, in that the answer to this Request may be determined by examining, auditing, compiling, abstracting, or summarizing Defendants' business records (including electronically stored information), and the burden of deriving or ascertaining the answer will be substantially the same for either party. Subject to and without waiving the foregoing objections,

Defendants will produce the United States sales data for Boohoo related brands with pricing information from March 28, 2016 to present. Such data will include the geographic location of the customer (by state) to the extent that information is available. Plaintiff and/or his experts should bear the burden and expense of processing and manipulating this voluminous data and performing the complex mathematical calculations identified in this Request.

Defendants object to this Request as oppressive and unduly burdensome, in that the information requested is not maintained in the regular course of business and is not readily identifiable.

Defendants object to this Request as oppressive and unduly burdensome, in that the Request asks Defendants to perform complex mathematical calculations with respect to millions of individual sales transactions over a four year period. For example, PrettyLittleThing had in excess of 16.8 million sales transactions in the United States in the year 2020 alone, as reflected in the following chart:

112

*Notice of Motion and Local Rule 37-1 Joint Stipulation Regarding*
*Plaintiffs' Motion to Compel Further Discovery Responses from Defendants*

*Case No. 2:20-cv-03332-GW-JEM*

| Spreadsheet Date | Number of Transactions |
|---|---|
| 2020.01.13 | 438,371 |
| 2020.01.27 | 456,684 |
| 2020.02.10 | 511,449 |
| 2020.02.24 | 639,779 |
| 2020.03.09 | 441,575 |
| 2020.03.23 | 399,400 |
| 2020.04.06 | 611,562 |
| 2020.04.20 | 658,545 |
| 2020.05.04 | 707,042 |
| 2020.05.18 | 778,669 |
| 2020.06.01 | 702,927 |
| 2020.06.15 | 851,485 |
| 2020.06.29 | 803,006 |
| 2020.07.13 | 722,407 |
| 2020.07.27 | 709,588 |
| 2020.08.10 | 688,398 |
| 2020.08.24 | 626,181 |
| 2020.09.07 | 762,205 |
| 2020.09.21 | 780,944 |
| 2020.10.05 | 709,965 |
| 2020.10.19 | 584,014 |
| 2020.11.02 | 521,696 |
| 2020.11.16 | 750,449 |
| 2020.11.30 | 843,799 |
| 2020.12.14 | 526,220 |
| 2020.12.28 | 593,360 |
| **TOTAL** | **16,819,720** |

Boohoo and Nasty Gal similarly had millions of sales transactions during the four year period, including in excess of 36 million transactions for Boohoo and 12 million transactions for Nasty Gal. Defendants object to incurring the burden and expense of processing and manipulating this voluminous data and performing the complex mathematical calculations identified in this Request.

Defendants object to this Request as calling for an expert opinion and assistance both as to the appropriate manner of processing and manipulating this voluminous data

113

1   and performing the complex mathematical calculations identified in this Request.

2   **REQUEST FOR ADMISSION NO. 14:**

3   Admit that the REFERENCE PRICES YOU ADVERTISED on YOUR WEBSITE

4   for YOUR PRODUCTS during the CLASS PERIOD did not represent the price at which

5   the particular PRODUCT associated with the REFERENCE PRICE had been offered for

6   sale on YOUR WEBSITE for more than 5 of the previous 90 days.

7   **DEFENDANTS' RESPONSE TO ADMISSION NO. 14:**

8   Defendants incorporate by reference the General Objections set forth herein.

9   Defendants object to this Request to the extent it calls for the disclosure of information

10  subject to the attorney-client privilege, the attorney work product doctrine, or any other

11  applicable privilege.

12  Defendants object to this Request to the extent it calls for the disclosure of product

13  information that is not saved and/or tracked in Defendants' computer systems and/or

14  databases.

15  Defendants object to this Request as vague and ambiguous as to the terms "offered

16  for sale" and "more than 5 of the previous 90 days."

17  Defendants object to this Request as oppressive and unduly burdensome, in that the

18  answer to this Request may be determined by examining, auditing, compiling, abstracting,

19  or summarizing Defendants' business records (including electronically stored

20  information), and the burden of deriving or ascertaining the answer will be substantially

21  the same for either party. Subject to and without waiving the foregoing objections,

22  Defendants will produce the United States sales data for Boohoo related brands with

23  pricing information from March 28, 2016 to present. Such data will include the geographic

24  location of the customer (by state) to the extent that information is available. Plaintiff

25  and/or his experts should bear the burden and expense of processing and manipulating this

26  voluminous data and performing the complex mathematical calculations identified in this

27  Request.

28  Defendants object to this Request as oppressive and unduly burdensome, in that the

114

information requested is not maintained in the regular course of business and is not readily identifiable.

Defendants object to this Request as oppressive and unduly burdensome, in that the Request asks Defendants to perform complex mathematical calculations with respect to millions of individual sales transactions over a four year period. For example, PrettyLittleThing had in excess of 16.8 million sales transactions in the United States in the year 2020 alone, as reflected in the following chart:

| Spreadsheet Date | Number of Transactions |
|---|---|
| 2020.01.13 | 438,371 |
| 2020.01.27 | 456,684 |
| 2020.02.10 | 511,449 |
| 2020.02.24 | 639,779 |
| 2020.03.09 | 441,575 |
| 2020.03.23 | 399,400 |
| 2020.04.06 | 611,562 |
| 2020.04.20 | 658,545 |
| 2020.05.04 | 707,042 |
| 2020.05.18 | 778,669 |
| 2020.06.01 | 702,927 |
| 2020.06.15 | 851,485 |
| 2020.06.29 | 803,006 |
| 2020.07.13 | 722,407 |
| 2020.07.27 | 709,588 |
| 2020.08.10 | 688,398 |
| 2020.08.24 | 626,181 |
| 2020.09.07 | 762,205 |
| 2020.09.21 | 780,944 |
| 2020.10.05 | 709,965 |
| 2020.10.19 | 584,014 |
| 2020.11.02 | 521,696 |
| 2020.11.16 | 750,449 |
| 2020.11.30 | 843,799 |
| 2020.12.14 | 526,220 |
| 2020.12.28 | 593,360 |
| **TOTAL** | **16,819,720** |

115

Boohoo and Nasty Gal similarly had millions of sales transactions during the four year period, including in excess of 36 million transactions for Boohoo and 12 million transactions for Nasty Gal. Defendants object to incurring the burden and expense of processing and manipulating this voluminous data and performing the complex mathematical calculations identified in this Request.

Defendants object to this Request as calling for an expert opinion and assistance both as to the appropriate manner of processing and manipulating this voluminous data and performing the complex mathematical calculations identified in this Request.

**REQUEST FOR ADMISSION NO. 15:**

Admit that the REFERENCE PRICES YOU ADVERTISED on YOUR WEBSITE for YOUR PRODUCTS during the CLASS PERIOD did not represent the original (initial) price the PRODUCT sold for on YOUR WEBSITE.

**DEFENDANTS' RESPONSE TO ADMISSION NO. 15:**

Defendants incorporate by reference the General Objections set forth herein. Defendants object to this Request to the extent it calls for the disclosure of information subject to the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege.

Defendants object to this Request to the extent it calls for the disclosure of product information that is not saved and/or tracked in Defendants' computer systems and/or databases.

Defendants object to this Request as vague and ambiguous as to the term "the original (initial) price the PRODUCT sold for on YOUR WEBSITE."

Defendants object to this Request as oppressive and unduly burdensome, in that the answer to this Request may be determined by examining, auditing, compiling, abstracting, or summarizing Defendants' business records (including electronically stored information), and the burden of deriving or ascertaining the answer will be substantially the same for either party. Subject to and without waiving the foregoing objections, Defendants will produce the United States sales data for Boohoo related brands with

116

pricing information from March 28, 2016 to present. Such data will include the geographic location of the customer (by state) to that the information requested is not maintained in the regular course of business and is not readily identifiable.

Defendants object to this Request as oppressive and unduly burdensome, in that the Request asks Defendants to perform complex mathematical calculations with respect to millions of individual sales transactions over a four year period. For example, PrettyLittleThing had in excess of 16.8 million sales transactions in the United States in the year 2020 alone, as reflected in the following chart:

| Spreadsheet Date | Number of Transactions |
|---|---|
| 2020.01.13 | 438,371 |
| 2020.01.27 | 456,684 |
| 2020.02.10 | 511,449 |
| 2020.02.24 | 639,779 |
| 2020.03.09 | 441,575 |
| 2020.03.23 | 399,400 |
| 2020.04.06 | 611,562 |
| 2020.04.20 | 658,545 |
| 2020.05.04 | 707,042 |
| 2020.05.18 | 778,669 |
| 2020.06.01 | 702,927 |
| 2020.06.15 | 851,485 |
| 2020.06.29 | 803,006 |
| 2020.07.13 | 722,407 |
| 2020.07.27 | 709,588 |
| 2020.08.10 | 688,398 |
| 2020.08.24 | 626,181 |
| 2020.09.07 | 762,205 |
| 2020.09.21 | 780,944 |
| 2020.10.05 | 709,965 |
| 2020.10.19 | 584,014 |
| 2020.11.02 | 521,696 |
| 2020.11.16 | 750,449 |
| 2020.11.30 | 843,799 |
| 2020.12.14 | 526,220 |
| 2020.12.28 | 593,360 |
| **TOTAL** | **16,819,720** |

Boohoo and Nasty Gal similarly had millions of sales transactions during the four Defendants object to this Request as calling for an expert opinion and assistance both as to the appropriate manner of processing and manipulating this voluminous data and performing the complex mathematical calculations identified in this Request.

Defendants object to this Request as calling for an expert opinion and assistance both as to the appropriate manner of processing and manipulating this voluminous data and performing the complex mathematical calculations identified in this Request.

1 **REQUEST FOR ADMISSION NO. 18:**

2     Admit that the REFERENCE PRICES YOU ADVERTISED on YOUR WEBSITE

3 for YOUR PRODUCTS during the CLASS PERIOD did not represent the regular price

4 of the PRODUCT.

5 **DEFENDANTS' RESPONSE TO ADMISSION NO. 18:**

6     Defendants incorporate by reference the General Objections set forth herein.

7 Defendants object to this Request to the extent it calls for the disclosure of information

8 subject to the attorney-client privilege, the attorney work product doctrine, or any other

9 applicable privilege.

10     Defendants object to the Request as vague and ambiguous as to the term "the regular

11 price of the PRODUCT."

12     Defendants object to this Request to the extent it calls for the disclosure of product

13 information that is not saved and/or tracked in Defendants' computer systems and/or

14 databases.

15     Defendants object to the Request as vague and ambiguous as to the term "the regular

16 price," and "REFERENCE PRICES YOU ADVERTISED," including the definition of

17 the term "REFERENCE PRICE."

18     Defendants object to this Request as oppressive and unduly burdensome, in that the

19 answer to this Request may be determined by examining, auditing, compiling, abstracting,

20 or summarizing Defendants' business records (including electronically stored

21 information), and the burden of deriving or ascertaining the answer will be substantially

22 the same for either party. Subject to and without waiving the foregoing objections,

23 Defendants will produce the United States sales data for Boohoo related brands with

24 pricing information from March 28, 2016 to present. Such data will include the geographic

25 location of the customer (by state) to the extent that information is available. Plaintiff

26 and/or his experts should bear the burden and expense of processing and manipulating this

27 voluminous data and performing the complex mathematical calculations identified in this

28 Request.

Defendants object to this Request as oppressive and unduly burdensome, in that the information requested is not maintained in the regular course of business and is not readily identifiable.

Defendants object to this Request as oppressive and unduly burdensome, in that the Request asks Defendants to perform complex mathematical calculations with respect to millions of individual sales transactions over a four year period. For example, PrettyLittleThing had in excess of 16.8 million sales transactions in the United States in the year 2020 alone, as reflected in the following chart:

| Spreadsheet Date | Number of Transactions |
| --- | --- |
| 2020.01.13 | 438,371 |
| 2020.01.27 | 456,684 |
| 2020.02.10 | 511,449 |
| 2020.02.24 | 639,779 |
| 2020.03.09 | 441,575 |
| 2020.03.23 | 399,400 |
| 2020.04.06 | 611,562 |
| 2020.04.20 | 658,545 |
| 2020.05.04 | 707,042 |
| 2020.05.18 | 778,669 |
| 2020.06.01 | 702,927 |
| 2020.06.15 | 851,485 |
| 2020.06.29 | 803,006 |
| 2020.07.13 | 722,407 |
| 2020.07.27 | 709,588 |
| 2020.08.10 | 688,398 |
| 2020.08.24 | 626,181 |
| 2020.09.07 | 762,205 |
| 2020.09.21 | 780,944 |
| 2020.10.05 | 709,965 |
| 2020.10.19 | 584,014 |
| 2020.11.02 | 521,696 |
| 2020.11.16 | 750,449 |
| 2020.11.30 | 843,799 |
| 2020.12.14 | 526,220 |
| 2020.12.28 | 593,360 |
| **TOTAL** | **16,819,720** |

Boohoo and Nasty Gal similarly had millions of sales transactions during the four year period, including in excess of 36 million transactions for Boohoo and 12 million transactions for Nasty Gal. Defendants object to incurring the burden and expense of processing and manipulating this voluminous data and performing the complex mathematical calculations identified in this Request.

Defendants object to this Request as calling for an expert opinion and assistance both as to the appropriate manner of processing and manipulating this voluminous data

and performing the complex mathematical calculations identified in this Request.

**REQUEST FOR ADMISSION NO. 19:**

Admit that the REFERENCE PRICES YOU ADVERTISED on YOUR WEBSITE for YOUR PRODUCTS during the CLASS PERIOD did not represent the price at which the PRODUCT was ADVERTISED to be sold for the majority of the time it was ADVERTISED to be sold on YOUR WEBSITE.

**DEFENDANTS' RESPONSE TO ADMISSION NO. 19:**

Defendants incorporate by reference the General Objections set forth herein. Defendants object to this Request to the extent it calls for the disclosure of information subject to the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege.

Defendants object to this Request to the extent it calls for the disclosure of product information that is not saved and/or tracked in Defendants' computer systems and/or databases.

Defendants object to this Request as vague and ambiguous as to the term "for the majority of the time it was ADVERTISED to be sold on YOUR WEBSITE."

Defendants object to this Request as oppressive and unduly burdensome, in that the answer to this Request may be determined by examining, auditing, compiling, abstracting, or summarizing Defendants' business records (including electronically stored information), and the burden of deriving or ascertaining the answer will be substantially the same for either party. Subject to and without waiving the foregoing objections, Defendants will produce the United States sales data for Boohoo related brands with pricing information from March 28, 2016 to present. Such data will include the geographic location of the customer (by state) to the extent that information is available. Plaintiff and/or his experts should bear the burden and expense of processing and manipulating this voluminous data and performing the complex mathematical calculations identified in this Request.

Defendants object to this Request as oppressive and unduly burdensome, in that the

122

information requested is not maintained in the regular course of business and is not readily identifiable.

Defendants object to this Request as oppressive and unduly burdensome, in that the Request asks Defendants to perform complex mathematical calculations with respect to millions of individual sales transactions over a four year period. For example, PrettyLittleThing had in excess of 16.8 million sales transactions in the United States in the year 2020 alone, as reflected in the following chart:

| Spreadsheet Date | Number of Transactions |
|---|---|
| 2020.01.13 | 438,371 |
| 2020.01.27 | 456,684 |
| 2020.02.10 | 511,449 |
| 2020.02.24 | 639,779 |
| 2020.03.09 | 441,575 |
| 2020.03.23 | 399,400 |
| 2020.04.06 | 611,562 |
| 2020.04.20 | 658,545 |
| 2020.05.04 | 707,042 |
| 2020.05.18 | 778,669 |
| 2020.06.01 | 702,927 |
| 2020.06.15 | 851,485 |
| 2020.06.29 | 803,006 |
| 2020.07.13 | 722,407 |
| 2020.07.27 | 709,588 |
| 2020.08.10 | 688,398 |
| 2020.08.24 | 626,181 |
| 2020.09.07 | 762,205 |
| 2020.09.21 | 780,944 |
| 2020.10.05 | 709,965 |
| 2020.10.19 | 584,014 |
| 2020.11.02 | 521,696 |
| 2020.11.16 | 750,449 |
| 2020.11.30 | 843,799 |
| 2020.12.14 | 526,220 |
| 2020.12.28 | 593,360 |
| **TOTAL** | **16,819,720** |

123

Boohoo and Nasty Gal similarly had millions of sales transactions during the four year period, including in excess of 36 million transactions for Boohoo and 12 million transactions for Nasty Gal. Defendants object to incurring the burden and expense of processing and manipulating this voluminous data and performing the complex mathematical calculations identified in this Request.

Defendants object to this Request as calling for an expert opinion and assistance both as to the appropriate manner of processing and manipulating this voluminous data and performing the complex mathematical calculations identified in this Request.

**REQUEST FOR ADMISSION NO. 20:**

Admit that the REFERENCE PRICES YOU ADVERTISED on YOUR WEBSITE for YOUR PRODUCTS during the CLASS PERIOD did not represent the price at which YOUR PRODUCTS were most-commonly ADVERTISED to be sold, over any time period (for example, as of today, for a PRODUCT with a REFERENCE PRICE of $25, that product has not had a most-frequently charged price of $25 over the previous 10 days or 20 days or 90 days, or any number of days).

**DEFENDANTS' RESPONSE TO ADMISSION NO. 20:**

Defendants incorporate by reference the General Objections set forth herein. Defendants object to this Request to the extent it calls for the disclosure of information subject to the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege.

Defendants object to this Request to the extent it calls for the disclosure of product information that is not saved and/or tracked in Defendants' computer systems and/or databases.

Defendants object to this Request as vague and ambiguous as to the term "the price at which YOUR PRODUCTS were most-commonly ADVERTISED to be sold, over any time period."

Defendants object to this Request as oppressive and unduly burdensome, in that the answer to this Request may be determined by examining, auditing, compiling, abstracting,

124

or summarizing Defendants' business records (including electronically stored information), and the burden of deriving or ascertaining the answer will be substantially the same for either party. Subject to and without waiving the foregoing objections, Defendants will produce the United States sales data for Boohoo related brands with pricing information from March 28, 2016 to present. Such data will include the geographic location of the customer (by state) to the extent that information is available. Plaintiff and/or his experts should bear the burden and expense of processing and manipulating this voluminous data and performing the complex mathematical calculations identified in this Request.

Defendants object to this Request as oppressive and unduly burdensome, in that the information requested is not maintained in the regular course of business and is not readily identifiable.

Defendants object to this Request as oppressive and unduly burdensome, in that the Request asks Defendants to perform complex mathematical calculations with respect to millions of individual sales transactions over a four year period. For example, PrettyLittleThing had in excess of 16.8 million sales transactions in the United States in the year 2020 alone, as reflected in the following chart:

| Spreadsheet Date | Number of Transactions |
|---|---|
| 2020.01.13 | 438,371 |
| 2020.01.27 | 456,684 |
| 2020.02.10 | 511,449 |
| 2020.02.24 | 639,779 |
| 2020.03.09 | 441,575 |
| 2020.03.23 | 399,400 |
| 2020.04.06 | 611,562 |
| 2020.04.20 | 658,545 |
| 2020.05.04 | 707,042 |
| 2020.05.18 | 778,669 |
| 2020.06.01 | 702,927 |
| 2020.06.15 | 851,485 |
| 2020.06.29 | 803,006 |
| 2020.07.13 | 722,407 |
| 2020.07.27 | 709,588 |
| 2020.08.10 | 688,398 |
| 2020.08.24 | 626,181 |
| 2020.09.07 | 762,205 |
| 2020.09.21 | 780,944 |
| 2020.10.05 | 709,965 |
| 2020.10.19 | 584,014 |
| 2020.11.02 | 521,696 |
| 2020.11.16 | 750,449 |
| 2020.11.30 | 843,799 |
| 2020.12.14 | 526,220 |
| 2020.12.28 | 593,360 |
| **TOTAL** | **16,819,720** |

Boohoo and Nasty Gal similarly had millions of sales transactions during the four year period, including in excess of 36 million transactions for Boohoo and 12 million transactions for Nasty Gal. Defendants object to incurring the burden and expense of processing and manipulating this voluminous data and performing the complex mathematical calculations identified in this Request.

Defendants object to this Request as calling for an expert opinion and assistance both as to the appropriate manner of processing and manipulating this voluminous data

126

and performing the complex mathematical calculations identified in this Request.

**REQUEST FOR ADMISSION NO. 21:**

Admit that YOU ADVERTISED REFERENCE PRICES on YOUR WEBSITE across all of YOUR product lines (excluding beauty products) during the CLASS PERIOD.

**DEFENDANTS' RESPONSE TO ADMISSION NO. 21:**

Defendants incorporate by reference the General Objections set forth herein. Defendants object to this Request to the extent it calls for the disclosure of information subject to the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege.

Defendants object to this Request to the extent it calls for the disclosure of product information that is not saved and/or tracked in Defendants' computer systems and/or databases.

Defendants object to the Request as vague and ambiguous as to the term "ADVERTISED REFERENCE PRICES," including the definition of the term "REFERENCE PRICE," and "all of YOUR product lines (excluding beauty products)."

Defendants object to this Request as oppressive and unduly burdensome, in that the answer to this Request may be determined by examining, auditing, compiling, abstracting, or summarizing Defendants' business records (including electronically stored information), and the burden of deriving or ascertaining the answer will be substantially the same for either party. Subject to and without waiving the foregoing objections, Defendants will produce the United States sales data for Nasty Gal related brands with pricing information from March 27, 2017 to present. Such data will include the geographic location of the customer (by state) to the extent that information is available. Plaintiff and/or his experts should bear the burden and expense of processing and manipulating this voluminous data and performing the complex mathematical calculations identified in this Request.

Defendants object to this Request as oppressive and unduly burdensome, in that the

127

information requested is not maintained in the regular course of business and is not readily identifiable.

Defendants object to this Request as oppressive and unduly burdensome, in that the Request asks Defendants to perform complex mathematical calculations with respect to millions of individual sales transactions over a four year period. For example, PrettyLittleThing had in excess of 16.8 million sales transactions in the United States in the year 2020 alone, as reflected in the following chart:

| Spreadsheet Date | Number of Transactions |
| --- | --- |
| 2020.01.13 | 438,371 |
| 2020.01.27 | 456,684 |
| 2020.02.10 | 511,449 |
| 2020.02.24 | 639,779 |
| 2020.03.09 | 441,575 |
| 2020.03.23 | 399,400 |
| 2020.04.06 | 611,562 |
| 2020.04.20 | 658,545 |
| 2020.05.04 | 707,042 |
| 2020.05.18 | 778,669 |
| 2020.06.01 | 702,927 |
| 2020.06.15 | 851,485 |
| 2020.06.29 | 803,006 |
| 2020.07.13 | 722,407 |
| 2020.07.27 | 709,588 |
| 2020.08.10 | 688,398 |
| 2020.08.24 | 626,181 |
| 2020.09.07 | 762,205 |
| 2020.09.21 | 780,944 |
| 2020.10.05 | 709,965 |
| 2020.10.19 | 584,014 |
| 2020.11.02 | 521,696 |
| 2020.11.16 | 750,449 |
| 2020.11.30 | 843,799 |
| 2020.12.14 | 526,220 |
| 2020.12.28 | 593,360 |
| **TOTAL** | **16,819,720** |

Boohoo and Nasty Gal similarly had millions of sales transactions during the four year period, including in excess of 36 million transactions for Boohoo and 12 million transactions for Nasty Gal. Defendants object to incurring the burden and expense of processing and manipulating this voluminous data and performing the complex mathematical calculations identified in this Request.

Defendants object to this Request as calling for an expert opinion and assistance both as to the appropriate manner of processing and manipulating this voluminous data and performing the complex mathematical calculations identified in this Request.

## INTERROGATORY NO. 16:

For each response to the Requests for Admission ("RFA") served with these Interrogatories that is not an unqualified admission: (a) state the number of the RFA; (b) state all facts upon which you base your response; (c) IDENTIFY all PERSONS who have knowledge of those facts; and (d) IDENTIFY all DOCUMENTS and other tangible things that support your response and IDENTIFY the PERSON who has each such DOCUMENT or thing.

## DEFENDANTS' RESPONSE TO INTERROGATORY NO. 16:

Defendants incorporate by reference the General Objections set forth herein. Defendants object to this Interrogatory to the extent it calls for the disclosure of information subject to the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege. Defendants object to this Interrogatory insofar as it seeks competitive sensitive business and financial information. Defendants object to this Interrogatory as improperly compound and containing multiple subparts.

Subject to and without waiving the foregoing objections, Defendants respond as follows:

RFA No. 6: Boohoo considers its products exclusive to Boohoo. However, Boohoo cannot rule out that if Boohoo buys garments from a wholesaler, the same wholesaler may sell the same products to a competitor.

RFA No. 7: Boohoo has held non-transactional pop-up stores, or otherwise known

as short-term, temporary spaces where no cash or orders were place. These pop-up stores were created to raise local brand awareness and allow customers to try-on clothes, post outfits on social media, view new collections and meet influencers. Customers could sign up to receive email correspondence from Boohoo, and if they liked items in the pop-up store, they could take away the product number

to shop the item online.

RFA No. 9: The reference price is set by experienced buyers based on a variety of factors. These factors may include, but are not limited to, previous pricing of the same, similar or comparable products on the Defendants' websites; established pricing structures for certain product lines carried on the Defendants' websites; pricing of similar or comparable products on competitors' websites, particularly U.K.-based competitors; the buyer's market knowledge and expertise; cost of goods; overhead costs; margin; U.S. pricing adjustments (including without limitation to account for differences in exchange rates, shipping costs, other U.S.-specific costs, U.S.-based competitors, and the U.S. market); industry data; sales performance, market demand, and/or market trends. In setting the reference price for a particular product, more or less weight, or no weight, might be given to certain factors.

RFA No. 10: The reference price is set by experienced buyers based on a variety of factors. These factors may include, but are not limited to, previous pricing of the same, similar or comparable products on the Defendants' websites; established pricing structures for certain product lines carried on the Defendants' websites; pricing of similar or comparable products on competitors' websites, particularly U.K.-based competitors; the buyer's market knowledge and expertise; cost of goods; overhead costs; margin; U.S. pricing adjustments (including without limitation to account for differences in exchange rates, shipping costs, other U.S.-specific costs, U.S.-based competitors, and the U.S. market); industry data; sales performance, market demand, and/or market trends. In setting the reference price for a particular product, more or less weight, or no weight, might be given to certain factors.

1      RFA No. 16: The reference price is set by experienced buyers based on a variety of

2 factors. These factors may include, but are not limited to, previous pricing of the same,

3 similar or comparable products on the Defendants' websites; established pricing structures

4 for certain product lines carried on the Defendants' websites; pricing of similar or

5 comparable products on competitors' websites, particularly U.K.-based competitors; the

6 buyer's market knowledge and expertise; cost of goods; overhead costs; margin; U.S.

7 pricing adjustments (including without limitation to account for differences in exchange

8 rates, shipping costs, other U.S.-specific costs, U.S.-based competitors, and the U.S.

9 market); industry data; sales performance, market demand, and/or market trends. In setting

10 the reference price for a particular product, more or less weight, or no weight, might be

11 given to certain factors.

12      RFA No. 17: Defendants are without sufficient information to admit or deny the

13 price of our Products on websites other than our own.

### 2. Plaintiffs' Contentions, Points, and Authorities Regarding Requests for Admission Nos. 1-5, 8, 11-15, 18-21, and Interrogatory No. 16

17      As shown above, Defendants, relying on meritless boilerplate objections, refused to

18 answer Requests for Admission (RFA) Nos. 1-5, 11-15, and 18-20 concerning the

19 frequency with which they sold and offered products at advertised reference prices.

20 Defendants also incredibly refuse to provide any answer to RFA Nos. 8 and 21.  RFA No.

21 8 asks Defendants to "[a]dmit that YOU ADVERTISED REFERENCE PRICES for

22 YOUR PRODUCTS on YOUR WEBSITE during the CLASS PERIOD." RFA No. 21

23 asks Defendants to "[a]dmit that YOU ADVERTISED REFERENCE PRICES on YOUR

24 WEBSITE across all of YOUR product lines (excluding beauty products) during the

25 CLASS PERIOD."  In addition, Defendants also provided no answer to Interrogatory No.

26 16 relating to the above-mentioned RFAs asking them to state all facts to explain their

27 denial of any of the aforementioned RFAs.

Defendants' refusal to answer any of these RFAs is confounding. The core question in this litigation is whether Defendants' use of reference pricing and markdowns/discounts was misleading to their consumers. Defendants used strikethroughs on the reference prices accompanied by a percentage markdown (e.g., 50% OFF), or whole dollar discounts, to suggest the reference prices were original, regular, or former prices and that consumers were getting a bargain. These RFAs simply ask Defendants to admit or deny simple questions of fact that lie at the core of this litigation: that Defendants rarely, if ever, offered their merchandise for sale at the reference price. The relevance of the information sought by RFAs 1-5, 8, 11-15, and 18-21, cannot be seriously disputed.

There is also no conceivable argument that the information sought by these RFAs is irrelevant to class certification. The questions posed by RFAs 1-5, 8, 11-15, and 18-21 go directly to the uniformity and prevalence of Defendants' practice of misleading putative class representatives about the prices at which their merchandise was previously sold.

Defendants contend that the math required in ascertaining the answer is too complex. This contention is grossly exaggerated. As reflected by Defendants' production of sales data, the data required to answer the RFAs is readily available in, and easily ascertainable from, Defendants' own databases. (Almadani Decl., ¶32.) The reference price for each item sold by Defendants is displayed daily on Defendants' websites, and is thus tracked by Defendants as is their other pricing data. Therefore, Defendants, which use state of the art data analytics software and employ data analytics engineers, are more than capable of using the tools and expertise on hand to answer these Requests. Moreover, proper admissions or denials of these requests will serve to settle the readily discernable issues in the case and narrow the disputed issues to streamline the litigation.

Indeed, Defendants' position conflicts with well-settled Ninth Circuit jurisprudence, which holds that "a party may not refuse to admit or deny a request for admission based upon a lack of personal knowledge if the information relevant to the request is reasonably available to him." *Asea, Inc. v. S. Pac. Transp. Co.*, 669 F.2d 1242, 1245 (9th Cir. 1981). Further, "a response which fails to admit or deny a proper request

132

for admission does not comply with the requirements of Rule 36(a) if the answering party has not, in fact, made 'reasonable inquiry,' or if information 'readily obtainable' is sufficient to enable him to admit or deny the matter." *Id.* at 1247. "A party requesting an admission may, if he feels these requirements have not been met, move to determine the sufficiency of the answer, to compel a proper response, or to have the matter ordered admitted." *Id.*

That is precisely the situation currently before the Court. Defendants have the ability, based on the information reasonably available to them, to admit or deny Plaintiffs' RFAs concerning their reference pricing and markdown practices. Yet, Defendants simply refuse to answer Plaintiffs' inquiries and have chosen to put Plaintiffs through their paces to come to this Court to compel them to respond, and to simultaneously waste the Court's limited resources, which should be reserved for genuine disputes, not frivolous ones. RFAs 1-5, 8, 11-15, and 18-21, should thus be deemed admitted or, at a minimum, Defendants should be ordered to provide amended responses.

Contrary to Defendants' contention, the RFAs do not seek matters that are expert opinion. Rather, the RFAs simply seek basic facts concerning Defendants' reference pricing practices. It is *Defendants* who sell their merchandise on their websites, *Defendants* who set the prices for their products, and *Defendants* who oversee and manage their own data reflecting their pricing practices. It is therefore a matter of Defendants' own personal knowledge as to how often they sell their merchandise at the posted reference prices, which is an issue of fact that can be readily resolved through the RFAs.

There is also nothing vague or convoluted about the RFAs in question. As noted above, Plaintiffs took great pains to define the term "REFERENCE PRICE" with words and a visual aid from Defendants' own websites. They provided clear definitions for other terms used in the RFAs, and in the case of RFA 5, even provided an example. Further, even where an RFA is arguably ambiguous, parties should "admit to the fullest extent possible, and explain in detail why other portions of a request may not be admitted[,]" as

133

*Notice of Motion and Local Rule 37-1 Joint Stipulation Regarding*                    *Case No. 2:20-cv-03332-GW-JEM*
*Plaintiffs' Motion to Compel Further Discovery Responses from Defendants*

the failure to do so may result in sanctions. *Marchand v. Mercy Med. Ctr.*, 22 F.3d 933, 938 (9th Cir. 1994).

Also contrary to Defendants' contentions, the use of RFAs is an appropriate and legally valid method of obtaining information from Defendants. One of the functions of an RFA is to narrow the scope of the case by removing issues from the case once and for all. *See* Fed. R. Civ. P. 36, Adv. Comm. Note to 1970 Amendment; *Asea,* 669 F.2d at 1245 ("The purpose of Rule 36(a) is to expedite trial by establishing certain material facts as true and thus narrowing the range of issues for trial."). Here, the clear result flowing from having Defendants admit that they rarely (if ever) sell their merchandise at advertised reference prices significantly narrows the issues for the Court and the jury to decide. As to class certification, admissions from Defendants concerning the RFAs in question effectively resolve all questions of commonality and predominance in favor of Plaintiffs. Defendants' suggestion that RFAs are not a true fact gathering discovery device is at odds with the plain text of Rule 36, which states in part that parties may use RFAs to get the responding party "to admit . . . the truth of *any matters* within the scope of *Rule 26(b)(1)* relating to . . . *facts, the application of law to fact, or opinions about either*[.]"  Fed. R. Civ. P. 36(a)(1) (emphasis added); *see also* Hon. Virginia A. Phillips and Karen L. Stevenson, Federal Civil Procedure Before Trial, California & Ninth Circuit Edition, at 11:970 (The Rutter Group 2020) (disagreeing with idea that RFAs are not a discovery device, stating that one function of RFAs "is to determine the opposing party's contentions (similar to one of the functions served by interrogatories)."); *Jacobs v. Quinones*, No. 1:10-CV-02349-AWI, 2014 WL 2091252, at *3 (E.D. Cal. May 16, 2014) ("Contrary to Defendants' arguments, RFAs *are* discovery devices.") (emphasis in original). In fact, RFAs may even be used to require parties to admit the accuracy of statistical data. *Lumpkin v. Meskill*, 64 F.R.D. 673, 676 (D. Conn. 1974).

Finally, Plaintiffs note that these Requests are designed only to be appropriate as written discovery requests because Defendants would not be able to provide this information through deposition answers. That a written discovery request requires the

134

responding party to review their own records and data before answering does not make the request objectionable; on the contrary, it is the very purpose of an Interrogatory or Request for Admission. *See Asea,* 669 F.2d at 1245.

> 3. **Defendants' Contentions, Points, and Authorities Regarding Requests for Admission Nos. 1-5, 8, 11-15, 18-21, and Interrogatory No. 16.**

Defendants do not believe that Plaintiffs' requests are appropriate as RFAs. Defendants detailed their position in their February 17, 2021 letter (Almadani Decl., Ex. 26), providing Plaintiffs with authority as to the basis of their objections that RFAs are meant to be straightforward, requiring little, if any, complex analysis and cannot seek legal conclusions. *See Safeco of America v. Rawstron*, 181 F.R.D. 441, 447 (C.D. Cal. 1998) ("Each request for an admission should be phrased simply and directly so that it can be admitted or denied without explanation."). Defendants believed that Plaintiffs would meet and confer or provide their own case law supporting their position, however, Plaintiffs refused to engage in any dialogue with regard to the RFAs and Interrogatories.

To briefly reiterate some of the points and authority provided by Defendants in their February 17, 2021 letter, the RFAs, as drafted, are outside the scope of Rule 36. *See Jones v. McGuire*, No. 2:08-cv-2607 MCE CKD P, 2012 U.S. Dist. LEXIS 87040, at *18 (E.D. Cal. June 21, 2012) (RFAs are "not [] discovery devices, since they presuppose that the propounding party knows or believes the facts sought and merely seeks a concession on that fact from the other party."); *Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 445 (C.D. Cal. 1998) (" 'Because Rule 36 was not designed to elicit information, to obtain discovery of the existence of facts, or [to] obtain production of documents, requests for admission should not be used as a method of discovery for those purposes.' "); Richard D. Kendall, Hon. Richard Seeborg, et al., Federal Pretrial Civil Procedure in California § 23.228[4] (Requests for admissions "that are repetitive, voluminous, convoluted, vague, or ambiguous, or that otherwise require extensive analysis or explanation, may be

1  objectionable.").[22]

2      As explained in Defendants' February letter, RFAs are inappropriate when they

3  contain vague and confusing definitions, making it impossible for the responding party to

4  answer the request, such as RFAs 8 and 21. Plaintiffs define "Reference Price" in such a

5  manner that Defendants cannot respond with a simple yes or no.  *See, e.g.*, Almadani Decl.

6  Ex. 1 ("The term "REFERENCE PRICE" refers to the higher price listed with regards to

7  all, or nearly all, PRODUCTS on YOUR WEBSITE that is represented to consumers as

8  being substantially marked down, and which typically, but not necessarily, may be

9  displayed with a strikethrough").  Plaintiff's definition is not only convoluted (*i.e.*, using

10  terms such as "substantially marked down," "with regards to all, or nearly all," and

11  "typically, but not necessarily") but also seeks legal conclusions and value judgments (*i.e.*,

12  "represented to customers as being substantially marked down").  Defendants were, and

13  remain, willing to meet and confer about a more straightforward definition, but as noted

14  above the Plaintiffs never engaged in that process regarding the RFAs.  *See e.g.*, *U.S. ex*

15  *rel. Englund v. Los Angeles County*, 235 F.R.D. 675, 684 (E.D. Cal. 2006) ("a party who

16  is unable to agree with the exact wording of the request for admission should agree to an

17  alternate wording or stipulation.") (citing *Marchand v. Mercy Medical Center*, 22 F.3d

18  933, 936 (9th Cir. 1994*)*); *see also Eichler v. Tilton*, 2010 WL 3734023 at *6 (E.D. Cal.

19  2010) (approving responding party's alternate phrasing of admission where request was

20  "vague and confusing").  Defendants will respond to RFAs 8 and 21 if Plaintiffs will meet

21  and confer to come to an agreement on a reasonable definition of "reference price."

22      Further, RFAs that require extensive analysis or calculations are also inappropriate

23  under Rule 36.  *See e.g.*, *Mills v. Kia Motors Am., Inc.*, No. 1:08-CV-115 (WLS), 2011

24  WL 13175875, at *10 (M.D. Ga. Feb. 22, 2011) (finding that RFAs required expert

25

26  _____

27  [22]  Plaintiff's case cite to *Lumpkin v. Meskill*, 64 F.R.D. 673, 676 (D. Conn. 1974) is inaccurate. In this case, the defendant was asked to admit the accuracy of statistical sampling that had been performed by an expert. The court ordered "the defendant to make reasonable inquiry, as set out in this opinion, to acquire the facts necessary to admit or deny the request submitted by the plaintiffs."

28

analysis when the RFA asked for the calculation of force involved in car accidents, and "thus are not the type of simple yes or no question contemplated by Rule 36."). Plaintiffs' efforts to oversimplify the detailed nature of the RFAs at issue are not persuasive. This data may in fact be necessary for Plaintiffs, but they are asking Defendants to perform complex calculations laid out in confusing terms (*i.e.*, "Admit that the REFERENCE PRICES YOU ADVERTISED on YOUR WEBSITE for YOUR PRODUCTS during the CLASS PERIOD did not represent the price at which YOUR PRODUCTS were most-commonly ADVERTISED to be sold, over any time period (for example, as of today, for a PRODUCT with a REFERENCE PRICE of $25, that product has not had a most-frequently charged price of $25 over the previous 10 days or 20 days or 90 days, or any number of days). (Request for Admission No. 20.) Each of the RFAs would require Defendants to perform a detailed analysis that can only be performed by an expert who possesses "special knowledge, skill, experience, training, or education." (Evid. Code., § 720.)

Finally, responses to Interrogatory 16 were not necessary when Defendants' objections were fully detailed within the RFA. *See Aguirre v. City of Los Angeles*, No. CV 14-5659 CBM (SS), 2015 WL 12746233, at *4 (C.D. Cal. May 15, 2015) (finding that while defendants did not respond to this type of interrogatory "Plaintiff appears to have explained within many of his RFA responses why he could not provide an unqualified admission.").

F. **Defendants Refuse to Answer Interrogatory No. 15, Which Is Relevant to Defendants' Opposition to Nationwide Class Certification.**

1. **Discovery in Dispute:**

**INTERROGATORY NO. 15:**

Please IDENTIFY all offices or other physical facilities YOU have purchased, leased, rented, or otherwise used for a business purpose in the United States during the CLASS PERIOD and state the purpose and ACTIVITIES performed therein. For each such office or facility, please also IDENTIFY all PERSONS/ENTITIES who have used

137

said office or facility and their purpose for using said office or facility.

**DEFENDANTS' RESPONSE TO INTERROGATORY NO. 15:**

Defendants incorporate by reference the General Objections set forth herein. Defendants object to this Interrogatory to the extent it calls for the disclosure of information subject to the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege. Defendants object to this Interrogatory insofar as it seeks competitive sensitive business and financial information. Subject to and without waiving the foregoing objections, Defendants respond as follows: Defendants will not respond to Interrogatory No. 15 as it seeks information that is not relevant to class certification discovery.

> **2.     Plaintiffs' Contentions, Points, and Authorities Regarding Interrogatory No. 15.**

As shown above, Defendants failed to provide any substantive answer to Plaintiffs' Interrogatory No. 15. This Interrogatory was propounded in anticipation of Defendants arguing, as they did in their motion to dismiss and strike, that Plaintiffs should not be permitted to pursue a nationwide class. Based on publicly available information, Plaintiffs believe that the locus of Defendants' U.S. operations is California—and more specifically, the Greater Los Angeles area. (*See* D.E. 27-1 (Almadani Decl.), Exs. A-P.) This Interrogatory seeks information in Defendants' possession that may not be publicly available to rebut any argument from Defendants that California law should not be applied to a nationwide class. *See Allen v. Hyland's Inc.*, 300 F.R.D. 643, 656–57 (C.D. Cal. 2014) (certifying nationwide class based on application of California law to entire class where Plaintiffs established the defendant's ties to California, including, among other things, Defendants' maintenance of "substantial manufacturing, distribution, marketing and warehouse operations in Los Angeles"). Defendants, therefore, should be compelled to produce an amended response to Interrogatory No. 15.

> **3.     Defendants' Contentions, Points, and Authorities regarding Interrogatory No. 15.**

138

As Plaintiffs' own argument makes clear, this interrogatory is grossly overbroad, particularly as it relates to "all PERSONS/ENTITIES who have used said office or facility and their purpose for using said office or facility."  Plaintiffs never offered to narrow the scope of this Interrogatory to something more reasonable.  In the interest of compromise, however, Defendants are continuing to review this issue and will amend as appropriate.

## III.   CONCLUSION

### A.   Plaintiffs' Concluding Statement

For the reasons stated above, Plaintiffs respectfully request that the Court GRANT their motion to compel discovery. Plaintiffs request an order compelling Defendants to produce documents responsive to RFPs 1 through 18, 21 through 29, and 33 through 34, and to produce amended responses to said RFPs compliant with Rule 34 without objections. In addition, Plaintiffs request an order deeming RFAs 1-5, 8, 11-15, and 18-21 admitted, or in the alternative, compelling Defendants to produce amended responses that are compliant with Rule 36 without objections. Further, Plaintiffs request an order compelling Defendants to produce amended responses to Interrogatory Nos. 15 and 16 that are compliant with Rule 33 without objections. Finally, in the event Defendants are withholding data from the documents and ESI that they have produced which is responsive to RFPs 1-5, Plaintiffs seek monetary sanctions against Defendants for abuse of the discovery process and forcing Plaintiffs to incur the time, effort, and expense of pursuing this motion. If the Court awards sanctions, Plaintiffs request leave to prove up the amount of the attorneys' fees they seek to recover after the court's order finding sanctions should be awarded has been entered.

### B.   Defendants' Concluding Statement

Plaintiffs' accusations regarding Defendants conduct are inaccurate, and Defendants are hopeful that their response provides clarification for the Court on these issues.  Importantly, Defendants expended great efforts to timely respond to Plaintiffs, to produce responsive documents after conducting a reasonable search for responsive material, and to continue to negotiate in good faith with Plaintiffs.  Such conduct is not

139

sanctionable. *See Vaughn v. Teran*, No. 117CV00966DADJLT, 2019 WL 7282049, at \*9 (E.D. Cal. Dec. 27, 2019) (court denied a request for sanctions where counsel had worked in good faith to locate and produce documents responsive to plaintiff's requests and subpoenas).

On the contrary, Plaintiffs failed to meet their obligations to meet and confer under Local Rule 37-1. "[T[he purpose of a meet and confer requirement is for the Parties to engage in a *meaningful* dialogue about their respective positions on disputed issues to see whether they can resolve (or at least refine) the disputes without court intervention, saving time and money for the litigants as well as the court system." *RG Abrams Ins. v. L. Off. of C.R. Abram*, No. 20CV01379JSTRMI, 2020 WL 7695374, at \*3 (N.D. Cal. Dec. 28, 2020) (emphasis in original). Defendants requested to meet and confer with Plaintiffs at least five times between February 4 and March 11, 2021. (Almadani Decl., Exs. 24-28). At every turn, Plaintiffs either refused to engage, or refused to engage in any meaningful way, meeting every proposition or response offered by Defendants by reiterating unreasonable demands or communicating an unwillingness to compromise, coupled with another sanctions threat. Upon receipt of the draft motion to compel on March 8, for example, Defendants requested a further meet and confer consistent with the local rules to narrow issues of confusion and to simply discuss issues never addressed. (Almadani Decl., Ex. 28). Plaintiffs elected not to engage further with Defendants (*Id.,* Ex. 29), leaving many of these issues, regrettably, before the Court.

Plaintiffs' lack of appreciation for the responsive documents produced to date is apparent. In this motion, Plaintiffs complain about the lack of production in several areas (*i.e.*, the sales data and pricing information, the reports, studies, and analyses regarding pricing and advertising, etc.), where Defendants already indicated their production is complete. To the contrary, there is no support that the documents are being withheld with regard to these issues. Their accusations are therefore not supported by anything except their own baseless suspicions. *See Unilin Beheer B. V. v. NSL Trading Corp*, No. cv 14-2210 BRO(SSx), 2015 WL 12698284 at \*6 (C. D. Cal. Sept 17, 2015) (citing *Alexander*

140

*v. Federal Bureau of Investigation*, 194 F.R.D. 305, 310 (D.D.C. 2000)) ("a party's mere suspicion that its opponent must have documents that it claims not to have does not warrant granting a motion to compel").  Moreover, there is no rule that requires a party to create documents.  The rules do, however, provide for tools to explore production generally. Plaintiffs should be encouraged to utilize those tools to address their concerns.

Defendants respectfully request that the Court deny Plaintiffs' motion to compel discovery and its request for monetary sanctions.  Plaintiffs should be ordered to review the material they have received and then meaningfully engage with Defendants in a dialogue, as necessary, to fulfill the requirements of the local rules.

Dated: March 23, 2021

Respectfully submitted,

ALMADANI LAW

*/s/ Yasin M. Almadani*
Yasin M. Almadani, Esq.


AI LAW, PLC

*/s/ Ahmed Ibrahim*
Ahmed Ibrahim, Esq.

*Attorneys for Plaintiffs Individually and On Behalf of All Others Similarly Situated*


EVERSHEDS SUTHERLAND (US) LLP

*/s/ Ian S. Shelton*
Ian S. Shelton, Esq.

*Attorneys for Defendants Boohoo Group PLC, Boohoo.com USA Inc., Boohoo.com UK Limited, Prettylittlething.com USA Inc., Prettylittlething.com Limited, Nastygal.com USA Inc., and Nasty Gal Limited*

141

**EXHIBIT A – MTC: SUMMARY CHART**

Broadly speaking, below are four main points applicable to Defendants' efforts to review and produce documents to Plaintiffs:

1. Defendants have conducted a reasonable search for the requested information and have produced the documents within its possession, custody, or control. In instances where we have concluded our production, we have noted on the chart below with the letters **PC** in bold, indicating the production to be complete;
2. Defendants produced the data and the documents in the manner in which they are maintained;
3. With respect to the data or the documents produced, Plaintiffs have the right to avail themselves to other discovery tools to evaluate the accuracy of the information provided and Defendants' compliance with the requests; and
4. Judge Wu clearly distinguished between class and merits discovery, indicating that class discovery was a narrow inquiry for the limited purpose of evaluating a motion for class certification.

| Category | Plaintiffs' Allegation | Defendants' Response |
|---|---|---|
| **RFPs 1-5:**<br>**Pricing and Sales Data** | Defendants have not produced complete daily pricing data. | Defendants have produced: (1) all sales data for the three brands during the class period; and (2) the historical promotional calendars for the three brands.  Pricing data is not saved or tracked in Defendants' systems or databases, and Defendants objected on this basis in its discovery responses.  Defendants do not have in their possession "daily price lists" as Plaintiffs surmise.  Pricing data is only captured if a sale is made. Thus, Plaintiffs' assumption that Defendants maintain certain data in a specific way is simply inaccurate.<br><br>**PC** |
| | Defendants have not produced complete sales data. | Defendants produced the United States sales data by product with the pricing information for the class period, to the extent available:<br>- PrettyLittleThing (2/29/2016 to 1/28/2021)<br>- Boohoo/BoohooMAN (3/28/2016 to 1/24/2021)<br>- Nasty Gal (2/28/2017 to 1/24/2021)<br>These documents were produced at D00000871-D00000999 and D00001000-D00001125.  Boohoo, BoohooMAN, and Nasty Gal were produced in the same spreadsheets because that is how the data |

| | | is maintained in the regular course of business.  The sales information was available for Nasty Gal starting on February 28, 2017.<br><br>**PC** |
|---|---|---|
| | Defendants' sales data is unreliable because some entries are in a currency other than USD, some list the "actual sold price" as higher than the "website price," and Plaintiffs cannot understand how "Gross Original Price" reflects multiple reference prices advertised on the same day. Defendants' spreadsheets contain "unreliable gibberish," is "misleading and abusive" and "nonsensical." | Defendants produced the data in the manner in which it was maintained. If Plaintiffs have questions or concerns about the data produced, they have every right to notice a deposition or draft an interrogatory to further investigate how documents or data are maintained or stored in Defendants' systems (Plaintiffs have, in fact, served a second set of interrogatories regarding the columns in Defendants' sales spreadsheets and the term "reference price." Defendants are in the process of assessing these discovery requests and will timely respond and object accordingly, if necessary.).<br><br>**PC** |
| | Defendants will not confirm or deny whether they have produced reference price information. | By letter dated February 19, 2021, in response to Plaintiffs' inquiry, Defendants clarified that, for the Boohoo and Nasty Gal sales spreadsheets, "the 'website price' is the price the item is offered for sale on the website, and the 'actual sold price' is the actual sale price." For the PLT data, the "gross original price LC" is the price of the item inclusive of sales tax and in local currency, and the 'gross product sales LC' is the actual sales price inclusive of sales tax and in local currency."  If Plaintiffs have questions or concerns about the data produced, Plaintiffs have the right to avail themselves to other discovery tools to evaluate the accuracy of the information provided or how that information is maintained or stored.<br><br>**PC** |

| | Defendants have produced "giant data dump spreadsheets." | Defendants have millions of sales transactions per year, per brand in some instances. Plaintiffs requested all sales data for the entire class period, and Defendants have provided this information. If Plaintiffs have questions or concerns about the data produced, Plaintiffs have the right to use discovery tools to evaluate the information provided.<br><br>**PC** |
|---|---|---|
| **RFPs 6-9, 10-13, 21-22, 33-34:  Pricing and advertisement policies and practices, research, training materials** | Defendants refuse to produce their policies and procedures concerning reference pricing practices and markdowns/discounts.<br><br>Defendants refuse to produce memos, marketing research, survey analyses, and training materials. | To the extent these materials exist, they have been produced at D00000016-D00000125, D00000127-D00000869, D00001126-D00001130, D00001132-D00016200, D00081500-D00082504, and D00223258-D00224108.  Additionally, responsive information to these requests may also be captured in the email productions made on February 19, February 26, March 8 and March 9. By way of example, Defendants have produced internal and external presentations, reports, and studies conducted that concern and influence decisions on pricing and advertising. *See, e.g.*, Boohoo Price & Range Survey on USA Women's Clothing (D00000127-186); Edited Report on Jumpsuits, Playsuits and Shorts containing price point analysis for Boohoo dated November 2018 (D00011605-D00011611).  Further, Defendants have produced consumer research and brand monitoring reports containing studies and data on Defendants' brands. *See, e.g.*, Nasty Gal USA & UK Customer Research, Mar. 2018 (D00223265-223371); Boohoo Brand Metrics and Brand Awareness Report for USA, Aug. 2020 (D00223372-223378); PLT Brand Metrics and Brand Awareness Report for USA, Nov. 2020 (D00223647-D00223658); *see generally*, Production 5 in its entirety for brand awareness reports.  Such information is utilized by Defendants' to make decisions on pricing and advertising. Plaintiffs should review materials already in their possession to determine if they have further questions.<br><br>**PC** |

| RFPS 23-29:<br>**Emails and other<br>communications** | Defendants' approach to search for and produce emails and other communications is flawed because it omits relevant information, like the concept of reference pricing. Defendants use of the term "reference price," is not enough because Defendants do not internally use the term. Defendants' recent production omits e-mails related to reference prices as defined by the Plaintiffs.<br><br>Defendants' RFPs on these critical issues (use of reference prices, representations to customers they are buying discounted, marked down or products on sale) are narrowly tailored and these issues are highly relevant to class certification. | When the term "sale," for example, is run through Defendants' database of potentially relevant documents, there are over 500,000 documents that hit on this term.  Given the limited purpose of this production, we have repeatedly asked for a set of search terms that would result in a more appropriate number of documents.  In order to assist in establishing an appropriate set of search parameters, we have repeatedly asked for a set of terms that would produce a sample set of 20,000 to 25,000 documents to further inform our discussion in an effort to narrow this request. In doing this, we have been clear that each side would reserve its rights, to either renew its requests or stand on its objections, following the review of this sample set of documents. Plaintiffs have not undertaken to respond or provide a proposal.  In an effort to facilitate further discussion, we put Plaintiffs on notice of a proposal using the following terms via letter dated February 11:<br>• Inaccurate w/10 pric*<br>• Inflat* w/10 pric*<br>• False W/10 pric*<br>• Decept* w/10 pric*<br>• Mislead* w/10 pric*<br>• Investigat* AND price AND (discount OR percent OR markdown OR strikethrough OR "promo code" or "promotional code" or "coupon code")<br>• Complain* AND price<br>• Polic* AND price AND (discount or percent or markdown or strikethrough or "promo code" or promotional code" or "coupon code")<br>• Procedur* AND (price or market* Or advertis* Or discount or promo* Or coupon or code)<br>• (Comparison or analy* Or data) AND competitor* AND price<br>• Reference price<br>• Reference W/2 price |
|---|---|---|

|  |  | <ul><li>Price W/10 (Inflated or high)</li><li>Percent off</li><li>Percent W/2 off</li><li>Coupon W/2 codes</li><li>Advertis* AND campaign AND (discount OR percent OR markdown OR strikethrough or "promo code" or "promotional code" or "coupon code")</li><li>Complaint W/10 (markdown OR promo* OR sale OR discount)</li><li>price W/10 (decrease OR reduce OR cut)</li><li>Price W/10 ("too high" OR inflated OR excessive)</li><li>price AND ("lower than competitors" OR cheap OR "least expensive" OR "beat competitors" or (lowest W/5 market) )</li><li>Pric* w/5 (percent* OR original OR reference OR regular OR retail OR former OR inflated OR reduc* OR strike-through OR markdown)</li><li>Other search terms included the named Plaintiffs, as well as various competitor names and the term "price."</li></ul><br>These search terms, with other limiters to exclude potentially privileged documents and the application of email threading, yielded 29,835 documents.  We reviewed this set of documents and approximately 20,000 responsive emails from this review were produced to Plaintiffs (we note that ultimately we reviewed more than the amount suggested in the February 11 letter, as we included 5 additional custodians, for a total of 22 custodians, to accommodate Plaintiffs' request, and extended the time period to begin on January 1, 2019). |
|  | Plaintiffs' responsibility was to propound narrow requests and Defendants' responsibility was to | Defendants agree we are in the best position to conduct searches of relevant custodians and provide documents responsive to Plaintiffs' requests within Defendants' possession, custody or control. We have |

| | | |
|---|---|---|
| | perform a reasonable search and produce responsive documents within their care, custody, or control. | produced emails and attachments from the 22 most relevant custodians and have produced over 20,000 emails. We continue to await a meaningful discussion to narrow the requests. |
| | Defendants have produced irrelevant documents to inappropriately bury responsive discovery and to run up the Gigabyte volume on the production. | Defendants have incurred considerable cost to conduct a reasonable search for responsive documents and to produce those documents accordingly. If Plaintiffs have questions or concerns about the data produced, Plaintiffs have the right to avail themselves to other discovery tools to evaluate the information provided or its relevancy. |
| | There is no clear-cut division between discovery that relates to class certification and discovery that relates to the merits. | As Judge Wu indicated during the November 16, 2020 hearing, "I will not allow discovery on merits issues prior to hearing that motion. I will limit the discovery solely to the issue of class certification and the things that normally arise in that regard. So I think the defense concern about having to engage in substantial liability discovery doesn't really come into play." Motion to Dismiss Hearing Transcript at 13:9-25, November 16, 2020. |
| | Defendants' contention that the cost is too high is without merit. | Defendants disagree with Plaintiffs' accusation regarding costs. The searches Plaintiffs would have Defendants to run, review, and produce are overbroad. If there are reasonable ways to narrow the search to a more relevant review of documents to keep costs down, Plaintiffs are required to engage in a manner so this can occur. |
| | Defendants should produce all e-mails returned from keyword searches after removing privileged documents to reduce defense counsel's workload. | Given the complaints by Plaintiffs concerning the production of too many irrelevant documents, it is unclear how this is addressed by a production of documents which would certainly contain documents irrelevant to the limited and narrow class certification issues at hand. |

| | | |
|---|---|---|
| | Terms like "H&M," "Zara," and "Ted Baker" are irrelevant. | Defendants' interrogatory responses make clear that competitor pricing information is relied upon in making advertising, marketing, and pricing decisions.  Thus, such terms are highly relevant to the issues in this case.  *See, e.g.*, Defendants' Response to Hilton's Interrogatory No. 7: "The reference price is set by experienced buyers based on a variety of factors … [such as] pricing of similar or comparable products on competitors' websites, particularly U.K.-based competitors"). |
| | Numerous custodians expected to have highly relevant information were not searched such as , Natalie McGrath, Kayla Goddard, Alisia Jiminez, Ashely Thomas, Danielle Robinson, Anieli Patel, Claire Asher, Asia Riaz and Gemma Dunne. | Defendants are in the best position to determine relevant custodians.  As such, Defendants have reviewed and produced emails from the following custodians:<br><br>1. Mark Baker  12. Danielle Robinson<br>2. Murray Beckett  13. Andrew Thompson<br>3. Sam Brocklebank  14. Tom Binns<br>4. Nickie Capstick  15. Tom Duance<br>5. Neil Catto  16. David Hare<br>6. Rob Davies  17. Samir Kamani<br>7. Jonathan Haycock  18. Umar Kamani<br>8. Darren Johnson  19. Mahmud Kamani<br>9. John Lyttle  20. Carol Kane<br>10. Laura McKellar  21. Kelly Byrne<br>11. Anjeli Patel  22. Christine McGonagle<br><br>Plaintiffs' initial complaint in its March 7th draft motion to compel was that Defendants failed to produce emails from various custodians, such as Mahmud Kamani, Carol Kane, Umar Kamani, and Christina McGonagle.  When Defendants advised Plaintiffs that these mailboxes had been reviewed and emails had, in fact, been produced from these custodians' mailboxes, Plaintiffs generated a new list of custodians, now arguing that *all* relevant witnesses' |

| | | mailboxes must be reviewed and produced.  Plaintiffs' "moving target" approach is inconsistent with the discovery rules. |
|---|---|---|
| | Defendants' email production only covers July 1, 2019 to present.  The class period applicable to each of the three individual cases is approximately 4 to 5 years of communication and Plaintiffs should not be required to further limit the scope of these communications as to timing. | Consistent with our obligations under the rules, we objected to the overbroad and unduly onerous requests. We have repeatedly asked Plaintiffs to narrow down their overbroad requests. We made this request with the clear understanding that each party would be reserving all rights to either renew their requests or stand by objections based on a review of the sample set.  In an effort to educate the parties to have a more fully informed discussion, we reviewed and produced over 20,000 emails and attachments dated January 1, 2019 to present. At no time have Defendants ever indicated we would refuse to search an earlier time period or search different terms.  Our only request is that discovery requests be tailored to the narrow purpose at hand, which is class certification. |
| **RFPS 14-18: Class Representative Purchases** | Defendants refuse to produce documents related to class representatives' purchases and communications with the class representatives.<br><br>Defendants contend the only documents responsive to RFPs 14-18 are protected by the attorney-client privilege. | As Defendants have communicated to Plaintiffs, our review of this information is ongoing. Initially, Defendants identified documents responsive to this requests that were appropriately withheld from production based on attorney-client privilege and the work product doctrine.  Such documents are still being withheld on this basis and Defendants will provide a privilege log.   After further review, Defendants have identified responsive records that they will be producing. |
| **RFAs 1-6, 8, 11-15, 18-21 and Rog 16: Admissions regarding "reference price" advertisement** | Defendants refuse to answer RFAs concerning whether they advertised reference prices that they rarely if ever sold products at those reference prices. | We see this as an area that requires further discussion.  In our letter dated February 17, we cited case law indicating how we arrived at our position in responding to your requests for admission.  We invited you to review this case law and have a dialogue to determine how you see the issues differently.  We maintain this invitation and would like to have a discussion to determine whether we are able to |

| | | bridge the gap and narrow the potential issues before going to the Court. |
|---|---|---|
| **Rog 15: California activities** | Defendants failed to provide a substantive answer to this interrogatory regarding Defendants' activities in California. | In the interest of compromise, Defendants agree to provide an amended interrogatory response identifying Defendants' offices or other physical facilities in the United States during the class period and a general description of the type of work employees performed at the identified facilities. |