EVERSHEDS SUTHERLAND (US) LLP
Ian S. Shelton (SBN 264863)
ianshelton@eversheds-sutherland.com
500 Capitol Mall, Suite 1750
Sacramento, CA 95814
Phone: (916) 844-2965
Fax: (916) 241-0501

EVERSHEDS SUTHERLAND (US) LLP
Ronald W. Zdrojeski (admitted *PHV*)
ronzdrojeski@eversheds-sutherland.com
1114 6th Avenue, 40th Floor
New York, NY 10036
Phone: (212) 389-5000
Fax: (212) 389-5099

Attorneys for Defendants

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FARID KHAN, an individual, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>BOOHOO.COM USA INC. a Delaware corporation, BOOHOO.COM UK LIMITED, a United Kingdom private limited company, BOOHOO GROUP PLC, a Jersey public limited company , and DOES 1-100, inclusive,<br><br>Defendants. | **NO.: 2:20-cv-03332-GW-JEM**<br><br>Consolidated for Pretrial Purposes with:<br>No. 2:20-cv-04658 GW-JEM<br>No. 2:20-cv-04659 GW-JEM<br><br>**NOTICE OF MOTION AND MOTION TO ENFORCE SETTLEMENT AGREEMENT AND STRIKE *HABBERFIELD* FIRST AMENDED COMPLAINT, OR IN THE ALTERNATIVE TO STAY SETTLEMENT ADMINISTRATION, AND FOR SANCTIONS**<br><br>The Honorable George H. Wu<br><br>Courtroom:  9D<br>Address:     U.S. Courthouse<br>                  350 W. First Street<br>                  Los Angeles, CA 90012<br><br>Hearing Date: July 28, 2022<br><br>Hearing Time: 8:30 a.m. |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on July 28, 2022, at 8:30 am, or as soon thereafter as the matter may be heard in the above-entitled Court, located at Courtroom 9D, U.S. Courthouse, 350 W. First Street, Los Angeles, California 90012, Defendants Boohoo Group PLC ("Boohoo Group"), Boohoo.com USA, Inc., Boohoo.com UK Limited ("Boohoo Defendants"), PrettyLittleThing.com USA, Inc., PrettyLittleThing.com Limited ("PLT Defendants"), NastyGal.com USA, Inc., and Nasty Gal Limited ("Nasty Gal Defendants") (collectively, "Defendants") will and hereby do move to enforce the Settlement Agreement, Dkt. 133-1, and strike the *Habberfield* First Amended Complaint, Case No. 2:22-cv-03899, Dkt. 13 ("*Habberfield* FAC"), or in the alternative to stay administration of the settlement pending a ruling on the motion, and for sanctions consisting of attorneys' fees and costs incurred by Defendants in bringing this motion.  If the Court wishes to entertain argument, Defendants request the opportunity to do so in person.

The Court should strike the *Habberfield* FAC because it is, in substance, an unauthorized amendment of the *Khan*, *Lee*, and *Hilton* Complaints, which Plaintiffs filed without the consent of Defendants or leave of the Court. In addition to violating Federal Rules of Civil Procedure 15 and 16 by failing to obtain leave to amend, by filing the *Habberfield* FAC, Plaintiffs breached the Settlement Agreement and this Court's order granting preliminary approval, which does not authorize the filing of amended complaints or waives the necessity to comply with the rules.  In fact, the filing was in direct violation of Section 5.17 of the Settlement Agreement which compels the parties to cooperate and exercise their best efforts to accomplish the terms and conditions of the Settlement Agreement.  The filing further rendered Recitals "J" and "L" a nullity by creating a duplicative class action for non-California claims the parties agreed to dismiss upon final approval.

1    This conduct was intentional. After Plaintiffs filed the *Habberfield* Original
2  Complaint, Case No. 2:22-cv-03899, Dkt. 1, Defendants initiated a meet and confer
3  by sending a letter explaining how that filing violated both the rules and the
4  Settlement Agreement. Rather than voluntarily dismissing this duplicative class
5  action and seeking leave to amend, as they were required to do, with full knowledge
6  of their obligations, Plaintiffs instead committed a second, clearly knowing,
7  violation by filing the *Habberfield* FAC. Case No. 2:22-cv-03899, Dkt. 13.

8    The relief sought by the present motion is straightforward—striking the
9  *Habberfield* FAC for failure to obtain consent or leave. Defendants are not briefing
10 the merits of amendment in this motion because Plaintiffs have not discharged the
11 threshold meet and confer requirement or moved for leave in the first instance.

12   What is clear, however, is that Plaintiffs filed the *Habberfield* FAC to avoid
13 the judicial scrutiny that comes with seeking amendment of a class action at this late
14 stage of the proceedings, particularly *after* executing a settlement that will release
15 the claims of all California customers. When ruling on a motion for leave to amend,
16 the Court will be able to assess, among other things, the delay, prejudice, futility and
17 other factors associated with a late amendment brought two years after the lawsuit
18 commenced, after substantial discovery, and after settlement of the California class.
19 The Court will be able to consider the propriety of allowing a nationwide class
20 action to proceed in a California court without *any* remaining California class
21 representatives or California class members. The Court will be able to consider
22 whether California law can be applied to a nationwide class that now *excludes*
23 California residents, and that is directed to a U.K. publicly traded company and
24 subsidiaries headquartered in Manchester, England. The Court will be able to
25 consider whether it may properly exercise personal jurisdiction over U.K.
26 companies for claims now brought by *non-California* class representatives
27 concerning sales that occurred *exclusively* in other states. The Court will be able to
28

analyze whether venue is proper in this district, or whether another venue would be more convenient, when these new class representatives reside in *six other states* (none of which are California) and invoke the consumer protection laws of those states. Plaintiffs' unauthorized filing of the *Habberfield* FAC without leave deprived the Court of the opportunity to consider these and other important legal issues, in addition to whether amendment before final approval is consistent with the Settlement Agreement. The Court should strike the *Habberfield* FAC so that Plaintiffs can comply with their mandatory obligation to seek leave, at which time Defendants can brief the panoply of problems raised by this belated amendment.

In the alternative, should the Court require additional time to consider and rule on Defendants' motion beyond the July 28, 2022 hearing date, Defendants request a stay of further administration of the Settlement Agreement pending adjudication of the motion.

In addition to an order striking the *Habberfield* FAC, Defendants request sanctions consisting of an award of attorneys' fees and costs for expenses incurred in bringing this motion. Finally, if the Court grants the motion, Defendants also seek leave to file a motion for damages and other relief for breach of the Settlement Agreement.

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Ian S. Shelton, and all other papers and arguments submitted in this matter and any matters of which the Court may take judicial notice.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on June 21, 2022 and thereafter. Should the Court elect to hear argument in this matter, Defendants respectfully request the opportunity to appear in person.

1    DATED:   June 28, 2022              EVERSHEDS SUTHERLAND (US) LLP

2

3                                       By */s/ Ronald W. Zdrojeski*
                                           _____
4                                          Ronald W. Zdrojeski

5

6

7                                       By */s/ Ian S. Shelton*
                                           _____
8                                          Ian S. Shelton

9                                          Attorneys for Defendants

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES..........................................1

I.     INTRODUCTION ....................................................................1

II.    PROCEDURAL HISTORY ........................................................3

III.   THE COURT SHOULD STRIKE THE *HABBERFIELD* FIRST
       AMENDED COMPLAINT ........................................................11

       A.    The Court Should Strike the *Habberfield* FAC for Breach
             of the Settlement Agreement and Preliminary Approval
             Order ..............................................................................11

       B.    The Court Should Strike the Habberfield FAC for Failure
             to Seek Leave to Amend .............................................13

       C.    In the Alternative, the Court Should Stay the
             Administration of the Settlement ...............................18

IV.    THE COURT SHOULD AWARD SANCTIONS...............................18

       A.    The Court May Award Sanctions in the Form of
             Attorneys' Fees and Costs under Rule 16(f)...............18

       B.    The Court May Award Sanctions under Local Rule 7-4
             and 83-7 ........................................................................20

       C.    The Court May Award Sanctions Under its Inherent Power......22

       D.    The Court Should Grant Defendants Leave to Seek
             Damages and Other Relief under the Settlement
             Agreement ...................................................................22

CONCLUSION ...............................................................................23

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adams v. Cal. Dep't of Health Servs.*,
    487 F.3d 684 (9th Cir. 2007)................................................................16

*Adams v. Kraft*,
    No. 5:10-CV-00602-LHK, 2011 U.S. Dist. LEXIS 83317 (N.D. Cal.
    July 29, 2011) .......................................................................... 13, 15

*Bennett v. Bed Bath & Beyond, Inc.*,
    No. C 11-02220 CRB, 2011 WL 3022126 (N.D. Cal. July 22, 2011)...........10, 17

*Bojorquez v. Abercrombie & Fitch, Co.*,
    193 F. Supp. 3d 1117 (C.D. Cal. 2016) ............................................16

*Burns v. Gerber Prods. Co.*,
    No. CV-12-5027-EFS, 2012 U.S. Dist. LEXIS 151130 (E.D. Wash.
    Sep. 4, 2012)............................................................................18

*Calderon v. Target Corp.*,
    No. 12-CV-1781-MMA(PCL), 2013 U.S. Dist. LEXIS 116051 (S.D.
    Cal. Aug. 15, 2013).....................................................................19

*Centocor, Inc. v. Medimmune, Inc.*,
    No. C 02-03252 CRB, 2002 WL 31465299 (N.D. Cal. Oct. 22,
    2002) .....................................................................................17

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991).....................................................................22

*Fabics v. City of New Brunswick*,
    629 F. App'x 196 (3d Cir. 2015)....................................................15

*Hill v. Allianz Life Ins. Co.*,
    No. 6:14-cv-950-Orl-41KRS, 2015 U.S. Dist. LEXIS 198933 (M.D.
    Fla. June 17, 2015)....................................................................19

*Lauter v. Anoufrieva*,
    642 F. Supp. 2d 1060 (C.D. Cal. 2009) ............................................14

*Meyer v. Napa State Hosp.*,
    No. C 03-05583 CW, 2007 U.S. Dist. LEXIS 2252 (N.D. Cal. Jan.
    11, 2007)...................................................................................13, 15

*O'Neil v. Bunge Corp.*,
    365 F.3d 820 (9th Cir. 2004)...........................................................11

*P.S. v. Patino*,
    No. CV 22-2508 PA, 2022 U.S. Dist. LEXIS 82419 (C.D. Cal. May
    5, 2022)..........................................................................................15

*Peak v. Green Tree Fin. Servicing Corp.*,
    *No.* C00-0953, 2000 WL 973685 (N.D. Cal. July 7, 2000)................17

*Pogrebnoy v. Russian Newspaper Distribution*,
    742 F. App'x 291 (9th Cir. 2018)....................................................21

*Ross v. U.S. Bank Nat'l Ass'n*,
    542 F. Supp. 2d 1014 (N.D. Cal. 2008).....................................10, 17

*Schwartz v. Frito–Lay N. Am.*,
    No. C-12-02740 EDL, 2012 WL 8147135 (N.D. Cal. Sept. 12,
    2012) ..............................................................................................17

*Subbaiah v. GEICO Gen. Ins. Co.*,
    No. 2:19-CV-06717 AB, 2019 WL 9904278 (C.D. Cal. Dec. 11,
    2019) ..............................................................................................17

*TC Rich, LLC v. Pacifica Chem. Inc.*,
    2019 U.S. DIST. LEXIS 240952 (C.D. Cal April 15, 2019).............13

*Waad v. Farmers Ins. Exch.*,
    No. 17-13034, 2018 U.S. Dist. LEXIS 69911 (E.D. Mich. Apr. 26,
    2018) ..............................................................................................16

*Weinstein v. Metlife, Inc.*,
    No. C06-04444, 2006 WL 3201045 (N.D. Cal. Nov. 6, 2006) ..........17

**Statutes**

Cal. Civ. Code § 1750 ..............................................................................9

Cal. Bus. & Prof. Code § 17500 ...............................................................9

CAL. BUS. & PROF. CODE § 17200............................................................................9

MOTION TO ENFORCE AND STRIKE

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

In April and May, 2020, Plaintiffs Khan, Lee, and Hilton, on behalf of themselves and a nationwide class of similarly situated persons, filed complaints against Defendants alleging deceptive advertising practices by three brands—Boohoo, Nasty Gal, and PrettyLittleThing. The complaints purported to allege false advertising claims on behalf of a nationwide class under California law. The Plaintiffs alleged the putative class consisted of every consumer in the United States who purchased products from the U.S. websites for the three brands.

In August 2020, Plaintiffs amended their complaints by following the appropriate procedures. Defendants answered the complaints, subsequently amended their answers, and the pleadings were closed on January 29, 2021, more than 18 months ago. The parties proceeded with extensive written discovery, motion practice, and depositions exploring Plaintiffs' nationwide claims. Ultimately, the parties negotiated a settlement. On June 3, 2022, the Court granted preliminary approval of the settlement agreement (Dkt. 133-1, the "Settlement Agreement"). The settlement covered a California class consisting of all consumers who purchased products in California, who agreed to release Defendants upon final approval of the settlement.  Plaintiffs also agreed to stay discovery and dismiss the remaining nationwide claims without prejudice upon final approval of the settlement, currently scheduled for October 2022.

At no time did Plaintiffs seek Defendants' consent or the Court's leave to file an amended complaint after the pleadings were closed. The remaining nationwide class members outside of California who were not covered by the Settlement Agreement still have pending claims against Defendants. Indeed, these claims have been hotly litigated for nearly two years. Subject to Rules 15 and 16, Plaintiffs were free to avail themselves at any time during the litigation, and even now, to move the

MOTION TO ENFORCE AND STRIKE

1   Court to amend and further articulate those claims.  Following the appropriate rules
2   and procedures, however, is the exclusive way to amend their claims for the
3   remaining nationwide class members. Instead of following these rules, Plaintiffs,
4   through the same counsel of record, filed an entirely new, largely duplicative class
5   action lawsuit alleging identical causes of action under California law, on behalf of
6   an identical nationwide class, against identical Defendants.

7       This filing—styled *Habberfield et al. v. Boohoo.com USA, Inc.*[1]—is a breach
8   of the Settlement Agreement and the Court's order granting preliminary approval of
9   the settlement, and a brazen, undisguised attempt to circumvent the amendment and
10   scheduling provisions of Federal Rules of Civil Procedure 15 and 16. The only
11   material difference between the Operative Complaints[2] and the *Habberfield* FAC is
12   that the latter adds six new subclasses brought by non-California class
13   representatives asserting claims under the consumer protection laws of their states of
14   residence—New York, Florida, Maryland, Massachusetts, Michigan, and Ohio.
15   However, all putative class members in those six subclasses are subsumed by the
16   nationwide class alleged in the Operative Complaints. In short, the Operative
17   Complaints already purport to bring claims on behalf of these very same customers.

18       The Court should enforce the parties' Settlement Agreement and strike the
19   *Habberfield* FAC. While the Settlement Agreement does not prohibit Plaintiffs'
20   counsel from attempting to assert claims on behalf of new class representatives, any
21   motion to amend must comply with Rules 15 and 16 because the pleadings are
22   closed. In the alternative, should the Court need additional time to resolve these

---

[1] The *Habberfield* Original Complaint was filed in Case no. 2:22-cv-03899 on June 7, 2022.  After receiving Defendants' meet and confer letter, Plaintiffs filed the *Habberfield* FAC on June 22 to exclude California customers from the nationwide class.  Collectively, these two filings are referred to as the "*Habberfield* Complaints."

[2] Collectively, the *Khan*, *Lee*, and *Hilton* Actions will be referred to as the "Operative Actions."  The most recently amended complaints of the Operative Actions will be referred to as the "Operative Complaints."

issues beyond the July 28 hearing date, and given the impending deadlines in the Court's order granting preliminary approval of the settlement, the Court should stay administration of the settlement and all related deadlines until the Court can adjudicate the merits of this motion.

Last, Plaintiffs' conduct is intentional and sanctionable. Plaintiffs should not be permitted to hold Defendants to their obligations under the Settlement Agreement, while simultaneously ignoring their own contractual obligations and responsibilities to follow Court orders, the Federal Rules of Civil Procedure, and the Local Rules. In addition to striking the *Habberfield* FAC, Defendants respectfully request sanctions in the form of an award of attorneys' fees and costs under Rules 16(f), the Local Rules, and the Court's inherent power. Defendants further request that the Court entertain a motion for damages and other relief for breach of the Settlement Agreement, which as described later is a harm that is distinct from their failure to comply with the rules, and as a consequence will not be compensated by the fee shifting requested in this motion.

## II.   PROCEDURAL HISTORY

The Operative Complaints plead a putative nationwide class action on behalf of all U.S. customers, alleging that Defendants have engaged in deceptive advertising related to pricing on the U.S. websites for the three brands. Defendants have denied and continue to deny each of the claims and contentions alleged by Plaintiffs.[3]

These claims have been pending since April 2020, and the pleadings closed when Defendants filed their answers. The *Khan*, *Hilton* and *Lee* Complaints seek relief on behalf of a class of all individuals in the United States who purchased one

---

[3] The Settlement Agreement "reflects the Parties' compromise and resolution of disputed claims," and in entering the Settlement Agreement, Defendants make no admission of liability or wrongdoing.  Dkt. 133-1 § 2.9.

MOTION TO ENFORCE AND STRIKE

or more branded products from the websites https://us.boohoo.com and https://www.boohooman.com/us/ or associated mobile phone applications ("Boohoo U.S. Websites") between April 9, 2016 through the present, the website https://prettylittlething.us or associated mobile phone application(s) ("PLT U.S. Website") between May 19, 2016, through the present, and the website https://nastygal.com or associated mobile phone application(s) ("Nasty Gal U.S. Website") between March 1, 2017, through the present.

On November 30, 2020, the Court consolidated the *Hilton* Action and *Lee* Action with the *Khan* Action for pretrial purposes only. Dkt. 38. At the same time, the Court entered a schedule setting forth the timeline to respond to the complaint, the deadline for the motion for class certification, and the deadline for motions related to personal jurisdiction. *Id.* Throughout the litigation, the Court continued to set schedules for briefing and certain deadlines pertaining to class discovery. *See e.g.*, Dkt. 75 (order extending briefing schedule for class certification and imposing class discovery deadline of August 31, 2021); Dkt. 90 (order extending class discovery deadline to November 19, 2021 and class certification schedule); Dkt. 123 (order granting class settlement briefing schedule).

As documented in Plaintiffs' own papers in support of the motion for preliminary approval, the parties engaged in extensive written discovery, document productions, and motion practice. Motion for Preliminary Approval of Class Settlement ("MPA"), Dkt. 133. Defendants produced more than 546,000 pages of documents responsive to Plaintiffs' document demands. *Id.* at 5. In January and February 2022, Plaintiffs deposed four 30(b)(6) representatives at Defendants' corporate headquarters in Manchester, England, who had been designated by Defendants on behalf of the three brands. *Id.* Plaintiffs acknowledge this work, and asked the Court to approve the Settlement Agreement in part, based on the extensive amount of work done on the case. *Id.* There was an enormous amount of effort

expended in this litigation, including extensive settlement negotiations and mediation sessions.  MPA, Dkt. 133 at 6.  This work eventually led the parties to executing the Settlement Agreement.

On May 24, 2022, Plaintiffs filed the MPA and accompanying Settlement Agreement. Dkt. 133. In the Settlement Agreement, entered into on behalf of individuals in California who made purchases on Defendants' U.S. websites during the specified class period, California class members agreed to release all claims upon the Court's final approval of the Settlement Agreement. Dkt. 133-1 § 2.7. The Settlement Agreement also provides that the remaining nationwide claims of non-California class members would be dismissed without prejudice upon the Court's final approval. *Id.*, Recitals "J" and "L". The Court entered its order granting preliminary approval on June 3, 2022 ("Preliminary Approval Order"). Dkt. 158. The Preliminary Approval Order stays "all discovery related to the putative claims of non-California class members." Dkt. 158 ¶ 31.  Importantly, nothing in the Settlement Agreement provides that the Plaintiffs may amend their complaint without Defendants' consent or the Court's approval.  Thus, Plaintiffs were required to meet their Rule 15 and 16 obligations before attempting to file the *Habberfield* Complaints.

Just four days after the Court entered the Preliminary Approval Order, on June 7, the same Plaintiffs' counsel filed the *Habberfield* Original Complaint, bringing identical nationwide claims under California law, *including the same 1.8 million California class members covered by the Settlement Agreement*:

| Operative Complaints<br>Class Definitions | *Habberfield* Original Complaint<br>Class Definitions |
|---|---|
| Boohoo: *All persons in the United States of America who purchased one or more boohoo products from http://us.boohoo.com between April 9, 2016, through the present (the "Class* | Boohoo: *All persons in the United States of America who purchased one or more boohoo products from http://us.boohoo.com between April 9, 2016, through the present at a discount* |

| Operative Complaints Class Definitions | *Habberfield* Original Complaint Class Definitions |
|---|---|
| *Period") at a discount from a higher reference price and who have not received a refund or credit for their purchase(s).* | *from a higher reference price and who have not received a refund or credit for their purchase(s).* |
| PrettyLittleThing:  *All persons in the United States of America who purchased one or more "PrettyLittleThing" products from https://www.prettylittlething.us between May 19, 2016, through the present (the "Class Period") at a discount from a higher reference price and who have not received a refund or credit for their purchase(s).* | PrettyLittleThing *All persons in the United States of America who purchased one or more "PrettyLittleThing" products from https://www.prettylittlething.us between May 19, 2016, through the present at a discount from a higher reference price and who have not received a refund or credit for their purchase(s).* |
| Nasty Gal:  *All persons in the United States of America who purchased one or more "Nasty Gal" products from http://nastygal.com between March 1, 2017 through the present (the "Class Period") at a discount from a higher reference price and who have not received a refund or credit for their purchase(s).* | Nasty Gal:  *All persons in the United States of America who purchased one or more "Nasty Gal" products from https://nastygal.com between March 1, 2017, through the present at a discount from a higher reference price and who have not received a refund or credit for their purchase(s).* |

This is the same nationwide class alleged in the Operative Complaints. *See Khan* Second Amended Complaint, Dkt. No. 14 ¶¶ 33, 75-131.  The *Habberfield* Original Complaint alleges violations of identical California laws on behalf an identical nationwide class, with the same commencement date for the class period as the Operative Complaints. *See* Case No. 2:22-cv-03899, Dkt. No. 1 ¶¶ 124, 252-312. In fact, dozens of paragraphs from the Operative Complaints also appear nearly verbatim in the *Habberfield* Original Complaint.[4]  *See e.g.*, ¶¶ 34-38; 118-122.

---

[4] On June 13, 2022, Judge Wu consented to transfer the *Habberfield* matter to his calendar, pursuant to General Order 21-01, as the case was deemed related to the Operative Actions. Transfer Order, Case No. 2:22-cv-03899, Dkt. 11.

Only hours before filing the *Habberfield* Original Complaint, Plaintiffs' counsel told Defendants of their intention to file a new lawsuit by telephone. Shelton Decl. ¶ 3. Plaintiffs did not provide Defendants with a copy of the complaint prior to filing, so Defendants were not afforded an opportunity to confer with Plaintiffs as to the reasons why this filing was inconsistent with the Settlement Agreement, the Court's Preliminary Approval Order, and the Federal Rules of Civil Procedure. Shelton Decl. ¶ 4. Based on Plaintiffs' description of the new lawsuit, however, Defendants requested that Plaintiffs postpone filing another lawsuit so the parties could confer, but Plaintiffs declined, filing the *Habberfield* Original Complaint mere hours later. *Id.*

On June 21 and 22, 2022, after Defendants had an opportunity to review the *Habberfield* Original Complaint, the parties met and conferred. Shelton Decl. ¶ 5. Defendants notified Plaintiffs of their concerns with the filing, specifically the violations of Federal Rules of Civil Procedure and inconsistencies with the Settlement Agreement and requested its immediate withdrawal. *Id.*; Ex. A (June 21, 2022 Letter from R. Zdrojeski). Defendants' June 21 letter clearly pointed out Plaintiffs' violations of the rules and Settlement Agreement. It explained that "the Habberfield Complaint is nothing more than an attempt to amend the *Khan*, *Lee*, and *Hilton* Complaints ('Operative Complaints') already on file in violation of Federal Rules of Civil Procedure 15 and 16 and the parties' meet and confer obligations under L.R. 7-3." Shelton Decl. ¶ 5; Ex. A at 1.  It further stated that "[t]he filing of an entirely new lawsuit with identical nationwide claims, identical defendants and plaintiffs that are in privity with Khan, Lee and Hilton is an undisguised attempt to circumvent the amendment provisions of Rules 15 and 16, and is impermissible claim splitting." *Id.* Ex. A at 2.  In addition to explaining the problem, the letter explained the appropriate remedy, stating that Plaintiffs' counsel are "permitted

under Federal Rule of Civil Procedure 41(a)(1) to voluntarily dismiss the Habberfield Complaint without prejudice, and you should do so immediately." *Id.*

Plaintiffs' counsel did not dismiss the *Habberfield* Original Complaint.  By way of their response, Plaintiffs acknowledged that their inclusion of California class members in the *Habberfield* Original Complaint was not in compliance with the Settlement Agreement in the Operative Actions and provided a representation via email this was not their intention. Shelton Decl. ¶ 6; Ex. B (June 21, 2022 Email from A. Ibrahim).  However, Plaintiffs' proposed solution of merely *representing* to Defendants that California customers were intended to be excluded from the *Habberfield* Original Complaint did not resolve Plaintiffs' violation of the Settlement Agreement, the Federal Rules and the Court's Preliminary Approval Order. *Id.* ¶ 7; Ex. B (June 21, 2022 Email from I. Shelton). This proposed solution also did not resolve Defendants' primary concern, that Plaintiffs' filing is an attempt to amend already pending claims in violation of Rules 15 and 16.  *Id.* Defendants requested that Plaintiffs immediately withdraw the *Habberfield* Original Complaint and follow the rules—by scheduling a meet and confer and filing a motion for leave to amend—if they wished to pursue this action.[5] *Id.*

On June 22, 2022, Plaintiffs filed the *Habberfield* FAC, specifically carving out California purchasers from the nationwide claims.  While resolving Defendants' objection that the 1.8 million California class members covered by the Settlement Agreement were included in the *Habberfield* Original Complaint, the *Habberfield*

---

[5] Having not heard a response from Plaintiffs, Defendants prepared to file an *ex parte* motion to stay the settlement administration pending adjudication of a motion to strike the *Habberfield* Original Complaint based on Plaintiffs' inclusion of California customers and their refusal to withdraw the filing.  Shelton Decl. ¶ 8; Ex. C (June 22, 2022 Email from I. Shelton). Defendants notified Plaintiffs of their intention to file the *ex parte* motion on June 22. *Id.* Plaintiffs then filed the *Habberfield* FAC on the evening of June 22, 2022. *Id.* Understanding that Plaintiffs had other commitments, Defendants scheduled an 8:00 a.m. (PT) conference call the next day, June 23, in an attempt to discuss these issues.  Although Defendants joined the call at that time, Plaintiffs did not join. Shelton Decl. ¶ 8.

FAC did not cure Plaintiffs' actions in attempting to circumvent the procedures which must be followed in amending the remaining nationwide claims. In fact, the knowing and intentional filing of a second unauthorized pleading further violated Rules 15 and 16 and breached the Settlement Agreement.

The nationwide classes in both the *Habberfield* FAC and the Operative Complaints are identical and assert the same claims for relief under California law. Plaintiffs bring the same claims for relief under California law in the Operative Complaints and the *Habberfield* FAC, as follows:

1. Violation of California Unfair Competition Law (CAL. BUS. & PROF. CODE § 17200, *et seq.*);

2. Violation of California False Advertising Law, CAL. BUS. & PROF. CODE § 17500, *et seq.*);

3. Violation of the California Consumer Legal Remedies Act, CAL. CIV. CODE § 1750, *et seq.*);

4. Fraud (Intentional Misrepresentations);

5. Fraudulent Concealment; and

6. Restitution for Unjust Enrichment.

*See Khan* Second Amended Complaint, Dkt. 14 ¶¶ 75-131; *Hilton* First Amended Complaint, Dkt. 15 ¶¶ 72-128; *Lee* First Amended Complaint, Dkt. 15 ¶¶ 85-141; *Habberfield* FAC, Dkt. 13 ¶¶ 254-314.

Plaintiffs purport to bring these claims applying California law, in both the *Habberfield* FAC and the Operative Complaints, on behalf of a nationwide class *excluding California customers* (*i.e.*, customers of all three brands in all 49 states besides California):

| Operative Complaints<br>Class Definitions | *Habberfield* FAC<br>Class Definitions |
|---|---|
| <u>Boohoo</u>: *All persons in the United States of America who purchased one or more boohoo products from http://us.boohoo.com between April 9,* | <u>Boohoo</u>: *All persons in the United States of America (excluding California) who purchased one or more boohoo products from http://us.boohoo.com between April* |

| Operative Complaints<br>Class Definitions | *Habberfield* FAC<br>Class Definitions |
|---|---|
| *2016, through the present (the "Class Period") at a discount from a higher reference price and who have not received a refund or credit for their purchase(s).* | *9, 2016, through the present at a discount from a higher reference price and who have not received a refund or credit for their purchase(s).* |
| PrettyLittleThing:  *All persons in the United States of America who purchased one or more "PrettyLittleThing" products from https://www.prettylittlething.us between May 19, 2016, through the present (the "Class Period") at a discount from a higher reference price and who have not received a refund or credit for their purchase(s).* | PrettyLittleThing *All persons in the United States of America (excluding California) who purchased one or more "PrettyLittleThing" products from https://www.prettylittlething.us between May 19, 2016, through the present at a discount from a higher reference price and who have not received a refund or credit for their purchase(s).* |
| Nasty Gal:  *All persons in the United States of America who purchased one or more "Nasty Gal" products from http://nastygal.com between March 1, 2017 through the present (the "Class Period") at a discount from a higher reference price and who have not received a refund or credit for their purchase(s).* | Nasty Gal:  *All persons in the United States of America (excluding California) who purchased one or more "Nasty Gal" products from https://nastygal.com between March 1, 2017, through the present at a discount from a higher reference price and who have not received a refund or credit for their purchase(s).* |

*See Khan* Second Amended Complaint, Dkt. 14 ¶ 33; *Hilton* First Amended Complaint, Dkt. 15 ¶ 33; *Lee* First Amended Complaint, Dkt. 15 ¶ 32; *Habberfield* FAC, Dkt. 13 ¶ 124.

As consumers residing in the U.S. who made a purchase within the identical class period, the Operative Complaints subsume the named representatives in the *Habberfield* FAC. *See Ross v. U.S. Bank Nat'l Ass'n*, 542 F. Supp. 2d 1014, 1020 (N.D. Cal. 2008) ("In a class action, the classes, and not the class representatives, are compared."); *see also Bennett v. Bed Bath & Beyond, Inc.*, No. C 11-02220 CRB, 2011 WL 3022126, at *1 (N.D. Cal. July 22, 2011) ("This action is

MOTION TO ENFORCE AND STRIKE

duplicative of an earlier filed lawsuit . . . although the named Plaintiffs differ, they seek to represent essentially the same putative class.")

## III. THE COURT SHOULD STRIKE THE *HABBERFIELD* FIRST AMENDED COMPLAINT

### A. The Court Should Strike the *Habberfield* FAC for Breach of the Settlement Agreement and Preliminary Approval Order

By filing the *Habberfield* FAC on behalf of overlapping nationwide class members alleging claims already pending in the Operative Actions, and without seeking leave to amend, Plaintiffs are in breach of the Settlement Agreement. "The construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally." *O'Neil v. Bunge Corp.*, 365 F.3d 820, 822 (9th Cir. 2004) (citations and quotations omitted).

Defendants never waived their right to challenge any potential amendment of the nationwide class. The Settlement Agreement contains no such waiver or a consent to amendment, much less consent for Plaintiffs' counsel to file a new duplicative class action. Thus, in entering into the Settlement Agreement, Defendants bargained for a certain quietude—an agreement from Plaintiffs that provided dismissal without prejudice of claims of the non-California class members and a stay on discovery of those claims until final approval, currently scheduled for hearing in October 2022. That quietude has now been disrupted. Plaintiffs are now prosecuting claims which Defendants negotiated would be stayed as to discovery and voluntarily dismissed upon final approval. These actions modify the material terms of the Settlement Agreement, constitute a breach of the Settlement Agreement, and violate the Court's Preliminary Approval Order. To the extent Plaintiffs' counsel seeks to continue prosecuting the claims of non-California class members, it was incumbent on them to comply with the rules and seek leave to

amend, which would allow Defendants the opportunity raise any appropriate objection based on the relevant factors or the Settlement Agreement.[6]

Based on their meet and confer correspondence, Plaintiffs appear to read the Settlement Agreement as expressly authorizing a new lawsuit or amendment of the existing lawsuit without leave. It does neither of those things. Instead, it expressly provides that the claims of the non-California class members remain pending in the Operative Actions, that discovery is stayed, and that those claims will be dismissed without prejudice on final approval—*if* that approval occurs. In jumping the gun and filing a duplicative class action, Plaintiffs appear to assume that the Court will approve the settlement before the Court engages in that thoughtful review. Until that actually happens, however, established legal principles bar the pendency of two duplicative class actions—including the claim-splitting and first-to-file doctrines— and established legal rules prohibit Plaintiffs' counsel from amending the original class action without first obtaining leave. Nothing in the Settlement Agreement relieved Plaintiffs from complying with the law, and Defendants reasonably expected Plaintiffs' counsel to do so when they executed the settlement.

---

[6] The Settlement Agreement contemplates that upon final approval of the settlement, the claims of the remaining non-California class members (*i.e.,* the remaining nationwide claims) would be dismissed without prejudice.  Settlement Agreement, Dkt. 133-1, Recital "J" (stating the "Agreement memorializes the terms of the Parties' settlement, which is intended to … dismiss without prejudice the claims of the non-California class members"); *see also* Recital "L" ("Following final approval of the Settlement Agreement, Plaintiffs agree to dismiss the claims filed on behalf of the remaining non-California class members without prejudice.").  Section 5.17 provides that the parties will "cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions contained herein and to exercise their best efforts to accomplish the foregoing terms and conditions of this Agreement," and will "comply in good faith with the terms and conditions of this Agreement." The Preliminary Approval Order further stays discovery as to the remaining nationwide claims.  Dkt. 158 ¶ 31. Further, the Preliminary Approval Order only allows for modifications to the Settlement Agreement prior to the Final Approval Hearing "so long as such modifications do not materially change the terms of the settlement provided thereunder." *Id.* ¶ 9.

### B.   The Court Should Strike the Habberfield FAC for Failure to Seek Leave to Amend

Rule 15 allows a party to amend once as a matter of course.  Fed. R. Civ. P. 15(a)(1).  For all amendments thereafter, a party may amend only with the opposing party's written consent or the court's leave.  Fed. R. Civ. P. 15(a)(2). Once the deadline for amending pleadings has passed, the ability to amend complaints falls under Rule 16(b), where a party may modify a scheduling order "only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4); *TC Rich, LLC v. Pacifica Chem. Inc.*, 2019 U.S. DIST. LEXIS 240952, at *22 (C.D. Cal April 15, 2019). Courts strike amended complaints that are filed without consent or leave. *See Meyer v. Napa State Hosp.*, No. C 03-05583 CW, 2007 U.S. Dist. LEXIS 2252, at *2 n.1 (N.D. Cal. Jan. 11, 2007) (granting Defendants' motion to strike an amended complaint when Plaintiff did not seek the Court's leave nor Defendants' consent pursuant to Rule 15); *Adams v. Kraft*, No. 5:10-CV-00602-LHK, 2011 U.S. Dist. LEXIS 83317, at *18 (N.D. Cal. July 29, 2011) ("Here, as the time to amend the complaint as a matter of course has passed, Plaintiff may only amend his complaint with the opposing party's written consent or the Court's leave. As the Court has not given Plaintiff leave to file an amended complaint, this new complaint will be given no weight in this Order").  Plaintiffs did not obtain consent or leave here.

As explained below, Plaintiffs ignored these procedures to avoid the scrutiny required to obtain leave to amend.  Defendants were entitled to assume that Plaintiffs would comply with their obligations under the rules and Settlement Agreement.  With this understanding, Defendants can challenge any late amendments with the Court.

The Court should strike the *Habberfield* FAC for the threshold reason that Plaintiffs did not seek leave to amend, which would have given Defendants the

opportunity to oppose on the grounds that the relevant factors are not satisfied. Defendants will not brief those issues in the present motion. Instead, Defendants reserve the right to oppose a properly noticed motion for leave to amend, preceded by a meet and confer, at which time Defendants can address issues such as diligence, prejudice, and futility, among others. Defendants were materially disadvantaged in being unable to present argument or evidence on these issues, including the false allegation in the *Habberfield* FAC (relevant to choice-of-law, venue, and personal jurisdiction among other things) that Defendants are headquartered in Los Angeles. As Plaintiffs' counsel knows from weeks of U.K. depositions in this matter, the record is clear that Defendants are headquartered in Manchester, England. *See Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060, 1078 (C.D. Cal. 2009) ("A court may consider factual allegations outside of the complaint in determining whether to grant leave to amend.").

Plaintiffs already amended the *Khan*, *Lee*, and *Hilton* Complaints in 2020 via the proper procedures. *Khan* Action, Dkts. 1, 10, 13 and 14; *Hilton* Action, Dkts. 1, 14 and 15; *Lee* Action, Dkts. 1, 14 and 15. After Defendants subsequently answered those claims on January 29, 2021, the pleadings in the Operative Actions were closed over 18 months ago. Thus, the filing of the *Habberfield* Complaints in June 2022 are an undisguised attempt to amend the same claims that have been pending and extensively litigated for the past two years.

Before filing the *Habberfield* Original Complaint, Plaintiffs should have known that the filing was in violation of the rules. Even assuming the first filing was an honest mistake, however, the filing of the *Habberfield* FAC clearly was not, occurring after Defendants explained those violations in detail and suggested the proposed remedy of voluntary dismissal. Plaintiffs neither sought consent from Defendants to amend nor approached the Court to seek leave to file what is, in substance, an amended complaint. Shelton Decl. ¶ 9.   These actions caused

Plaintiffs to violate Rule 15, and even after being notified of their violation, they continued to violate Rule 15 by (1) not withdrawing the *Habberfield* Original Complaint in its entirety; and instead (2) attempting another unauthorized amendment in filing the *Habberfield* FAC. *Id.*   The Court should strike the *Habberfield* FAC. *See Meyer*, 2007 U.S. Dist. LEXIS 2252, at *2 n.1; *Adams*, 2011 U.S. Dist. LEXIS 83317, at *18. If the Court is inclined to construe the *Habberfield* FAC as a motion for leave to amend, Defendants request the opportunity to fully brief the merits of amendment.

Given the fact that the non-California claims remain pending in connection with the Operative Actions, Plaintiffs also knew or should have known that leave to amend was required because the filing of a second, duplicative class action while the first remains pending violates the claim-splitting and first-to-file doctrines. Thus, even if the *Habberfield* Complaints were treated as a separate lawsuit rather than an amendment, striking those complaints is still the appropriate remedy while the Operative Actions remain pending. In preemptively filing a second class action, Plaintiffs' counsel presume the Court will approve settlement, and presume the non-California claims will be dismissed. This has not (and may not) occur. And until it does, the second class action is premature. If this Court declines to approve the settlement, then it will be faced with two duplicative class actions.

Duplicative class action lawsuits by the same counsel in the same court and on behalf of the same class are not allowed. The rule against claim splitting and the first-to-file doctrine prohibit Plaintiffs' counsel from sidestepping the amendment requirement by filing a second class action seeking the same relief against the same defendants in the same court. *See Fabics v. City of New Brunswick*, 629 F. App'x 196, 198-99 (3d Cir. 2015) ("[T]he court must insure that [a] plaintiff does not use the incorrect procedure of filing duplicative complaints for the purpose of circumventing the rules pertaining to the amendment of [pleadings]."); *P.S. v.*

*Patino*, No. CV 22-2508 PA (PVCx), 2022 U.S. Dist. LEXIS 82419, at *4 (C.D. Cal. May 5, 2022) (holding that "[a] litigant has no right to maintain a second action duplicative of another . . . . Several circuits—including the Ninth Circuit—have also held that a newly filed complaint may not be tactically employed to bypass procedural conditions imposed on the first complaint.").

The doctrine of claim splitting prevents a party to a previous action from maintaining an action premised on the same conduct against the same defendant in a subsequent action. *See Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007). The rule against claim splitting "requires a plaintiff to assert all of its causes of action arising from a common set of facts in one lawsuit." *Waad v. Farmers Ins. Exch.*, No. 17-13034, 2018 U.S. Dist. LEXIS 69911, at *6 (E.D. Mich. Apr. 26, 2018) *aff'd*, No. 18-1588, 2019 U.S. App. LEXIS 3051 (6th Cir. Jan. 30, 2019). The rule "rests both on the discretion of the courts to control their docket as well as on principles of res judicata." *Id.* (citing *Sanders Confectionery Prods. v. Heller Fin., Inc.*, 973 F.2d 474 (6th Cir. 1992). Further, and it is well settled that, "a plaintiff may not use the tactic of filing substantially identical complaints to expand the procedural rights he would have otherwise enjoyed." *Id.* (citing *Hartsel Springs Ranch v. Bluegreen*, 296 F.3d 982, 990 (10th Cir. 2002)).

The filing of an entirely new lawsuit with identical nationwide claims, identical defendants and plaintiffs that are in privity with Khan, Lee and Hilton is impermissible claim splitting, and the "same party" and "same claim" tests are met here. Where unnamed plaintiffs are adequately represented in an earlier class action, duplicative class actions with newly named plaintiffs may not go forward. For example, in *Bojorquez v. Abercrombie & Fitch, Co.*, 193 F. Supp. 3d 1117, 1123-24 (C.D. Cal. 2016) the court barred the plaintiff, an unnamed class member in a previous class action, from bringing a subsequent class action premised on the same claims as the previous one, only updated to cover the five months following the

cutoff of the previous class action. *See also Weinstein v. Metlife, Inc.,* No. C06-04444, 2006 WL 3201045, at *4 (N.D. Cal. Nov. 6, 2006) (when considering duplicative suits in a class action context, "the classes, and not the class representatives, are compared").

Similarly, the first-to-file rule permits a district court to dismiss, transfer or stay an action when a similar complaint has already been filed in another federal court after weighing three factors: (1) chronology of the lawsuit; (2) similarity of the parties; and (3) similarity of the issues. *See Schwartz v. Frito–Lay N. Am.*, No. C–12–02740 EDL, 2012 WL 8147135, at *2 (N.D. Cal. Sept. 12, 2012). There is a "strong presumption in favor of the first-filed action" under Ninth Circuit jurisprudence. *Centocor, Inc. v. Medimmune, Inc.*, No. C 02-03252 CRB, 2002 WL 31465299, at *3 (N.D. Cal. Oct. 22, 2002). The three factors are met here, warranting dismissal of the *Habberfield* FAC in light of the already pending Operative Complaints. "In a class action, the classes, and not the class representatives, are compared." *Ross*, 542 F. Supp. 2d at 1020; *see also Bennett*, 2011 WL 3022126, at *1 ("This action is duplicative of an earlier filed lawsuit . . . although the named Plaintiffs differ, they seek to represent essentially the same putative class."); *Peak v. Green Tree Fin. Servicing Corp.,* No. C00-0953, 2000 WL 973685, at *2 (N.D. Cal. July 7, 2000) (applying first-to-file rule when classes are identical, even when named plaintiffs differ). The only difference between the duplicative lawsuits is the *Habberfield* FAC contains additional subclasses for six states outside of California for violations of those state laws. However, the nationwide claims remain identical. Even if the Court were concerned that the additional non-California claims rendered the cases to be unidentical, "[l]ike the similarity of parties prong, the issues in the two actions need not be identical for the first-to-file rule to apply." *Subbaiah v. GEICO Gen. Ins. Co*., No. 2:19-CV-06717

MOTION TO ENFORCE AND STRIKE

AB (JPRx), 2019 WL 9904278 at *5 (C.D. Cal. Dec. 11, 2019) (*citing Inherent.com v. Martindale-Hubble*, 420 F. Supp. 2d 1093, 1097 (N.D. Cal. 2006)).

### C.    In the Alternative, the Court Should Stay the Administration of the Settlement

In the event the Court is unable to rule on the motion until after the July 28 hearing date, Defendants respectfully request a stay of the administration of the Settlement Agreement pending the Court's ruling. *Burns v. Gerber Prods. Co.*, No. CV-12-5027-EFS, 2012 U.S. Dist. LEXIS 151130, at *12 (E.D. Wash. Sep. 4, 2012) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.")). The pendency of two duplicative class actions during the settlement administration process is sure to create confusion and uncertainty as to whether the claims of the non-California class members are stayed in the Operative Actions or pending in *Habberfield*. The Settlement Agreement was drafted to avoid this confusion.

## IV.   THE COURT SHOULD AWARD SANCTIONS

As explained above, Defendants seek an order striking the *Habberfield* FAC for breach of the Settlement Agreement, and failing to seek leave to amend in violation of Rules 15 and 16. Because this conduct was intentional and not justified, Defendants request sanctions, in the form of the attorneys' fees and costs incurred in bringing the present motion, under Federal Rule of Civil Procedure 16(f), Local Rules 7-4 and 83-7, and the inherent power of the Court to administer its docket.

### A.    The Court May Award Sanctions in the Form of Attorneys' Fees and Costs under Rule 16(f)

Rule 16(f) was designed "to deter conduct that unnecessarily consumes the Court's time and resources that could have been more productively utilized by

litigants willing to follow the Court's procedures." *Calderon v. Target Corp.*, No. 12-CV-1781-MMA(PCL), 2013 U.S. Dist. LEXIS 116051, at *18 (S.D. Cal. Aug. 15, 2013).

Here, it is clear that Plaintiffs are not willing to follow the Federal Rules of Civil Procedure and the Local Rules. Defendants provided notice of the rule violations in their meet and confer letter. Not only did Plaintiffs fail to cure, they compounded their error by filing a second unauthorized complaint without leave of the Court. Rule 16(f)(1)(C) of the Federal Rules of Civil Procedure provides that "a court *may impose* a non-monetary sanction as a result of the failure of a party or attorney to comply with a scheduling order." *Calderon*, 2013 U.S. Dist. LEXIS 116051, at *18 (emphasis added); Fed. R. Civ. P. 16(f)(1)(C).  However, "the court *must order* the party, its attorney, or both to pay the reasonable expenses –including attorneys' fees—incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust." *Id.* (emphasis added) (quoting Fed. R. Civ. P. 16(f)(2)).

The filing of the *Habberfield* Complaints has increased the costs of litigation in this case for Defendants. Plaintiffs' lack of diligence in impermissibly filing the *Habberfield* Complaints has led to Defendants incurring fees and costs in moving to strike the *Habberfield* FAC. Defendants are not to blame for Plaintiffs' counsel lack of understanding of their own obligations under the Rules. Courts routinely award monetary and non-monetary sanctions under Rule 16(f) for an attorney's failure to timely file a motion to amend and noncompliance with the scheduling order if that failure was due to a lack of diligence.  *See Calderon,* 2013 U.S. Dist. LEXIS 116051, at *18  (finding the Plaintiffs' counsel "failure to file a timely motion to amend was due to a lack of diligence, so Plaintiff's counsel's noncompliance with the scheduling order is not substantially justified" and awarding sanctions under Rule 16(f)); *Hill v. Allianz Life Ins. Co.*, No. 6:14-cv-950-Orl-41KRS, 2015 U.S.

Dist. LEXIS 198933, at *11 (M.D. Fla. June 17, 2015) (awarding sanctions under Rule 16(f) where the "Amended Complaint was filed after the deadline for amended pleadings set forth" by the court).

In addition to striking the *Habberfield* FAC, Defendants respectfully request the Court to order Plaintiffs and/or their counsel of record to pay the reasonable expenses, including Defendants' attorney fees, incurred due to Plaintiffs' failure to comply with Rule 16.

### B.    The Court May Award Sanctions under Local Rule 7-4 and 83-7

Defendants alternatively request sanctions under Local Rules 7-4 and 83-7 for Plaintiffs' failure to comply with the procedures specified in Local Rules 7-3 and 7-15.

Local Rule 7-3 provides that "… counsel contemplating the filing of any motion shall first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution [and that t]he conference shall take place at least seven (7) days prior to the filing of the motion." L.R. 7-3.

As explained above, the *Habberfield* Complaints are unauthorized amendments.  Plaintiffs did not meet and confer prior to filing the *Habberfield* Complaints and violated Local Rule 7-3.

Local Rule 15-1 requires specific procedures for amended or supplemental pleadings, including that any proposed amended pleading be filed as an attachment to the related motion.  Plaintiffs did not comply with Local Rule 15-1 and instead filed the *Habberfield* Original Complaint as an entirely new lawsuit, and not as a proposed amended pleading.  In filing the *Habberfield* FAC, Plaintiffs similarly did not file this as a proposed amended pleading.

Local Rule 7-4 provides "the Court may decline to consider a motion unless it meets the requirements of L.R. 7-3 through 7-8."

Further, Local Rule 83-7 provides that:

> The violation of or failure to conform to any of these Local Rules may subject the offending party or counsel to:
>
> 1. monetary sanctions, if the Court finds that the conduct was willful, grossly negligent, or reckless;
>
> 2. the imposition of costs and attorneys' fees to opposing counsel, if the Court finds that the conduct rises to the level of bad faith and/or a willful disobedience of a court order; and/or
>
> 3. for any of the conduct specified in (a) or (b) above, such other sanctions as the Court may deem appropriate under the circumstances.

Defendants request that the Court strike the complaint under Local Rule 7-4. *See, e.g.*, *Pogrebnoy v. Russian Newspaper Distribution*, 742 F. App'x 291, 292 (9th Cir. 2018) (holding that "Local Rule 7-4 authorizes district courts to 'decline to consider a motion' that does not comply with Local Rule 7-3" and holding the district court's order striking plaintiff's motion was "well within the district court's considerable latitude in managing the parties' motion practice and enforcing local rules.") (citations and quotations omitted).

In addition, Defendants respectfully request the Court to award monetary sanctions, including costs and attorneys' fees. Plaintiffs intentionally notified Defendants of their filing only hours before they filed it in violation of Local Rule 7-3. Although Defendants requested Plaintiffs postpone their filing, they went forward. Additionally, in their attempt to amend already pending claims, they did not properly submit the proposed amended pleading consistent with the Local Rule 15-1, not once, but twice.

Such conduct was willful, warranting sanctions under Local Rule 83-7(a). In addition, the filing of the *Habberfield* Complaints is in direct contradiction with the

Court's Preliminary Approval Order and the Settlement Agreement which contemplates a stay on discovery for the non-California class members and ultimate dismissal without prejudice following final approval. This conduct amounts to willful disobedience of a court order and warrants an award of sanctions in the form of costs and attorneys' fees under Local Rule 83-7(b).

### C.    The Court May Award Sanctions Under its Inherent Power

In *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991), the Supreme Court instructed that based on its "inherent powers," "a court may assess attorney's fees as a sanction for the '"willful disobedience of a court order"' and also "when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" (citations and quotations omitted). As discussed above, Plaintiffs' counsel have knowingly and intentionally attempted to subvert the Federal Rules and this Court's administration of the settlement by filing a poorly disguised amended complaint. Should the Court find that an award of sanctions in the form of attorneys' fees and costs is warranted, Defendants request leave to submit their application for attorneys' fees and costs incurred since June 7, 2022 when Plaintiffs filed the *Habberfield* Original Complaint.

### D.    The Court Should Grant Defendants Leave to Seek Damages and Other Relief under the Settlement Agreement

An award of attorneys' fees and costs will compensate Defendants for the cost of bringing the present motion, but it will not compensate Defendants for the harm caused by breaching the Settlement Agreement and the administration thereof. Consequently, if the motion is granted, and even if sanctions are awarded, Defendants seek leave to file a motion for damages and other relief for breach of the Settlement Agreement.

# CONCLUSION

Defendants respectfully request that the Court enforce the Settlement Agreement, strike the *Habberfield* FAC, and award sanctions in the form of attorneys' fees and costs incurred by Defendants in bringing the present motion.

DATED:   June 28, 2022                    EVERSHEDS SUTHERLAND (US) LLP


                                          By */s/ Ronald W. Zdrojeski*
                                             Ronald W. Zdrojeski




                                          By */s/ Ian S. Shelton*
                                             Ian S. Shelton

                                          Attorneys for Defendants