UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-3332-GW-JEMx | Date | December 16, 2022 |
|---|---|---|---|
| Title | *Farih Khan v. Boohoo.com USA, Inc., et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | None Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |
| None Present | None Present | |

**PROCEEDINGS:** IN CHAMBERS - TENTATIVE RULING ON PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT [189]; and PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS [191]

Attached hereto is the Court's Tentative Ruling on Plaintiffs' Motions [189][191] set for hearing on December 19, 2022 at 8:30 a.m.

:

Initials of Preparer   JG

***Khan v. Boohoo.com USA, Inc., et al.***, Case No. 2:20-cv-03332-GW-(JEMx)
***Hilton v. PrettyLittleThing.com USA Inc., et al.***, Case No. 2:20-cv-04658-GW-(JEMx)
***Lee v. NastyGal.com USA Inc., et al.***, Case No. 2:20-cv-04659-GW-(JEMx)
Tentative Rulings on: (1) Motion for Final Approval of Class Settlement, and (2) Motion for Attorneys' Fees, Costs and Service Awards

## I. Background

Plaintiffs Farid Khan, Haya Hilton, and Olivia Lee (collectively "Plaintiffs") move, in these three consolidated actions, for final approval of a class action settlement, an award of attorneys' fees and costs to their attorneys, settlement administration expenses, and class representative "service awards" in connection with Plaintiffs' claims that, as the Court noted at the preliminary-approval stage, involve allegations that several online retailers, all under the umbrella of the same corporate parent, employed false and deceptive pricing practices where they advertised fake and inflated comparison reference prices to deceive customers into a false belief that the sale price is a deeply discounted bargain price. The operative complaints in the three cases each contain statutory claims for violations of California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200 et seq.), False Advertising Law (Cal. Bus. & Prof. Code §§ 17500 et seq.), and Consumer Legal Remedies Act (Cal. Civ. Code §§ 1750 et seq.) ("CLRA"), along with common-law claims for fraud (intentional misrepresentations), fraudulent concealment, and unjust enrichment. *See Khan v. Boohoo.com USA, Inc., et al.*, No. 2:20-cv-03332-GW-JEMx ("*Khan*"), Docket No. 14; *Hilton v. PrettyLittleThing.com USA Inc., et al.*, No. 2:20-cv-04658-GW-JEMx, Docket No. 15; *Lee v. NastyGal.com USA Inc., et al.*, No. 2:20-cv-04659-GW-JEMx, Docket No. 15.

In brief, the settlement provides class members with a $10 gift card (with notable flexibility in various respects – no expiration or blackout dates, no minimum-purchase requirement, no fees, usable in conjunction with other offers and promotions, and both transferable and "stackable") and free shipping (valued at $7.28), along with significant injunctive relief concerning the websites and pricing-practices in question. Over 1.5 million individuals will receive the gift cards, and over 1.9 million gift cards in total – consumers who made purchases at multiple websites will receive one for each such website – will be distributed. The Court granted preliminary approval of the instant settlement on June 3, 2022. *See* Docket No. 158; *see also* Docket Nos. 148, 157, 162, 187.

## II. Analysis

### A. Jurisdiction

This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d)(2), the Class Action Fairness Act. *See, e.g., Khan*, Docket No. 14, ¶ 10. It also concludes that it has personal jurisdiction over the defendants by virtue of their business practices in, and impacting consumers in, California, and at the very least by virtue of their failure to contest (or withdrawal of their attempt to contest) such jurisdiction in this action.

1

### B. Notice

Notice is adequate if it is "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1351 (9th Cir. 1980). The notice process the Court ordered and the parties followed involved notice primarily sent by email in light of the fact that the defendants are online-only retailers (meaning that customers had to create online profiles with required email addresses), postcard notice, publication notice, and creation of a class settlement website. *See* Declaration of Zach Cooley Regarding Execution of Class Notice Plan ("Cooley Decl."), Docket No. 190, ¶¶ 2, 7-11. Of the 1,517,269 emails sent, 1,479,560 were deemed to be successfully delivered, with 37,709 deemed unsuccessfully-delivered. *See id.*, ¶ 7. Postcard notice was then printed and mailed to the 102,923 names and mailing addresses who were either part of the unsuccessful email deliveries or for whom there was no valid email address. *See id.*, ¶ 8. Only 4,120 of those postcard notices were returned with undeliverable addresses. *See id.*, ¶ 9.

The Court has determined that the notice issued here was reasonably calculated to apprise interested parties of the pendency of this action and to afford them the opportunity to object. *See* Fed. R. Civ. P. 23(e). Such notice satisfies the due process requirements of the Fifth Amendment. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009); *Brown v. Ticor Title Inc.*, 982 F.2d 386, 392 (9th Cir.1992); *Mandujano v. Basic Vegetable Prods., Inc.*, 541 F.2d 832, 835 (9th Cir. 1976).

### C. Certification of the Class

At the preliminary approval stage, the Court provisionally-certified three classes, for settlement purposes only, as follows:

> All individuals in California who made a purchase on https://us.boohoo.com or https://www.boohooman.com/us or associated mobile phone applications between April 9, 2016 and June 16, 2022, excluding any and all past or present officers, directors, or employees of Defendants, any judge who presides over this action, and any partner or employee of Class Counsel.
>
> All individuals in California who made a purchase on https://prettylittlething.us or associated mobile phone applications between May 19, 2016 and June 16, 2022, excluding any and all past or present officers, directors, or employees of Defendants, any judge who presides over this action, and any partner or employee of Class Counsel.
>
> All individuals in California who made a purchase on https://nastygal.com or associated mobile phone applications between March 1, 2017 and June 16, 2022, excluding any and all past or present officers, directors, or employees of Defendants, any judge who presides over this action, and any partner or employee of Class Counsel.

Docket No. 158, at 2:25-3:13. As there is no indication that anything has changed in terms of the requirements for these settlement-related certifications, the Court now makes them final (for settlement purposes) for the reasons addressed at preliminary approval. *See* Docket No. 148, at pgs. 3-7 of 14.

**D. The Merits of the Settlement**

1. Legal Standards Governing Settlement

Settlement of a class action lawsuit requires court approval. *See* Fed. R. Civ. P. 23(e). The court must find that a proposed settlement is fundamentally fair, adequate, and reasonable. *See* Fed. R. Civ. P. 23(e)(2); *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). The Ninth Circuit previously instructed district courts that, in determining whether or not to approve a class settlement in accordance with Rule 23(e), the court could consider any or all of the following factors, if applicable:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir.1982); *see also Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020). That list was not intended to be exhaustive, and a Court is required to consider the applicable factors in the context of the case at hand. *See Officers for Justice*, 688 F.2d at 625.

Recent amendments to Rule 23 of the Federal Rules of Civil Procedure have formalized the consideration somewhat further. Now, in order for a court to determine that a settlement is "fair, reasonable, and adequate," the court must first consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3)[1]; and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Clearly these rule-based mandatory considerations overlap with certain of the factors the Ninth Circuit previously established as permissible to consider. Consideration of the factors the Ninth Circuit has customarily-employed remains

---

[1] Rule 23(e)(3) provides that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3).

3

appropriate after the recent Rule 23 amendments. *See, e.g.*, *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 609 n.4 (9th Cir. 2021); *Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021); *see also Saucillo v. Peck*, 25 F.4th 1118, 1124 n.3 (9th Cir. 2022) ("Because we vacate the district court's approval of the settlement agreement in this case for reasons unrelated to the *Hanlon* or Rule 23(e)(2) factors, we need not reach the question as to how district courts should incorporate the Rule 23(e)(2) factors into their analyses.").

Despite the importance of fairness, the court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action lawsuits. *See, e.g.*, *Officers for Justice*, 688 F.2d at 625 ("Finally, it must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation ...."). While balancing all of these interests, the court's inquiry is ultimately limited "to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Id.* The court, in evaluating the agreement(s) of the parties, is not to reach the merits of the case or to form conclusions about the underlying questions of law or fact. *See id.*

"It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon*, 150 F.3d at 1026. "The settlement must stand or fall in its entirety." *Id.* The court may not delete, modify, or rewrite particular provisions of a settlement. *See id.* "Settlement is the offspring of compromise; the question . . . is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Id.* at 1027.

2. <u>The Settlement is Fair</u>

   a. <u>The Settlement Previously Would Have Enjoyed a Presumption of Fairness</u>

Courts previously afforded a presumption of fairness to a settlement, if: (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected. *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). Such a starting-point is no longer appropriate. *See Roes, 1-2 v. SFBSC Mgmt., Inc.*, 944 F.3d 1035, 1049 n.12 (9th Cir. 2019) (calling into question this presumption after recent amendments to Rule 23(e)); *see also In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 776, 782-83 (9th Cir. 2022); *Saucillo*, 25 F.4th at 1130-32; *Briseño v. Henderson*, 998 F.3d 1014, 1030 (9th Cir. 2021) ("Rule 23(e)(2) assumes that a class action settlement is invalid.").

It does no harm, however, to note that had such a framework still applied, the settlement would easily garner respect thereunder. Plaintiffs – who are represented by counsel experienced in complex commercial cases and class actions, *see* Omnibus Declaration of Ahmed Ibrahim in Support of Motion for Final Approval of Class Action Settlement and Motion for Attorneys' Fees, Costs, and Service Awards ("Ibrahim Decl."), ¶¶ 19, 38-40, 45, and Declaration of Yasin M. Almadani in Support of Unopposed Motion for Final Approval of Class Action Settlement and Motion for Attorneys' Fees, Costs, and Service Awards ("Almadani Decl."), Docket No. 192, ¶¶ 4, 6

– demonstrated to the Court's satisfaction as part of preliminary approval that the settlement was the product of arm's-length negotiations, including by way of repeatedly employing the services of retired United States District Court Judge, Irma Gonzalez. *See* Docket No. 148, at pg. 8 of 14; *see also See* Ibrahim Decl., ¶¶ 22, 30. As the Court also previously noted, Plaintiffs' discovery efforts were considerable. *See* Docket No. 148, at pg. 6 of 14. Finally, there have been no objections filed in connection with the proposed settlement or the accompanying request for fees/costs/service awards, and a very small number of opt-outs – only 21 – considering approximately 1.5 Million people were sent notice. *See* Ibrahim Decl., ¶ 36.

The Court does not start with a presumption of fairness here, but had the factors previously used by courts to assess such a question continued to apply here, the Court would have no hesitation in concluding those factors favored such a presumption. Even without such a presumption, the Court readily concludes that the settlement, in fact, meets the requisite class action fairness standard.

### b. The Settlement is Fair, Adequate, and Reasonable

#### i. The Strength of the Case

Plaintiffs' case largely survived early motions to dismiss and strike. Plaintiffs developed an evidentiary record demonstrating the extent and frequency of the defendants' pricing practices that are at issue in this litigation, and concluded that the prices in question were not reflective of actual prices the defendants had previously-charged, but instead merely of the defendants' opinions of the true value of the articles in-question. Nevertheless, a strong case rarely offers certainty of recovery. As Plaintiffs themselves have noted, at a minimum there would have been a question about whether they had selected/designed a viable damages model for the class. All of these considerations support a conclusion that this factor favored settlement and the certainty that it brings along with it.

#### ii. The Risk, Expense, Complexity, and Likely Duration of Further Litigation

The expense and possible duration of the litigation should be considered in evaluating the reasonableness of a settlement. *See Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*, 213 F.3d 454, 458 (9th Cir.2000); *see also Nat'l Rural*, 221 F.R.D. at 526 ("[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."). This case is already almost three years old. If the case were to continue to be litigated on the merits, substantive challenges would still lay in the future, as would certification efforts. Of course, this does not even begin to account for potential future appellate proceedings. Time and resources spent in all those endeavors would have delayed and likely diminished any future result Plaintiffs might have achieved on behalf of the classes. Consequently, attorneys' fees and costs could have wound up eating up a substantial portion of any eventual likely recovery. In addition, there is potentially a substantial risk in litigation of this type concerning whether or not the damages model Plaintiffs have devised would be considered acceptable in the end.

Again, against all of this, the settlement agreement offers the parties immediate

and certain relief.  This factor therefore weighs in favor of approving the settlement.

          iii.    The Risk of Maintaining Class Action Status Throughout Trial

Were Plaintiffs eventually able to achieve class certification outside the context of settlement, there would be no certainty that such certification would be maintained throughout the proceedings (or survive an appellate challenge).  This is clearly a risk worth taking into consideration, and one that favors a resolution of the parties' dispute via settlement.

          iv.    The Amount Offered in the Settlement

Basic to [the process of deciding whether a proposed compromise is fair and equitable] in every instance…is the need to compare the terms of the compromise with the likely rewards of litigation." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968).  Thus, in determining whether the relief offered by way of settlement is fair, the Ninth Circuit has suggested that the Court compare the settlement to the parties' "estimates of the maximum [recovery] in a successful litigation." *See Dunleavy*, 213 F.3d at 459; *see also Rodriguez*, 563 F.3d at 965.  *But see Lane v. Facebook, Inc.*, 696 F.3d 811, 823 (9th Cir. 2012) ("While a district court must of course assess the plaintiffs' claims in determining the strength of their case relative to the risks of continued litigation, it need not include in its approval order a specific finding of fact as to the potential recovery for each of the plaintiffs' causes of action.") (omitting internal citation).  As the Court noted at the preliminary-approval stage, Plaintiffs believe the recovery via settlement (at least in terms of monetary value) is better than "50 cents on the dollar" for what they believe they could have recovered after fully-litigating the matter with complete success.  *See* Docket No. 148, at pg. 8 of 14.

As noted previously, there have been no objections to the settlement and only a handful of opt-outs, suggesting that very few, if any, members of the classes found the amount or method of recovery – issuance of gift cards – insufficient or inappropriate.[2]

The Court believes that the amount offered in settlement reflects a fair compromise and supports settlement.

          v.    The Extent of Discovery Completed and the Stage of the Proceedings

A class plaintiff must be armed with sufficient information about the case to have been able to reasonably assess strengths and value and to broker a fair class settlement.

---

[2] There is one question that the Court would want the parties address at the hearing.  While the gift cards which form the basis of the settlement appear to be valid (*see* description on page 1, *supra*), a question arises as to whether there are – in fact – goods which can actually be purchased for $10 or less at the Defendants' websites.  Arguably, if the cheapest item at Defendants' businesses was $30, then the gift card settlement would require the class member to spend $20 in order to make use of the $10 gift card.  That may call into question the actual value of the gift cards.  *Cf, Russell v. Kohl's Dep't Stores, Inc.*, 755 Fed. Appx. 605, 608 (9th Cir. 2018) ("The gift cards in this case were transferrable, stackable, usable with other Kohl's promotions, and large enough to allow class members to buy more than 1750 items from Kohl's without spending their own money.").

Again, the Court has previously commented on the extent of discovery undertaken here. *See* Docket No. 148, at pg. 6 of 14. The information Plaintiffs and their counsel had allowed them, in consultation with experts, to conclude that the settlement terms were within the realm of reasonableness. Given that context, the Court cannot fault Plaintiffs for believing settlement at this stage of the case was in the classes' best interest.

### vi. The Experience and Views of Counsel

In assessing the adequacy of the terms of a settlement, the trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties. *See Nat'l Rural*, 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation") (internal quotations and citations omitted). The basis for such reliance is that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir.1995). Obviously, class counsel – who are experienced in complex commercial and class litigation – consider the instant settlement to be fair, adequate and reasonable. *See* Ibrahim Decl. ¶¶ 18-19, 30, 34.

This factor therefore weighs in favor of approving the settlement.

### vii. The presence of a governmental participant

There is no indication that any governmental entity participated in the settlement of this case or that any government action led to Plaintiffs' commencement of the case. Notice of the settlement, after it was reached, was successfully sent as required by the Class Action Fairness Act. *See* Cooley Decl., ¶¶ 2-4. This factor is therefore neutral.

### viii. The Reaction of the Members of the Class to the Proposed Settlement

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action [*sic*] are favorable to the class members." *Nat'l Rural*, 221 F.R.D. at 529. Here, after Plaintiffs' notice efforts, there were *no* objections and only 21 opt-outs. *See* Cooley Decl., ¶¶ 13-14. Therefore, this factor fairly obviously strongly supports approving the settlement.

### ix. Signs of Collusion

The Court does not believe that the evidence comes close to demonstrating that there was, in fact, any collusion here in reaching the settlement. As noted, the parties reached a compromise following multiple mediation sessions with a retired United States District Court Judge. *See* Ibrahim Decl., ¶¶ 22, 30. While the settlement agreement does contain a "clear sailing" provision (providing that Plaintiffs' counsel may seek fees and costs up to $4,750,000 with no opposition from the defendants), the parties' mediation efforts, the views of that mediator/retired federal judge (both about the quality of the settlement as a whole and the measure of the fee request), the fact that fees were not discussed until all material terms of the settlement were agreed-upon, and that there is no

possibility for reversion,[3] *see* Ibrahim Decl., ¶¶ 24-26, all cause the Court to conclude that a collusion concern is, in the end, unwarranted here. *See also* Docket No. 148, at pg. 10 of 14, n.11; *Briseño*, 998 F.3d at 1027 ("Disproportionate fee awards, clear sailing agreements, and kicker clauses all *may* be elements of a good deal.") (emphasis added).

### x. Adequate Representation of the Class (Rule 23(e)(2)(A))

Plaintiffs' counsel successfully fended-off defense efforts to dispose of the case and/or limit the available defendants through a jurisdictional challenge. They ultimately obtained a settlement figure which can benefit over one million consumers without need of engaging in a claims process, while also getting the defendants to agree to permanent changes to messaging on their websites concerning the nature of their pricing communications. The mediator, a respected former federal judge, herself commented favorably on what Plaintiffs were able to achieve by way of settlement here. *See* Ibrahim Decl., ¶ 30; Almadani Decl., ¶ 12. There is nothing to suggest inadequacy in their efforts or the outcome.

### xi. Arm's-Length Negotiation (Rule 23(e)(2)(B))

As noted previously, the Court is satisfied that the settlement resulted from arm's length negotiations considering the repeated mediation efforts and private negotiations culminating in the settlement. *See* Ibrahim Decl., ¶¶ 22-23, 28-31, 33.

### xii. Adequate Relief for the Class (Rule 23(e)(2)(C))

The Court has already considered above "the costs, risks, and delay of trial and appeal."

With respect to "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," class members do not need to submit claims here. *See* Cooley Decl., ¶ 15. Instead, gift cards will automatically be sent to the email they have on file as a result of the defendants' pre-existing records or, for those who received postcard notices instead of emailed notice, the email addresses those individuals then provided to the settlement administrator. *See id.* In addition, reminders about the gift cards will be communicated via social media, on the defendants' websites, and via marketing emails. *See id.*, ¶¶ 16-18.

"[T]he terms of any proposed award of attorney's fees" will be discussed further in connection with the Court's consideration of the attorney's fee motion, *infra*. For purposes of settlement approval, however, there is nothing glaring in the settlement insofar as attorneys' fees are concerned – other than the "clear sailing" provision, discussed elsewhere – that causes the Court to pause in giving its approval.

As noted at the preliminary-approval stage, there is no "agreement made in connection with the [settlement] proposal" other than the settlement agreement. *See* Docket No. 148, at pgs. 7-8 of 14; Ibrahim Decl., ¶ 32.

There is nothing here to trouble the Court in connection with a determination that the settlement is fair, adequate and reasonable.

---

[3] Any fees not awarded would be directed to a *cy pres*, not back to the defendants.

>    xiii. Equitable Treatment of Class Members (Rule 23(e)(2)(D))

As the Court noted at preliminary approval, it "certainly does not believe the added-complexity of pegging claims to the value of the item(s) purchased by the class members following their one or more exposures to the pricing practices is necessary to achieve a fair, reasonable or adequate settlement." Docket No. 148, at pg. 9 of 14. As is commonly-recognized, perfect should not be made the enemy of good. In addition, now that class members have had the opportunity to weigh in on the settlement terms, it is instructive to again note that the Court received no objections to the settlement, or any of its aspects.

As for Plaintiffs themselves, they are the only class members who will be treated differently by virtue of their service awards (discussed *infra*). Class representative service awards have long been established as legitimate in the Ninth Circuit, and there is no decision post-dating the amendments to Rule 23 which suggest that such compensation is no longer appropriate due to the terms of Rule 23(e)(2)(D). *See, e.g.*, *In re Google Inc. Street View Elec. Commc'ns Litig.*, 21 F.4th 1102, 1115 n.6 (9th Cir. 2021), *cert. denied sub nom., Lowery v. Joffe*, 143 S.Ct. 107 (2022); *Cmty. Resources for Indep. Living v. Mobility Works of Cal., LLC*, 533 F.Supp.3d 881, 889 (N.D. Cal. 2020); *Rodriguez v. Evergreen Prof'l Recoveries, Inc.*, No. C19-0184-JCC, 2021 WL 2577130, *4 (W.D. Wash. June 23, 2021) (construing request for payment to representative plaintiff as request for incentive award in order to permit the payment under Rule 23(e)(2)(D)).

>    c. Conclusion re Reasonableness of Settlement

Upon consideration of the above-stated factors, the Court concludes that the settlement reached in this case is reasonable. It therefore grants the motion for final approval of the settlement.

>    3. Attorneys' Fees, Costs and Service Awards

Plaintiff's counsel moves for approval of their request for $4,506,486.00 in attorneys' fees, $243,514 in costs, $350,000 in settlement administration expenses, and class representative service awards of $5,000 to each of the three Plaintiffs.

It is well established that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of [its] litigation, including attorneys' fees." *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977); *see also Jones*, 654 F.3d at 941. This rule, known as the "common fund doctrine," is designed to prevent unjust enrichment by distributing the costs of litigation among those who benefit from the efforts of the litigants and their counsel. *See Paul, Johnson, Alston, & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989).

In awarding fees in connection with a common fund, courts generally use either a percentage method or a "lodestar" method, but in the Ninth Circuit, use of the percentage method in common fund cases appears to be dominant. *See, e.g.*, *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311

(9th Cir. 1990); *Paul, Johnson*, 886 F.2d at 272. The ultimate goal under any method of determining fees is to reasonably compensate counsel for their efforts in creating a common fund. *See Paul, Johnson*, 886 F.2d at 271-72. Here, as noted further below, there is no true "common fund" at play, because any fee award will not reduce the amount distributed to class members; nevertheless, the foregoing principles still provide guidance.

There is no question that Plaintiffs' counsel are deserving of a fee recovery here.[4] Counsel took up a case, on contingency, thereby sacrificing time that could have been spent on other, less-risky, matters, and put a substantial amount of work into the matter, saving the actions from dismissal and putting significant thought and work into devising a workable damages model, among many other tasks and accomplishments. *See, e.g.*, Ibrahim Decl., ¶¶ 2-19, 22-34, 37, 54; Almadani Decl., ¶ 8. Though the case is now almost three years old, they achieved this result before much of the expenses associated with discovery and further merits proceedings would have occurred, and they did so all while leanly-staffing the matter. *See* Declaration of Daniel Wang in Support of Unopposed Motion for Final Approval of Class Action Settlement and Motion for Attorneys' Fees, Costs, and Service Awards ("Wang Decl."), Docket No. 193, ¶ 3; Ibrahim Decl., ¶¶ 44, 46; Almadani Decl., ¶¶ 6, 9. Certainly, this result is deserving of some measure of reward.

Plaintiffs' counsel do not advocate for a percentage recovery here, considering that there is no overall lump of money – and thus no true "common fund" – to be distributed to class members. However, they do compare what they *do* seek by way of noting what percentage figure it would amount to in relation to the total value of the settlement – only 13.65% of more than $33 Million in monetary value (not including the value of the injunctive relief terms of the settlement) of the gift cards and free shipping. *See* Ibrahim Decl., ¶ 26.[5]

In addition, Plaintiffs' counsel reports a lodestar figure of $2,761,658, reflecting 3,659 hours worked through the date of the hearing on these motions, and costs-incurred in the amount of $243,514[6]. *See* Ibrahim Decl., ¶¶ 46-52; Almadani Decl., ¶ 11; Wang Decl., ¶ 5. A fee award in the amount they request would effectively result in a 1.63

---

[4] The Ninth Circuit has approved a number of factors which may be relevant to the district court's determination: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases. *See Vizcaino*, 290 F.3d at 1048-50.

[5] For the reasons identified at the preliminary-approval stage and those that are set forth in Plaintiffs' motion papers, the Court does not believe that the settlement before it is a "coupon" settlement. *See* Docket No. 148, at pg. 11 of 14; Docket No. 191, at 31:10-32:22.

[6] The expenses include costs for damages and marketing experts (crucial for purposes of developing a workable-damages model), court reporter fees for depositions, mediation fees, document management and storage and e-discovery database fees, filing, service, printing, copying, postage, and court transcript fees, among others. *See* Ibrahim Decl., ¶¶ 19, 53. They are of the type – in this Court's experience – reasonably incurred in class litigation and normally charged to paying clients, and the Court finds them reasonable here. The Court therefore grants the request for fees in-full, along with the request for $350,000 in settlement administration expenses, neither of which garnered any objection from the classes.

lodestar multiplier, which the Court believes is reasonable considering the amount of work Plaintiffs' counsel put into the case and the results they achieved.

In the end, the Court is satisfied that Plaintiffs have earned the fee award they seek. This belief, combined with the absence of objections from the classes, leads the Court to conclude that the minor lodestar multiplier Plaintiffs' counsel seeks here is well-justified. As a result, the Court will award the full $4,506,486.00 requested.

Finally, the fee motion also asks for service awards to Plaintiffs in the amount of $5,000 each. Again, there were no objections to the settlement (or to any of the proposed/requested disbursements from the settlement amount). The requested service awards are consistent with what this Court customarily considers as acceptable for such awards.

The decision whether to award an incentive/enhancement payment to a class representative, and the size of that award, is entirely within the trial court's discretion. *See, e.g.*, *Dunleavy*, 213 F.3d at 458, 462. The criteria courts may consider in determining whether to make an incentive/enhancement award include:

> (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation and; (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294, 299 (S.D. Cal. 1995).

Counsel describes Plaintiffs' involvement as "critical to the prosecution of the case." Ibrahim Decl., ¶ 56. They supplied their counsel "with information concerning their purchases to support the claims of the Class, and their experience purchasing items on the U.S. Websites," significantly assisting counsel's investigation of the claims. *See* Ibrahim Decl., ¶ 2. "They assisted in drafting the complaints," and "reviewed the complaints for accuracy before they were filed," "put in significant time and effort . . . responding to Defendants' written discovery," and took the time to be informed by regular updates regarding the progress of the case, discussions of strategy, and settlement. Ibrahim Decl., ¶ 56; *see also* Declaration of Farid Khan in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement, Provisional Certification of California Settlement Class, and Approval of Procedure For and Form of Notice, Docket No. 133-5, ¶¶ 10-12; Declaration of Haya Hilton in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement, Provisional Certification of California Settlement Class, and Approval of Procedure For and Form of Notice, Docket No. 133-6, ¶¶ 10-12; Declaration of Olivia Lee in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement, Provisional Certification of California Settlement Class, and Approval of Procedure For and Form of Notice, Docket No. 133-7, ¶¶ 10-12. The litigation has lasted almost three years, and the Plaintiffs do not stand to obtain significant recoveries from the benefits to the class as a whole – $17.28 per gift card in monetary value and injunctive relief (which they, personally, do not particularly need at this point) – meaning that the work they undertook was much more for the benefit of the whole than for their individual merits-based recoveries.

Taking into consideration all of the foregoing, the Court will grant well-deserved service awards to each of the Plaintiffs in the full $5,000 amounts requested. While the amounts may far exceed what the rest of the class will receive in their gift cards, they are, in-total, a tiny fraction of the overall monetary value, and are meant to compensate Plaintiffs for their efforts in seeing to the realization of any value at all for the classes as a whole.

In sum, the Court will grant the motion for fees, costs, settlement administration expenses, and service awards, in the full amounts requested.

### III. Conclusion

The Court would grant the final approval motion and the motion for award of fees, costs, settlement administration expenses, and service awards.